No. 25-1575

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

THE SUSTAINABILITY INSTITUTE, *et al.*,
*Plaintiff-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States,
*et al.*,
*Defendant-Appellants*.

**APPELLEES' RESPONSE IN OPPOSITION TO APPELLANTS'
EMERGENCY MOTION FOR AN ADMINISTRATIVE STAY**

Kimberley Hunter
Irena Como
Nicholas S. Torrey
Carl T. Brzorad
Spencer Gall
SOUTHERN ENVIRONMENTAL LAW
CENTER
*136 East Rosemary Street, Suite 500*
*Chapel Hill, NC 27514*
(919) 967-1450
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
cbrzorad@selc.org
sgall@selc.org

Graham Provost
Elaine Poon
Jonathan Miller
PUBLIC RIGHTS PROJECT
*490 43rd Street, Unit #115*
*Oakland, CA 94609*
(510) 738-6788
graham@publicrightsproject.org
elaine@publicrightsproject.org
jon@publicrightsproject.org

Mark Ankcorn, Senior Chief Deputy
City Attorney
*1200 Third Avenue, Suite 1100*
*San Diego, California 92101-4100*
(619) 533-5800
mankcorn@sandiego.gov

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii
INTRODUCTION ...............................................................................................1
ARGUMENT .......................................................................................................3
    I.    Defendants Are Unlikely to Succeed on the Merits .....................................3
    II.    An Administrative Stay Is Not Needed to Prevent Harm to Defendants or to Preserve the Status Quo ...........................................................................7
    III.    An Administrative Stay Would Disrupt the Status Quo and Cause Irreparable Harm to Plaintiffs and the Public .............................................9
CONCLUSION ..................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*American Association of College for Teacher Education v. McMahon*,
   No. 25-1281 (4th Cir.) ...................................................................................5

*Board of Governors of Federal Reserve System v. MCorp Financial, Inc.,*
   502 U.S. 32 (1991) ........................................................................................5

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ......................................................1, 7

*California v. Department of Education*, 2025 WL 760825........................................6

*City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020) ............................................11

*Clinton v. City of New York*, 524 U.S. 417 (1998) ...................................................10

*Collins v. Yellen*, 594 U.S. 220 (2021) ......................................................................4

*DCH Regional v. Azar,* 925 F.3d 503 (D.C. Cir. 2019)..............................................6

*Department of Education v. California*, 145 S.Ct. 966 (2025)........................ *passim*

*Free Fund v. Public Company Oversight* U.S. 477 (2010)......................................4

*Great-West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204 (2002)..7

*Landis v. North American Company,* 299 U.S. 248 (1936) ......................................7

*Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F. 4th 330
   (4th Cir. 2021).............................................................................................8, 11

*LeBlanc v. United States*, 50 F.3d 1025 (Fed. Cir. 1995)..........................................6

*Lincoln v. Vigil,* 508 U.S. 182 *(1993)*.........................................................................5

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)..................................................1

*Council of Nonprofits v. Office of Management & Budget*,
    763 F. Supp. 3d 36,  (D.D.C. 2025)......................................................................10

*R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ..............................................8

*Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022) .......................................1, 4

*United States v. Texas*, 144 S. Ct. 797 (2024).......................................................2, 3

*Woonasquatucket River Watershed Council v. United States Department of Agriculture*, C.A. No. 1:25-cv-97, Dkt. No. 31 at 31 (D.R.I. March 27, 2025).....9

**Statutes**

42 U.S.C. § 7437 .........................................................................................................11

42 U.S.C. § 7438.....................................................................................................3, 11

5 U.S.C. § 701(a)(2)......................................................................................................5

Pub. L. No. 117–169 § 22007, 136 Stat. 1818, 2022–23 (Aug. 16, 2022)...............11

**INTRODUCTION**

Following several rounds of briefing, two hearings, multiple opportunities for Defendants to substantiate their assertions, and, ultimately, concessions on the merits by Defendants, the District Court properly concluded Defendants acted outside of their lawful and constitutional authority when they froze and terminated entire grant programs mandated by Congress—thereby sweeping away Plaintiffs' individual grants—for what they admit are broad "policy" reasons. After determining that it had two separate bases for jurisdiction over Plaintiffs' claims for equitable relief, the District Court issued a preliminary injunction for some claims and permanent relief for others. These remedies were narrowly tailored to afford Plaintiffs—and only Plaintiffs—reinstatement of their grants.

Defendants now seek an emergency administrative stay allowing them to continue disrupting Plaintiffs' grants, contrary to Congress's mandate. Defendants' arguments are primarily jurisdictional and universally wrong. They ask the Court to disregard a long line of precedent—stretching from *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), to this Court's recent decision in *Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022)—holding that federal courts have jurisdiction over claims for injunctive relief when federal officials act outside of their legal authority. Defendants also ask the Court to cast aside *Bowen v. Massachusetts*, 487 U.S. 879 (1988), and its progeny, which confirm that federal district courts have jurisdiction

1

over claims arising under the Administrative Procedure Act ("APA") that seek primarily prospective equitable relief, even if those claims involve federal funding. Instead, Defendants invite the Court to overread the Supreme Court's emergency docket order in *Department of Education v. California*, 145 S. Ct. 966 (2025). That case does not control here. Among other things, *California* did not involve nonstatutory claims, which formed the basis for the preliminary injunction below, or a concession on the merits supporting the judgment here.

      Merits aside, the equities overwhelmingly disfavor an immediate administrative stay. The purpose of an administrative stay "is to minimize harm while an appellate court deliberates, so the choice to issue an administrative stay reflects a first-blush judgment about the relative consequences of staying the lower court judgment versus allowing it go to into effect." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring). Here, the consequences of an administrative stay weigh heavily against Defendants. Any supposed harm from restraining their unlawful conduct pales in comparison to the irreparable harm to Plaintiffs that a stopgap stay would exacerbate. Plaintiffs and the communities they serve have already endured months of chaos. Even one more day would be too many. The Court should not enter an administrative stay.

## ARGUMENT

I. **Defendants Are Unlikely to Succeed on the Merits**

"Administrative stays do not typically reflect the court's consideration of the merits of the stay application." *Texas*, 144 S. Ct. at 798. But because Defendants try a reflexive comparison to *California*, it is worth briefly debunking their arguments now.

To start, Defendants did not contest the merits below. Faced with a factual record that belied their defenses, Defendants relinquished nearly all of them. Defendants did "not contest judgment on the merits of Plaintiffs' APA claims," which challenged their actions to freeze and terminate Plaintiffs' grants as, *inter alia*, contrary to the Constitution and the separation of powers. D. Ct. Dkt. 153 at 1. Although Defendants have not yet consented to judgment on Plaintiffs' nonstatutory review claims, those claims largely mirror the contrary-to-law claims Defendants conceded under the APA. For example, Defendants violated the Constitution and separation of powers when they terminated entire grant programs created by Congress because of executive branch "policies" that conflict with those of Congress.[1] Plaintiffs brought both APA and nonstatutory review claims against this

---

[1] As just one example, Congress created the "Environmental and climate justice block grants" program, which EPA "shall" use to "award grants" for environmental projects to "benefit disadvantaged communities." 42 U.S.C. § 7438. By contrast, EPA followed President Trump's directive to "Terminat[e] the Green New Deal," Energy EO § 7, and terminated the entire Environmental and climate justice block

3

constitutional violation. D. Ct. Dkt. 23 at ¶¶ 288–300 (nonstatutory claim), 323 (APA claim asserting same constitutional violation).

Having conceded the merits, Defendants resort to arguing that federal district courts cannot restrain their lawless conduct because of sovereign immunity. But their theory would require the Court to disregard controlling law. As the Supreme Court has long held and this Court recently confirmed, "sovereign immunity does not apply when a plaintiff files suit seeking equitable relief against federal officials . . . alleging that those officials . . . acted unconstitutionally." *Strickland v. United States,* 32 F.4th 311, 363 (4th Cir. 2022). This jurisdiction to enjoin constitutional violations extends to "separation-of-powers claim[s]." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010)*; see also Collins v. Yellen*, 594 U.S. 220, 245 (2021) ("whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge.").

Against this backdrop, it is not surprising that Defendants focus almost exclusively on jurisdiction over claims brought under the APA. *See* Dkt. 6 at 10–16. Their theory is APA-specific: that the sovereign immunity waiver in 5 U.S.C. § 702

---

"grant program[]" for "policy reasons," D. Ct. Dkt. 147-4 at 2 ¶ 3, 110 ¶ 6—specifically, because such grants fund "Environmental justice work." D. Ct. Dkt. 95-1 at 99 through 95-2 at 7. Defendants' termination of entire grant programs because they disagree with Congress's funding directives is an infringement on Congress's spending and legislative powers and a violation of the Constitution's separation of powers. *See* D Ct. Dkt. 24-1 at 16–20; D. Ct. Dkt. 64 at 7–9; D. Ct. Dkt. 149 at 7–9, 18–21.

4

does not apply in grant funding cases because the Tucker Act "impliedly forbids" bringing contract-related APA claims. *See* Dkt. 6 at 10–11. The government pressed this argument in *California*, which is why that decision turned on "the APA's limited waiver of immunity." 145 S. Ct. at 968. But neither *California* nor *American Association of College for Teacher Education v. McMahon*, No. 25-1281 (4th Cir.), involved nonstatutory claims, for which jurisdiction does not depend on the APA. Simply put, Defendants rely on a Tucker Act defense that does not apply to Plaintiffs' nonstatutory claims.[2]

Having failed to marshal any argument against the Plaintiffs' nonstatutory claims below, Defendants offer two new and unconvincing arguments to suggest nonstatutory review is unavailable. First, they appeal to *Board of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43–44 (1991), but that case involved alleged statutory violations; the relevant statute "clearly and directly" stripped district courts of jurisdiction to hear claims, *id.* at 44, unlike the implication Defendants find in the Tucker Act; and the plaintiffs had another forum for their

---

[2] Similarly, Defendants' argument that their actions are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), is relevant only to Plaintiffs' APA claims and has no bearing on Plaintiffs' nonstatutory constitutional claims. The argument also fails as to Plaintiffs' APA claims. Unlike, *Lincoln v. Vigil*, cited by Defendants, these grants are not broad "lump sum" payments lacking "statutory[y] restrict[ions] [on] what can be done with those funds," 508 U.S. 182, 192 (1993) (citation and quotations omitted), but rather are detailed statutory schemes that limit Defendants' discretion and provide the Court with judicially manageable standards. D. Ct. Dkt. 64 at 11–13.

5

claims. This case involves claims alleging constitutional violations that cannot be heard in the court Defendants would prefer. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (Court of Federal Claims lacks jurisdiction over separation of powers claims). Second, Defendants contend that nonstatutory review is available only to challenge "extreme agency error, not merely garden-variety errors of law or fact." Dkt. 6 at 21–22 (quoting *DCH Reg'l Med. Ctr. v. Azar,* 925 F.3d 503, 509 (D.C. Cir. 2019)). But again, the authority they cite involved alleged statutory violations, not constitutional violations like the ones here. In any event, the separation-of-powers violations in this case are an extreme example of agency defiance. *E.g.*, *supra* note 1.

The District Court also had jurisdiction over Plaintiffs' APA claims, and the Tucker Act does not suggest otherwise. The APA claims here are significantly different than those in *California*. There, the district court found procedural irregularities in the termination letters for specific grants, concluding that in those letters the government had failed to adequately explain the reasoning behind the terminations; it did not reach the plaintiffs' substantive APA claims. *Dep't of Educ.*, 2025 WL 760825, at *2–3 & n.3. Here, by contrast, the District Court ruled on Plaintiffs' substantive claims against high-level administrative actions, including that Defendants violated the separation of powers. D. Ct. Dkt. No. 157.

As the District Court recognized, this case also differs from *California* because Plaintiffs seek injunctive and declaratory relief not tied to the terms of any grant agreement. Although Plaintiffs have already suffered harm as a result of Defendants' actions, they do not seek damages for past harm, but rather protection from future unlawful interference with their project work. Plaintiffs challenge high-level agency policy directives and, in Defendants' implementation of those directives, ongoing violations of the grant programs' respective authorizing statutes and the Constitution. Plaintiffs seek forward-looking equitable relief to remove unlawful interference with congressional grant programs. This is precisely the type of "specific relief" that the Supreme Court has confirmed is well within a district court's jurisdiction under the APA. *Bowen*, 487 U.S. 879, 910 (1988); s*ee also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) (distinguishing *Bowen*'s "going forward" relief from an injunction solely to enforce a contractual obligation to pay money past due).

II. **An Administrative Stay Is Not Needed to Prevent Harm to Defendants or to Preserve the Status Quo**

Defendants cannot show the necessity or harm required to justify an administrative stay. "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936). Here, where Defendants no longer contest the

unlawfulness of their behavior, they suffer no harm from the denial of an administrative stay. *E.g.*, *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) ("[t]he Government cannot suffer harm from an injunction that merely ends an unlawful practice." (quotation marks omitted)).

Defendants have offered no rationale for why Plaintiffs' grants must remain in limbo. They have disclaimed any fraud, waste, or abuse on the part of Plaintiffs: "The pauses and terminations here are not based on grantee compliance; they are based on the agency's review of whether federal funds are being spent in a manner that best promotes the Executive's agenda." D. Ct. Dkt. 56 at 21. Indeed, the record shows Defendants have not undertaken an individualized review of the specific grants. Defendants cannot be harmed by an injunction requiring them to faithfully execute the law and allow congressionally appropriated funding to flow for the very purposes Congress intended. *See Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F. 4th 330, 346 (4th Cir. 2021) (The Government "is in no way harmed by issuance of a preliminary injunction which prevents [it] from enforcing restrictions likely to be found unconstitutional."). Indeed, allowing these funds to flow is the lawful status quo that must be maintained.

Even if requiring such grant programs to continue could be considered a harm to Defendants, that harm would be *de minimis*. By Defendants' own accounting, 14 of the 32 grants at issue are already unfrozen or in the process of being unfrozen,

many pursuant to an injunction issued in another case—*Woonasquatucket River Watershed Council v. United States Department of Agriculture*, C.A. No. 1:25-cv-97, Dkt. No. 31 at 31 (D.R.I. March 27, 2025). For these 14 grants, an administrative stay would have no effect on Defendants. For the remaining grants, although Defendants assert that the District Court's order makes "millions of dollars in grant funding immediately available to plaintiffs," Dkt. 6 at 2, that assertion vastly overstates Defendants' potential financial exposure here. The grants at issue have multi-year terms, and the grantees can only obtain reimbursement once they incur expenses consistent with their grant agreements. Any expenses Plaintiffs may incur in the brief time it will take this Court to consider the stay request will be minor, particularly compared with the harm Plaintiffs will suffer if Defendants are permitted to terminate additional grants and continue to unlawfully freeze funding.

### III. An Administrative Stay Would Disrupt the Status Quo and Cause Irreparable Harm to Plaintiffs and the Public

The order below reinstates what is constitutionally necessary—a continuation of congressional mandates. Plaintiffs' projects were operating mid-stream when Defendants disrupted them. The District Court restored the *status quo ante*, and any interruption of its remedial order will significantly impact Plaintiffs and the communities they serve.

The District Court correctly found that Plaintiffs had made a "clear showing" of irreparable harm, D. Ct. Dkt. 157 at 15–17—harm that will return if the Court's

9

injunction is stayed, even briefly. *See* D. Ct. Dkt. 64-2 (summarizing evidence and types of Plaintiffs' injuries).³ Indefinite funding pauses have forced Plaintiffs to halt work on launched projects that are central to their missions, such as the Sustainability Institute's project to weatherize and upgrade low-income homes in Charleston with energy efficient repairs. D. Ct. Dkt. 24-2 at ¶¶ 20, 39–41. Uncertainty created by Defendants' unlawful actions has upended budget and planning processes. D. Ct. Dkt. 24-1 at 31. Because nonprofits and cities like Plaintiffs operate on dramatically thinner margins than the federal government, these and other "programs may simply disappear" as Plaintiffs struggle "to make payroll," *Nat'l Council of Nonprofits v. Office of Mgmt. & Budget*, 763 F. Supp. 3d 36, 56–57 (D.D.C. 2025), and risk having to shut down entirely. *E.g.*, D. Ct. Dkt. 24-2 at ¶¶ 39–41.

Permitting Defendants to continue to unlawfully freeze and terminate grants would harm the public. Defendants' actions defy the rule of law and the Constitution's separation of powers. They deprive the public of the benefits of the programs Congress created and Plaintiffs are implementing. Even for a short time, these continuing violations flout a bedrock principle: "Liberty is always at stake when one or more of the branches seek to transgress the separation of powers."

---

³ In addition, Defendants represented that seven additional grant terminations were "in progress" prior to the District Court's order. D. Ct. Dkt. 136-1. An administrative stay would likely allow these terminations to take effect.

*Clinton v. City of New York*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring). And as this Circuit has observed, "the system is improved by an injunction" which "prevents the state from enforcing [policies] likely to be found unconstitutional." *Leaders of a Beautiful Struggle*, 2 F. 4th at 346 (citation and quotations omitted). "[T]he public interest [is] served by [the] injunction [here] in that it acts as a check on the executive's encroachment of congressional power that violates the separation of powers." *City of Chicago v. Barr*, 961 F.3d 882, 918 (7th Cir. 2020).

The public interest strongly favors the faithful execution of grant programs created by Congress to help communities across the country address pressing issues ranging from climate change, environmental justice, and toxic air pollution, 42 U.S.C. § 7438(b)(1), to assistance and support for underserved farmers and ranchers, Pub. L. No. 117–169 § 22007, 136 Stat. 1818, 2022–23 (Aug. 16, 2022), to the reduction of greenhouse gas emissions, 42 U.S.C. § 7437, and many other challenges. An administrative stay would allow Defendants to continue to flout Congress's programs, harming the communities that Congress sought to benefit.

## **CONCLUSION**

The Court should deny Defendants' motion for an administrative stay.

Respectfully submitted,

Kimberley Hunter
Irena Como
Nicholas S. Torrey
Carl T. Brzorad

Spencer Gall
SOUTHERN ENVIRONMENTAL LAW
CENTER
136 East Rosemary Street, Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
cbrzorad@selc.org
sgall@selc.org

*Counsel for Plaintiff- Appellees The Sustainability Institute, Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association of Sustainable Agriculture, and Rural Advancement Foundation International - USA*

Graham Provost
Elaine Poon
Jonathan Miller
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject.org

*Counsel for Plaintiff-Appellees Baltimore, Maryland, Columbus, Ohio, Madison, Wisconsin, Nashville, Tennessee, New Haven, Connecticut*

Mark Ankcorn, Senior Chief Deputy City Attorney
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800

mankcorn@sandiego.gov

*Counsel for Plaintiff Appellee City of San Diego*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 3,404 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word for Microsoft 365 in proportionally spaced 14-pt Times New Roman typeface.

*/s/ Kimberley Hunter*
Kimberley Hunter

# CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Kimberley Hunter*
Kimberley Hunter
