No. 25-1575

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

The Sustainability Institute, *et al.*,

    *Plaintiffs-Appellees*,

v.

Donald J. Trump, *et al.*,

    *Defendants-Appellants*.

On Appeal from the United States District Court
for the District of South Carolina

# REPLY IN SUPPORT OF EMERGENCY MOTION
# FOR STAY PENDING APPEAL

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

BRYAN P. STIRLING
  *United States Attorney*

DANIEL TENNY
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-3388*
  *sean.r.janda@usdoj.gov*

# INTRODUCTION

The district court entered two overlapping injunctions requiring the government to immediately make available funds under dozens of grants to plaintiffs. The government explained in its stay motion that this relief is precluded by multiple independent limits on the district court's jurisdiction and risks irreparable harm to the government and the public fisc by forcing the government to disburse (potentially irretrievably) taxpayer funds to plaintiffs to fund grants that the Executive Branch has determined do not align with the President's policy priorities. The Supreme Court and this Court have recently and repeatedly provided emergency relief against similar impermissible injunctions. *See Department of Educ. v. California*, 145 S. Ct. 966 (2025); Order, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); Order, *American Ass'n of Colls. for Teacher Educ. v. McMahon* (*AACTE*), No. 25-1281 (4th Cir. Apr. 10, 2025). This Court should do the same here.

In response to the government's motion, plaintiffs barely engage with the government's legal arguments. Instead, plaintiffs repeatedly and erroneously suggest that relief is not warranted because the government has "striking[ly]" "effectively concede[d]" that the challenged funding decisions

are "unconstitutional and *ultra vires*." Opp.10; *see also, e.g.*, Opp.1, Opp.11, Opp.18, Opp.22. That is incorrect. As explained, in the face of a district court that had (erroneously) rejected the government's jurisdictional arguments and had subjected the government to intrusive and ongoing discovery without resolving plaintiffs' preliminary-injunction motion, the government agreed not to contest the entry of judgment on plaintiffs' APA claims and, instead, to stand on its threshold arguments. *See* Mot.5-8. To be clear, the government does not concede that the challenged agency actions were illegal and looks forward to defending those actions on the merits if plaintiffs bring suit in the appropriate forum. Regardless, plaintiffs' complaints about the merits of those actions cannot confer jurisdiction on the district court to resolve their claims.

Plaintiffs' response ultimately boils down to two points: first, that their claims attempt to enforce the relevant statutes (rather than their grants), which require the agencies to fund certain programs; and second, that they can properly evade the limits that the APA places on judicial review because their claims are "constitutional." Plaintiffs are incorrect on both points.

First, plaintiffs do not even purport to identify any statute that requires the government to fund plaintiffs' grants specifically. Instead, at

2

most, the relevant statutes require the agencies to fund broad programs in some manner. Thus, plaintiffs' claim seeking an injunction requiring the government to provide plaintiffs with access to funds is necessarily based on plaintiffs' grants—not on the statutes—and is an essentially contractual claim over which the district court lacked jurisdiction. And the agencies' broad discretion under the statutes to determine which grants to fund both precludes judicial review and establishes the error in plaintiffs' nonstatutory review claims.

Second, plaintiffs' purported "constitutional" claims are no such thing. Plaintiffs contend that the agencies violated the "separation of powers" and the "Presentment Clause" by violating the relevant statutes. But those claims are statutory, not constitutional, and plaintiffs cannot evade the strict limits that Congress has placed on judicial review of their claims by attempting to shoehorn them into the Constitution.

This Court should stay the injunctions pending appeal.

## ARGUMENT

### A. The District Court Lacked Jurisdiction over Plaintiffs' Claims

1. As explained, the district court erred at the threshold by exercising jurisdiction over plaintiffs' claims seeking an injunction to require the

3

government to provide plaintiffs with access to grant funds. *See* Mot.11-16. Those are contractual claims seeking to enforce plaintiffs' grants, which must be brought in the Court of Federal Claims, as the Supreme Court recently confirmed. *See Department of Educ. v. California*, 145 S. Ct. 966 (2025).

In response, plaintiffs barely defend the district court's attempts to get around that recent Supreme Court precedent. They do not, for example, contend that the district court was correct to disregard the Court's decision because it was "made in the context of an emergency application" with "limited briefing" and because the *California* Court also considered equitable factors in granting a stay that "are not relevant here." App.41-42.

Instead, plaintiffs contend that "the terms and conditions of the individual grants are not at issue" in this case because the government "violated substantive statutory and constitutional provisions, which have nothing to do with the terms and conditions of any specific agreement." Opp.13 (quotation omitted). But in repeating that erroneous conclusion of the district court, plaintiffs provide no explanation of how their claims could "have nothing to do with" their particular grants when it is those grants, and nothing else, that ostensibly provides them a right to relief. As explained, plaintiffs have not identified any statute (or, for that matter, any

4

constitutional provision) that requires the government to fund plaintiffs' specific grants, *see* Mot.15; instead, even by plaintiffs' own telling, the relevant statutes require only that the government fund grants for "particular specified purposes." Opp.14. Plaintiffs cannot plausibly demand money from the U.S. Treasury based on the statutes or the Constitution.

This case is thus much like *Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985). There, a government contractor encountered difficulties performing the contract; the government invoked a liquidated damages provision and, as a result, withheld payments under the contract. *Id.* at 892. The contractor sued, claiming that the government had violated statutory procedures in withholding the payments. *Id.* The D.C. Circuit held that the suit had to go to the Court of Federal Claims. The court explained that the plaintiff sought "an injunction requiring the government to pay monies owed" and that the "right to these payments is created in the first instance by the contract, not by the" relevant statute. *Id.* at 894. In other words, the statute "confers no such right in the absence of the contract itself." *Id.* The requested remedy was thus "the classic contractual remedy of specific performance." *Id.*

5

Plaintiffs' reliance (at 13) on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), is no better placed than that of the plaintiffs in *California. See California*, 145 S. Ct. at 968 (distinguishing *Bowen*). Indeed, although plaintiffs state that they, like the plaintiffs in *Bowen*, "seek to preserve their ongoing and prospective agreements with the Government," Opp.13 (quotation omitted), plaintiffs fail to grapple with the fact—pointed out by the government, *see* Mot.16—that *Bowen* did not involve contracts or "agreements" at all. As the Supreme Court explained, *Bowen* stands for the proposition that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds," but "the APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered here." *California*, 145 S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 910) (quotation omitted).

2. Even setting aside Tucker Act preclusion, plaintiffs' claims are independently barred because the agencies' decisions to pause or terminate grant funding are committed to agency discretion by law. As explained, where, as here, Congress has appropriated large sums and left it to the agencies to figure out how best to expend those funds to carry out programs,

6

decisions to pause or terminate particular grants are committed to agency discretion by law. *See* Mot.16-20; *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).

Plaintiffs respond in a single paragraph that barely engages with the government's analysis. Instead, plaintiffs first claim (at 13-14) that the government's argument relies only on *Lincoln* and that *Lincoln* does not apply here because it involved a lump sum appropriation. But plaintiffs ignore the government's explanation that—as multiple other courts have held—*Lincoln*'s logic extends beyond lump-sum appropriations to programs, like those at issue here, "that leave to the agency 'the decision about how the moneys' for a particular program 'could best be distributed consistent with' the statute." Mot.18 (quoting *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002)).

And when plaintiffs seek to find limitations in the underlying statutes that relevantly constrain the agencies' discretion, they come up short. They claim that "Congress legislated with great detail about how the grant funding at issue here must be spent." Opp.14. But their single citation for that proposition consists of two pages of the district court's opinion that do not themselves quote or cite any relevant statutory language. *See id.* (citing App. 7, 17). And regardless, plaintiffs ignore the government's explanation of

7

why the statutory language on which plaintiffs have relied cannot bear the weight that plaintiffs place on it. For example, the requirement that the EPA Administrator "shall use" appropriated funds "to carry out" specified activities "that benefit disadvantaged communities, as defined by the Administrator," 42 U.S.C. § 7438(a)-(b), provides the Administrator with broad discretion regarding how best to allocate billions of dollars among many different specified activities and potential recipients. *See* Mot.19-20; *see also* Opp.10-11 (discussing this statute). It is relevant here only insofar as it confirms that the Administrator retains discretion to pause or terminate plaintiffs' funding if he determines that their particular grant projects do not comport with the Administration's priorities.

Nor do plaintiffs advance their case by citing to the Ninth Circuit's recent stay decision in *Community Legal Services in East Palo Alto v. U.S. Department of Health and Human Services*, -- F.4th --, 2025 WL1393876 (9th Cir. May 14, 2025), *pet. for reh'g en banc filed*, Dkt. 23, No. 25-2808 (9th Cir. May 28, 2025). Even if the Ninth Circuit were correct that the relevant statute in that case "establishe[d] a mandatory program" under which the agency had a "mandatory duty" to take certain actions and the government had decided "to cancel the program," *id.* at *4-*5, the court's holding would

8

have no evident relevance to a determination to pause or terminate specific grants—not entire "mandatory" programs. Plaintiffs' insinuations (at Opp.11, Opp.19-20) that the relevant statutory programs are mandatory are irrelevant on their own terms for similar reasons, as such claims would at most support an injunction requiring the government to make the program funds available to some recipient. They could not support the injunction entered by the district court, which requires the government to fund plaintiffs' grants specifically.

3. Finally, plaintiffs cannot evade these congressionally imposed limitations on review by recasting their APA claims as "nonstatutory review claims," Opp.14-15. Plaintiffs cannot surmount the various obstacles to such claims: nonstatutory review is never available if—as is true here—there are alternative means of vindicating a plaintiff's rights or if Congress has precluded review; nonstatutory review does not allow a plaintiff to seek effectively monetary relief (as plaintiffs here do); and nonstatutory review only allows for relief in cases where an agency has no plausible basis for its action. *See* Mot.20-22.

In the main, plaintiffs attempt to sidestep all these obstacles by characterizing their claims as "constitutional." *See* Opp.16 (no alternative

9

forum because Court of Federal Claims cannot hear plaintiffs' constitutional claims); Opp.17 (extreme-error standing applies only to "statutory violations" but not "constitutional violation[s]"); Opp.18 (case explaining that plaintiffs effectively seek monetary relief did not concern a "nonstatutory constitutional claim"). But even assuming plaintiffs are correct that true constitutional claims are treated differently in this respect, plaintiffs advance no such claims.

Rather, as the Supreme Court explained in *Dalton v. Specter*, 511 U.S. 462 (1994), not "every action by the President, or by another executive official, in excess of his statutory authority is ipso facto in violation of the Constitution." *Id.* at 472. Rather, the Court has carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). The Constitution is implicated if executive officers rely on it as an independent source of authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or if the officers rely on a statute that itself violates the Constitution. *See Dalton*, 511 U.S. at 473 & n.5. But claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims" that can be asserted through a direct cause of action. *Id.* at 473.

10

Here, plaintiffs' asserted constitutional claims are really "statutory one[s]," *Dalton*, 511 U.S. at 474, as they assert that the agencies have exceeded their statutory authority. Any statutory claim could be recharacterized as a violation of the constitutional "separation of powers," App.141-42, or as "amend[ing]" the relevant statutes in violation of the Presentment Clause, App.143-44, but that is precisely the sleight of hand rejected in *Dalton*.

### B.     The Equitable Factors Favor a Stay Pending Appeal

Plaintiffs fail to rebut the government's showing of irreparable financial harm from the injunctions. As the government explained, the injunctions require the government to make money immediately available to plaintiffs, with no guarantee that the government will be able to recover that money if it ultimately prevails. *See* Mot. 22-23. That is the exact harm that the Supreme Court found sufficient to support emergency relief in *California*. *See* 145 S. Ct. at 969.

Plaintiffs do not dispute those facts, but instead quibble about the amount of money involved on the ground that plaintiffs "may only withdraw funds" "incrementally" as they incur expenses. Opp.18-19. Plaintiffs thus argue only about the amount, not the fact of, irreparable harm. And even

11

there, plaintiffs do not dispute that the grants in this case are worth millions of dollars, and cannot simultaneously suggest that only a small amount of money is at stake and that they require immediate access to substantial grant funds to ameliorate the injuries that they asserted to justify the injunction in the first place. *See* Opp.20-22.

In addition to that monetary harm, the injunctions inflict severe harm on the Executive Branch by interfering with the President's ability to execute his policies and control subordinate officials. *See* Mot.23-25. Plaintiffs have no response, except to contend that the injunctions only prevent illegal conduct and that the district court's intrusion was justified by the government's "shifting post hoc justifications" for actions in "other cases." Opp.19-20 (quotation omitted). But the government is likely to succeed on the merits, *see supra* pp. 3-11; requiring preapproval from the district court manifestly goes well beyond enjoining only illegal conduct; and plaintiffs never explain how the government's purported conduct in other cases can justify intrusion into the Executive Branch in this case.

Finally, plaintiffs do not persuasively rebut the government's explanation that this harm outweighs any harm that plaintiffs might suffer if a stay is granted, because plaintiffs can seek any funds to which they are

12

entitled in an appropriate forum. *See* Mot.25. Plaintiffs' only response is to say that the government is "wrong" to contend that plaintiffs' harm "is purely monetary," because plaintiffs have assertedly identified "dozens of examples of irreparable harm that flow from lost grant funding." Opp.20-21 (quotation omitted). But that is precisely the point: plaintiffs' asserted harms "flow from lost grant funding" and are thus monetary in nature. And plaintiffs can recover any grant funds to which they are entitled in an appropriate suit in the correct forum.

## CONCLUSION

For the foregoing reasons and those in the government's motion, the Court should grant a stay pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

BRYAN P. STIRLING
  *United States Attorney*

DANIEL TENNY

 /s/ Sean R. Janda
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-3388*
  *sean.r.janda@usdoj.gov*

JUNE 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the reply contains 2539 words. The reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point CenturyExpd BT typeface.

*/s/ Sean R. Janda*
SEAN R. JANDA

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2025, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Sean R. Janda*
SEAN R. JANDA