No. 25-1575

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————————

The Sustainability Institute, *et al.*,

*Plaintiffs-Appellees,*

v.

Donald J. Trump, *et al.*,

*Defendants-Appellants.*

—————————————

On Appeal from the United States District Court
for the District of South Carolina

—————————————

**RESPONSE TO PETITION FOR REHEARING EN BANC OF ORDER
GRANTING STAY AND INITIAL HEARING EN BANC**

—————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

BRYAN P. STIRLING
  *United States Attorney*

DANIEL TENNY
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-3388*
  *sean.r.janda@usdoj.gov*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ................................................................. 1

STATEMENT ............................................................................................ 3

ARGUMENT ..........................................................................................10

    A.    The Stay Panel Properly Rejected Plaintiffs' Attempt to Evade the Tucker Act's Limitations ................................................10

    B.    En Banc Review of the Stay Panel's Decision or Initial En Banc Hearing of the Merits Is Unwarranted ...............................17

CONCLUSION.......................................................................................20

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY

This case arises out of agencies' decisions to pause or terminate grant funding to ensure that, where legally permissible, federal funds are not supporting activities inconsistent with the President's policy priorities. Plaintiffs, who received funds under affected grants, challenged the government's decisions in district court. The court entered three overlapping injunctions requiring the government to restore or maintain plaintiffs' access to funds and forbidding the government from pausing or terminating plaintiffs' grants without first seeking authorization.

A panel of this Court correctly granted a stay of the injunctions pending appeal. The Supreme Court recently held that essentially contractual claims like plaintiffs' must be brought in the Court of Federal Claims, not in district court. As the stay panel recognized—and as plaintiffs do not now contest—that decision makes clear that plaintiffs' APA claims cannot proceed. Nonetheless, plaintiffs contend that the stay panel erred by rejecting plaintiffs' attempt to repackage the same basic arguments as "nonstatutory review" and "constitutional" claims, which plaintiffs believe may be brought in district court. And plaintiffs further contend that the stay

panel's rejection warrants en banc review—and that this case warrants initial hearing en banc.

Plaintiffs are incorrect. Throughout their petition, plaintiffs primarily argue that constitutional claims challenging grant terminations may be brought in district court notwithstanding the Supreme Court's decision. Regardless whether plaintiffs are correct, plaintiffs advance no bona fide constitutional claims. Instead, their claims that the agencies' actions violated the separation of powers and the Presentment Clause are statutory claims; they rest on plaintiffs' contention that the agencies' actions were not authorized by the relevant statutes. The Supreme Court has unequivocally rejected similar attempts to evade judicial-review limitations by repackaging statutory claims as constitutional ones. *See Dalton v. Specter*, 511 U.S. 462, 472-74 (1994).

Nor does this case warrant en banc rehearing of the stay panel's decision or initial hearing en banc. Plaintiffs do not make out any conflict between the stay panel's decision and any decision of this Court or the Supreme Court. And in attempting to generate the extreme importance that might justify these extraordinary steps, plaintiffs repeatedly mischaracterize the stakes of this case, contending that the stay panel's decision would leave

them with no avenue for judicial review of their constitutional claims. But as explained, there are no bona fide constitutional claims at issue in this appeal. And if plaintiffs believe the agencies' grant terminations were unlawful, they may seek review in the Court of Federal Claims. Moreover, this case has been expedited such that plaintiffs can present their arguments to a merits panel in short order—indeed, the government has already filed its opening brief. Plaintiffs do not need initial hearing en banc if their claims are meritorious, and pretermitting the ordinary appellate process is unwarranted.

## STATEMENT

1. Shortly after his inauguration, the President issued several Executive Orders setting forth his Administration's priorities and instructing agencies to pause funding to the extent permitted by law to allow review of whether the funding aligns with those priorities. For example, Executive Order 14,154, 90 Fed. Reg. 8353 (Jan. 29, 2025), titled *Unleashing American Energy*, declares the policy of the United States to encourage certain "energy exploration and production," guarantee the accessibility of "an abundant supply of reliable energy," and ensure no federal funding is "employed in a manner contrary to the principles outlined in this section,

unless required by law," *id.* § 2(a), (c), (i). The Executive Order further instructs agencies to "immediately pause the disbursement of funds" under two statutes—the Inflation Reduction Act (IRA) and the Infrastructure Investment and Jobs Act (IIJA)—to assess "consistency with the law and the policy outlined in" the Executive Order. *Id.* § 7(a).

As relevant to this appeal, this case involves 32 grants across approximately 20 funding programs that generally encompass environmental or agricultural projects and that are administered by the Environmental Protection Agency, the Department of Agriculture, the Department of Transportation, or the Department of Energy. *See* J.A. 26-30. In almost all cases, funds for those grant programs were appropriated by the IRA, Pub. L. No. 117-169, 136 Stat. 1818 (2022); the IIJA, Pub. L. No. 117-58, 135 Stat. 429 (2021); or the American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4. *See* J.A. 2125-2139 (cataloguing relevant statutory provisions for each grant at issue).

Shortly after the President's Executive Orders, the obligation and disbursement of funds under each grant were temporarily paused pending a review of the funding for consistency with the Administration's priorities. Over the ensuing months, however, the agencies began to decide whether to

4

terminate or retain grants. By April 22, the agencies had closed or terminated, or were in the process of terminating, 12 grants; they had unfrozen or were in the process of unfreezing 14 grants, including some grants where funding was being restored pursuant to an injunction in a different case; and they continued to freeze obligations and disbursements on three grants. *See* J.A. 26-30; *see also* J.A. 2370 (clarifying that grant 8, which was originally listed as closed, was in the process of being terminated). Finally, the awarding of three of the grants had not been finalized before that process was paused; those awards remained pending as of April 22. *See* J.A. 26-30.

2. Plaintiffs are 13 community groups and six cities who allege that they were awarded, or are subrecipients of, those 32 grants. *See* J.A. 66. They allege that the freezing and termination of their grants contravene the relevant statutes, violate the "separation of powers" and "Presentment Clauses" by contravening the relevant statutes, violate the requirements of the APA, and violate the First Amendment. *See* J.A. 137-148. Among other relief, plaintiffs sought an injunction prohibiting the freezing or termination of grants and prohibiting the agencies from "impeding, blocking, cancelling, or terminating Plaintiffs' access to their funds." J.A. 149-152.

Plaintiffs filed a motion for a preliminary injunction, in which they sought "injunctive relief to restore the federal grants awarded to Plaintiffs." Dkt. No. 24-1, at 1. On April 9, the government responded to that motion, explaining both that the district court lacked jurisdiction over plaintiffs' claims and that the agencies' actions comported with the relevant law. *See* Dkt. No. 56, at 9-31. The district court entered an order rejecting the government's jurisdictional arguments. *See* J.A. 34-44.

Then, rather than proceeding to resolve plaintiffs' pending preliminary-injunction motion, the district court ordered the government to provide documents related to the freezing or termination of many of the grants and related generally to the freezing of grants under the IRA and IIJA—discovery that was in addition to the "thousands of documents" that the government had produced in response to an earlier order of the district court. J.A. 45-46. Over the following two weeks, the government provided additional discovery on an expedited basis, even as plaintiffs' preliminary-injunction motion remained pending.

Shortly before another hearing on that motion, the government agreed not to "contest judgment on the merits of Plaintiffs' APA claims" as applied to the 32 grants now at issue to "find common ground and move quickly

6

towards final judgment." Dkt. No. 153, at 1. The government explained that it maintained, and was willing to stand on, its jurisdictional objections. *Id.*

3. The district court then entered both a permanent and preliminary injunction on plaintiffs' claims challenging the freezing or termination of the 32 grants. First, as to plaintiffs' APA claims, the court accepted the government's consent to the entry of judgment. As relief, the court declared "that the freeze and/ or termination" of the grants was "ultra vires" and "in violation of the United States Constitution"; set aside "the freeze and/or termination" of the grants and "direct[ed] the Enjoined Agencies to restore Plaintiffs['] access to grant funds immediately"; and enjoined the agencies "from freezing, terminating or otherwise interfering with the funding of" the grants "without written authorization from this Court." J.A. 8.

Second, the district court addressed plaintiffs' "nonstatutory review" claims, which were predicated on the assertion that the defendants "exceeded the scope of their authority and/or acted unconstitutionally by failing to faithfully execute the laws of the United States." J.A. 10 (alteration and quotation omitted). The court stated—without substantial elaboration— that plaintiffs were likely to succeed on the merits and that the nonstatutory review claims "are, for all practical purposes, mirror images" of the APA

claims "which Defendants have elected not to contest." J.A. 14. Based on

those conclusions, the district court entered a preliminary injunction on

plaintiffs' nonstatutory review claims, which generally mirrors the

permanent injunction entered on plaintiffs' APA claims.

4. The government appealed and moved for a stay of the injunctions

pending appeal. This Court granted that motion. The stay panel concluded

that the government "is likely to succeed in showing that the district court

lacked subject matter jurisdiction over Plaintiffs' claims." Order 3, June 5,

2025 (Stay Op.) (quotation omitted).

The stay panel explained that "[t]his case is much like *Department of

Education v. California*." Stay Op. 3; *see* 145 S. Ct. 966 (2025) (per curiam).

In *California*, the plaintiffs challenged "the cancellation of grants that were

funded generally by an authorizing statute but awarded specifically to each

grantee by an operative grant agreement," and the district court entered "an

injunction which set aside the grant cancellations and prohibited the

Government from" suspending or withholding "funds approved and obligated

for the grants." *Id.* (quotation omitted). The Supreme Court stayed that

injunction, concluding that "the Government was likely to succeed in showing

the District Court lacked jurisdiction to order the payment of money under

the APA." *Id.* (quotation omitted). As the stay panel explained, the Supreme
Court's conclusion was based on the principle that the "APA's limited waiver
of immunity does not extend to orders to enforce a contractual obligation to
pay money"; instead, "the Tucker Act grants the Court of Federal Claims
jurisdiction over suits based on any express or implied contract with the
United States." Stay Op. 3-4 (quotation omitted).

The stay panel concluded that the district court likely lacked
jurisdiction over plaintiffs' claims for the same reason. As the panel
explained, plaintiffs "assert similar claims" to the plaintiffs in *California*:
they "allege the Government violated the APA by suspending and canceling
certain grants" and, "like the grants in *California*, the grants here were
awarded by federal executive agencies to specific grantees from a
generalized fund." Stay Op. 4. Thus, the panel explained, "it is the operative
grant agreements"—not the underlying statutes—that "entitle any
particular Plaintiff to receive federal funds." *Id.*

Moreover, the panel concluded it was unlikely that plaintiffs could use
their ultra vires claims as "a detour around the Tucker Act." Stay Op. 4-5.
The panel explained that courts' power "to enjoin unlawful executive action"
is constrained by "implied statutory limitations" and that the "express

9

provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Stay Op. 5 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327-28 (2015)). Finally, the panel concluded that the government had demonstrated the requisite irreparable harm to support a stay pending appeal "because it is being forced to disburse funds from a finite appropriation" under the injunctions and may not "recoup those funds once expended." *Id.*

Judge Heytens dissented. In his view, the jurisdictional questions presented by the case "are novel and difficult" and "could end up being resolved in favor of either party after full briefing and argument." Stay Op. 6 (Heytens, J., dissenting). But "[a]t this point," he did not "believe the defendants have made a sufficiently strong showing that they are likely to succeed on the merits to warrant the extraordinary equitable relief of a stay pending appeal." *Id.* (quotation omitted).

## ARGUMENT

### A. The Stay Panel Properly Rejected Plaintiffs' Attempt to Evade the Tucker Act's Limitations

In their petition, plaintiffs do not dispute the stay panel's primary conclusion that the Tucker Act precludes plaintiffs' APA claims, which are essentially contractual claims that must be brought in the Court of Federal

Claims. Instead, plaintiffs focus entirely on the stay panel's rejection of their attempt to evade the Tucker Act's limitations by recasting those same claims as ones seeking "non-statutory review of constitutional violations by federal officials grounded in the separation of powers and the Presentment Clause." Pet. 8. According to plaintiffs, the Tucker Act is irrelevant to the question whether they can bring nonstatutory claims in district court. Pet. 9-10. And in plaintiffs' view, by interpreting the Tucker Act to bar plaintiffs from bringing their supposedly constitutional claims in any forum, the stay panel has cast doubt on the constitutionality of that statute. Pet. 11-12.

Plaintiffs' arguments fail on all levels. Plaintiffs' nonstatutory review claims, like their APA claims, are subject to the Tucker Act's limits (and are, in any event, unavailing on the merits). And plaintiffs' attempt to evade the Tucker Act's limitations by labeling their claims "constitutional" is unpersuasive. Regardless of whether the Tucker Act may preclude parties from bringing bona fide constitutional claims in district court, plaintiffs here present no such claims. Instead, their claims are statutory ones subject to usual judicial-review limitations.

1. As the stay panel properly recognized, plaintiffs may not properly evade the Tucker Act's limitations by labeling their claims as "nonstatutory

review" claims. Because nonstatutory review "could become an easy end-run around the limitations" of "judicial-review statutes," the Supreme Court's "cases have strictly limited" that review. *Nuclear Regulatory Comm'n v. Texas*, No. 23-1300, slip op. at 14 (U.S. June 18, 2025). Among other limits, nonstatutory review is "unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review.'" *Id.* at 15 (quoting *Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). Moreover, in circumstances where such review is available, it allows a plaintiff to obtain (at most) "equitable relief," *Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022), in cases where an agency has "plainly act[ed] in excess of its delegated powers"—a standard that captures "only extreme agency error, not merely garden-variety errors of law or fact," *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (alterations and quotations omitted); *see also Nuclear Regulatory Comm'n*, slip op. at 15 (explaining that nonstatutory review requires that the agency have acted "contrary to a *specific prohibition* in a statute" (quotation omitted)).

Here, those limits render plaintiffs unable to succeed on their nonstatutory review claims, just as they are unable to succeed on their APA

12

claims. First, plaintiffs have an adequate means of vindicating their asserted

right to grant funds, because they may bring contract actions in the Court of

Federal Claims. Such actions would allow them to recover as damages any

grant funds to which they are lawfully entitled. Moreover, as the stay panel

properly recognized, federal courts' equitable authority "to enjoin unlawful

executive action" is constrained by "implied statutory limitations." Stay Op. 5

(quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)).

Thus, because Congress has directed that essentially contractual claims like

plaintiffs' must be brought under the Tucker Act, that statute precludes

plaintiffs' nonstatutory claims just as it precludes plaintiffs' APA claims.

Second, in any event, plaintiffs' nonstatutory review claims would fail

on the merits. As the stay panel properly recognized, the grants at issue here

are generally "funded and authorized by omnibus appropriations statutes,"

and the agencies awarded the grants "to specific grantees from" the

"generalized fund" created by the statutes. Stay Op. 4. As that description

suggests, plaintiffs have not contended that any provision of the relevant

statutes requires the government to fund plaintiffs' grants specifically—

instead, the statutes provide the agencies with broad discretion to select

grant recipients to fund with the general pool. Nor have plaintiffs contested

that the agencies in fact have statutory authority to pause or terminate grant funding in certain circumstances even after grants are awarded. Instead of identifying any such clear statutory limitation that the agencies transgressed, plaintiffs' primary theory, accepted by the district court, is that the agencies' exercise of their statutory authority was arbitrary and capricious—not that they had no statutory authority at all. *Cf.* J.A. 14 (concluding that the agencies acted improperly because their decisions were based on their "disapproval of the purposes of the funding"). And that theory cannot meet the high bar required to succeed on a nonstatutory review claim.

2. Plaintiffs do not develop a substantial argument that their claims could meet the ordinary standards for nonstatutory review. Instead, they contend that those ordinary standards do not apply and that precluding review of their claims would generate serious constitutional questions because their claims allege "constitutional"—and not merely "statutory"— violations. *See* Pet. 11-12; *see also* Pet. 12-13 (claiming the stay panel's reliance on *Armstrong* and *MCorp*, which make clear that nonstatutory review is subject to implied statutory limits, was misplaced because those cases concerned alleged statutory, not constitutional, violations). But plaintiffs are incorrect, because plaintiffs advance no bona fide constitutional

14

claims. Nothing about this appeal will resolve the proper forum for a claim

based, for example, on the equal protection component of the Due Process

Clause or some other constitutional right.

As the Supreme Court explained in *Dalton v. Specter*, 511 U.S. 462

(1994), not "every action by the President, or by another executive official, in

excess of his statutory authority is *ipso facto* in violation of the Constitution."

*Id.* at 472. Rather, the Court has carefully "distinguished between claims of

constitutional violations and claims that an official has acted in excess of his

statutory authority." *Id.* (collecting cases). The Constitution is implicated if,

for example, executive officers rely on it as an independent source of

authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579

(1952), or if the officers rely on a statute that itself violates the Constitution.

*See Dalton*, 511 U.S. at 473 & n.5. But claims alleging simply that an official

has "exceeded his statutory authority are not 'constitutional' claims" that can

be asserted through a direct cause of action. *Id.* at 473.

Here, plaintiffs' asserted constitutional claims are really "statutory

one[s]," *Dalton*, 511 U.S. at 474, as they assert that the agencies have

exceeded their statutory authority. Any statutory claim could be

recharacterized as a violation of the constitutional "separation of powers,"

J.A. 138-139, or as "amend[ing]" the relevant statutes in violation of the Presentment Clause, J.A. 140-141, but that is precisely the sleight of hand rejected in *Dalton*. The stay panel properly rejected it here too.

In response, plaintiffs argue (Pet. 14-15) that their claims are bona fide constitutional claims because they assert that "Executive Branch officials targeted for termination the very policies Congress chose to put in place." But that is exactly the point: plaintiffs' claims boil down to (incorrect) assertions that the agencies violated the relevant statutes—that is, the provisions that Congress "put in place"; if the government is correct that the terminations complied with the relevant statutes, plaintiffs would have no independent constitutional argument.

Nor do plaintiffs advance the ball with their brief discussion of the D.C. Circuit's recent decision in *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc) (per curiam), vacating in part 2025 WL 1288817 (D.C. Cir. May 3, 2025) (per curiam). Regardless whether the D.C. Circuit's decision was correct, that case involved allegations that the relevant statutes "required allocation of funds to th[e] specific, named" plaintiffs. *Widakuswara*, 2025 WL 1288817, at *11 (Pillard, J., dissenting). The court's determination that claims to enforce that asserted statutory

16

entitlement could proceed in district court has no relevance here, because (as the stay panel correctly explained) it is only "the operative grant agreements"—and not any statute—"which entitle any particular Plaintiff to receive federal funds." Stay Op. 4.

### B.  En Banc Review of the Stay Panel's Decision or Initial En Banc Hearing of the Merits Is Unwarranted

Courts of appeals ordinarily hear cases as panels of three judges. *See* 28 U.S.C. § 46(b). The Federal Rules of Appellate Procedure provide that hearing a case en banc "is not favored." Fed. R. App. P. 40(c). And initial hearing en banc is particularly extraordinary. The "orderly and customary" procedure is not to hear a case en banc before a panel of the Court has heard the case at all. *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 211 F.3d 853, 854 (4th Cir. 2000) (Wilkinson, C.J., concurring in the denial of initial hearing en banc).

Plaintiffs provide no compelling justification for the en banc Court to review the stay panel's decision—much less for the Court to take the extraordinary step of hearing the appeal initially en banc. Plaintiffs have not persuasively identified any conflict between the stay panel's decision and any decision of this Court or the Supreme Court. To the contrary, each of plaintiffs' assertions of such a conflict rest on their characterization of their

17

claims as "constitutional." *See* Pet. 1-2. That characterization is erroneous, as explained.

Additionally, although plaintiffs do not address this issue in their petition, the government's stay motion explained that the district court lacked jurisdiction over their claims for the separate reason that the relevant agency actions are committed to agency discretion by law. *See* Stay Mot. 16-20. Plaintiffs have not contended that this separate issue is independently worthy of en banc consideration, and any review of the issues presented by plaintiffs' petition would necessarily be complicated by the need to address that separate, threshold jurisdictional objection before plaintiffs could prevail.

Plaintiffs argue that en banc intervention is warranted because the stay panel's approach "would enable the Executive Branch to evade judicial review" and because plaintiffs are suffering harm from the loss of their funding. Pet. 15-17. But if plaintiffs believe that the government's actions are not consistent with the terms of their grant agreements or any statutes or regulations incorporated into those agreements, plaintiffs may file suit in the Court of Federal Claims. At that point, plaintiffs may obtain any funds to which they are lawfully entitled, thereby redressing the essentially monetary

18

harm that they allege. The issue in this appeal is simply where—not whether—plaintiffs may obtain review.

Plaintiffs fare no better in contending that en banc intervention is warranted because the "questions presented in this case affect other matters pending in" district courts in this Circuit. Pet. 15-16. It will often be the case that a court of appeals opinion will affect other matters currently pending in district court; that fact does not generate the extreme importance required to justify en banc review.

Moreover, the merits of the appeal are already proceeding on an expedited schedule. The government filed its opening brief last week, and briefing will conclude by July 14. A merits panel of the Court is thus poised to consider these appeals in short order, and there is no need for the en banc Court to pretermit that consideration. If further review is warranted after the panel decision, the aggrieved party may seek en banc or Supreme Court review in the ordinary course.

19

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc of the stay panel's decision and for initial hearing en banc should be denied.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

BRYAN P. STIRLING
   *United States Attorney*

DANIEL TENNY

*s/ Sean R. Janda*
SEAN R. JANDA
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7260*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, D.C. 20530*
   *(202) 514-3388*
   *sean.r.janda@usdoj.gov*

June 2025

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit established in this Court's order of June 13, 2025, because it contains 3877 words, according to the count of Microsoft Word. This response complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*
Sean R. Janda