No. 25-1575

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

————————————

The Sustainability Institute, *et al.*,

Plaintiffs-Appellees,

v.

Donald J. Trump, *et al.*,

Defendants-Appellants.

————————————

On Appeal from the United States District Court for the District of South Carolina

————————————

## JOINT APPENDIX: VOLUME 6

————————————

KIMBERLEY HUNTER
IRENA COMO
NICHOLAS S. TORREY
CARL T. BRZORAD
SPENCER GALL
  *Southern Environ-*
    *mental Law Center*
  *136 East Rosemary*
    *Street, Suite 500*
  *Chapel Hill, NC 27514*
  *(919) 967-1450*
  *kmeyer@selc.org*
  *icomo@selc.org*
  *ntorrey@selc.org*
  *cbrzorad@selc.org*
  *sgall@selc.org*

GRAHAM PROVOST
ELAINE POON
JONATHAN MILLER
  *Public Rights Project*
  *490 43rd Street, Unit #115*
  *Oakland, CA 94609*
  *(510) 738-6788*
  *graham@publicrightsproject.org*
  *elaine@publicrightsproject.org*
  *jon@publicrightsproject.org*

MARK ANKCORN
  *Senior Chief Deputy City*
    *Attorney*
  *1200 Third Avenue, Suite 1100*
  *San Diego, CA 92101-4100*
  *(619) 533-5800*
  *mankcorn@sandiego.gov*

BRETT A. SHUMATE
  *Assistant Attorney*
    *General*

BRYAN P. STIRLING
  *United States Attorney*

DANIEL TENNY
SEAN R. JANDA
  *Attorneys, Appellate*
    *Staff*
  *Civil Division, Room*
    *7260*
  *U.S. Department of*
    *Justice*
  *950 Pennsylvania*
    *Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3388*
  *sean.r.janda@usdoj.gov*

# TABLE OF CONTENTS

**Page**

## Volume 1

District Court Order with Grant Chart Exhibit (May 20, 2025),
    Order, Dkt. No. 157....................................................J.A. 1
    Grant Chart Exhibit, Dkt. No. 157-1...............................J.A. 25

District Court Order (April 29, 2025), Dkt. No. 146 ...................J.A. 31

District Court Order (April 9, 2025), Dkt. No. 52 .......................J.A. 48

District Court Order (March 31, 2025), Dkt. No. 32....................J.A. 59

Amended Complaint with Exhibits (March 26, 2025),
    Amended Complaint, Dkt. No. 23......................................J.A. 61
    Exhibit A: First OMB Memo, Dkt. No. 23-5...................J.A. 155
    Exhibit B: Second OMB Memo, Dkt. No. 23-6 ..............J.A. 157
    Exhibit C: USDA Directive, Dkt. No. 23-7 ....................J.A. 160
    Exhibit D: EPA Memo, Dkt. No. 23-8 ............................J.A. 168
    Exhibit E: EPA Executive Order Compliance Review
    Requirement, Dkt. No. 23-9 ...........................................J.A. 171
    Exhibit F: DOT Memo, Dkt. No. 23-10............................J.A. 174
    Exhibit G: EPA Notice of DOGE Approval
    Requirement, Dkt. No. 23-11 .........................................J.A. 178
    Exhibit H: DOT Secretary's Directive, Dkt. No. 23-12 ...............J.A. 180
    Exhibit I: DOE Memo, Dkt. No. 23-13 ..........................J.A. 183
    Exhibit J: EPA Flowchart for Equity-Related
    Grants, Dkt. No. 23-14 ..................................................J.A. 187

Exhibits to Plaintiffs' Preliminary Injunction Motion (March 26, 2025),
    Exhibit 1: Sustainability Institute Declaration, Dkt. No. 24-2 ....J.A. 190
    Exhibit 2: Agrarian Trust Declaration, Dkt. No. 24-3 .................J.A. 234
    Exhibit 3: Alliance for Agriculture Declaration, Dkt. No. 24-4 ...J.A. 324

## Volume 2

Exhibits to Plaintiffs' Preliminary Injunction Motion (cont.)
    Exhibit 4: Alliance for the Shenandoah Valley
    Declaration, Dkt. No. 24-5 ................................................................J.A. 463
    Exhibit 5: Bronx River Alliance Declaration, Dkt. No. 24-6 ........J.A. 667
    Exhibit 6: CleanAIRE NC Declaration, Dkt. No. 24-7 ................J.A. 735
    Exhibit 7: Conservation Innovation Fund
    Declaration, Dkt. No. 24-8 ................................................................J.A. 780
    Exhibit 8: Earth Island Institute
    Declaration, Dkt. No. 24-9 ................................................................J.A. 852
    Exhibit 9: Leadership Counsel for Justice and Accounability
    Declaration, Dkt. No. 24-10 ..............................................................J.A. 920

## Volume 3

Exhibits to Plaintiffs' Preliminary Injunction Motion (cont.)
    Exhibit 10: Marbleseed Declaration, Dkt. No. 24-11 ....................J.A. 942
    Exhibit 11: Organic Association of Kentucky
    Declaration, Dkt. No. 24-12 ..............................................................J.A. 1148
    Exhibit 12: Pasa Declaration, Dkt. No. 24-13 ..............................J.A. 1368

## Volume 4

Exhibits to Plaintiffs' Preliminary Injunction Motion (cont.)
    Exhibit 13: RAFI-USA Declaration, Dkt. No. 24-14 ..................J.A. 1539
    Exhibit 14: City of Baltimore Declaration, Dkt. No. 24-15 ........J.A. 1917
    Exhibit 15: City of Columbus Declaration, Dkt. No. 24-16 ........J.A. 1988
    Exhibit 16: City of Madison Declaration, Dkt. No. 24-17 ..........J.A. 2006
    Exhibit 17: City of Nashville Declaration, Dkt. No. 24-18 .........J.A. 2024
    Exhibit 18: City of New Haven Declaration, Dkt. No. 24-19 .....J.A. 2039
    Exhibit 19: City of San Diego (Charvel)
    Declaration, Dkt. No. 24-20 ..............................................................J.A. 2091
    Exhibit 20: City of San Diego (Widener)
    Declaration, Dkt. No. 24-21 ..............................................................J.A. 2095

Exhibit 21: List of Plaintiffs' Grants and Statutory
Authorities, Dkt. No. 24-22 ........................................................J.A. 2124

## Volume 5

Exhibits to Plaintiffs' Reply in Support of Preliminary Injunction
Motion (April 16, 2025),
Exhibit 1: U.S. Brief in Federal Circuit, Dkt. No. 64-1 ..............J.A. 2140
Exhibit 2: Chart Summarizing Plaintiffs'
Injuries, Dkt. No. 64-2 ....................................................J.A. 2242
Exhibit 3: Pasa Supplemental Declaration, Dkt. No. 64-3 .........J.A. 2247

Transcript of April 23 Hearing, Dkt. No. 142 .......................................J.A. 2252

Exhibits to Government's Response to Court Order (May 6, 2025),
Exhibit 1: Declaration of Karen Woodrich, Dkt. No. 147-1........J.A. 2325
Exhibit 2: Declaration of Patricia Kovacs, Dkt. No. 147-2 .........J.A. 2347
Exhibit 3: Declaration of Arlan Finfrock, Dkt. No. 147-3 ..........J.A. 2351
Exhibit 4: Declaration of Travis Voyles, Dkt. No. 147-4.............J.A. 2369
Exhibit 5: Packard Supplemental Search
Declaration, Dkt. Nos. 147-5 through 147-8.................................J.A. 2480

## Volume 6

Exhibits to Government's Response to Court Order (cont.)
Exhibit 6: Packard Deliberative Process
Declaration, Dkt. No. 147-9.............................................................J.A. 2759
Exhibit 7: Declaration of Kailee Buller, Dkt. No. 147-10 ..........J.A. 2812

Exhibits to Plaintiffs' Response to Court Order (May 12, 2025),
Exhibit 1: Table of Grants and Relief
Requested, Dkt. No. 149-1.............................................................J.A. 2826
Exhibit 2: Excerpt of Transcript of Preliminary Injunction
Hearing, Dkt. No. 149-2.................................................................J.A. 2832
Exhibit 3: EPA January 21 Email, Dkt. No. 149-3......................J.A. 2838
Exhibit 4: EPA March 7 Emails, Dkt. No. 149-4.........................J.A. 2839

Exhibit 5: EPA February 22-24 Emails, Dkt. No. 149-5 ............J.A. 2841
Exhibit 6: EPA February 21-24 Emails, Dkt. No. 149-6 ............J.A. 2843
Exhibit 7: Supplemental Declaration of the Sustainability
Institute, Dkt. No. 149-7 ...................................................J.A. 2844
Exhibit 8: Inside EPA Article, Dkt. No. 149-8.............................J.A. 2853
Exhibit 9: EPA Reduction in Force Memo, Dkt. No. 149-9 .......J.A. 2855
Exhibit 10: Supplemental Declaration of
CleanAIRE NC, Dkt. No. 149-10 ...................................J.A. 2857

Transcript of May 19 Hearing, Dkt. No. 163 .........................J.A. 2881

Notice of Appeal (May 21, 2025), Dkt. No. 159 .....................J.A. 2936

Docket Sheet .............................................................................J.A. 2937

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

---

The Sustainability Institute, et. al.,

                Plaintiffs,

      v.

DONALD J. TRUMP, in his official
capacity as President of the United
States, et. al.,

                Defendants

---

Civil Action No.: 2:25-cv-02152-RMG

**DECLARATION OF ELISE B. PACKARD**
**ASSERTING THE DELIBERATIVE PROCESS PRIVILEGE**

      I, Elise B. Packard, declare that the following statements are true and correct to the best of my knowledge and belief and that they are based upon my own personal knowledge, on information contained in the records of the U.S. Environmental Protection Agency (EPA or Agency), or information supplied to me by employees under my supervision or employees in other EPA offices, and that they are provided in support of EPA's most recent privilege log submitted in the above-captioned case.

1. I have been employed with the EPA since July 2014. I have served in various roles throughout my tenure at the Agency including a detail as the Acting Principal Deputy General Counsel in the Office of General Counsel (OGC) in 2017, a detail as Acting Deputy General Counsel for Operations in 2018 and 2019, and Associate General Counsel for the Civil Rights and Finance Law Office (CRFLO).

2. In August 2019, I began my permanent role as Deputy General Counsel for Operations within OGC, and I currently hold this position within the Agency. I report directly to the position of General Counsel for the Agency.

**Exhibit 6**

J.A. 2759

3. My office address is: Environmental Protection Agency, 1200 Pennsylvania Avenue, N.W., Washington, D.C., 20460.

4. OGC is the EPA headquarters-based unit with primary responsibility for providing the Agency's legal advice. As Deputy General Counsel for Operations, I am responsible for serving as OGC's Senior Resource Officer managing its budget, human resources functions, contracting, and property. Additionally, I also oversee the legal advice in three legal offices, CRFLO, the General Law Office and the Cross-Cutting Issues Law Office, as well as the National Freedom of Information Act and Resource Management program offices.

Litigation Background

5. I am familiar with this litigation, including the nature of the claims made by the Plaintiffs and the course of these proceedings. On multiple occasions, I have been briefed or otherwise had discussions with my staff as well as other Agency employees concerning this litigation.

6. Based upon the briefings and other information I have received during this litigation, I understand that approximately 19,500 potentially responsive documents were initially identified and collected pursuant to an April 7, 2025, Court Order partially granting the plaintiffs' motion for expedited discovery.

7. Based upon the briefings and other information I have received during this litigation, I understand that from April 12, 2025, through April 16, 2025, a team of EPA attorneys and legal assistants conducted first and second level document review to make responsiveness and privilege determinations for each of the approximately 19,500 potentially responsive documents. Upon completing the first and second level document review, approximately 5,600 documents were identified as responsive. Of those, approximately 2,000 were identified as containing privileged attorney client, attorney work product, and/or

1    deliberative process information.

2    8.  Based on the briefings and other information I have received, I understand that all

3        reviewers received multiple trainings and instructions from lawyers within EPA that have

4        knowledge and experience in this litigation and discovery in general. Detailed instructions

5        were provided on determining whether individual documents were responsive to Plaintiffs'

6        requests, as narrowed via the Court's April 7, 2025, Order, and whether responsive

7        documents were privileged, including whether documents reflected internal deliberations

8        that preceded Agency decision-making and, therefore, should be protected by the

9        "Deliberative Process Privilege."

10   9.  On April 17, 2025, EPA's privilege log, listing the approximately 2,000 privileged

11       documents, was filed with the Court, along with a Motion for a Protective Order and

12       request for additional time for Defendants to provide further support regarding the privilege

13       assertions. Plaintiffs filed an opposition motion to the requested relief the same day.

14   10. On April 18, 2025, a narrower search string and criteria was applied to the approximately

15       5,600 documents initially determined to be responsive, which generated a set of

16       approximately 580 non-privileged documents. By April 19, 2025, the approximately 580

17       non-privileged documents had been produced.

18   11. Between April 18, 2025, and April 21, 2025, it is my understanding that EPA attorneys

19       conducted a third level document review on the approximately 5,000 documents initially

20       coded as responsive but not yet produced. During the third level review, approximately 25

21       additional documents were found to be privileged, and approximately 80 documents were

22       found to be non-responsive.

23   12. On April 21, 2025, EPA produced approximately 2,850 non-privileged documents and a

24       supplemental privilege log containing approximately 25 additional privileged documents.

**J.A. 2761**

In total and as of April 21, 2025, it is my understanding that EPA had produced approximately 3,400 non-privileged responsive documents and submitted for in camera review approximately 2,100 privileged documents.

13. On April 22, 2025, Plaintiffs filed a Motion to Unseal Documents Withheld Under the Deliberative Process Privilege alleging that Defendants failed to properly assert the privilege.

14. On April 23, 2025, a hearing occurred in which the Court granted Defendant agencies additional time to supplement their privilege log explanations asserting Deliberative Process Privilege.

15. On April 29, 2025, the Court issued an Order, which in pertinent part, extended the time Defendants had to supplement their privilege logs regarding the Deliberative Process Privilege.

16. Based on the briefings and other information I have received, I understand that between April 28, 2025, and May 6, 2025, Agency attorneys reviewed approximately 1,000 documents for which the Agency originally claimed the Deliberative Process Privilege, and based on that review the Agency is now not asserting the Deliberative Process Privilege for approximately 250 of those documents. The Agency is working to produce the additional non-privileged documents.

17. Each of the documents included on the May 6, 2025, privilege log underwent several levels of further review from that discussed in the preceding paragraphs and were examined by individual document reviewers who determined that the documents, or a portion thereof, should be withheld as protected by the Deliberative Process Privilege. Individual reviewers made such determinations in accordance with the legal advice and guidance provided by EPA attorneys with knowledge and experience in this litigation and discovery in general.

1    In addition, several Agency attorneys undertook a further round of review as a "quality

2    control" exercise to confirm that the advice and guidance concerning the Deliberative

3    Process Privilege had been properly applied and that the documents on the May 6, 2025,

4    privilege log were appropriately asserting the Deliberative Process Privilege. In other

5    words, all of the documents on the May 6, 2025, privilege log were examined by multiple

6    trained professionals to confirm that they were protected by the Deliberative Process

7    Privilege.

8    18. Based upon the briefings and other information I have received and my own review of

9    close to 200 of the documents, I understand that the documents on the May 6, 2025,

10   privilege log concern a variety of Agency statutes, regulations, policies, decisions, and

11   actions, including namely actions regarding developing guidance about and interpreting

12   and implementing recently issued Executive Orders and their impact on funding provided

13   by the Annual Appropriations Acts, Infrastructure Investment and Jobs Act (also known as

14   the Bipartisan Infrastructure Law or IIJA or BIL), and Inflation Reduction Act (IRA).

15   <u>The Deliberative Process Privilege</u>

16   19. In accordance with the October 3, 1984, Agency policy memorandum, "Guidance for

17   Assertion of Deliberative Process Privilege," the EPA Administrator delegated to the

18   General Counsel the authority to assert, during judicial litigation, the Deliberative Process

19   Privilege with respect to documents, portions of documents, or materials within the control

20   of the Agency. (National Delegation 1-49, October 3, 1984; Tracking Number (TN) 106

21   approved July 20, 2016). EPA Delegation 1-49 permits this authority to be redelegated to

22   the deputy assistant administrator level (i.e., deputy general counsel) and no further. I have

23   been delegated the authority to make these determinations for purposes of litigation in the

24   above-captioned case.

**J.A. 2763**

20. In light of my general background and experience, I am familiar with the Deliberative Process Privilege. I have also received several briefings specifically relating to this litigation and asserting the Deliberative Process Privilege. In this case, I have been personally involved in discussions about identifying internal, pre-decisional, deliberative materials that, if released, might chill free and open internal deliberations among Agency employees, regarding implementation of changes in agency budgetary and financial assistance policies.

21. Because of the large number of documents that were collected based on the discovery, it was not possible for me to personally review each and every one of the documents on the Deliberative Process Privilege Log. I have, however, reviewed the Deliberative Process Privilege Log and have personally reviewed a sample of close to two hundred documents on the Deliberative Process Privilege Log.

22. Based on my review of the privilege explanations in Relativity, the finalized May 6, 2025, privilege log (which contains essentially identical privilege explanations to those in Relativity), and the briefings and other information (collectively, the "Information") that I have received, I have determined that the May 6, 2025, privilege log includes privileged documents relating to the development of a number of important proposed and final EPA actions that numerous Agency employees played a significant role in developing, deliberating, and promulgating.

23. The privilege log includes many different types and forms of documents, such as email messages and documents created in different applications, such as Microsoft Word, PowerPoint, and Excel files. These documents, some of which were attachments to email messages, include: draft memoranda and analyses; drafts of proposed and final Agency actions; and drafts of briefing papers, presentations, and talking points.

24. Based on the Information I have received, I have determined that the documents on the May 6, 2025, privilege log are internal executive branch documents. I have also determined that the documents pre-date the relevant EPA decisions and potential actions to which the documents relate. Finally, I have determined that the documents express opinions and views of various individual EPA employees related to the development of various actions, guidance, and other Agency decisions, as opposed to simply reflecting final Agency actions or decisions. The documents contain opinions, options, outlines, and draft or proposed language from EPA employees to be considered or evaluated in formulating Agency action or in making Agency decisions, including regarding implications of recently issued Executive Orders on Agency funding provided by Annual Appropriations Acts, IIJA, and IRA. In short, the documents on the May 6, 2025, privilege log are internal, pre-decisional, and deliberative in nature. Some of the documents on the May 6, 2025, privilege log relate to actions that have not yet been taken by the Agency.

25. To effectively carry out EPA's mission, Agency employees must engage in a robust, free exchange of views and opinions about possible options or alternatives in developing Agency rules and in helping to inform and prepare a wide variety of Agency actions, policies, and decisions. A frank, open exchange of ideas is necessary to ensure not only that the Agency explores the widest range of reasonable options, but also that the Agency carefully explores each such option. Ultimately, this open exchange will advance the broader public interest in ensuring that EPA decisions and actions are sound and made only after thorough consideration and deliberation. Disclosure of the myriad individual opinions internally expressed in the course of developing EPA positions or actions could chill employees' willingness to frankly express their views and opinions concerning Agency implementation of changes in budgetary and financial assistance policy. The disclosure of

1　such material, especially if not ultimately adopted as the Agency's position, could

2　inaccurately reflect EPA views and mislead or confuse the public about EPA decisions or

3　actions.

4　<u>Conclusion</u>

5　26. For all the reasons stated above, I have determined that the documents on the May 6, 2025,

6　privilege log are internal, pre-decisional deliberations concerning various EPA actions, the

7　disclosure of which may harm the Agency's deliberative processes and the public interest.

8　Therefore, on behalf of the Agency, I assert the Deliberative Process Privilege over the

9　documents on the May 6, 2025, privilege log.

10　In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

11　and correct to the best of my knowledge and information.

12

13

14

15　**ELISE** Digitally signed by ELISE PACKARD

16　Date: May 6, 2025 **PACKARD** Date: 2025.05.06 15:16:20 -04'00'

17　Elise Packard

18　Deputy General Counsel for Operations

19　Office of General Counsel

**J.A. 2766**

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AND RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

**The Sustainability Institute, et al. v. Trump, et al.**
Civil No. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 8, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
Civil. No. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

| | | | The Sustainability Institute, et al. v. Trump, et al. | | | | | | |
| | | | CIVIL NO. 2:25-cv-2152 | | | | | | |
| | | | PRIVILEGE LOG - PROTECTED AS RESTRICTED | | | | | | |
| | | | (As of May 8, 2025) | | | | | | |
| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| EPA_0001099 | EPA_0001075 | 1/27/2025 17:01 | RE: Use of IIJA Funds to Support SF Activities | Boyd, Wyatt | Kuhlmann, Yuki [Kuhlmann.Yuki@epa.gov]; Holden, Alison (she/her/hers) [Holden.Alison@epa.gov]; Goente, Anadne (she/her/hers) [Goente.Ariadne@epa.gov]; Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov]; Steon, Ann [Steon.Ann@epa.gov]; Coogan, Daniel [Coogan.Daniel@epa.gov] | Robinson, Angel [robinson.angel@epa.gov] | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0001077 | EPA_0001078 | | Pause IIJA IRA new obligations draft email_v2.docx | Boyd, Wyatt | | | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0001079 | EPA_0001080 | 1/27/2025 17:07 | RE: OGC review of document | Boyd, Wyatt | McMichael, Nate [McMichael.Nate@epa.gov] | | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0001081 | EPA_0001081 | 1/27/2025 20:56 | OGC approved message | Boyd, Wyatt | Trent, Gregg [Trent.Gregg@epa.gov]; Kadel, Lee [Kadel.Lee@epa.gov]; Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] | McMichael, Nate [McMichael.Nate@epa.gov]; Gaher, Neha [gaher.neha@epa.gov]; Lane, Gary [Lane.Gary@epa.gov] | | Attorney-Client | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0001083 | EPA_0001084 | | Pause IIJA IRA new obligations draft email APPROVED BY OGC OCG.docx | Boyd, Wyatt | | | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0001085 | EPA_0001089 | 1/27/2025 19:56 | RE: Draft Statement on Pause Memo | Boyd, Wyatt | McMichael, Nate [McMichael.Nate@epa.gov] | | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0001099 | EPA_0001099 | 1/27/2025 20:30 | RE: Use of IIJA Funds to Support SF Activities | Boyd, Wyatt | Holden, Alison (she/her/hers) [Holden.Alison@epa.gov]; Kuhlmann, Yuki [Kuhlmann.Yuki@epa.gov]; Goente, Ariadne (she/her/hers) [Goente.Ariadne@epa.gov]; Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov]; Steon, Ann [Steon.Ann@epa.gov] | Robinson, Angel [robinson.angel@epa.gov] | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0001100 | EPA_0001101 | 1/27/2025 22:40 | FW: draft analysis (cleanhold) | Boyd, Wyatt | Ly, Sylvana [ly.sylvana@epa.gov]; Ripley, Laura [Ripley.Laura@epa.gov]; Gui [Nay, Gui@epa.gov]; Bullock, April [Bullock.April@epa.gov]; Ripley, Laura [Ripley.Laura@epa.gov]; Gui [Nay, Gui@epa.gov]; Brier [Keti.Brier@epa.gov] | Robinson, Angel [robinson.angel@epa.gov] | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0001102 | EPA_0001102 | | IIJA IRA EO_v3.docx | Boyd, Wyatt | | | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0001105 | EPA_0001105 | | Message from the OMB General Counsel.docx | Boyd, Wyatt | | | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0001106 | EPA_0001107 | 1/28/2025 2:26 | RE: ECAs | Boyd, Wyatt | Warren, John [Warren.John@epa.gov] | Wang, Lik [Wang.Lik@epa.gov]; Carteneo, Andrew [Carteneo.Andrew@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0001110 | EPA_0001111 | 1/28/2025 13:19 | RE: ECAs | Boyd, Wyatt | Warren, John [Warren.John@epa.gov] | Wang, Lik [Wang.Lik@epa.gov]; Carteneo, Andrew [Carteneo.Andrew@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0002200 | EPA_0002202 | 1/29/2025 16:07 | FW: draft analysis (cleanhold) | Boyd, Wyatt | Trent, Gregg [Trent.Gregg@epa.gov]; Kadel, Lee [Kadel.Lee@epa.gov]; Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] | Gaher, Neha [gaher.neha@epa.gov] | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0002203 | EPA_0002203 | | IIJA IRA EO_v2.xlsx | Boyd, Wyatt | | | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0002265 | EPA_0002265 | 1/29/2025 1:30 | FW: draft analysis (cleanhold) | Boyd, Wyatt | Trent, Gregg [Trent.Gregg@epa.gov]; Kadel, Lee [Kadel.Lee@epa.gov] | Baltin, Andrew [Baltin.Andrew@epa.gov]; Robinson, Angel [robinson.angel@epa.gov]; Wang, Lik [Wang.Lik@epa.gov] | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0002266 | EPA_0002270 | | IIJA IRA EO_v4.xlsx | Boyd, Wyatt | | | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0002273 | EPA_0002275 | 1/29/2025 1:20 | FW: draft analysis (cleanhold) | Boyd, Wyatt | Carteneo, Andrew [Carteneo.Andrew@epa.gov]; Morton, CJ [Morton.CJ@epa.gov]; Katz, Brier [Katz.Brier@epa.gov] | Wang, Lik [Wang.Lik@epa.gov] | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0002276 | EPA_0002282 | | IIJA IRA EO_v4.xlsx | Boyd, Wyatt | | | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0002583 | EPA_0002586 | 1/29/2025 17:36 | FW: Follow up on Executive Orders | Boyd, Wyatt | Gujarati, Adit [Gujarati.Adit@epa.gov]; Lavergne, Dany [lavergne.dany@epa.gov]; Jannette, Vonda [Jannette.Vonda@epa.gov]; Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov]; Kadel, Lee [Kadel.Lee@epa.gov]; Trent, Gregg [Trent.Gregg@epa.gov] | Robinson, Angel [robinson.angel@epa.gov]; Gaher, Neha [gaher.neha@epa.gov]; Wang, Lik [Wang.Lik@epa.gov] | | Attorney Work Product; Deliberative Process | Attorney-Client; Attorney Work Product | [privilege description text] |
| EPA_0002608 | EPA_0002611 | 1/30/2025 14:32 | FW: draft analysis (cleanhold) | Boyd, Wyatt | Trent, Gregg [Trent.Gregg@epa.gov]; Kadel, Lee [Kadel.Lee@epa.gov]; Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] | | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0002612 | EPA_0002616 | | IIJA IRA EO_RMO EPA.xlsx | Boyd, Wyatt | | | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0002617 | EPA_0002619 | 1/30/2025 16:45 | RE: legal input | Boyd, Wyatt | Holden, Alison (she/her/hers) [Holden.Alison@epa.gov]; Steon, Ann [Steon.Ann@epa.gov] | Miller, Renee [Miller.Renee@epa.gov]; Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov]; Robinson, Angel [robinson.angel@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0002619 | EPA_0002622 | 1/24/2025 22:57 | Re: Use of IIJA Funds to Support SF Activities | Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov] | Boyd, Wyatt [Boyd.Wyatt@epa.gov] | Goente, Ariadne (she/her/hers) [Goente.Ariadne@epa.gov]; Holden, Alison (she/her/hers) [Holden.Alison@epa.gov]; Robinson, Angel [robinson.angel@epa.gov]; Coogan, Daniel [Coogan.Daniel@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0002623 | EPA_0002624 | 1/30/2025 15:56 | FW: Draft Programs Analysis | Boyd, Wyatt | Trent, Gregg [Trent.Gregg@epa.gov]; Kadel, Lee [Kadel.Lee@epa.gov]; Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] | Gaher, Neha [gaher.neha@epa.gov] | | Deliberative Process | Deliberative Process | [privilege description text] |
| EPA_0002625 | EPA_0000472 | | FFA Program Analysis Template OGD shared 1.29.2025.xlsx | Boyd, Wyatt | | | | Attorney Work Product; Deliberative Process | Attorney Work Product; Deliberative Process | [privilege description text] |
| EPA_0000474 | EPA_0000476 | | IIJA IRA EO_v4_RMO EPA.xlsx | Boyd, Wyatt | | | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0000480 | EPA_0000484 | | IIJA IRA EO_v4_RMO EPA.xlsx | Boyd, Wyatt | | | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0000485 | EPA_0000488 | 1/31/2025 16:32 | RE: Guidance for GGRF re IIJA IRA Pause | Boyd, Wyatt | Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov] | Packard, Elise [Packard.Elise@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0000491 | EPA_0000496 | 1/31/2025 17:38 | RE: Guidance for GGRF re IIJA IRA Pause | Boyd, Wyatt | Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov] | Packard, Elise [Packard.Elise@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0000497 | EPA_0000503 | 1/31/2025 17:20 | RE: Guidance for GGRF re IIJA IRA Pause | Boyd, Wyatt | Holden, Alison (she/her/hers) [Holden.Alison@epa.gov]; Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov] | Packard, Elise [Packard.Elise@epa.gov]; Robinson, Angel [robinson.angel@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0000507 | EPA_0000512 | 2/3/2025 13:16 | RE: New Temporary Restraining Order re the funding pause | Boyd, Wyatt | Coogan, Daniel [Coogan.Daniel@epa.gov]; Kadel, Lee [Kadel.Lee@epa.gov]; Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] | Patrick, Kimberly (she/her/hers) [Patrick.Kimberly@epa.gov]; Askew, Wendel [Askew.Wendel@epa.gov]; Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov]; Trent, Gregg [Trent.Gregg@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0000513 | EPA_0000521 | 2/3/2025 15:56 | RE: New Temporary Restraining Order re the funding pause | Boyd, Wyatt | Henry, Latonya [Henry.Latonya@epa.gov]; Lane, Gary [Lane.Gary@epa.gov] | Robinson, Angel [robinson.angel@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0000522 | EPA_0000528 | 2/3/2025 15:27 | RE: New Temporary Restraining Order re the funding pause | Boyd, Wyatt | Holden, Alison (she/her/hers) [Holden.Alison@epa.gov]; Askew, Wendel [Askew.Wendel@epa.gov]; Packard, Elise [Packard.Elise@epa.gov] | Goente, Ariadne (she/her/hers) [Goente.Ariadne@epa.gov]; Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov]; Kadel, Lee [Kadel.Lee@epa.gov]; Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0000529 | EPA_0000538 | 2/3/2025 16:12 | RE: New Temporary Restraining Order re the funding pause | Boyd, Wyatt | Gujarati, Adit [Gujarati.Adit@epa.gov]; Lavergne, Dany [lavergne.dany@epa.gov]; Miller, Renee [Miller.Renee@epa.gov]; Laeblaring, Gregory [Laeblaring.Gregory@epa.gov]; Jannette, Vonda [Jannette.Vonda@epa.gov] | | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0000540 | EPA_0000548 | | IIJA IRA EO_v4_RMO EPA.xlsx | Boyd, Wyatt | | | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0000557 | EPA_0000560 | | IER_EOs.docx | Boyd, Wyatt | | | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0000562 | EPA_0000568 | | Implementation of Section 7 of the Executive Order on Unleashing American Energy_v2.docx | Boyd, Wyatt | | | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0000569 | EPA_0000569 | 1/22/2025 17:25 | RE: cleanhold – IIJA IRA EOs | Boyd, Wyatt | Wang, Lik [Wang.Lik@epa.gov] | Ripley, Laura [Ripley.Laura@epa.gov]; Gui [Nay, Gui@epa.gov]; Ly, Sylvana [ly.sylvana@epa.gov] | | Attorney-Client | Attorney-Client | [privilege description text] |
| EPA_0000573 | EPA_0000575 | 1/22/2025 17:51 | RE: unleashing American energy | Boyd, Wyatt | Wang, Lik [Wang.Lik@epa.gov]; Gary, Lane [Gary.Lane@epa.gov] | Robinson, Angel [robinson.angel@epa.gov]; Henry, Latonya [Henry.Latonya@epa.gov] | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |
| EPA_0000576 | EPA_0000577 | 1/22/2025 16:00 | RE: unleashing American energy | Boyd, Wyatt | Michael_Hickey@omb.eop.gov | | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | [privilege description text] |

**The Sustainability Institute, et al. v. Trump, et al.**
**CIVIL NO. 2:25-cv-2152**
**PRIVILEGE LOG - PROTECTED AS RESTRICTED**
**(As of May 6, 2025)**

| Begin Bates | End Bates | Sent Date/Time (APD) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UPID) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| EPA_00035799 | EPA_00035790 | 3/12/2025 16:44 | FW: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14151 and 14173 (NADO... Trump | Boyd, Wyatt | Guiesel, Adil [Guiesel.Adil@epa.gov] Lavergne, Dara [lavergne.dara@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | |
| EPA_00035791 | EPA_00035794 | | NADO46 v. Trump – Clarification Order – .pdf | | | | | Attorney Work Product | Attorney Work Product | |
| EPA_00035803 | EPA_00035807 | 3/12/2025 20:46 | FW: ACTION REQUIRED: Grant Cancellations/Terminations | Boyd, Wyatt | Robinson, Angel [robinson.angel@epa.gov] | | | Deliberative Process | Deliberative Process | |
| EPA_00035822 | EPA_00035824 | 3/13/2025 14:26 | RE: Rescission Memo | Boyd, Wyatt | Trent, Gregg [Trent.Gregg@epa.gov] | Kadel, Lek [Kadel.Lek@epa.gov] Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] Henson, Paige [Catherine] [henson.catherine@epa.gov] Robinson, Angel [robinson.angel@epa.gov] Wang, Lili [Wang.Lili@epa.gov] Lavergne [Henry.Latonya@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00035823 | EPA_00035831 | | Rescission Memo_v10.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00035832 | EPA_00035834 | 3/14/2025 16:21 | FW: Guidance Regarding Preliminary Injunction of OMB Memo M-25-13 (now rescinded) and funding pause or freezes based on Executive Order... Trump | Boyd, Wyatt | Guiesel, Adil [Guiesel.Adil@epa.gov] Lavergne, Dara [lavergne.dara@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | |
| EPA_00035835 | EPA_00035837 | | OMB PI Notice – Final.pdf | | | | | Attorney-Client | Attorney-Client | |
| EPA_00035883 | EPA_00035880 | 3/14/2025 16:21 | RE: Guidance Regarding Preliminary Injunction of OMB Memo M-25-13 (now rescinded) and funding pauses or freezes based on Executive Orders (NY v. Trump) | Boyd, Wyatt | Talbert-Duarte, Angela [talbert-duarte.angela@epa.gov] Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney-Client; Attorney-Client; Attorney Work Product | Attorney-Client; Attorney Work Product | |
| EPA_00035893 | EPA_00035902 | | IIJA IRA SCI_all_RMG EPA.xlsx | | | | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | |
| EPA_00035902 | EPA_00035905 | | Send to EPA Section 7(a) Applicability_IRA and IIJA V2.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00035906 | EPA_00035908 | 2/26/2025 13:07 | OMB request on energy EO section 2 | Boyd, Wyatt | Trent, Gregg [Trent.Gregg@epa.gov] | Kadel, Lek [Kadel.Lek@epa.gov] Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] Robinson, Angel [robinson.angel@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00035907 | EPA_00035914 | | Copy of IIJA IRA EO_v6_RMG EPA (002).xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00035923 | EPA_00035925 | 2/26/2025 16:12 | RE: RE: Memorandum on Review of Financial Assistance Programs | Boyd, Wyatt | Wang, Lili [Wang.Lili@epa.gov] | Katz, Brian [Katz.Brian@epa.gov] Cardenas, Andrew [Cardenas.Andrew@epa.gov] Enock, Mckenzie [Enock.Mckenzie@epa.gov] Varela, Julio [Varela.Julio@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00035926 | EPA_00035929 | | Send to EPA Section 7(a) Applicability_IRA and IIJA v4.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00035930 | EPA_00035933 | 2/26/2025 16:45 | RE: Memorandum on Review of Financial Assistance Programs | Boyd, Wyatt | | Katz, Brian [Katz.Brian@epa.gov] Cardenas, Andrew [Cardenas.Andrew@epa.gov] Enock, Mckenzie [Enock.Mckenzie@epa.gov] Varela, Julio [Varela.Julio@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00035934 | EPA_00035937 | | Send to EPA Section 7(a) Applicability_IRA and IIJA v5.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00035938 | EPA_00035940 | 2/26/2025 16:57 | RE: RE: Memorandum on Review of Financial Assistance Programs | Boyd, Wyatt | Wang, Lili [Wang.Lili@epa.gov] | Katz, Brian [Katz.Brian@epa.gov] Cardenas, Andrew [Cardenas.Andrew@epa.gov] Enock, Mckenzie [Enock.Mckenzie@epa.gov] Varela, Julio [Varela.Julio@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00035943 | EPA_00035944 | 2/26/2025 15:26 | RE: [REQUEST] Comprehensive Questions for Boyd, Wyatt | | Sinczok, Jennifer [Sinczok.Jennifer@epa.gov] Cardenas, Andrew [Cardenas.Andrew@epa.gov] Wang, Lili [Wang.Lili@epa.gov] Goodwin, Jada [Goodwin.Jada@epa.gov] Burger, Riley [burger.riley@epa.gov] McMichael, Nate [McMichael.Nate@epa.gov] DeRoche, Kevin [DeRoche.Kevin@epa.gov] Scott, Gregory [Scott.Gregory@epa.gov] | | | Deliberative Process | Deliberative Process | |
| EPA_00035952 | EPA_00035953 | 2/27/2025 16:25 | RE: IIJA/IRA FTE alternative charging | Boyd, Wyatt | Cardenas, Andrew [Cardenas.Andrew@epa.gov] Wang, Lili [Wang.Lili@epa.gov] | Robinson, Angel [robinson.angel@epa.gov] Katz, Brian [Katz.Brian@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00035954 | EPA_00035955 | | IIJA_IRA Alternative_v6.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00035966 | EPA_00035968 | 3/3/2025 15:58 | RE: IIJA/IRA FTE alternative charging | Boyd, Wyatt | Wang, Lili [Wang.Lili@epa.gov] Cardenas, Andrew [Cardenas.Andrew@epa.gov] | Robinson, Angel [robinson.angel@epa.gov] Katz, Brian [Katz.Brian@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00035969 | EPA_00035971 | 3/4/2025 16:31 | FW: data from calendar year 2024 | Boyd, Wyatt | Katz, Brian [Katz.Brian@epa.gov] | | | Deliberative Process | Deliberative Process | |
| EPA_00035984 | EPA_00035984 | 3/6/2025 17:15 | (insert/abs – rescission memo) | Boyd, Wyatt | Wang, Lili [Wang.Lili@epa.gov] Katz, Brian [Katz.Brian@epa.gov] | Law, Gary [Law.Gary@epa.gov] Robinson, Angel [robinson.angel@epa.gov] Henry, Latonya [Henry.Latonya@epa.gov] Cardenas, Andrew [Cardenas.Andrew@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00035985 | EPA_00035988 | | Send to EPA Section 7(a) Applicability_IRA and IIJA v6.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00036006 | EPA_00036007 | 2/14/2025 13:40 | FW: Urgent: OCFO DC Verification Needed | Boyd, Wyatt | Trent, Gregg [Trent.Gregg@epa.gov] Kadel, Lek [Kadel.Lek@epa.gov] | Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] Robinson, Angel [robinson.angel@epa.gov] Guiesel, Adil [Guiesel.Adil@epa.gov] | | Attorney Work Product; Deliberative Process | Attorney Work Product | |
| EPA_00036006 | EPA_00036010 | | Funding Disruption Spreadsheet_20250211_440pm.pdf | | | | | Attorney Work Product; Deliberative Process | Attorney Work Product | |
| EPA_00036011 | EPA_00036013 | 2/14/2025 13:40 | FW: Urgent: OCFO DC Verification Needed | Boyd, Wyatt | Lavergne, Dara [lavergne.dara@epa.gov] | | | Attorney Work Product; Deliberative Process | Attorney Work Product | |
| EPA_00036012 | EPA_00036018 | | Funding Disruption Spreadsheet_20250211_440pm.pdf | | | | | Attorney Work Product; Deliberative Process | Attorney Work Product | |
| EPA_00036044 | EPA_00036051 | | Copy of IIJA IRA SCI_all_RMG EPA.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00036034 | EPA_00036036 | 2/19/2025 21:38 | RE: IIJA IRA EO_all_RMG EPA.xlsx | Boyd, Wyatt | Wang, Lili [Wang.Lili@epa.gov] | Cardenas, Andrew [Cardenas.Andrew@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00036076 | EPA_00036177 | 1/22/2025 19:44 | Untitled Document | Coogan, Daniel [Coogan.Daniel@epa.gov] | Holten, Allison (she/her/hers) [Holten.Allison@epa.gov] Boyd, Wyatt [Boyd.Wyatt@epa.gov] | | | Attorney-Client | Attorney-Client | |
| EPA_00036178 | EPA_00036176 | | Mar_27_2025_EPA_memo.v5.xlsx | | steven.m.davis@epa.gov | | | Deliberative Process | Deliberative Process | |
| EPA_00036177 | EPA_00036177 | 3/27/2025 22:51 | EPA 3/27 memos – Oversight, Spend and | Long, Kathryn | steven.m.davis@epa.gov | | | Deliberative Process | Deliberative Process | |
| EPA_00036178 | EPA_00036180 | | | | | | | Deliberative Process | Deliberative Process | |
| EPA_00036186 | EPA_00036186 | 4/2/2025 21:42 | EPA grant terminations up to April 1, 2025 | Long, Kathryn | Brandon Bixler, B-C [brandon.bixler@epa.gov] | Josh Gruenbaum – G [josh.gruenbaum@epa.gov] Jetting, Erica [Jetting.Erica@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00036300 | EPA_00036386 | | CFDA_CDZR_Process_2e.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00036947 | EPA_00036954 | | Contract_Terminations_2025-02-17.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00036955 | EPA_00036956 | 2/20/2025 19:00 | RE: Example grant termination letter | Long, Kathryn | Coogan, Daniel [Coogan.Daniel@epa.gov] | | | Deliberative Process | Deliberative Process | |
| EPA_00036957 | EPA_00036957 | 2/20/2025 21:30 | RE: Termination Memo – draft | Long, Kathryn | Coogan, Daniel [Coogan.Daniel@epa.gov] | | | Deliberative Process | Deliberative Process | |
| EPA_00036958 | EPA_00036958 | | Termination Memo_In item suggestions.docx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00036971 | EPA_00036971 | 2/24/2025 15:27 | RE: Contract Termination Draft | Long, Kathryn | Josh Gruenbaum – G [josh.gruenbaum@epa.gov] | Katrina Lloyd – QFJC [katrina.lloyd@epa.gov] Jetting, Erica [Jetting.Erica@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00036986 | EPA_00036986 | 2/24/2025 21:05 | RE: Contract Termination Shell | Long, Kathryn | Josh Gruenbaum – G [josh.gruenbaum@epa.gov] | Katrina Lloyd – QFJC [katrina.lloyd@epa.gov] Jetting, Erica [Jetting.Erica@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00037317 | EPA_00037362 | 3/22/2025 20:32 | RE: Contract Termination Shell | Long, Kathryn | Jetting, Erica [Jetting.Erica@epa.gov] Josh Gruenbaum – G [josh.gruenbaum@epa.gov] | Katrina Lloyd – QFJC [katrina.lloyd@epa.gov] | | Deliberative Process | Deliberative Process | |
| EPA_00037386 | EPA_00037395 | | Pending Grants Actions – All Regions and HQ.xlsx | | | | | Deliberative Process | Deliberative Process | |
| EPA_00037416 | EPA_00037575 | | Pending Grants Actions – All Regions and HQ.xlsx | | | | | Deliberative Process | Deliberative Process | |

2:25-cv-02152-RMG    Date Filed 05/09/25    Entry Number 147-9    Page 15 of 53

| The Sustainability Institute, et al. v. Trump, et al. |
| :---: |
| CIVIL NO. 2:25-cv-2152 |
| PRIVILEGE LOG — PROTECTED AS RESTRICTED |
| (As of May 8, 2025) |

| Begin Bates | End Bates | Sent Date/Time (APD) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 8, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

2:25-cv-02152-RMG   Date Filed 05/09/25   Entry Number 147-9   Page 17 of 53

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 8, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

| | | | | The Sustainability Institute, et al. v. Trump, et al. CIVIL NO. 2:25-cv-2152 PRIVILEGE LOG – PROTECTED AS RESTRICTED (As of May 6, 2025) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Begin Bates | End Bates | Sent Date/Time (APD) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

**The Sustainability Institute, et al. v. Trump, et al.**
CIVIL NO. 2:25-cv-2152
**PRIVILEGE LOG – PROTECTED AS RESTRICTED**
(As of May 9, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
Civil NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 9, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

*[Table contents illegible at available resolution]*

| | | | | | The Sustainability Institute, et al. v. Trump, et al. | | | | | |
| | | | | | CIVIL NO. 2:25-cv-2152 | | | | | |
| | | | | | PRIVILEGE LOG – PROTECTED AS RESTRICTED | | | | | |
| | | | | | (As of May 6, 2025) | | | | | |

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AND RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| EPA_00001468 | EPA_00001472 | 2/2/2025 13:10 | RE: For Action: Potential new TRO regarding funding freeze | Goertz, Ariadne | Askew, Wendel (Askew.Wendel@epa.gov) | | | Attorney-Client, Attorney Work Product, Deliberative Process | Attorney-Client, Attorney Work Product, Deliberative Process | DPP, ACP. Internal email chain regarding Agency compliance with TRO regarding grants funding freeze and next steps. It reflects policy concerns, questions, suggestions, and/or recommendations exchanged between attorneys in the Office of General Counsel. Release of the withheld information would harm Agency's decision-making because release would have a chilling effect on the ability of EPA to engage in inter- and intra-agency discussions, and on the Agency's ability to provide candid evaluations and recommendations concerning compliance of programmatic decisions with judicial orders. Document contains communications or work prepared in anticipation of litigation. |
| EPA_00001473 | EPA_00001477 | 2/2/2025 13:10 | RE: For Action: Potential new TRO regarding funding freeze | Goertz, Ariadne | Askew, Wendel (Askew.Wendel@epa.gov) | | | Attorney-Client, Deliberative Process | Attorney-Client, Deliberative Process | AWP. Document contains communications or work prepared in anticipation of litigation. ACP. Internal email between EPA OGC staff and EPA OGC attorneys seeking and providing legal advice regarding how to comply with a temporary restraining order in active litigation. DPP. This internal email contains communications or work prepared in anticipation of litigation related to a TRO on the funding freeze, including how to disseminate the court order related to the funding freeze. It does not represent the final decision made by Agency decision makers. Release of the withheld information would harm the Agency's decision making because if the staff and managers were aware from the outset that their sincere discussions or debates would be subject to scrutiny, it would inevitably discourage open and frank discussions among EPA staff and managers about issues related to the TRO. |
| EPA_00001478 | EPA_00001484 | 2/2/2025 23:09 | RE: Update – RE: For awareness: Potential new TRO regarding funding freeze | Goertz, Ariadne | Conrad, Daniel (conrad.daniel@epa.gov) Askew, Wendel (Askew.Wendel@epa.gov) | | | Attorney-Client, Attorney Work Product, Deliberative Process | Attorney-Client, Attorney Work Product, Deliberative Process | Internal email contains attorney-client privilege through a request for and discussion of legal advice regarding interpretation and guidance relating to the funding freeze. The internal email contains communications or work prepared in anticipation of litigation. Deliberative process, the internal email exchange also contains pre-decisional deliberations within EPA regarding litigation relating to grants funding freeze. The information does not represent the final Agency decision and contains questions, concerns, and comments before any final approval from Agency decision-makers. Release of the withheld information would chill the Agency's decision-making processes and ability to have internal deliberations on this issue. |
| EPA_00001485 | EPA_00001492 | 2/2/2025 23:09 | RE: Update – RE: For awareness: Potential new TRO regarding funding freeze | Goertz, Ariadne | Askew, Wendel (Askew.Wendel@epa.gov) | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | Attorney-Client, Attorney Work Product, Deliberative Process | Attorney-Client, Attorney Work Product, Deliberative Process | AWP. Document contains communications or work prepared in anticipation of litigation. ACP. Internal emails between EPA OCFO staff and EPA OGC attorneys seeking and providing legal advice regarding how to comply with a temporary restraining order in active litigation. DPP. This internal email is pre-decisional and reflects deliberations within EPA Office of General Counsel related to a TRO on the funding freeze, including how to disseminate the court's order related to the funding freeze. It does not represent the final decision made by Agency decision makers. Release of the withheld information would harm the Agency's decision-making processes and ability to have internal deliberations and frank discussions. |
| EPA_00001493 | EPA_00001493 | 3/3/2025 18:59 | RE: Breaking issue | Packard, Elise (Packard.Elise@epa.gov) Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | | Attorney Work Product | Attorney Work Product | AWP. Discussion between attorneys about litigation strategy. |
| EPA_00001496 | EPA_00001498 | 3/3/2025 19:15 | RE: Grant terminations | Askew, Wendel (Askew.Wendel@epa.gov) | Binder, Kelsey (Binder.Kelsey@epa.gov) Boesch, Nathaniel (Boesch.Nathaniel@epa.gov) Brewer, Erin (Brewer.Erin@epa.gov) Brownette, Collette (Brownette.Collette@epa.gov) Brown, Amelia (Brown.Amelia@epa.gov) Cherkasy, Brett (Cherkasy.Brett@epa.gov) Chelwu, Evan (Chelwu@epa.gov) Carney, Joseph (Carney.Joseph@epa.gov) Carter, Ian (Carter.Ian@epa.gov) Cerminaro, Clarke (Cerminaro.Clarke@epa.gov) Clements, James (Clements.James@epa.gov) Cox, Jeffrey (Cox.Jeffrey@epa.gov) Daggett, Christopher (Daggett.Christopher@epa.gov) Salisbury, Demetra (Salisbury.Demetra@epa.gov) Dorn, Lorraine (Dorn.Lorraine@epa.gov) Drummond, James (Drummond.James@epa.gov) Goldsmith, Sara (Goldsmith.Sara@epa.gov) Goldstein, Ivory (Goldstein.Ivory@epa.gov) Hass, Daniel (Hass.Daniel@epa.gov) Heiser, Farrica (Heiser@epa.gov) Holgate-Gott, Argela (Holgate-Gott.Argela@epa.gov) Heltz, Nicholas (Heltz.Nicholas@epa.gov) Hudson, Monique (Hudson.Monique@epa.gov) Ikpen, Joanne (Ikpen.Joanne@epa.gov) Kahn, Meghan (Kahn.Meghan@epa.gov) Kindler, Brendan (Kindler.Brendan@epa.gov) LaFosda, Cathy (LaFosda.Cathy@epa.gov) Larsen, Leven (Larsen.Leven@epa.gov) Luelle, Lorn (Luelle@epa.gov) Maguire, Timothy (Maguire.Timothy@epa.gov) McPeak, Michael (McPeak.Michael@epa.gov) Meeks, Skerah (Meeks.Skerah@epa.gov) Cohen, Mitchell (Cohen.Mitchell@epa.gov) Patterson, Morganne (Patterson.Morganne@epa.gov) Venhaus, Paul (Venhaus.Paul@epa.gov) Pula (behan.pula@epa.gov) Cuemeroen (Cuemeroen@epa.gov) Cherec, Randall (Cherec.Randall@epa.gov) Rich, Stephanie (Rich.Stephanie@epa.gov) Sandra (Lyon.Sandra@epa.gov) Mears, Stephanie (Mears.Stephanie@epa.gov) Wuchoff, Steven (Wuchoff.Steven@epa.gov) Wright, Garth (wright.garth@epa.gov) | Talbert, Stephanie (Talbert.Stephanie@epa.gov) Goertz, Ariadne (Goertz.Ariadne@epa.gov) Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | Attorney Work Product | Attorney Work Product | AWP. Document contains communications or work prepared in anticipation of rendering legal advice in anticipation of litigation related to the termination of grants. |
| EPA_00001500 | EPA_00001501 | 2/25/2025 17:12 | Grant terminations | Askew, Wendel (Askew.Wendel@epa.gov) | Binder, Kelsey (Binder.Kelsey@epa.gov) Boesch, Nathaniel (Boesch.Nathaniel@epa.gov) Brewer, Erin (Brewer.Erin@epa.gov) Brownette, Collette (Brownette.Collette@epa.gov) Brown, Amelia (Brown.Amelia@epa.gov) Cherkasy, Brett (Cherkasy.Brett@epa.gov) Chelwu, Evan (Chelwu@epa.gov) Carney, Joseph (Carney.Joseph@epa.gov) Carter, Ian (Carter.Ian@epa.gov) Cerminaro, Clarke (Cerminaro.Clarke@epa.gov) Clements, James (Clements.James@epa.gov) Cox, Jeffrey (Cox.Jeffrey@epa.gov) Daggett, Christopher (Daggett.Christopher@epa.gov) Salisbury, Demetra (Salisbury.Demetra@epa.gov) Dorn, Lorraine (Dorn.Lorraine@epa.gov) Drummond, James (Drummond.James@epa.gov) Goldsmith, Sara (Goldsmith.Sara@epa.gov) Goldstein, Ivory (Goldstein.Ivory@epa.gov) Hass, Daniel (Hass.Daniel@epa.gov) Heiser, Farrica (Heiser@epa.gov) Holgate-Gott, Argela (Holgate-Gott.Argela@epa.gov) Heltz, Nicholas (Heltz.Nicholas@epa.gov) Hudson, Monique (Hudson.Monique@epa.gov) Ikpen, Joanne (Ikpen.Joanne@epa.gov) Kahn, Meghan (Kahn.Meghan@epa.gov) Kindler, Brendan (Kindler.Brendan@epa.gov) LaFosda, Cathy (LaFosda.Cathy@epa.gov) Larsen, Leven (Larsen.Leven@epa.gov) Luelle, Lorn (Luelle@epa.gov) Maguire, Timothy (Maguire.Timothy@epa.gov) McPeak, Michael (McPeak.Michael@epa.gov) Meeks, Skerah (Meeks.Skerah@epa.gov) Cohen, Mitchell (Cohen.Mitchell@epa.gov) Patterson, Morganne (Patterson.Morganne@epa.gov) Venhaus, Paul (Venhaus.Paul@epa.gov) Pula (behan.pula@epa.gov) Cuemeroen (Cuemeroen@epa.gov) Cherec, Randall (Cherec.Randall@epa.gov) Rich, Stephanie (Rich.Stephanie@epa.gov) Sandra (Lyon.Sandra@epa.gov) Mears, Stephanie (Mears.Stephanie@epa.gov) Wuchoff, Steven (Wuchoff.Steven@epa.gov) Wright, Garth (wright.garth@epa.gov) | Talbert, Stephanie (Talbert.Stephanie@epa.gov) Goertz, Ariadne (Goertz.Ariadne@epa.gov) Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | Attorney Work Product | Attorney Work Product | Contains information for the purpose of rendering legal advice in anticipation of litigation related to the termination of grants. |
| EPA_00001549 | EPA_00001553 | 3/25/2025 21:39 | RE: New IRA/IIJA Funding Pause Cases | Goertz, Ariadne | O'Sullivan, Caitlin (O'Sullivan.Caitlin@epa.gov) Askew, Wendel (Askew.Wendel@epa.gov) | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | Attorney Work Product, Attorney-Client | Attorney Work Product, Attorney-Client | Communications between agency counsel about government's pleading. |
| EPA_00001554 | EPA_00001560 | 1/31/2025 20:17 | FW: Elias: URGENT ATTN NEEDED // EO // IRA & IIJA Spending | Goertz, Ariadne (she/her/hers) | Rhodes, Julia (she/her/hers) (Rhodes.Julia@epa.gov) | | | Attorney-Client, Attorney Work Product | Attorney-Client | AC. Document contains communications seeking or providing legal advice from an attorney. AWP. Document contains communications or work prepared by an attorney in anticipation of litigation. |
| EPA_00001561 | EPA_00001563 | 1/22/2025 17:23 | RE: contract re IRA/IIJA stuff | Goertz, Ariadne (she/her/hers) | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney-Client | Attorney-Client | AC. Document contains communications seeking or providing legal advice from an attorney. |
| EPA_00001564 | EPA_00001576 | 1/22/2025 19:38 | RE: Elias: URGENT ATTN NEEDED // EO // IRA & IIJA Spending | Goertz, Ariadne (she/her/hers) | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney-Client, Attorney Work Product | Attorney-Client | AC. Document contains communications seeking or providing legal advice from an attorney. AWP. Document contains communications or work prepared by an attorney in anticipation of litigation. |
| EPA_00001578 | EPA_00001584 | 1/23/2025 17:35 | RE: Draft of sub and IRA memos compared | Goertz, Ariadne (she/her/hers) | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney-Client | Attorney-Client | AC. Document contains communications seeking or providing legal advice from an attorney in anticipation of litigation. |
| EPA_00001585 | EPA_00001586 | 1/23/2025 18:25 | Fwd: IRA EO v1.docx | Goertz, Ariadne (she/her/hers) | | | | Attorney-Client | Attorney-Client | Contains communications seeking legal advice from client to attorney. |
| EPA_00001605 | EPA_00001607 | 1/24/2025 16:56 | FW: Use of IIJA Funds to Support SF | Goertz, Ariadne (she/her/hers) | Packard, Elise (Packard.Elise@epa.gov) | | | Attorney-Client | Attorney-Client | Email from EPA OGC attorney to another EPA OGC attorney containing information for the purpose of providing legal advice in anticipation of litigation related to the IIJA. |
| EPA_00001613 | EPA_00001613 | 3/18/2025 19:21 | FW: New IRA/IIJA Funding Pause Cases | Goertz, Ariadne | Nelsen, Susan (Nelsen.Susan@epa.gov) | | | Attorney-Client, Attorney Work Product | Attorney-Client | Communications between agency counsel about litigation. DOJ communication with agency counsel in anticipation of litigation. |
| EPA_00001614 | EPA_00001615 | 3/18/2025 21:23 | FW: New IRA/IIJA Funding Pause Cases | Goertz, Ariadne | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney-Client, Attorney Work Product | Attorney-Client | Communications between agency counsel about litigation. |
| EPA_00001616 | EPA_00001617 | 3/18/2025 16:58 | RE: For review – Draft answers to Dan Coogan re NY v. Trump and NADO/HE v. Trump | Goertz, Ariadne | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney-Client, Attorney Work Product | Attorney-Client | Attorney-Client. Contains legal advice written by EPA OGC attorney regarding actions needed to be in compliance with preliminary injunction. Attorney Work Product; document prepared by EPA OGC attorney in the context of litigation regarding compliance with preliminary injunction. |
| EPA_00001623 | EPA_00001627 | 3/12/2025 19:24 | RE: Review requested: Draft notice of PI for Elias v. Trump | Goertz, Ariadne | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney-Client | Attorney-Client | Document contains communications or work prepared in anticipation of litigation; contains legal advice. |
| EPA_00001624 | EPA_00001627 | 3/12/2025 20:15 | FW: Review requested: Draft notice of PI for Elias v. Trump | Goertz, Ariadne | Askew, Wendel (Askew.Wendel@epa.gov) | | | Attorney-Client | Attorney-Client | Document contains communications or work prepared in anticipation of litigation; provides legal advice. |
| EPA_00001628 | EPA_00001633 | 3/12/2025 20:14 | RE: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v. Trump) | Goertz, Ariadne | Decker, Cari (Decker.Cari@epa.gov) Davidson, Paul (Simon.Paul@epa.gov) Donahue, Sean (Donahue.sean@epa.gov) Packard, Elise (Packard.Elise@epa.gov) Goertz, Ariadne (Goertz.Ariadne@epa.gov) Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | Payne, James (Jim) (payne.james@epa.gov) Donahue, Sean (Donahue.sean@epa.gov) Packard, Elise (Packard.Elise@epa.gov) Goertz, Ariadne (Goertz.Ariadne@epa.gov) (Regional_Counsels_and_Deputies@epa.gov) Askew, Wendel (Askew.Wendel@epa.gov) | | Attorney-Client | Attorney-Client | Attorney-Client. Contains legal advice written by EPA OGC attorney regarding actions needed to be in compliance with preliminary injunction. Contains question from EPA employee about the status of the review. Attorney Work Product: document prepared by EPA OGC attorney in the context of litigation regarding compliance with preliminary injunction. |
| EPA_00001678 | EPA_00001684 | 3/12/2025 20:14 | FW: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v. Trump) | Goertz, Ariadne | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) Askew, Wendel (Askew.Wendel@epa.gov) | | | Attorney-Client | Attorney-Client | Attorney-Client. Contains legal advice written by EPA OGC attorney regarding actions needed to be in compliance with preliminary injunction. Attorney Work Product; document prepared by EPA OGC attorney in the context of litigation regarding compliance with preliminary injunction. |
| EPA_00001690 | EPA_00001685 | 3/12/2025 20:14 | FW: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v. Trump) | Goertz, Ariadne | Donahue, Sean (donahue.sean@epa.gov) | | | Attorney-Client | Attorney-Client | Attorney-Client. Contains legal advice written by EPA OGC attorney regarding actions needed to be in compliance with preliminary injunction. Attorney Work Product; document prepared by EPA OGC attorney in the context of litigation regarding compliance with preliminary injunction. |
| EPA_00001686 | EPA_00001688 | 3/12/2025 20:47 | RE: | Schwei, Daniel S. (Civil) (Daniel.S.Schwei@usdoj.gov) | | Freitch, Andrew F. (Civil) (Andrew.F.Freitch@usdoj.gov) Simonich, Ellen R. (Civil) (Ellen.R.Simonich@usdoj.gov) Gunter, Anna S. (Anna.Gunter.Ariadne@epa.gov) Holden, Allison (Holden.Allison@epa.gov) | | Attorney-Client | Attorney-Client | Contains communications between DOJ and EPA OGC attorney about litigation. This email, among attorneys, contains legal advice and questions regarding interpretation of preliminary injunction. |
| EPA_00001592 | EPA_00001594 | | OMB PI Notice – Final.pdf | | | | | Attorney-Client, Attorney Work Product | Attorney-Client, Attorney Work Product | Attorney-Client. Memorandum that contains legal advice from OMB General Counsel to agency general counsels regarding compliance with preliminary injunction. Attorney Work Product. Memorandum prepared by OMB General Counsel in the context of litigation regarding compliance with preliminary injunction. |
| EPA_00001593 | EPA_00001594 | 3/12/2025 22:47 | RE: Review requested: Draft notice of PI for Elias v. Trump | Goertz, Ariadne | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney-Client | Attorney-Client | Document contains communications or work prepared in anticipation of litigation; provides legal advice. |
| EPA_00001595 | EPA_00001596 | | OMB PI Notice – Final.pdf | | | | | Attorney-Client | Attorney-Client | Document contains communications or work prepared in anticipation of litigation. |
| EPA_00001597 | EPA_00001599 | 3/12/2025 22:47 | EMAIL RE PI with OMB instructions.docx | Goertz, Ariadne | Donahue, Sean (donahue.sean@epa.gov) | | | Attorney-Client | Attorney-Client | Document contains communications or work prepared in anticipation of litigation; provides legal advice. |
| EPA_00001700 | EPA_00001700 | 3/12/2025 22:20 | APPROVAL REQUESTED: Updated email for OMB, OCFO and OROs regarding Preliminary Injunction (NY v. Trump) | Goertz, Ariadne | Donahue, Sean (donahue.sean@epa.gov) | Payne, James (Jim) (payne.james@epa.gov) Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) Askew, Wendel (Askew.Wendel@epa.gov) Holden, Allison (Holden.Allison@epa.gov) Conrad, Daniel (conrad.daniel@epa.gov) Nelsen, Susan (Nelsen.Susan@epa.gov) | | Attorney Work Product | Attorney Work Product | Document contains communications or work prepared in anticipation of litigation. |
| EPA_00001701 | EPA_00001706 | | OMB PI Notice – Final.pdf | | | | | Attorney-Client | Attorney-Client | Contains legal advice from OMB to agency counsels regarding major court orders on executive order implementation. |
| EPA_00001752 | EPA_00001756 | 3/13/2025 15:27 | FW: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v. Trump) | Goertz, Ariadne | O'Sullivan, Caitlin (O'Sullivan.Caitlin@epa.gov) | | | Attorney-Client | Attorney-Client | Contains legal advice from OMB to agency counsels regarding major court orders on executive order implementation. |
| EPA_00001754 | EPA_00001757 | 3/13/2025 15:27 | FW: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v. Trump) | Goertz, Ariadne | Askew, Wendel (Askew.Wendel@epa.gov) Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney Work Product | Attorney Work Product | Document contains communications or work prepared in anticipation of litigation. |
| EPA_00001758 | EPA_00001760 | 3/13/2025 17:46 | FW: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v. Trump) | Goertz, Ariadne | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney-Client | Attorney-Client | Attorney-Client. Contains legal advice by EPA OGC attorney regarding actions needed to be in compliance with preliminary injunction. Attorney Work Product; document prepared by EPA OGC attorney in the context of litigation regarding compliance with preliminary injunction. |
| EPA_00001765 | EPA_00001770 | 2/21/2025 20:16 | RE: Guidance on IIJA funding | Coogan, Daniel (Coogan.Daniel@epa.gov) | Goertz, Ariadne (Goertz.Ariadne@epa.gov) Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) Askew, Wendel (Askew.Wendel@epa.gov) | Walmsley, James (Walmsley.James@epa.gov) | | Attorney-Client | Attorney-Client | Attorney-Client. Contains request for legal advice from EPA employee to EPA OGC attorney regarding grant terminations. Attorney Work Product; document prepared by EPA OGC attorney in the context of litigation regarding grant terminations. |
| EPA_00001771 | EPA_00001772 | | Termination_Memo_Template_Feb21.docx | | | | | Deliberative Process | Attorney-Client, Deliberative Process | DPP. This is an internal draft grant termination memo that was attached to a deliberative and attorney client privileged email. It contains advice, does not represent the final recommendation and is pre-decisional. Release of the withheld information would chill discussions and deliberation as it would discourage open and frank discussions about issues related to grant terminations. AC/AWP: Email document was prepared in anticipation of litigation. |
| EPA_00001773 | EPA_00001779 | 3/12/2025 20:14 | RE: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v. Trump) | Goertz, Ariadne | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) Askew, Wendel (Askew.Wendel@epa.gov) | | | Attorney-Client | Attorney-Client | DPP. This is an internal draft grant termination memo that was attached to a deliberative and attorney client privileged email. It contains advice, does not represent the final recommendation and is pre-decisional. Release of the withheld information would chill discussions and deliberation as it would discourage open and frank discussions about issues related to grant terminations. Attorney Work Product; document prepared by EPA OGC attorney in the context of litigation regarding compliance with preliminary injunction. |
| EPA_00001795 | EPA_00001796 | 3/14/2025 17:40 | RE: For review and approval: draft response to DOJ re NADOHE v Trump | Goertz, Ariadne | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) Scott, Ronald (Scott.Ronald@epa.gov) | | | Attorney-Client | Attorney-Client | E-Mail among OGC attorneys related to PI. |
| EPA_00001797 | EPA_00001798 | 3/17/2025 16:20 | Fwd: Stay of Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v. Trump) | Goertz, Ariadne | Talbert-Duarte, Angela (talbert-duarte.angela@epa.gov) | | | Attorney-Client | Attorney-Client | Document with opinion of OGC attorney related to litigation. |
| EPA_00001811 | EPA_00001812 | | Termination_Memo_Template_3-14-25.docx | | | | | Attorney-Client, Deliberative Process | Attorney-Client, Deliberative Process | A/C; DPP. The document contains internal pre-decisional deliberations regarding potential termination of grants and is part of a privileged communication. It was prepared by EPA employees in the course of their duties and reflects deliberations among agency staff regarding the legal and policy considerations surrounding a potential grant termination. The document does not represent the final Agency decision and contains suggestions prior to any approval from Agency decision-makers and/or final guidance released. Release of the withheld information would chill the Agency's decision-making processes and ability to have internal deliberations. |

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 8, 2025)

| Begin Bates | End Bates | Sent Date/Time (APR) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVL NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 6, 2025)

2:25-cv-02152-RMG   Date Filed 05/06/25   Entry Number 147-9   Page 28 of 53

| | | | | The Sustainability Institute, et al. v. Trump, et al. CIVIL NO. 2:25-cv-2152 PRIVILEGE LOG - PROTECTED AS RESTRICTED (As of May 6, 2025) | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

**The Sustainability Institute, et al. v. Trump, et al.**
Civil. NO. 2:25-cv-2152
**PRIVILEGE LOG - PROTECTED AND RESTRICTED**
(As of May 8, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
**PRIVILEGE LOG - PROTECTED AS RESTRICTED**
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| EPA_00222665 | EPA_00222666 | 3/3/2025 21:03 | RE: Note re: DEI Preliminary Injunction | Wise, Melissa [wise.melissa@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov];Coogan, Daniel [Coogan.Daniel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney client – Document contains communications seeking or providing legal advice. Attorney work-product – Document contains communications or work prepared in anticipation of litigation. |
| EPA_00222667 | EPA_00222670 | 3/18/2025 20:22 | RE: Stay of Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v Trump) | Wilson, Adam [wilson.adam@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client: Contains legal advice written by EPA OGC attorney regarding actions needed to be compliance with preliminary injunction. Attorney Work Product: document prepared by EPA OGC attorney in the conduct of litigation containing legal advice regarding compliance with preliminary injunction. |
| EPA_00222671 | EPA_00222672 | 3/14/2025 17:31 | RE: For review and approval: draft response to DOJ re NADOHE v Trump | Scott, Ronald [Scott.Ronald@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | E-mail between OGC attorneys. Reflects attorney thought processes in anticipation of litigation. |
| EPA_00222673 | EPA_00222675 | 3/11/2025 15:23 | RE: ACTION REQUIRED: Grant Cancellations/Terminations | Segovia, Theresa [Segovia.Theresa@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov];Burney, Jacob [Burney.Jacob@epa.gov] | Wise, Melissa [wise.melissa@epa.gov];Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney-Client | Attorney-Client | Communication seeks legal advice. |
| EPA_00222706 | EPA_00222707 | 3/11/2025 17:27 | RE: National Assoc of Diversity Officers in Higher Ed v Trump | Gheibi, Pardis (CIV) [Pardis.Gheibi@usdoj.gov] | Askew, Wendel [Askew.Wendel@epa.gov];Wilson, Adam [wilson.adam@epa.gov] | Borson, Joseph (CIV) [Joseph.Borson@usdoj.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Communication contains legal advice from DOJ to EPA in pending litigation. |
| EPA_00222716 | EPA_00222719 | | NADOHE v. Trump - Clarification Order -.pdf | | | | | Attorney Work Product | Attorney Work Product | communications between attorneys about litigation |
| EPA_00222720 | EPA_00222720 | 3/12/2025 12:51 | Time sensitive- Please advise re: Judge's Clarification on the Scope of the Nationwide PI | Spickofsky, Nancy [Spickofsky.Nancy@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov];Liem, Lucille [Liem.Lucille@epa.gov] | Feinmark, Phyllis [Feinmark.Phyllis@epa.gov];Simon, Paul [Simon.Paul@epa.gov];Oldham, Zoe [Oldham.Zoe@epa.gov];Carney, Joseph [Carney.Joseph@epa.gov];Killian, Brendan [Killian.Brendan@epa.gov] | | Attorney-Client | Attorney-Client | Seeking legal advice about grant termination |
| EPA_00222721 | EPA_00222722 | 2/28/2025 21:54 | FW: Note re: DEI Preliminary Injunction | Askew, Wendel [Askew.Wendel@epa.gov] | Binder, Kelsey [Binder.Kelsey@epa.gov];Boesch, Nathaniel [boesch.nathaniel@epa.gov];Brewer, Erin [Brewer.Erin@epa.gov];Brisendine, Collette [Brisendine.Collette@epa.gov];Brown, Amelia [Brown.Amelia@epa.gov];Carel, Chelsey [Carel.Chelsey@epa.gov];Carney, Joseph [Carney.Joseph@epa.gov];Carter, Ian [Carter.Ian@epa.gov];Castanon, Lisa [Castanon.Lisa@epa.gov];Christopher, Katherine [Christopher.Katherine@epa.gov];Clay, Jeffrey [clay.jeffrey@epa.gov];Connery, Shannon [Connery.Shannon@epa.gov];Salisbury, Demetra [Salisbury.Demetra@epa.gov];Dixon, Lorraine [Dixon.Lorraine@epa.gov];Drummond, James [Drummond.James@epa.gov];Olson, Erik [olson.erik@epa.gov];Goldsmith, Sara [Goldsmith.Sara@epa.gov];Goldstein, Ivery [Goldstein.Ivery@epa.gov];Hales, Daniel [Hales.Daniel@epa.gov];Ferrara, Helen [Ferrara.Helen@epa.gov];Hodges-Gott, Angela [Hodges-Gott.Angela@epa.gov];Holtz, Nicholas [Holtz.Nicholas@epa.gov];Hudson, Monique [Hudson.Monique@epa.gov];Hogan, Joanne [Hogan.Joanne@epa.gov];Johnson, Joan-A [Johnson.Joan-A@epa.gov];Kelley, Meghan [kelley.meghan@epa.gov];Killian, Brendan [Killian.Brendan@epa.gov];Laffoday, Katie [Laffoday.Kathryn@epa.gov];Jensen, Leann [Jensen.Leann@epa.gov];Liem, Lucille [Liem.Lucille@epa.gov];Maguire, Timothy [Maguire.Timothy@epa.gov];McPeak, Michael [McPeak.Michael@epa.gov];Meeks, Sarah [Meeks.Sarah@epa.gov];Cohen, Mitchell [cohen.mitchell@epa.gov];Spickofsky, Nancy [Spickofsky.Nancy@epa.gov];Oldham, Zoe [Oldham.Zoe@epa.gov];O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov];Patterson, Morganne [Patterson.Morganne@epa.gov];Versace, Paul [Versace.Paul@epa.gov];Lakhani, Puja [lakhani.puja@epa.gov];Quenemoen, Marianna [Quenemoen.Marianna@epa.gov];Cherry, Randall [Cherry.Randall@epa.gov];Rich, Stephanie [Rich.Stephanie@epa.gov];Rivera, Nina [Rivera.Nina@epa.gov];Leon, Sandra [Leon.Sandra@epa.gov];Mairs, Stephanie [Mairs.Stephanie@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov];Westhoff, Steven [Westhoff.Steven@epa.gov];Wright, Garth [wright.garth@epa.gov] | | | Attorney Work Product | Attorney Work Product | communications between attorneys about litigation |
| EPA_00222786 | EPA_00222786 | 3/12/2025 12:56 | RE: Time sensitive- Please advise re: Judge's Clarification on the Scope of the Nationwide PI | Simon, Paul [Simon.Paul@epa.gov] | Spickofsky, Nancy [Spickofsky.Nancy@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov];Liem, Lucille [Liem.Lucille@epa.gov] | Feinmark, Phyllis [Feinmark.Phyllis@epa.gov];Oldham, Zoe [Oldham.Zoe@epa.gov];Carney, Joseph [Carney.Joseph@epa.gov];Killian, Brendan [Killian.Brendan@epa.gov] | | Attorney-Client | Attorney-Client | containing legal advice from attorney to a client |
| EPA_00222787 | EPA_00222789 | 3/6/2025 21:22 | FYSA: Preliminary Injunction Entered in NY v Trump | Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | OGC HQ ADDs [OGC_HQ_ADDs@epa.gov];Regional Counsels and Deputies [Regional_Counsels_and_Deputies@epa.gov] | | | Attorney Work Product | Attorney Work Product | communications between attorneys about litigation |
| EPA_00222835 | EPA_00222836 | 3/12/2025 13:00 | FW: Time sensitive- Please advise re: Judge's Clarification on the Scope of the Nationwide PI | Simon, Paul [Simon.Paul@epa.gov] | Spickofsky, Nancy [Spickofsky.Nancy@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov];Liem, Lucille [Liem.Lucille@epa.gov];Feinmark, Phyllis [Feinmark.Phyllis@epa.gov];Oldham, Zoe [Oldham.Zoe@epa.gov];Carney, Joseph [Carney.Joseph@epa.gov];Killian, Brendan [Killian.Brendan@epa.gov];Hick, Patricia [Hick.Patricia@epa.gov] | | Attorney-Client | Attorney-Client | containing legal advice from an attorney to a client |
| EPA_00222837 | EPA_00222839 | 3/6/2025 21:22 | FYSA: Preliminary Injunction Entered in NY v Trump | Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | OGC HQ ADDs [OGC_HQ_ADDs@epa.gov];Regional Counsels and Deputies [Regional_Counsels_and_Deputies@epa.gov] | | | Attorney Work Product | Attorney Work Product | communications between attorneys about litigation |
| EPA_00222840 | EPA_00222841 | 3/12/2025 21:09 | RE: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v Trump) | Spickofsky, Nancy [Spickofsky.Nancy@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client: Contains legal advice written by EPA OGC attorney regarding actions needed to be compliance with preliminary injunction. Attorney Work Product: document prepared by EPA OGC attorney in the conduct of litigation containing legal advice regarding compliance with preliminary injunction. |
| EPA_00222842 | EPA_00222844 | 3/12/2025 21:16 | RE: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v Trump) | Kenealy, Timi [Kenealy.Timi@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client: Contains legal advice written by EPA OGC attorney regarding actions needed to be compliance with preliminary injunction. Attorney Work Product: document prepared by EPA OGC attorney in the conduct of litigation containing legal advice regarding compliance with preliminary injunction. |
| EPA_00222845 | EPA_00222848 | 3/19/2025 19:29 | FW: Stay of Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v Trump) | Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client: Contains legal advice written by EPA OGC attorney regarding actions needed to be compliance with preliminary injunction. Attorney Work Product: document prepared by EPA OGC attorney in the conduct of litigation containing legal advice regarding compliance with preliminary injunction. |
| EPA_00222849 | EPA_00222853 | 3/14/2025 12:50 | RE: email notifying grant officers of injunction | Gheibi, Pardis (CIV) [Pardis.Gheibi@usdoj.gov] | Rhodes, Julia [Rhodes.Julia@epa.gov];Scott, Ronald [Scott.Ronald@epa.gov];Wilson, Adam [wilson.adam@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov];Hogan, Joanne [Hogan.Joanne@epa.gov] | Borson, Joseph (CIV) [Joseph.Borson@usdoj.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client: Document contains communications seeking or providing legal advice. Attorney Work Product: Document contains communications or work prepared in anticipation of litigation. |
| EPA_00222854 | EPA_00222860 | | Guidance to Agencies re PI in Md. DEI Lawsuit 2.25.25.pdf | | | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client Privilege: Document contains communications seeking or providing legal advice. Attorney Work Product: Document contains communications or work prepared in anticipation of litigation. |
| EPA_00222861 | EPA_00222864 | 3/19/2025 20:46 | RE: Follow-up on OGC Call re NADOHE v Trump and NY v Trump | Wise, Melissa [wise.melissa@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Email exchange with DOJ answers to questions re: injunction. |
| EPA_00222865 | EPA_00222866 | 3/18/2025 12:26 | FW: New IRA/IIJA Funding Pause Case | Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney-Client | Attorney-Client | Communication from DOJ to agency counsel |
| EPA_00222867 | EPA_00222869 | 3/19/2025 20:30 | RE: Woonasquatucket River Watershed Council v. Dept. of Agriculture | Wise, Melissa [wise.melissa@epa.gov] | O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov];Coogan, Daniel [Coogan.Daniel@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | ACP: Privileged email communication between OGC Attorneys and Office of Mission Support leaders for the purposes of obtaining legal advice regarding legal strategy in Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.). AWP: Privileged email communication between OGC Attorneys and Office of Grants and Debarment Director created in preparation for litigation (Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.)). |
| EPA_00222876 | EPA_00222880 | 3/21/2025 12:45 | Re: Woonasquatucket River Watershed Council v. Dept. of Agriculture | Coogan, Daniel [Coogan.Daniel@epa.gov] | Wise, Melissa [wise.melissa@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | ACP: Privileged email communication between OGC Attorneys and Office of Mission Support leaders for the purposes of obtaining legal advice regarding legal strategy in Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.). AWP: Privileged email communication between OGC Attorneys and Office of Grants and Debarment Director created in preparation for litigation (Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.)). |
| EPA_00222881 | EPA_00222886 | 3/21/2025 16:19 | RE: Woonasquatucket River Watershed Council v. Dept. of Agriculture | O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov] | Wise, Melissa [wise.melissa@epa.gov];Coogan, Daniel [Coogan.Daniel@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | ACP: Privileged email communication between OGC Attorneys and Office of Mission Support leaders for the purposes of obtaining legal advice regarding legal strategy in Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.). AWP: Privileged email communication between OGC Attorneys and Office of Grants and Debarment Director created in preparation for litigation (Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.)). |
| EPA_00222887 | EPA_00222891 | 3/25/2025 21:59 | RE: New IRA/IIJA Funding Pause Case | Goerke, Ariadne [Goerke.Ariadne@epa.gov] | O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov] | Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | | Attorney Work Product | Attorney Work Product | Communication between agency counsel about government's pleading |
| EPA_00222892 | EPA_00222897 | 3/26/2025 21:42 | RE: New IRA/IIJA Funding Pause Case | O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov] | Packard, Elise [Packard.Elise@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov];Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov];Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | | Attorney Work Product | Attorney Work Product | Internal agency counsel discussion of pleading |
| EPA_00222898 | EPA_00222907 | 3/14/2025 16:27 | FW: EPA Compliance | Holden, Allison [Holden.Allison@epa.gov] | Gulamali, Adil [Gulamali.Adil@epa.gov];Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client Privilege: Facts conveyed between DOJ/EPA attorneys for the purpose of keeping agency attorneys informed and communications providing legal guidance from DOJ to EPA; Attorney Work-Product: Document contains communications among agency attorneys prepared in anticipation of litigation related to freezing funding for grants. |
| EPA_00222908 | EPA_00222912 | 3/6/2025 14:46 | RE: Grant terminations - DDOs - TRO in State of New York v. Trump | Laffoday, Katie [Laffoday.Kathryn@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | AWP: Attorney-to-attorney planning for correct way to handle potential disputes AC: Providing guidance to clients with respect to anticipated disputes. |
| EPA_00222913 | EPA_00222920 | 2/3/2025 13:23 | RE: Temporary Restraining Order Mass Mailer Draft | Widener, Charles (Chuck) [Widener.Charles@epa.gov] | Conrad, Daniel [conrad.daniel@epa.gov];Drinkard, Andrea [Drinkard.Andrea@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov];Wadlington, Christina [Wadlington.Christina@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov];Vaseliou, Molly [Vaseliou.Molly@epa.gov] | | Attorney-Client | Attorney-Client | Discussion between attorney and client about draft messaging of TRO. |
| EPA_00222921 | EPA_00222921 | | Temporary Restraining Order Related to Pause on All Federal Financial Assistance | MassMailer [massmailer@epa.gov] | MassMailer [massmailer@epa.gov] | | | Attorney-Client | Attorney-Client | Discussion between attorney and client about draft messaging of TRO. |
| EPA_00222922 | EPA_00222929 | 2/3/2025 13:44 | RE: Temporary Restraining Order Mass Mailer Draft | Widener, Charles (Chuck) [Widener.Charles@epa.gov] | Drinkard, Andrea [Drinkard.Andrea@epa.gov];Conrad, Daniel [conrad.daniel@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov];Wadlington, Christina [Wadlington.Christina@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov];Vaseliou, Molly [Vaseliou.Molly@epa.gov] | | Attorney-Client | Attorney-Client | Discussion between attorney and client about draft messaging of TRO. |
| EPA_00222930 | EPA_00222937 | 2/3/2025 13:45 | RE: Temporary Restraining Order Mass Mailer Draft | Conrad, Daniel [conrad.daniel@epa.gov] | Widener, Charles (Chuck) [Widener.Charles@epa.gov];Drinkard, Andrea [Drinkard.Andrea@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov];Wadlington, Christina [Wadlington.Christina@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov];Vaseliou, Molly [Vaseliou.Molly@epa.gov] | | Attorney-Client | Attorney-Client | Discussion between attorney and client about draft messaging of TRO. |
| EPA_00222967 | EPA_00222970 | 2/3/2025 14:19 | RE: TRO on Federal Grants to States | Drummond, James [Drummond.James@epa.gov] | Hogan, Joanne [Hogan.Joanne@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov];Binder, Kelsey [Binder.Kelsey@epa.gov];Christopher, Katherine [Christopher.Katherine@epa.gov];Quenemoen, Marianna [Quenemoen.Marianna@epa.gov];O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov] | Kelley, Meghan [kelley.meghan@epa.gov];Hales, Daniel [Hales.Daniel@epa.gov];Holtz, Nicholas [Holtz.Nicholas@epa.gov];Liem, Lucille [Liem.Lucille@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Discussions between attorneys about the TRO and how to advise client offices. |
| EPA_00223000 | EPA_00223001 | 2/3/2025 16:57 | RE: Next Steps - TRO on Grants Pause and Resuming Communication and Work with EJ Grantees | Burney, Jacob [Burney.Jacob@epa.gov] | Drummond, James [Drummond.James@epa.gov];Quenemoen, Marianna [Quenemoen.Marianna@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney-Client | Attorney-Client | Communication contains legal advice. |
| EPA_00223003 | EPA_00223005 | 2/3/2025 17:07 | RE: Next Steps - TRO on Grants Pause and Resuming Communication and Work with EJ Grantees | Quenemoen, Marianna [Quenemoen.Marianna@epa.gov] | Burney, Jacob [Burney.Jacob@epa.gov];Drummond, James [Drummond.James@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney-Client | Attorney-Client | Communication contains legal advice. |
| EPA_00223006 | EPA_00223008 | 2/3/2025 18:57 | RE: Notice of Court's Order | Salisbury, Demetra [Salisbury.Demetra@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Document contains communications seeking or providing legal advice, and communications prepared in anticipation of litigation. |
| EPA_00223009 | EPA_00223013 | 2/4/2025 14:23 | RE: TRO regarding financial assistance pause | Quenemoen, Marianna [Quenemoen.Marianna@epa.gov] | Drummond, James [Drummond.James@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | ACP: Privileged email communication between EPA attorneys containing legal advice from DOJ attorneys regarding interpretation of Temporary Restraining Order issued in litigation against EPA. AWP: Privileged email between EPA attorneys prepared for litigation regarding DOJ interpretation of Temporary Restraining Order issued in litigation against EPA. |
| EPA_00223014 | EPA_00223016 | 2/5/2025 15:39 | FW: Review Requested - Clarifications for LCRD project officers on Funding Pause and TRO | Lakhani, Puja [lakhani.puja@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney-Client | Attorney-Client | Attorney client – Document contains communications from a program office to Attorney Wendell Askew seeking legal advice on a draft communication to send to EPA staff. |
| EPA_00223017 | EPA_00223018 | 2/5/2025 20:25 | RE: GC request regarding freezing grants | Quenemoen, Marianna [Quenemoen.Marianna@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney-Client | Attorney-Client | ACP: Privileged communication between OGC attorneys containing request for legal advice from client EPA regarding freeze of funding for grant programs. |
| EPA_00223019 | EPA_00223026 | 2/7/2025 14:01 | RE: TRO regarding financial assistance pause | McLain, Jennifer L. [McLain.Jennifer@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov];Hogan, Joanne [Hogan.Joanne@epa.gov] | Kelley, Meghan [kelley.meghan@epa.gov];Guilaran, Yu-Ting [Guilaran.Yu-Ting@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | ACP: Privileged email communication between EPA attorneys containing legal advice regarding next steps and interpretation of Temporary Restraining Order issued in litigation against EPA. AWP: Privileged email between EPA attorneys and client EPA prepared for litigation regarding next steps and DOJ interpretation of Temporary Restraining Order issued in litigation against EPA. |
| EPA_00223027 | EPA_00223034 | 2/7/2025 20:39 | RE: TRO regarding financial assistance pause | Guilaran, Yu-Ting [Guilaran.Yu-Ting@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov];Hogan, Joanne [Hogan.Joanne@epa.gov] | McLain, Jennifer L. [McLain.Jennifer@epa.gov];Kelley, Meghan [kelley.meghan@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | ACP: Privileged email communication between EPA attorneys containing legal advice regarding next steps and interpretation of Temporary Restraining Order issued in litigation against EPA. AWP: Privileged email between EPA attorneys and client EPA prepared for litigation regarding next steps and DOJ interpretation of Temporary Restraining Order issued in litigation against EPA. |
| EPA_00223041 | EPA_00223044 | 2/10/2025 15:28 | RE: Follow-Up: 68HE0723D0004 and 68HE0724D0008 | Holden, Allison [Holden.Allison@epa.gov] | Kenealy, Timi [Kenealy.Timi@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney-Client | Attorney-Client | Attorney client--Document contains communications seeking and providing legal advice. |
| EPA_00223050 | EPA_00223053 | 2/10/2025 19:58 | FW: FOR APPROVAL: Draft Response - Axios - Funding freeze status - DDL ASAP | Rhodes, Julia [Rhodes.Julia@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | | Attorney-Client; Deliberative Process | Attorney-Client; Attorney Work Product; Deliberative Process | ACP: EPA OMS employee client Seeking legal review by OGC attorney of draft communication regarding grant freeze. AWP: EPA OGC attorney client requests another EPA OGC attorney to review a draft communication in light of a temporary restraining order. Email prepared in anticipation of ongoing litigation. DPP: Internal email thread between EPA Office of Public Affairs employees, OMS employees, and OGC employees discussing how to respond to a press inquiry regarding grant freezes. Nature of communications deliberative and predecisional. Release would chill agency employees' ability to freely debate how to communicate with the public before doing so. |
| EPA_00223054 | EPA_00223058 | 2/10/2025 20:11 | RE: Follow-Up: 68HE0723D0004 and 68HE0724D0008 | Holden, Allison [Holden.Allison@epa.gov] | Kenealy, Timi [Kenealy.Timi@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney-Client | Attorney-Client | Attorney client--document contains communications seeking and providing legal advice. |
| EPA_00223059 | EPA_00223063 | | 96 - Order Enforcing TRO.pdf | | | | | Attorney Work Product | Attorney Work Product | AWP: Privileged attachment communicated in preparation for litigation by DOJ attorneys. |
| EPA_00223064 | EPA_00223069 | 2/11/2025 19:30 | RE: EJ Grants - Request for Generic Placeholder language on ASAP | Motilall, Christina [Motilall.Christina@epa.gov] | Drummond, James [Drummond.James@epa.gov];Burney, Jacob [Burney.Jacob@epa.gov];Quenemoen, Marianna [Quenemoen.Marianna@epa.gov] | Park, Susan [Park.Susan@epa.gov];Belle, Kara [Belle.Kara@epa.gov];Triantafillou, Kathy [triantafillou.kathy@epa.gov];Clarke, Rosita [clarke.rosita@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | DP: Contains pre-decisional discussions concerning potential communications to EJ grant recipients. The document does not represent the final agency decision. Release of the withheld information would chill the ability of EPA staff to coordinate communications with external parties regarding grants. ACP: Thread contains request for and discussion of legal advice regarding external communications. |
| EPA_00223070 | EPA_00223076 | 2/11/2025 19:41 | RE: EJ Grants - Request for Generic Placeholder language on ASAP | Burney, Jacob [Burney.Jacob@epa.gov] | Motilall, Christina [Motilall.Christina@epa.gov];Drummond, James [Drummond.James@epa.gov];Quenemoen, Marianna [Quenemoen.Marianna@epa.gov] | Park, Susan [Park.Susan@epa.gov];Belle, Kara [Belle.Kara@epa.gov];Triantafillou, Kathy [triantafillou.kathy@epa.gov];Clarke, Rosita [clarke.rosita@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney-Client; Deliberative Process | Attorney-Client; Deliberative Process | This internal email contains pre-decisional deliberations among staff in EPA's OGC, OP/OCFO, OEJECR, and OMS about interpreting and implementing the Unleashing Energy/DEIA EOs and how they impact IIJA/IRA funding. The email contains programmatic staff questions, concerns, and suggestions regarding implications of EOs on guidance before any approval from Agency decision-makers and/or final guidance released. Release would also have a chilling effect on Agency decision-making processes, including attorney-client privilege, and on the Agency's ability to have internal discussions and consultations concerning the impact of recently issued EOs on IIJA/IRA funding: Thread contains request for and discussion of legal advice regarding external communications. |
| EPA_00223077 | EPA_00223081 | 2/11/2025 20:54 | RE: ASAP accounts suspended | Drummond, James [Drummond.James@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney-Client | Attorney-Client | Contains request for legal advice concerning grant funding/cancellation of grants and potential communications with grant recipients. |
| EPA_00223082 | EPA_00223086 | 2/11/2025 21:00 | RE: ASAP accounts suspended | Wise, Melissa [wise.melissa@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | | Attorney-Client | Attorney-Client | Contains request for legal advice concerning grant funding/cancellation of grants and potential communications with grant recipients. |
| EPA_00223087 | EPA_00223089 | 2/11/2025 21:40 | RE: EJ Grants - Request for Generic Placeholder language on ASAP | Drummond, James [Drummond.James@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney-Client | Attorney-Client | ACP: Reflects facts and legal analysis shared in connection with legal counseling regarding EJ grant terminations. |
| EPA_00223090 | EPA_00223096 | 2/11/2025 23:28 | FW: FLAGGING: Media Inquiry - WBUR request: EPA funding pause - DDL ASAP | Kenealy, Timi [Kenealy.Timi@epa.gov] | Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov];Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney-Client | Attorney-Client | Attorney client: Contains request for legal advice regarding external communication. |
| EPA_00223097 | EPA_00223101 | 2/12/2025 20:50 | RE: EPA Compliance | Christopher, Katherine [Christopher.Katherine@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov];Hales, Daniel [Hales.Daniel@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | assignment prepared in anticipation of litigation re: grant terminations; communications seeking the advice of an attorney |

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AND RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AND RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
Civil No. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 8, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
Civil. NO. 2:25-cv-2752
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

| | | | | | | The Sustainability Institute, et al. v. Trump, et al. | | | | |
| | | | | | | CIVIL NO. 2:25-cv-2152 | | | | |
| | | | | | | PRIVILEGE LOG – PROTECTED AS RESTRICTED | | | | |
| | | | | | | (As of May 8, 2025) | | | | |
| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (APR) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

*(Privilege log table — dense multi-row content, columns as above)*

2:25-cv-02152-RMG Date Filed 05/09/25 Entry Number 147-9 Page 41 of 53

| | | | The Sustainability Institute, et al. v. Trump, et al. | | | | | |
| | | | Civ. No. 2:25-cv-2152 | | | | | |
| | | | PRIVILEGE LOG – PROTECTED AND RESTRICTED | | | | | |
| | | | (As of May 8, 2025) | | | | | |

| Begin Bates | End Bates | Sent Date/Time (APD) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

*(The table on this page is a multi-column privilege log with numerous rows. At the available image resolution the individual cell contents are not legibly reproducible.)*

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

*(Table contents illegible at available resolution)*

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
**PRIVILEGE LOG - PROTECTED AS RESTRICTED**
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| EPA_00290863 | EPA_00290864 | 1/24/2025 17:51 | Late IIJA/ IRA Actions | Coogan, Daniel | Patrick, Kimberly (she/her/hers) [Patrick.Kimberly@epa.gov] | | | Deliberative Process | Deliberative Process | DPP: The internal email includes OMS staff pre-decisional thoughts on whether to cancel grants or decide to proceed. Release would have a chilling effect on Agency decision-making processes, and on the Agency's ability to have internal discussions and consultations concerning how to deal with grants funded with IIJA/IRA. |
| EPA_00290874 | EPA_00290877 | 2/3/2025 0:19 | Re: New Temporary Restraining Order re the funding pause | Coogan.Daniel@epa.gov | Askew, Wendel [Askew.Wendel@epa.gov] | | | Attorney-Client | Attorney-Client | Communication contains legal advice. |
| EPA_00290942 | EPA_00290943 | | EPA Grants Termination Closeout Process.docx | | | | | Deliberative Process | | DPP: deliberative and pre-decisional document about workflow and process for potential grant terminations. |
| EPA_00290986 | EPA_00290987 | 3/6/2025 22:29 | FW: Grant T&C Updates | Wise, Melissa [wise.melissa@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov] | | | Deliberative Process | Deliberative Process | DPP: Internal emails between EPA OMS employees regarding modifying grant terms and conditions to comply with executive order. Predecisional and deliberative in nature. Release would chill agency employees' ability to candidly discuss implementation of changes in agency policy. |
| EPA_00290988 | EPA_00291038 | | FY25 Gen. Terms Conditions_Feb.2025 - KP Comment.docx | | | | | Deliberative Process | Attorney-Client; Deliberative Process | Deliberative internal draft policy on Grant General Terms and Conditions containing attorney comments and edits. Release of this draft document would also have a chilling effect on Agency decision-making processes, and on the Agency's ability to have internal discussions and consultations concerning grants administration and have a chilling effect on Agency personnel seeking advice of Agency counsel. |
| EPA_00291064 | EPA_00291064 | | Other Grants_Week of March 10.pdf | | | | | Deliberative Process | | Awards were not yet public while the list was compiled. |
| EPA_00291067 | EPA_00291069 | 3/17/2025 18:18 | Stay of Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v Trump) | Askew, Wendel [Askew.Wendel@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov];Wise, Melissa [wise.melissa@epa.gov];Treml, Gregg [Treml.Gregg@epa.gov];Boyd, Wyatt [Boyd.Wyatt@epa.gov] | OGC CRFLO MGMT [OGC_CRFLO_MGMT@epa.gov];Altizer, Stephen [Altizer.Stephen@epa.gov];Binder, Kelsey [Binder.Kelsey@epa.gov];Boesch, Nathaniel [boesch.nathaniel@epa.gov];Brewer, Erin [Brewer.Erin@epa.gov];Brisendine, Collette [Brisendine.Collette@epa.gov];Brown, Amelia [Brown.Amelia@epa.gov];Carel, Chelsey [Carel.Chelsey@epa.gov];Carney, Joseph [Carney.Joseph@epa.gov];Carter, Ian [Carter.Ian@epa.gov];Castanon, Lisa [Castanon.Lisa@epa.gov];Christopher, Katherine [Christopher.Katherine@epa.gov];Clay, Jeffrey [clay.jeffrey@epa.gov];Connery, Shannon [Connery.Shannon@epa.gov];Salisbury, Demetra [Salisbury.Demetra@epa.gov];Dixon, Lorraine [Dixon.Lorraine@epa.gov];Olson, Erik [olson.erik@epa.gov];Goldsmith, Sara [Goldsmith.Sara@epa.gov];Goldstein, Ivery [Goldstein.Ivery@epa.gov];Hales, Daniel [Hales.Daniel@epa.gov];Ferrara, Helen [Ferrara.Helen@epa.gov];Hodges-Gott, Angela [Hodges-Gott.Angela@epa.gov];Holtz, Nicholas [Holtz.Nicholas@epa.gov];Hudson, Monique [Hudson.Monique@epa.gov];Hogan, Joanne [Hogan.Joanne@epa.gov];Johnson, Joan-A [Johnson.Joan-A@epa.gov];Kelley, Meghan [kelley.meghan@epa.gov];Killian, Brendan [Killian.Brendan@epa.gov];Laffoday, Katie [Laffoday.Kathryn@epa.gov];Jensen, Leann [Jensen.Leann@epa.gov];Liem, Lucille [Liem.Lucille@epa.gov];Maguire, Timothy [Maguire.Timothy@epa.gov];McPeak, Michael [McPeak.Michael@epa.gov];Meeks, Sarah [Meeks.Sarah@epa.gov];Cohen, Mitchell [cohen.mitchell@epa.gov];Spickofsky, Nancy [Spickofsky.Nancy@epa.gov];Oldham, Zoe [Oldham.Zoe@epa.gov];O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov];Patterson, Morganne [Patterson.Morganne@epa.gov];Versace, Paul [Versace.Paul@epa.gov];Lakhani, Puja [lakhani.puja@epa.gov];Quenemoen, Marianna [Quenemoen.Marianna@epa.gov];Cherry, Randall [Cherry.Randall@epa.gov];Rich, Stephanie [Rich.Stephanie@epa.gov];Rivera, Nina [Rivera.Nina@epa.gov];Leon, Sandra [Leon.Sandra@epa.gov];Mairs, Stephanie [Mairs.Stephanie@epa.gov];Tripathi, Arati [Tripathi.Arati@epa.gov];Westhoff, Steven [Westhoff.Steven@epa.gov];Wright, Garth [wright.garth@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client: Contains legal advice written by EPA OGC attorney regarding actions needed to be compliance with preliminary injunction. Attorney Work Product: document prepared by EPA OGC attorney in the conduct of litigation containing legal advice regarding compliance with preliminary injunction. |
| EPA_00291086 | EPA_00291087 | 3/21/2025 20:27 | RE: PLEASE USE THIS VERSION! RE: EJ Closeouts | Wise, Melissa [wise.melissa@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov] | | | Deliberative Process | Deliberative Process | DPP: Internal emails between Director of Office of Grants and Debarment and Deputy Assistant Administrator in Office of Mission Support deliberating proposal regarding how to close out certain grants. Predecisional in nature. Release would harm agency employees' ability to freely generate policy and procedure proposals. |
| EPA_00291270 | EPA_00291272 | 3/10/2025 16:25 | FW: OLEM/ORCR Questions re: Executive Order Compliance Review | Nolte, Christopher [Nolte.Christopher@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov] | Gray, Linda [gray.linda@epa.gov];Bilal, Kari [Bilal.Kari@epa.gov];Wilbur, Jennifer [Wilbur.Jennifer@epa.gov] | | Deliberative Process | | |
| EPA_00291273 | EPA_00291274 | 3/13/2025 3:17 | RE: Consulting Contracts | Nolan, Catherine [Nolan.Catherine@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov] | Nolan, Catherine [Nolan.Catherine@epa.gov] | | Deliberative Process | | DPP - Agency analysis of mission critical status for terminations |
| EPA_00291275 | EPA_00291284 | | 3-10 Data load export for Dan Coogan-2025-03-12-23-14-08.xlsx | | | | | Deliberative Process | | |
| EPA_00291285 | EPA_00291286 | 3/13/2025 18:59 | FW: DOGE Review - Region 9 - March 13 | Drake, Kerry [Drake.Kerry@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov] | | | Deliberative Process | Deliberative Process | DPP: This document includes internal Agency pre-decisional deliberations regarding continuation of Agency work. It reflects give-and-take discussions regarding adjustments and considerations prior to final Agency decision making. If this withheld document were to be released, Agency's staff comfort level in debating and considering how to prioritize Agency work would be chilled.. |
| EPA_00291287 | EPA_00291288 | 3/13/2025 20:51 | Planned documents for interim release for 03348 | Kalikhman, Yulia [kalikhman.yulia@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov];Hublar, Jennifer [Hublar.Jennifer@epa.gov] | | | Deliberative Process | | Contains pre-decisional discussions concerning what information can be withheld under the FOIA. |
| EPA_00291301 | EPA_00291303 | 3/14/2025 0:09 | FW: NADOHE Injunction | Wise, Melissa [wise.melissa@epa.gov] | Coogan, Daniel [Coogan.Daniel@epa.gov] | | | Attorney Work Product | Attorney Work Product | Contains content by attorney in anticipation of litigation |
| EPA_00291312 | EPA_00291315 | 3/4/2025 16:31 | FW: Grant terminations | Wise, Melissa | Rose, Kenneth [Rose.Kenneth@epa.gov];Sherwood, Kelly [Sherwood.Kelly@epa.gov];Shelmon, Shantel [Shelmon.Shantel@epa.gov];Burch, Alfred [Burch.Alfred@epa.gov];Sykes, Karen [Sykes.Karen@epa.gov];Fields, Robert [Fields.Robert@epa.gov];Dolan, Sheila [dolan.sheila@epa.gov];Watkins, Christopher [Watkins.Christopher@epa.gov];Rawls, Whitney [rawls.whitney@epa.gov];Hulstein, Sarah [hulstein.sarah@epa.gov];Seeger, Lindsay [seeger.lindsay@epa.gov] | McManus, Catharine [mcmanus.catharine@epa.gov];White, Lisa [WHITE.LISA@EPA.GOV];Eubanks, Kristy [Eubanks.Kristy@epa.gov];Sanders, Amy [Sanders.Amy@epa.gov];Stanton, MaryA [Stanton.Marya@epa.gov];Krehbiel, Ben [Krehbiel.Ben@epa.gov];McCluney, Lance [McCluney.Lance@epa.gov];Coogan, Daniel [Coogan.Daniel@epa.gov] | | Attorney Work Product | Attorney Work Product | AWP: Attorney-to-attorney planning for correct way to handle potential disputes |
| EPA_00291316 | EPA_00291319 | 3/3/2025 19:13 | RE: Grant terminations | Askew, Wendel [Askew.Wendel@epa.gov] | Binder, Kelsey [Binder.Kelsey@epa.gov];Boesch, Nathaniel [boesch.nathaniel@epa.gov];Brewer, Erin [Brewer.Erin@epa.gov];Brisendine, Collette [Brisendine.Collette@epa.gov];Brown, Amelia [Brown.Amelia@epa.gov];Carel, Chelsey [Carel.Chelsey@epa.gov];Carney, Joseph [Carney.Joseph@epa.gov];Carter, Ian [Carter.Ian@epa.gov];Castanon, Lisa [Castanon.Lisa@epa.gov];Christopher, Katherine [Christopher.Katherine@epa.gov];Clay, Jeffrey [clay.jeffrey@epa.gov];Connery, Shannon [Connery.Shannon@epa.gov];Salisbury, Demetra [Salisbury.Demetra@epa.gov];Dixon, Lorraine [Dixon.Lorraine@epa.gov];Drummond, James [Drummond.James@epa.gov];Olson, Erik [olson.erik@epa.gov];Goldsmith, Sara [Goldsmith.Sara@epa.gov];Goldstein, Ivery [Goldstein.Ivery@epa.gov];Hales, Daniel [Hales.Daniel@epa.gov];Ferrara, Helen [Ferrara.Helen@epa.gov];Hodges-Gott, Angela [Hodges-Gott.Angela@epa.gov];Holtz, Nicholas [Holtz.Nicholas@epa.gov];Hudson, Monique [Hudson.Monique@epa.gov];Hogan, Joanne [Hogan.Joanne@epa.gov];Kelley, Meghan [kelley.meghan@epa.gov];Killian, Brendan [Killian.Brendan@epa.gov];Laffoday, Katie [Laffoday.Kathryn@epa.gov];Jensen, Leann [Jensen.Leann@epa.gov];Liem, Lucille [Liem.Lucille@epa.gov];Maguire, Timothy [Maguire.Timothy@epa.gov];McPeak, Michael [McPeak.Michael@epa.gov];Meeks, Sarah [Meeks.Sarah@epa.gov];Cohen, Mitchell [cohen.mitchell@epa.gov];Spickofsky, Nancy [Spickofsky.Nancy@epa.gov];Oldham, Zoe [Oldham.Zoe@epa.gov];O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov];Patterson, Morganne [Patterson.Morganne@epa.gov];Versace, Paul [Versace.Paul@epa.gov];Lakhani, Puja [lakhani.puja@epa.gov];Quenemoen, Marianna [Quenemoen.Marianna@epa.gov];Cherry, Randall [Cherry.Randall@epa.gov];Rich, Stephanie [Rich.Stephanie@epa.gov];Rivera, Nina [Rivera.Nina@epa.gov];Leon, Sandra [Leon.Sandra@epa.gov];Mairs, Stephanie [Mairs.Stephanie@epa.gov];Westhoff, Steven [Westhoff.Steven@epa.gov];Wright, Garth [wright.garth@epa.gov] | Talbert, Stephanie [Talbert.Stephanie@epa.gov];Goerke, Ariadne [Goerke.Ariadne@epa.gov];Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | | Attorney Work Product; Attorney-Client; Deliberative Process | Attorney-Client; Attorney Work Product; Deliberative Process | ACP: Email from OGC HQ attorney to regional EPA attorneys providing legal advice on grant termination. AWP: Email from OGC HQ attorney to regional EPA attorneys anticipating certain arguments that will be raised in anticipated litigation. DPP: Internal emails between EPA attorneys discussing grants termination and weighing potential arguments to be used in the future. Nature of communication deliberative and predecisional in nature. Release would chill agency attorneys' ability to freely engage in legal discussions. |
| EPA_00291320 | EPA_00291326 | 2/25/2025 13:17 | Deletion of EPA-R-HQ-UCECA-25-01 | January, Elizabeth [January.Elizabeth@epa.gov] | January, Elizabeth [January.Elizabeth@epa.gov];Wise, Melissa [wise.melissa@epa.gov] | Lentz, Rachel [Lentz.Rachel@epa.gov] | | Deliberative Process | Deliberative Process | DPP: This document includes an email chain among EPA staff with deliberative and pre-decisional conversations on how the EO will affect NOFOs. There is an electroniic edit. This document is not a final agency decision. If this withheld document were to be released, Agency staff deliberations about removal of NOFOs, prior to final agency decision making, would be chilled. |
| EPA_00291347 | EPA_00291349 | 3/24/2025 13:14 | RE: EJ Grant Closeouts | | Wooden-Aguilar, Helena [Wooden-Aguilar.Helena@epa.gov] | | | Deliberative Process | Deliberative Process | DPP: Internal emails between EPA HR employees regarding what kind of staff would be necessary to execute grant closeouts. Predecisional and deliberative in nature. Release would chill ability of agency HR personnel to strategize effective deployment of human capital. |
| EPA_00291565 | EPA_00291567 | 3/26/2025 13:23 | RE: Review Notes of 4 Terminated Grants - R6 | Coogan, Daniel | Wise, Melissa [wise.melissa@epa.gov] | | | Deliberative Process | | Reveals how the decision was made |
| EPA_00291634 | EPA_00291638 | 3/27/2025 15:55 | FW: Follow-up on OGC Call re NADOHE v Trump and NY v Trump | Coogan, Daniel | Chung, Angela [Chung.Angela@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Email exchange seeking advice re: grant terminations post-injunction. |
| EPA_00291730 | EPA_00291734 | 3/28/2025 21:09 | RE: Follow-up on OGC Call re NADOHE v Trump and NY v Trump | Coogan, Daniel | Wise, Melissa [wise.melissa@epa.gov] | | | Attorney-Client | Attorney-Client | AC: Provides legal advice. |
| EPA_00291759 | EPA_00291761 | 3/19/2025 21:29 | RE: Woonasquatucket River Watershed Council v. Dept. of Agriculture | Coogan, Daniel | Wise, Melissa [wise.melissa@epa.gov];O'Sullivan, Caitlin [OSullivan.Caitlin@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | ACP: Privileged email communication between OGC Attorneys and Office of Mission Support leaders for the purposes of obtaining legal advice regarding legal strategy in Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.). AWP: Privileged email communication between OGC Attorneys and Office of Grants and Debarment Director created in preparation for litigation (Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.)). |
| EPA_00291762 | EPA_00291766 | 3/20/2025 13:49 | FW: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v Trump) | Coogan, Daniel | Wise, Melissa [wise.melissa@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client: Contains legal advice written by EPA OGC attorney regarding actions needed to be in compliance with preliminary injunction. Attorney Work Product: document prepared by EPA OGC attorney in the conduct of litigation containing legal advice regarding compliance with preliminary injunction. |
| EPA_00291767 | EPA_00291768 | | (2025.03.20 CRFLO) Termination_Memo_Template_3-14-25 (002).docx | | | | | Attorney-Client | Attorney-Client | Document contains legal counsel's advice and suggested edits and comments. |
| EPA_00291769 | EPA_00291773 | 3/21/2025 12:45 | Re: Woonasquatucket River Watershed Council v. Dept. of Agriculture | Coogan, Daniel [Coogan.Daniel@epa.gov] | Wise, Melissa [wise.melissa@epa.gov] | Askew, Wendel [Askew.Wendel@epa.gov] | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | ACP: Privileged email communication between OGC Attorneys and Office of Mission Support leaders for the purposes of obtaining legal advice regarding legal strategy in Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.). AWP: Privileged email communication between OGC Attorneys and Office of Grants and Debarment Director created in preparation for litigation (Woonasquatucket River Watershed Council, et al. v. Department of Agriculture et al., 25-cv-00097 (D.R.I.)). |
| EPA_00291978 | EPA_00291980 | 3/12/2025 21:22 | Re: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v Trump) | Coogan, Daniel [Coogan.Daniel@epa.gov] | Hublar, Jennifer [Hublar.Jennifer@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client: Contains legal advice written by EPA OGC attorney regarding actions needed to be compliance with preliminary injunction. Attorney Work Product: document prepared by EPA OGC attorney in the conduct of litigation containing legal advice regarding compliance with preliminary injunction. |
| EPA_00291981 | EPA_00291984 | 3/12/2025 23:48 | FW: Guidance Regarding Nationwide Injunction of Executive Orders Numbers 14,151 and 14,173 (NADOHE v Trump) | Coogan, Daniel | Wise, Melissa [wise.melissa@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Attorney-Client: Contains legal advice written by EPA OGC attorney regarding actions needed to be compliance with preliminary injunction. Contains question from EPA employee about the advice, and EPA OGC attorney's response clarifying the advice. Attorney Work Product: document prepared by EPA OGC attorney in the conduct of litigation containing legal advice regarding compliance with preliminary injunction. |
| EPA_00291985 | EPA_00291989 | 3/13/2025 14:51 | RE: Boston Globe inquiry - deadline this AM: Springfield MA EPA grants | Coogan, Daniel | Drinkard, Andrea [Drinkard.Andrea@epa.gov] | Vaseliou, Molly [Vaseliou.Molly@epa.gov] | | Attorney-Client | Attorney-Client | ACP: is disseminating legal advice from counsel to clients regarding litigation |
| EPA_00291990 | EPA_00291991 | 3/14/2025 12:11 | FW: NADOHE Injunction | Coogan, Daniel | Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov];Gulamali, Adil [Gulamali.Adil@epa.gov] | | | Attorney Work Product | Attorney Work Product | Contains content by attorney in anticipation of litigation |
| EPA_00291995 | EPA_00291997 | 3/14/2025 16:51 | RE: meeting follow-up | Coogan, Daniel | Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Discussions between attorney and client about litigation. |
| EPA_00291998 | EPA_00292001 | 3/14/2025 16:52 | RE: Guidance Regarding Preliminary Injunction of OMB Memo M-25-13 (now-rescinded) and funding pauses or freezes based on Executive Orders (NY v. Trump) | Coogan, Daniel | Sanders, Amy [Sanders.Amy@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | contains Legal interpretation of TRO in Rhode Island v. Trump |
| EPA_00292002 | EPA_00292004 | 3/14/2025 16:57 | FW: Guidance Regarding Preliminary Injunction of OMB Memo M-25-13 (now-rescinded) and funding pauses or freezes based on Executive Orders (NY v. Trump) | Coogan, Daniel | Patrick, Kimberly [Patrick.Kimberly@epa.gov] | | | Attorney Work Product; Attorney-Client | Attorney-Client; Attorney Work Product | Legal interpretation of TRO in Rhode Island v. Trump |
| EPA_00292005 | EPA_00292007 | | OMB PI Notice - Final.pdf | | | | | Attorney-Client | Attorney-Client | Contains legal advice from OMB to agency general counsels regarding impact court orders on executive order implementation. |
| EPA_00292078 | EPA_00292078 | | Other Grants_Week of March 10.pdf | | | | | Deliberative Process | | Awards were not yet public while the list was compiled. |
| EPA_00292096 | EPA_00292099 | 3/6/2025 23:37 | Re: Next Steps on Grant Actions - Feb 25 | Coogan, Daniel [Coogan.Daniel@epa.gov] | Voyles, Travis [voyles.travis@epa.gov] | Molina, Michael [molina.michael@epa.gov] | | Deliberative Process | Deliberative Process | DPP: Discussion between EPA OMS employees and Administrator's Office employees about next steps on cancelling and pausing IRA/IIJA grant programs. Contains some predecisional and deliberative material. Release would have a chilling effect on Agency decision-making processes, and on the Agency's ability to have internal discussions regarding grant termination. |
| EPA_00292100 | EPA_00292106 | 3/7/2025 13:51 | RE: Next Steps on Grant Actions - Feb 25 | Coogan, Daniel | Voyles, Travis [voyles.travis@epa.gov] | Molina, Michael [molina.michael@epa.gov] | | Deliberative Process | Deliberative Process | DP: Discussion between politicals about next steps on cancelling and pausing grants and the need to consult with OGC. This internal email contains predicational deliberations among staff in the Administrator's office about various options for OMS on cancelling and pausing grants. The email contains programmatic staff questions, concerns, and/or suggestions regarding grant cancellation and suspension before any approval from Agency decisionmakers. Release would also have a chilling effect on Agency decision-making processes, and on the Agency's ability to have internal discussions and consultations. |
| EPA_00292108 | EPA_00292120 | | CFDA_CGER_Process_Mar9.xlsx | | | | | Deliberative Process | | renders opinions, comments, or recommendations concerning the formulation of policy/other official decisions on behalf of an agency. comments in the margin |
| EPA_00292121 | EPA_00292125 | 3/10/2025 18:38 | RE: OLEM/ORCR Questions re: Executive Order Compliance Review | Coogan, Daniel | Legare, Pamela [Legare.Pamela@epa.gov];Rogers, JoanB [Rogers.JoanB@epa.gov] | | | Deliberative Process | | |
| EPA_00292126 | EPA_00292129 | 3/10/2025 18:37 | RE: OLEM/ORCR Questions re: Executive Order Compliance Review | Coogan, Daniel | Legare, Pamela [Legare.Pamela@epa.gov];Rogers, JoanB [Rogers.JoanB@epa.gov] | | | Deliberative Process | | Email reflecting internal pre-decisional deliberations regarding application of an internal funding review form. |
| EPA_00292155 | EPA_00292155 | | Other Grants_Week of March 10.pdf | | | | | Deliberative Process | | Awards were not yet public while the list was compiled. |
| EPA_00292183 | EPA_00292183 | | Other Grants_Week of March 10.pdf | | | | | Deliberative Process | | Awards were not yet public while the list was compiled. |
| EPA_00292188 | EPA_00292191 | 3/3/2025 13:11 | RE: Contract Issues | Coogan, Daniel | Wise, Melissa [wise.melissa@epa.gov] | | | Deliberative Process | Deliberative Process | DPP: Internal predecisional email reflecting deliberations among EPA personnel regarding whether to continue funding a given contract. The email does not reflect the final agency decision. The harm of disclosure would be a chilling effect on internal Agency contract discussions. |
| EPA_00292193 | EPA_00292243 | | FY25 Gen. Terms & Conditions_Feb.2025.docx | | | | | Deliberative Process | Attorney-Client; Deliberative Process | DPP: Internal draft EPA grant General Terms and Conditions reflecting proposed edits to comply with various Executive Orders. Predecisional and deliberative in nature. The document contains programmatic staff questions (to include request from client office for legal review), concerns, and suggestions regarding changes to the General T&Cs before any approval from Agency decision-makers and/or final T&Cs publicly posted. Release would chill agency's ability to freely draft proposed edits to general grant terms and conditions that are applicable to all EPA grants. ACP - Office of Mission Support requested OGC review of specific provision & seeking OGC advice on draft language |

The Sustainability Institute, et al. v. Trump, et al.
Civ. No. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2752
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
Civil No. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AND RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

**The Sustainability Institute, et al. v. Trump, et al.**
**CIVIL NO. 2:25-cv-2152-RMG**
**PRIVILEGE LOG - PROTECTED AS RESTRICTED**
**(As of May 6, 2025)**

| Begin Bates | End Bates | Sent Date/Time | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

**The Sustainability Institute, et al. v. Trump, et al.**
Civil No. 2:25-cv-2152
**PRIVILEGE LOG – PROTECTED AS RESTRICTED**
(As of May 6, 2025)

| Begin Bates | Sent Date/Time (JPD) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|

*[Table contents not legibly transcribable at available resolution]*

The Sustainability Institute, et al. v. Trump, et al.
Civil NO. 2:25-cv-2152
PRIVILEGE LOG - PROTECTED AND RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (APD) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152-RMG
PRIVILEGE LOG - PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
Civil. NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

The Sustainability Institute, et al. v. Trump, et al.
CIVIL NO. 2:25-cv-2152
PRIVILEGE LOG – PROTECTED AS RESTRICTED
(As of May 6, 2025)

| Begin Bates | End Bates | Sent Date/Time (UTC) | Title | Email From | Email To | Email CC | Email BCC | Initial Privilege Call | Privilege Call | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| The Sustainability Institute, *et al.*, | |
| Plaintiffs, | |
| v. | C.A. No. 2:25-2152-RMG |
| Donald J. Trump, in his official capacity as President of the United States, *et al.* | |
| Defendants, | |

**DECLARATION OF THE CHIEF OF STAFF
OFFICE OF THE SECRETARY OF AGRICULTURE
KAILEE BULLER**

I, Kailee Buller, declare under penalty of perjury the following:

1.      My name is Kailee Buller.  I make this declaration based upon the knowledge that I have acquired through the performance of my official duties.

2.      I am the Chief of Staff of the Secretary of the U.S. Department of Agriculture, within USDA's Office of the Secretary, and I am stationed in Washington, D.C.  As the Chief of Staff, my duties include, among other things: supporting the Secretary by managing her schedule and daily tasks; coordinating between departments and agencies to ensure effective communication and collaboration; facilitating decision-making processes by providing analysis and recommendations; supervising staff and ensuring smooth operation of the Secretary's office;

1

**Exhibit 7**

Pg: 59 of 217          Filed: 06/23/2025          Doc: 55-6          USCA4 Appeal: 25-1575

monitoring and reporting on progress toward departmental goals and objectives; representing the Secretary at meetings, events, and other functions as needed; conducting research and preparing reports on relevant issues and topics; serving as a liaison between the Secretary and stakeholders, including elected officials, community leaders, and the media; managing special projects and initiatives as assigned.

3.    In the exercise of my official duties, I have been made aware of this lawsuit.

4.    I submit this declaration in response to the Court's April 29, 2025, Order directing Defendants to supplement their privilege logs and documents to be submitted to the Court under seal and *ex parte* for *in camera* review.

5.    I am authorized to invoke the deliberative process privilege on behalf of USDA in connection with the emails and draft memorandums found at USDA000001 to USDA000101 produced in this lawsuit.

6.    In my official capacity as Chief of Staff of the Secretary of Agriculture, I have personally reviewed the complete, un-redacted documents, which the Agency filed (Dkt. No. 77) with the USDA's response to the Court's Order dated April 29, 2025 (Dkt. No. 146). Based on my review of the relevant documents, I have determined that the following documents submitted with and discussed within this Declaration were created as part of USDA's decision-making process and reflect the deliberative process undertaken by USDA in developing and implementing USDA policies on grant awards, as well as other policy deliberations, that occurred from February 17, 2025 to February 28, 2025.

7.    The documents found at USDA000001 to USDA000101 consist entirely of emails and draft memorandums as email attachments. To assist the Court in assessing the deliberative nature of the discussions these emails contain, I identify and describe them by category, with each

USCA4 Appeal: 25-1575     Doc: 55-6     Filed: 06/23/2025     Pg: 60 of 217

**J.A. 2813**

USCA4 Appeal: 25-1575    Doc: 55-6    Filed: 06/23/2025    Pg: 61 of 217

category identified by the applicable file name and subject of the emails. None of these documents reference the Plaintiffs. Instead, they reflect high-level interagency and interagency discussions between the USDA Office of the Secretary, the USDA Office of the General Counsel, and the Department of Governmental Efficiency on terminating grants. I understand that privileges other than the deliberative process privilege protect these documents from disclosure, including the attorney-client privilege and the attorney work product doctrine. These privileges, and their applicability to the documents described below, are beyond the scope of my declaration, which I provide solely to discuss the predecisional and deliberative nature of the discussions those documents contain.

8.  **Category 1 of documents with the file name "Re: Connecting."** Provided at USDA000001-USDA000002; USDA000006-USDA000007; and USDA000050-USDA000051. The discussions, recommendations, and opinions contained on these pages were generated before and in contemplation of the final decision by the Office of the Secretary to direct the agencies to terminate grants in accordance with departmental guidance. These discussions, recommendations, and opinions were prepared as part of a deliberative dialogue between the agency's Acting General Counsel and DOGE's attorneys regarding cost cutting and other initiatives at USDA, the appeals process and statutory required processes available to grantees challenging USDA's termination of grants, the process for terminating grants, and complying with current temporary restraining orders issued in litigation.

9.  Based on my review of the documents, I have determined that the disclosure of the discussions, recommendations, and opinions contained on these pages would inhibit the agency's decision-making process by exposing the candid thoughts and opinions of agency employees regarding their subjective views about the meaning of facts and the legal theories possibly

applicable to this case.  As such, in addition to other applicable privileges, I invoke the deliberative process privilege over these records.

10.    **Category 2 of documents with the file name "Re: Agency Priority Memo on Climate Grants."**  Provided at USDA000003-USDA000005; USDA000014-USDA000016; USDA000028-USDA000030;    USDA000043-USDA000045;    USDA000062-USDA000066; USDA000081-USDA000083; and USDA 000095-000097.  The discussions, recommendations, and opinions contained on these pages were generated before and in contemplation of the final decision by the Office of the Secretary to direct the agencies to terminate grants in accordance with departmental guidance.  These discussions, recommendations, and opinions were prepared as part of a deliberative dialogue between the agency's Acting General Counsel, USDA DOGE Team employees within the Office of Secretary, and DOGE's attorneys regarding draft bases for termination, a draft Secretary's memorandum, and draft termination directives.

11.    Based on my review of the documents, I have determined that the disclosure of the discussions, recommendations, and opinions contained on these pages would inhibit the agency's decision-making process by exposing the candid thoughts and opinions of agency employees regarding their subjective views about the meaning of facts and the legal theories possibly applicable to this case.  As such, in addition to other applicable privileges, I invoke the deliberative process privilege over these records.

12.    **Category 3 of documents with the file name "Re: Grants cancellations in process."**  Provided    at    USDA000011-USDA000013;    USDA000038-USDA000040; USDA000052-USDA000053;    USDA000067-USDA000068;    USDA000070-USDA000074; USDA000077-USDA000078; and USDA000088-USDA000094.  USDA000040 is a blank page and USDA000068 contains language from an email disclaimer.  The discussions,

recommendations, and opinions contained on these pages were generated before and in contemplation of the final decision by the Office of the Secretary to direct the agencies to terminate grants in accordance with departmental guidance. These discussions, recommendations, and opinions were prepared as part of a deliberative dialogue between the agency's Acting General Counsel, USDA DOGE Team employees within the Office of Secretary, the Office of the Secretary, the Office of the Chief Financial Officer, and DOGE's attorneys regarding draft termination letters, draft Secretary's memorandum, potential appeals issues, and federal register notice requirements.

13.    Based on my review of the documents, I have determined that the disclosure of the discussions, recommendations, and opinions contained on these pages would inhibit the agency's decision-making process by exposing the candid thoughts and opinions of agency employees regarding their subjective views about the meaning of facts and the legal theories possibly applicable to this case. As such, I invoke the deliberative process privilege over these records.

14.    **Category 4 of documents with the file name "Re: Grant Cancellation."** Provided at USDA000021-USDA000027; USDA000054-USDA000056; and USDA000058-USDA000059. USDA000059 contains language from an email disclaimer. The discussions, recommendations, and opinions contained on these pages were generated before and in contemplation of the final decision by the Office of the Secretary to direct the agencies to terminate grants in accordance with departmental guidance. These discussions, recommendations, and opinions were prepared as part of a deliberative dialogue between the agency's Acting General Counsel and DOGE's attorney regarding the agency's draft termination letter, draft Secretary's memorandum, and input on policy and legal justifications.

Pg: 63 of 217    Filed: 06/23/2025    Doc: 55-6    USCA4 Appeal: 25-1575

15.    Based on my review of the documents, I have determined that the disclosure of the discussions, recommendations, and opinions contained on these pages would inhibit the agency's decision-making process by exposing the candid thoughts and opinions of agency employees regarding their subjective views about the meaning of facts and the legal theories possibly applicable to this case.  As such, I invoke the deliberative process privilege over these records.

16.    **Category 5 of documents with the file name "FW: Privileged and Deliberative – Draft Termination Documents."**  Provided at USDA000031-USDA000037.  The discussions, recommendations, and opinions contained on these pages were generated before and in contemplation of the final decision by the Office of the Secretary to direct the agencies to terminate grants in accordance with departmental guidance.  These discussions, recommendations, and opinions were prepared as part of a deliberative dialogue between the agency's Office of General Counsel, USDA DOGE Team employees within the Office of Secretary, the Office of the Secretary, and DOGE's attorneys regarding draft termination letter, appeal language, the need for *Federal Register* documents, and draft Secretary's memorandum.

17.    Based on my review of the documents, I have determined that the disclosure of the discussions, recommendations, and opinions contained on these pages would inhibit the agency's decision-making process by exposing the candid thoughts and opinions of agency employees regarding their subjective views about the meaning of facts and the legal theories possibly applicable to this case.  As such, in addition to other applicable privileges, I invoke the deliberative process privilege over these records.

18.    **Category 6 of documents with the file name "Grant Termination."**  Provided at USDA000048-USDA000049; USDA000057; USDA000060-USDA000061; and USDA 000075-USDA000076. The discussions, recommendations, and opinions contained on these pages were

6

**J.A. 2817**

USCA4 Appeal: 25-1575    Doc: 55-6    Filed: 06/23/2025    Pg: 64 of 217

generated before and in contemplation of the final decision by the Office of the Secretary to direct the agencies to terminate grants in accordance with departmental guidance. These discussions, recommendations, and opinions were prepared as part of a deliberative dialogue between the agency's Office of General Counsel and DOGE's attorneys regarding the statutory appeals process associate with grant terminations.

19.     Based on my review of the documents, I have determined that the disclosure of the discussions, recommendations, and opinions contained on these pages would inhibit the agency's decision-making process by exposing the candid thoughts and opinions of agency employees regarding their subjective views about the meaning of facts and the legal theories possibly applicable to this case. As such, in addition to other applicable privileges, I invoke the deliberative process privilege over these records.

20.     **Category 8 of documents concerning drafts of Secretary's Memorandums.**

(a) *Secretary's Memorandum Prioritizing the Nation's Interests and Eliminating Waste, Fraud, and Abuse in Department Expenditures*. Provided at USDA 000008-USDA000010. This is a predecisional and deliberative draft memorandum shared between USDA OGC Attorney and DOGE attorney in emails discussing the draft memorandum and terminating grants, and it is marked "DRAFT Privileged & Confidential / Pre-Decisional / Attorney Work Product."

(b) *Secretary's Memorandum, Directive on Conservation and Natural Resources Priorities*. The final version of this document is available to the public. *See* SM 1078-003, Directive on Conservation and Natural Resources Priorities, March 13, 2025 (available at https://www.usda.gov/directives/sm-1078-003); *see also* Exhibit A (attached). The draft versions of this memorandum are referenced in emails between USDA's Acting General Counsel and

USCA4 Appeal: 25-1575     Doc: 55-6     Filed: 06/23/2025     Pg: 65 of 217

**J.A. 2818**

DOGE Attorneys were provided at USDA000017-USDA000020; USDA000046-USDA000047; USDA000084-USDA000087; and USDA000098-USDA000101.

21.     These drafts associated with the discussions, recommendations, and opinions contained on these pages were generated in mid to late February 2025, before and in contemplation of the final Secretary's Memorandum, *Directive on Conservation and Natural Resources Priorities*, issued on March 13, 2025.   These discussions, recommendations, and opinions associated with these drafts were prepared as part of a deliberative dialogue between the agency's Office of General Counsel and DOGE's attorneys regarding the content of the Secretary's memorandum.

22.     Based on my review of the documents, I have determined that the disclosure of these drafts associated with the discussions, recommendations, and opinions contained on these pages would inhibit the agency's decision-making process by exposing the candid thoughts and opinions of agency employees regarding their subjective views about the meaning of facts and the legal theories possibly applicable to this case. As such, in addition to other applicable privileges, I invoke the deliberative process privilege over these records.

23.     I make the statements herein on the basis of my own personal knowledge, my review of the agency records subject to the discovery requests at issue in this case, and my discussions with my USDA colleagues who are likewise familiar with the lawsuit and agency records at issue in this case.

Executed on the 6th day of May 2025.

*Kailee Buller*
Kailee Buller
Chief of Staff
USDA Office of the Secretary

8

**J.A. 2819**

| | | | | | | |
|---|---|---|---|---|---|---|
| colspan="7" | The Sustainability Institute, et al. v. Trump, et al.<br>CIVIL NO. 2:25-cv-2152<br>PRIVILEGE LOG - PROTECTED AS RESTRICTED<br>(As of May 6, 2025) |
| BEGINNING BATES NUMBER | ENDING BATES NUMBER | FILE NAME | Names of Parties | DESCRIPTION | Date(s) | PRIVILEGE REASON |
| USDA 000001 | USDA 000002 | Re: Connecting | Ralph Linden, Esq.; James Burnham, Esq.; Joshua Fox; Austin Raynor, Esq. | Predecisional and deliberative email discussions between USDA OGC attorney and DOGE Attorney for the purposes of preparing legal advice to the Agency on the process for terminating grants and appeals process, all in the context of reasonably anticipating litigation over the grant terminations. | 2/18/2025; 2/17/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000003 | USDA 000005 | Re: Agency Priority Memo on Climate Grants | James Burnham, Esq.; Ralph Linden, Esq.; Brian Mizoguchi, Esq.; Gavin Kliger; Michael Cole | Predecisional and deliberative email discussions between USDA OGC attorney, USDA, and/or DOGE Attorney for the purposes of providing legal advice to the agency on draft grant termination directives, all in the context of reasonably anticipating litigation over the grant terminations. | 2/27/2025; 2/21/2025; 2/20/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA 000006 | USDA 000007 | Re: Connecting | Ralph Linden, Esq.; James Burnham, Esq.; Joshua Fox; Austin Raynor, Esq. | Predecisional and deliberative email discussions between USDA OGC attorneys and DOGE Attorneys for the purposes of preparing legal advice on directives for terminating grants and the appeals process, marked "Privileged & Confidential / Pre-Decisional / Attorney Work Product," all in the context of reasonably anticipating litigation over the grant terminations. | 2/18/2025; 2/17/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000008 | USDA 000010 | Secretary's Memorandum Prioritizing the Nation's Interests and Eliminating Waste, Fraud, and Abuse in Department Expenditures | No name on the document, but it is referenced by Ralph Linden, Esq. and Jame Burnham, Esq. in email exchanges. | Predecisional and deliberative draft memorandum shared between USDA OGC Attorney and DOGE attorney for purposes of providing legal advice to the Agency on the draft memorandum and terminating grants. Marked "DRAFT Privileged & Confidential / Pre-Decisional / Attorney Work Product" and prepared in the context of reasonably anticipating litigation over the grant terminations. | 2/XX/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000011 | USDA 000013 | Re: Grants cancellations in process | Michael Cole; James Burnham, Esq.; Ralph Linden, Esq.; Lynn Moaney; Kailee Buller | Predecisional and deliberative email discussions between USDA OGC attorney, USDA, and DOGE Attorney for the purposes of providing legal advice on the process of terminating grants, appeals process, and statutory requirements. Prepared in the context of reasonably anticipating litigation over the grant terminations. | 02/21/2025; 02/18/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |

**Exhibit A**

| USDA 000014 | USDA 000016 | Re: Agency Priority Memo on Climate Grants | Gavin Kliger; Ralph Linden, Esq.; Brian Mizoguchi, Esq.; Michael Cole; James Burnham, Esq. | Predecisional and deliberative email discussions between USDA OGC attorneys, DOGE Attorney, and USDA for the purposes of providing legal advice to the Agency on a working draft of the Secretary's memorandum and directives for terminating grants. Prepared in the context of reasonably anticipating litigation over the grant terminations. | 02/28/2025; 02/27/2025; 02/21/2025; 02/20/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA000017 | USDA000020 | Secretary's Memorandum, Directive on Conservation and Natural Resources Priorities | No name on the document, but it is referenced by Ralph Linden, Esq. and Jame Burnham, Esq. in email exchanges. | Predecisional and deliberative draft memorandum shared between USDA OGC Attorney and DOGE attorney and the Agency for purpeoses of providing legal advice to the Agency on the draft memorandum and terminating grants. Prepared in the context of reasonably anticipating litigation over the grant terminations. | 02/XX/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000021 | USDA 000027 | RE: Grant Cancellation | James Burnham, Esq.; Ralph Linden, Esq. | Predecisional and deliberative email discussions between DOGE Attorney and USDA attorney for the purposes of providing legal advice on legal determinations and drafts of termination letter and Secretary's Memo. Prepared in the context of reasonably anticipating litigation over the grant terminations. | 2/20/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000028 | USDA 000030 | Re: Agency Priority Memo on Climate Grants | James Burnham, Esq.; Ralph Linden, Esq.; Brian Mizoguchi, Esq.; Gavin Kliger; Michael Cole | Predecisional and deliberative email discussions between USDA OGC attorneys, DOGE Attorney, and USDA for the purposes of providing legal advice to the Agency on a working draft of the Secretary's memorandum and directives for terminating grants. Prepared in the context of reasonably anticipating litigation over the grant terminations. | 2/27/2025; 2/21/2025; 2/20/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA 000031 | USDA 000037 | FW: Privileged and Deliberative - Draft Termination Documents | Ralph Linden, Esq.; James Burnham, Esq.; Joshua Fox; Austin Raynor; Michael Cole; Gaving Kliger; Brian Mizoguchi, Esq.; Kailee Buller | Predecisional and deliberative email discussions between and attachments between USDA OGC attorneys, USDA, and DOGE Attorney for purposes of providing legal advice to the Agency on draft grant termination documents and appeals. Prepared in the context of reasonably anticipating litigation over the grant terminations. | 2/19/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA 000038 | USDA 000040 | Grant cancellations in process | Michael Cole; James Burnham, Esq.; Ralph Linden, Esq.; Lynn Moaney; Kailee Buller | Predecisional and deliberative email discussions between USDA OGC attorney, USDA, and DOGE Attorney for the purposes of providing legal advice on the process of terminating grants, appeals process, and statutory requirements. Prepared in the context of reasonably anticipating litigation over the grant terminations. | 02/21/2025; 02/18/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |

| | | | | | | |
|---|---|---|---|---|---|---|
| USDA 000041 | USDA 000042 | Re: Court orders re: funding pause | Ralph Linden, Esq.; James Burnham, Esq.; Brian Mizoguchi, Esq.; Joseph Borson, Esq.; Brigham Bowen, Esq.; Steven Brammer, Esq.; Carrie Ricci, Esq.; Daniel Schwei, Esq. | Predecisional and deliberative emails discussions between USDA OGC attorneys, DOGE Attorney, and DOJ for purposes of providing legal advice to the Agency on a court order enjoining USDA on funding pauses. Prepared in the reasonable anticipation of litigation over the terminations. | 2/27/2025 | Attorney Work Product |
| USDA 000043 | USDA 000045 | Re: Agency Priority Memo on Climate Grants | James Burnham, Esq.; Ralph Linden, Esq.; Brian Mizoguchi, Esq.; Gavin Kliger; Michael Cole | Predecisional and deliberative emails discussions between USDA OGC attorneys, DOGE Attorney, and USDA for the purposes of providing legal advice to the Agency on a working draft of the Secretary's memorandum and directives for terminating grants. Prepared in the reasonable anticipation of litigation over the terminations. | 2/27/2025; 2/21/2025; 2/20/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA 000046 | USDA000047 | Secretary's Memorandum, Directive on Conservation and Natural Resources Priorities | No name on the document, but it is referenced by Ralph Linden, Esq. and Jame Burnham, Esq. in email exchanges. | Predecisional and deliberative draft memorandum shared between USDA OGC Attorney and DOGE attorney and the Agency for purposes of providing legal advice to the Agency on the draft memorandum and terminating grants. Prepared in the reasonable anticipation of litigation over the terminations. | 02/XX/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000048 | USDA 000049 | Grant Termination | Ralph Linden, Esq.; James Burnham, Esq.; Joshua Fox; Austin Raynor; | Predecisional and deliberative email discussions between USDA OGC attorney and DOGE Attorneys for purposes of providing legal advice to the Agency on the process for terminating grants and resulting appeals process. Prepared in the reasonable anticipation of litigation over the terminations. | 02/19/2025; 02/18/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000050 | USDA 000051 | Re: Connecting | Ralph Linden, Esq.; James Burnham, Esq. | Predecisional and deliberative email discussions between USDA OGC attorney and DOGE Attorney for the purposes of preparing legal advice to the Agency on the process for terminating grants and appeals process. Prepared in the reasonable anticipation of litigation over the terminations. | 2/17/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000052 | USDA 000053 | Re: Grant cancellations in process | Michael Cole; James Burnham, Esq.; Ralph Linden, Esq.; Lynn Moaney; Kailee Buller | Predecisional and deliberative email discussions between USDA OGC attorney, USDA, and DOGE Attorney for the purposes of providing legal advice on the process of terminating grants, appeals process, and statutory requirements. Prepared in the reasonable anticipation of litigation over the terminations. | 02/21/2025; 02/18/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |

| | | | | | | |
|---|---|---|---|---|---|---|
| USDA 000054 | USDA 000056 | Re: Grant Cancellation | James Burnham, Esq.; Ralph Linden, Esq. | Predecisional and deliberative email discussions between DOGE Attorney and USDA attorney for the purposes of providing legal advice to the Agency on legal determinations and drafts of termination letter and Secretary's Memo. Prepared in the reasonable anticipation of litigation over the terminations. | 2/20/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000057 | USDA 000057 | Grant termination | Ralph Linden, Esq.; James Burnham, Esq. | Predecisional and deliberative email discussions between USDA OGC attorney and DOGE Attorney for purposes of providing legal advice to the Agency on the process for terminating grants and the appeals process. Prepared in the reasonable anticipation of litigation over the terminations. | 2/19/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000058 | USDA 000059 | Re: Grant Cancellation | James Burnham, Esq.; Ralph Linden, Esq. | Predecisional and deliberative email discussions between DOGE Attorney and USDA attorney for the purposes of providing legal advice to the Agency on legal determinations and drafts of termination letter and Secretary's Memo. Prepared in the reasonable anticipation of litigation over the terminations. | 2/20/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000060 | USDA 000061 | Re: Grant Termination | Ralph Linden, Esq.; James Burnham, Esq.; Joshua Fox; Austin Raynor | Predecisional and deliberative email discussions between USDA OGC attorneys and DOGE Attorneys for the purposes of providing legal advice to the Agency about terminating grants and the appeals process, all in the context of reasonably anticipating litigation over the terminations. | 02/19/2025; 02/18/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000062 | USDA 000064 | Re: Agency Priority Memo on Climate Grants | James Burnham, Esq.; Ralph Linden, Esq.; Brian Mizoguchi, Esq.; Gavin Kliger; Michael Cole | Predecisional and deliberative email discussions between USDA OGC attorneys, DOGE Attorney, and USDA for the purposes of providing legal advice to the Agency on a working draft of the Secretary's memorandum and directives for terminating grants. Prepared in the reasonable anticipation of litigation over the terminations. | 2/27/2025; 2/21/2025; 2/20/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA 000065 | USDA 000066 | Re: Agency Priority Memo on Climate Grants | James Burnham, Esq.; Ralph Linden, Esq.; Brian Mizoguchi, Esq.; Gavin Kliger; Michael Cole | Predecisional and deliberative email discussions between USDA OGC attorneys, DOGE Attorney, and USDA for the purposes of providing legal advice to the Agency on a working draft of the Secretary's memorandum and directives for terminating grants. Prepared in the reasonable anticipation of litigation over the terminations. | 2/27/2025; 2/21/2025; 2/20/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |

| USDA 000067 | USDA 000068 | Re: Grant cancellations in process | Michael Cole; James Burnham, Esq.; Ralph Linden, Esq.; Lynn Moaney; Kailee Buller | Predecisional and deliberative email discussions between USDA OGC attorney, USDA, and DOGE Attorney for the purposes of providing legal advice to the Agency on the process of terminating grants, appeals process, and statutory requirements, all in the context of reasonably anticipating litigation over the terminations. | 2/18/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
|---|---|---|---|---|---|---|
| USDA 000069 | USDA 000069 | Connecting | Ralph Linden, Esq.; James Burnham, Esq. | Predecisional and deliberative email discussions between USDA OGC attorney and DOGE Attorney setting up time to connect on cost-cutting and other initiatives. This meeting was set up for the purposes of providing legal advice to the agency on terminating grants and was conducted in the context of reasonably anticipating litigation. | 2/17/2025 | Released upon further review and analyses. |
| USDA 000070 | USDA 000074 | Re: Grant cancellations in process | Michael Cole; James Burnham, Esq.; Ralph Linden, Esq.; Lynn Moaney; Kailee Buller | Predecisional and deliberative email discussions between USDA OGC attorney, USDA, and DOGE Attorney for the purposes of providing legal advice to the Agency on the process of terminating grants, appeals process, and statutory requirements, all in the context of reasonably anticipating litigation over the terminations. | 02/18/2025; 02/21/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA 000075 | USDA 000076 | Re: Grant Termination | Ralph Linden, Esq.; James Burnham, Esq.; Joshua Fox; Austin Raynor, Esq. | Predecisional and deliberative email discussions between USDA OGC attorneys and DOGE Attorneys for the purposes of providing legal advice to the Agency about terminating grants and the appeals process, all in the context of reasonably anticipating litigation over the terminations. | 02/19/2025 02/18/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000077 | USDA 000078 | Re: Grant cancellations in process | Michael Cole; James Burnham, Esq.; Ralph Linden, Esq.; Lynn Moaney; Kailee Buller | Predecisional and deliberative email discussions between USDA OGC attorney, USDA, and DOGE Attorney for the purposes of providing legal advice to the Agency on the process of terminating grants, appeals process, and statutory requirements, all in the context of reasonably anticipating litigation over the terminations. | 2/18/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA 000079 | USDA 000080 | Court orders re: funding pause | Ralph Linden, Esq.; James Burnham, Esq.; Brian Mizoguchi, Esq.; Joseph Borson, Esq.; Brigham Bowen, Esq.; Steven Brammer, Esq.; Carrie Ricci, Esq.; Daniel Schwei, Esq. | Predecisional and deliberative email discussions between USDA OGC attorneys, DOGE Attorney, and DOJ for purposes of providing legal advice to the Agency on a court order enjoining USDA on funding pauses, all in the context of reasonably anticipating litigation over the terminations. | 2/27/2025 | Attorney Work Product |

| | | | | | | |
|---|---|---|---|---|---|---|
| USDA 000081 | USDA 000083 | Agency Priority Memo on Climate Grants | James Burnham, Esq.; Ralph Linden, Esq.; Brian Mizoguchi, Esq.; Gavin Kliger; Michael Cole | Predecisional and deliberative email discussions between USDA OGC attorneys, DOGE Attorney, and USDA for the purposes of providing legal advice to the Agency on a working draft of the Secretary's memorandum and directives for terminating grants, all in the context of reasonable anticipation of litigation over the terminations. | 2/27/2025; 2/21/2025; 2/20/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA000084 | USDA 000087 | Secretary's Memorandum, Directive on Conservation and Natural Resources Priorities | No names on the documents, but it is referenced by Ralph Linden, Esq. and Jame Burnham, Esq. in email exchanges. | Predecisional deliberative draft memorandum shared between USDA OGC Attorney and DOGE attorney and the Agency for purposes of providing legal advice to the Agency on the draft memorandum and terminating grants, all in the context of reasonably anticipating litigation over the terminations. | 02/XX/2025 | Deliberative Process Privilege; Attorney Work Product |
| USDA 000088 | USDA 000090 | Re: Grant cancellations in process | Michael Cole; James Burnham, Esq.; Ralph Linden, Esq.; Lynn Moaney; Kailee Buller | Predecisional and deliberative email discussions between USDA OGC attorney, USDA, and DOGE Attorney for the purposes of providing legal advice to the Agency on the process of terminating grants, appeals process, and statutory requirements, all in the context of reasonably anticpiating litigation over the terminations. | 02/21/2025; 02/18/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA 000091 | USDA 000094 | Re: Grant cancellations in process | Michael Cole; James Burnham, Esq.; Ralph Linden, Esq.; Lynn Moaney; Kailee Buller | Predecisional and deliberative email discussions between USDA OGC attorney, USDA, and DOGE Attorney for the purposes of providing legal advice to the Agency on the process of terminating grants, appeals process, and statutory requirements, all in the context of reasonably anticpiating litigation over the terminations. | 02/18/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA 000095 | USDA 000097 | Re: Agency Priority Memo on Climate Grants | James Burnham, Esq.; Ralph Linden, Esq.; Brian Mizoguchi, Esq.; Gavin Kliger; Michael Cole; Jeremy Lichtman; moghaddassi.aram.m@dol.gov | Predecisional and deliberative email discussions between USDA OGC attorneys, DOGE Attorney, and USDA for the purposes of providing legal advice to the Agency on a working draft of the Secretary's memorandum and directives for terminating grants, all in the context of reasonable anticipation of litigation over the terminations. | 2/28/2025; 02/27/2025; 02/21/2025; 02/20/2025 | Deliberative Process Privilege; Attorney Client Privilege; Attorney Work Product |
| USDA000098 | USDA000101 | Secretary's Memorandum, Directive on Conservation and Natural Resources Priorities | No names on the documents, but it is referenced by Ralph Linden, Esq. and Jame Burnham, Esq. in email exchanges. | Predecisional deliberative draft memorandum shared between USDA OGC Attorney and DOGE attorney and the Agency for purposes of providing legal advice to the Agency on the draft memorandum and terminating grants, all in the context of reasonably anticipating litigation over the terminations. | 02/XX/2025 | Deliberative Process Privilege; Attorney Work Product |

| | Granting Agency | Grant Number | Project Name / Notes | Grant Program | Grant Recipient | Decl. Cite | Grant agreement under review; Presently Paused; Accessible to Grantees; Terminated (As of 4/22/2025) | Relief Requested |
|---|---|---|---|---|---|---|---|---|
| 1 | DOE | DE-SE0001546 | Assistance for Latest and Zero Building<br>Energy Code Adoption | Assistance for Adoption of the Latest and Zero Building Energy Codes | City of Baltimore | Baltimore Decl., Ex. 14-C | Award No. DE-SE0001546 is a conditional award. Therefore, the grant funds have never been - and are not presently - accessible to the grantee. Per the terms of the award, "the availability of funds to the Recipient for payment of costs incurred by the Recipient is conditioned upon the Grants Officer's review and approval of the Recipient's application and the completion of negotiations." | This Court should direct DOE to finalize Baltimore's grant process, including the Statement of Project Objectives, and release its hold on the grant funding. |
| 2 | EPA | 5F-03D33625-0 | Youth Empowerment Strategies 4 Environmental Justice | Environmental and Climate Justice Block Grant – Community Change Grant | Earth Island Institute | Earth Island Decl., Ex. 8- D | Termination in Progress* | If the grant is slated for termination, it should remain active.<br><br>If the grant has since been terminated, it should be reinstated. |
| 3 | EPA | 3D30824 | Community Change Grant | Environmental and Climate Justice Block Grant - Community Change Grant | Sustainability Institute | Sustainability Institute Decl., Ex. 1- B | Termination in Progress* | If the grant is slated for termination, it should remain active.<br><br>If the grant has since been terminated, it should be reinstated. |
| 4 | EPA | 97T28301 | Inflation Reduction Act - Environmental and Climate Justice | Environmental and Climate Justice Block Grant - Community Change Grant | Leadership Counsel for Justice and Accountability | Leadership Counsel Decl., Ex. 9- A | Termination in Progress* | If the grant is slated for termination, it should remain active.<br><br>If the grant has since been terminated, it should be reinstated. |
| 5 | EPA | 96272300 | Uplifting Bronx Voices for Climate Change Resilience | Environmental and Climate Justice Block Grant - Community Change Grant | Bronx River Alliance | Bronx River Decl., Ex. 5- B | Termination in Progress* | If the grant is slated for termination, it should remain active.<br><br>If the grant has since been terminated, it should be reinstated. |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6 | EPA | 97T28901 | Huliau o Wai'anae: Turning Points for a Sustainable Future. | Environmental and Climate Justice Block Grant - Community Change Grant | Earth Island Institute | Earth Island Decl., Ex. 8- B | Termination in Progress* | If the grant is slated for termination, it should remain active.<br><br>If the grant has since been terminated, it should be reinstated. |
| 7 | EPA | 00A01479 | Elm City Climate Collaborative | Environmental and Climate Justice Block Grant - Community Change Grant | City of New Haven | New Haven Decl., Ex. 18-C | Termination in Progress* | If the grant is slated for termination, it should remain active.<br><br>If the grant has since been terminated, it should be reinstated. |
| 8 | EPA | 0E+00000 | Climate Resilience Starts at Home: Growing Energy Efficiency, Indoor Air Quality, and Green Jobs in Madison and Fitchburg, Wisconsin | Environmental and Climate Justice Block Grant - Community Change Grant | City of Madison | Madison Decl., Ex. 16-A | Closed | If the grant is slated for termination, it should remain active.<br><br>If the grant has since been terminated, it should be reinstated. |
| 9 | EPA | 00A01441 | Electrify New Haven | Environmental and Climate Justice Block Grant - Government to Government Grant | City of New Haven | New Haven Decl., Ex. 18-A | Terminated | Reinstate grant. |
| 10 | EPA | 95336801 | DPW YH20+ Expansion II | Environmental and Climate Justice Block Grant - Government to Government Grant | City of Baltimore | Baltimore Decl., Exs. 14-C, 14-D | Terminated | Reinstate grant. |
| 11 | EPA | 03D03424 | North Mecklenburg Air Monitoring Network | Environmental Justice Collaborative Problem-Solving | CleanAIRE NC | CleanAIRE NC Decl., Ex. 6-B | Terminated | Reinstate grant. |
| 12 | EPA | 96229424 | Partnership for Urban Waterways in Bronx and Lower Westchester Counties, New York | Environmental Justice Collaborative Problem-Solving | Bronx River Alliance | Bronx River Decl., Ex. 5- D | Terminated | Reinstate grant. |

**J.A. 2827**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 13 | EPA | 00A01475 | Union Station Area Thermal Energy Network | Climate Pollution Reduction Grant Program | City of New Haven | New Haven Decl., Ex. 18-B | Accessible to grantees | Continue to prevent Defendants from freezing, disrupting or terminating grant. |
| 14 | EPA | 95335901 | Bowley's Lane Composing Facility | Solid Waste Infrastructure for Recycling Grant Program | City of Baltimore | Baltimore Decl., Ex. 14-A | Accessible to grantees | Continue to prevent Defendants from freezing, disrupting or terminating grant. |
| 15 | EPA / NFWF | 0602.24.082555 | Accelerating Clean Water and Conservation Outcomes in Shenandoah Valley (VA) | Innovative Nutrient and Sediment Reduction Grants Program | Alliance for the Shenandoah Valley | Alliance for the Shenandoah Decl., Ex. 4- E | Accessible to grantees | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 16 | USDA | AM22FFWPA0013 | Collaborative Farm Worker and Meatpacking Worker 14-State COVID Relief Fund Project | Agricultural Marketing Service Farm and Food Worker Relief | Pasa | Pasa Decl., Ex. 12-B | Presently paused because previously identified on DEIA list. Payments made through Jan. 19, 2025. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 17 | USDA | 2022-70416-37195 | Subaward with National Young Farmers Coalition | American Rescue Plan Technical Assistance Investment Program | RAFI-USA | RAFI-USA Decl., Ex. 13-H | Accessible to Grantees | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 18 | USDA | NR225F48XXXXC002 | Organic Technical Staffing Assistance | Conservation Stewardship Program: Organic Technical Assistance Grant | Marbleseed | Marbleseed Decl., Ex. 10-C | Accessible to Grantees. Most recent payment completed on 4/11/25. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 19 | USDA | NR223A750003C062 | Subaward with RAFI-USA | Conservation Technical Assistance Cooperative Agreement | Alliance for Agriculture | Alliance for Agriculture Decl., Ex. 3- D | Agreement closeout completed. Award no longer active as of 11/14/24. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 20 | USDA | FSA24CPT0014403 | Distressed Borrower Technical Assistance | Distressed Borrower Assistance Network Program | RAFI-USA | RAFI-USA, Decl. Ex. 13- D | Payment was paused due to IRA funding, but was released on Friday pursuant to *Woonasquatucket* injunction and the payments are in process. There are corrections that are pending on the payment requests. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |

**J.A. 2828**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 21 | USDA | NR242D37XXXX G002 | In Pennsylvania to help improve grazing success and associated economic, environmental, and social co-benefits, including animal health, soil health, carbon sequestration, cost savings, water quality | Environmental Quality Incentives Program – Conservation Innovation Grants | Pasa | Pasa Decl., Ex. 12-D | Accessible to Grantees. Payment completed 4/14 | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 22 | USDA | NR243A750003C 062 | Expanding RAFI-USA's Conservation Resources for Resilient Farms Project | Equity in Conservation Outreach Cooperative Agreement | RAFI-USA | RAFI-USA Decl. Ex. 13- B | Presently paused because previously identified on DEIA list. Payments made through Jan. 19, 2025. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 23 | USDA | NR243A750003 C045 | Deliver outreach and education programming to increase awareness of and participation in NRCS programs, services and leadership opportunities in agriculture and natural resource conservation in Kentucky. | Equity in Conservation Outreach Cooperative Agreement | Organic Association of Kentucky (OAK) | OAK Decl., Ex. 11-B | Presently paused because previously identified on DEIA list. Payments made through Jan. 19, 2025. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 24 | USDA | FSA24GRA00115 86 | Increase Land, Capital, and Market Access for Underserved Farmers on a Mid-size National Landscape using New Model, Agrarian Commons | Increasing Land, Capital, and Market Access Program | Agrarian Trust | Agrarian Trust Decl., Ex. 2-A | Payment was paused due to IRA funding, but was released on Friday pursuant to Woonasquatucket injunction and the payments are in process. There are corrections that are pending on the payment requests. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 25 | USDA | FSA24CPT00137 06 | Gaining New Ground | Increasing Land, Capital, and Market Access Program | RAFI-USA | RAFI-USA Decl. Ex. 13- F | Payment was paused due to IRA funding, but was released on Friday pursuant to Woonasquatucket injunction and the payments are in process. There are corrections that are pending on the payment requests. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 26 | USDA | FSA23CPT0013706 | Gaining New Ground - Subaward with RAFI-USA | Increasing Land, Capital, and Market Access Program | Alliance for Agriculture | Alliance for Agriculture Decl., Ex. 3- B. | Payment was paused due to IRA funding, but was released on Friday pursuant to Woonasquatucket injunction and the payments are in process. There are corrections that are pending on the payment requests. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 27 | USDA | NR233A750004G045 | Expands markets for climate-smart dairy, beef and poultry industry in DE, NC, NJ, NY, MD, OH, PA, SC, TN, VA and WV and supports the implementation and monitoring of climatesmart practices. | Partnerships for Climate-Smart Commodities Program | Conservation Innovation Fund | Cons. Innovation Fund Decl., Ex. 7-A | Recipient notified award will be terminated. Payment will be processed for expenses up through the date of notice. | Reinstate grant. |
| 28 | USDA | NR233A750004G045 | Subaward with Conservation Innovation Fund | Partnerships for Climate-Smart Commodities Program | Alliance for the Shenandoah Valley | Alliance for the Shenandoah Decl., Exs. 4-A, 4-B | Recipient notified award will be terminated. Payment will be processed for expenses up through the date of notice. | Reinstate grant. |
| 29 | USDA | NR243A750004G010 | Expands climate-smart wheat, grain, specialty and organic crop markets in IA, IL, IN, KS, KY, MI, MN, MO, ND, NE, OH, SD, TN, WI and supports farmer CS practice implementation and monitoring. | Partnerships for Climate-Smart Commodities Program | Marbleseed | Marbleseed Decl., Ex. 10-B | Recipient notified award will be terminated. Payment will be processed for expenses up through the date of notice. | Reinstate grant. |
| 30 | USDA | NR233A750004G025 | Expands markets in the Eastern US for climate-smart dairy, grain, livestock, organic and specialty crops; supports farmer and rancher climate-smart practice implementation and monitoring | Partnerships for Climate-Smart Commodities Program | Pasa | Pasa Decl., Ex. 12-A | Recipient notified award will be terminated. Payment will be processed for expenses up through the date of notice. | Reinstate grant. |
| 31 | USDA | NR233A750004G092 | Expand markets for climate-Smart grass-fed lamb, grass fed beef, corn, soybeans, small grains, produce, dairy, agroforestry and hemp in Kentucky; supports socially disadvantaged farmers | Partnerships for Climate-Smart Commodities Program | Organic Association of Kentucky (OAK) | OAK Decl., Ex.11-D | Recipient notified award will be terminated. Payment will be processed for expenses up through the date of notice. | Reinstate grant. |
| 32 | USDA | NR233A750004G080 | Subaward with A Greener World (AGW) | Partnerships for Climate-Smart Commodities Program | RAFI-USA | RAFI Decl., Ex. 13-J | Recipient notified award will be terminated. Payment will be processed for expenses up through the date of notice. | Reinstate grant. |

**J.A. 2830**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 33 | USDA | FSA23CPT0013667 | Resources for Resilient Farms | Rural Development Policy Cooperative Agreement | RAFI-USA | RAFI-USA Decl., Ex. | Grant manager working with program manager on process for unfreezing the award. | Continue to prevent Defendants from freezing, disrupting, or terminating grant |
| 34 | USDA | FSA23CPT0012856 | Collaborative Approaches for Impact for Philadelphia Urban and Innovative Agriculture | Urban Agriculture and Innovative Production Grant | Pasa | Pasa Decl., Ex. 12-C | Accessible to Grantees. Payment submitted on 4/7/25 and staff are reviewing/processing. | Continue to prevent Defendants from freezing, disrupting, or terminating grant |
| 35 | USDA | 24-DG-11052021-228 | Ready, Set, Grow San Diego | Urban and Community Forestry Grant | City of San Diego | San Diego Decl., Ex. 20-A | Accessible to Grantees. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 36 | USDA | 23-DG-11094200-363 | Subaward of Ohio Department of Natural Resources | Urban and Community Forestry Grant | City of Columbus | Columbus Decl., Ex. 15-A | Accessible to Grantees. | Continue to prevent Defendants from freezing, disrupting, or terminating grant. |
| 37 | USDOT | N/A | East Nashville Spokes | Active Transportation Infrastructure Investment Program | City of Nashville | Nashville Decl , Ex. 17 | No grant agreement completed. Grant agreement under review. | Continue finalizing the grant agreement and continue the grant process. |
| 38 | USDOT | N/A | Electrify Music City | Charging and Fueling Infrastructure Grant Program | City of Nashville | Nashville Decl , Ex. 17 | No grant agreement completed. Grant agreement under review. | Continue finalizing the grant agreement and continue the grant process. |

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF SOUTH CAROLINA
                    CHARLESTON DIVISION


THE SUSTAINABILITY INSTITUTE, )
et al,                        )
             Plaintiffs,      )     April 23, 2025
                              )
        -versus-              )     2:25-2152
                              )
                              )     Charleston, SC
DONALD J. TRUMP,              )
et al,                        )
             Defendants.      )


                TRANSCRIPT OF MOTION HEARING

           BEFORE THE HONORABLE RICHARD M. GERGEL
           UNITED STATES DISTRICT JUDGE, presiding


A P P E A R A N C E S :

For the Plaintiffs:   KIMBERLY C. HUNTER, ESQ.
                      Southern Environmental Law Center
                      136 East Rosemary Street, Suite 500
                      Chapel Hill, NC 27514

                      JONATHAN B. MILLER, ESQ.
                      Public Rights Project
                      490 43rd Street, Unit 115
                      Oakland, CA 94609

For the Defendants:   TODD S. TIMMONS, AUSA
                      LEE E. BERLINSKY, AUSA
                      US Attorney's Office
                      PO Box 978
                      Charleston, SC 29402

Court Reporter:       KAREN E. MARTIN, RMR, CRR
                      PO Box 835
                      Charleston, SC 29402


     Proceedings reported by stenographic court reporter.
     Transcript produced with computer-aided transcription
                         software.
```

**J.A. 2832**

```
 1              THE COURT:  Okay.  So other than that,
 2    Ms. Hunter, it appears that there are a number of your
 3    clients who have had their grants restored; is that
 4    correct?
 5              MS. HUNTER:  Well, these clients have had their
 6    grants turned on, turned off, turned on, turned off.
 7              THE COURT:  I'm going to enter an order, by the
 8    way, that orders none of those be frozen again or
 9    terminated without further order of this Court.  So we're
10    going to stop this yo-yo situation.
11              MS. HUNTER:  Thank you, Your Honor.  So yes, as
12    the current status as far as I can tell as of 9 a.m. this
13    morning, otherwise I think this is accurate.
14              THE COURT:  Moving target here.
15              Okay.  Mr. Timmons, let me ask you first about
16    these terminated cases, Number 9 through 12.  Let me ask
17    you about those, first.  And we'll start with the City of
18    New Haven.  Why is that -- why is that -- why was that
19    grant terminated?
20              MR. TIMMONS:  It's not consistent with agency
21    priorities.
22              THE COURT:  Was it originally frozen like the
23    others?
24              MR. TIMMONS:  I don't have that information in
25    front of me.
```

1    priority of this administration?

2          MR. TIMMONS:  I don't have that information in

3    front of me.  So I would have to rest on the decisions

4    that the agency determined.

5          THE COURT:  No, I'm not going to do that.  I

6    asked -- you know, I asked for all documents relating to

7    freezing.

8          MR. TIMMONS:  Right.

9          THE COURT:  And I got an ocean of documents.

10   Thousands.  And I can't say I have personally examined

11   every one of them.  Have you examined every one of them?

12         MR. TIMMONS:  No, Your Honor.

13         THE COURT:  I don't know of anyone who could.

14   But my clerks have been very diligent.  They spent a lot

15   of time this week looking at them.  We couldn't find one

16   referring to any individual grantee.  Did I miss

17   something?

18         MR. TIMMONS:  I'm sure you didn't, Your Honor.

19         THE COURT:  So that tends to suggest this was an

20   en masse freeze without individual consideration of the

21   grants.  Does that seem like a fair reason?

22         MR. TIMMONS:  I would say that at the pause was,

23   as you said, it was a broad pause base on funding.  I do

24   think the terminations were done based on a review of the

25   grants.

1    THE COURT:  And I think that's -- I think that's

2    fine.  But you haven't given me any documents to show me

3    that, have you?

4         MR. TIMMONS:  I don't have all the documents

5    that we would intend to present in this case.

6         THE COURT:  I'm going to give you a chance to

7    present them because I'm going to have you present them in

8    the next week to me on every one of these grants which

9    have been terminated and which have been -- are

10   terminations in progress.  I want to see the underlying

11   reasoning.  You understand there's a problem if the action

12   is based on post hac reasoning.  Do you understand that?

13        MR. TIMMONS:  I do.

14        THE COURT:  So I want to see what was the

15   reasoning behind it.  What was the -- what was the stated

16   purpose.  And you're telling me they made an individual

17   determination of why that grant should be terminated?

18   They've made an individualized determination, are you

19   telling me that?

20        MR. TIMMONS:  I think the decision making in

21   this case is always going to be it's inconsistent with

22   priorities, and that it -- it's going to be -- it's going

23   to be the same reason for all of them, yes, Your Honor.  I

24   mean, it's not going to be --

25        THE COURT:  But that's not -- and what reason is

 1          MR. TIMMONS:  Yes, Your Honor.

 2          THE COURT:  I don't think plaintiffs would

 3    disagree with that.  That would be completely within the

 4    discretion.  But your letter -- and did I miss something?

 5    I think they are a form letter, aren't they?  I mean, all

 6    of the four got exactly the same letter, did they not?

 7          MR. TIMMONS:  Like I said, Your Honor, the

 8    termination reasons are going to be similar for all of

 9    these cases.

10          THE COURT:  Well, but I don't understand the

11    reason.  To say it's a different priority does not answer

12    the question.

13          MR. TIMMONS:  That is the explanation that the

14    agency gave.  I can't offer you a different --

15          THE COURT:  I'm going to give you another chance

16    to go back and get specific documents to show what that

17    means because that's not good enough.  That is not good

18    enough.  And I know they put you, Mr. Timmons, in a

19    difficult situation.  They haven't given you that

20    information.  And I don't want to give you a hard time

21    because you only got what you got, right?

22          THE CLERK:  You're fine, Your Honor.  I'm doing

23    just fine.

24          THE COURT:  Good.  Mr. Berlinsky is my friend

25    here.  I don't want to pick on him too much either.  But,

1    clarify.  I think we have -- you know, we have the
2    deadline accelerated to Friday.  I was wondering if we
3    could make both of our assignments due --
4            THE COURT:  Yeah, actually I had overlooked
5    telling you that I was going to extend everything out
6    seven days to give you more time on the privilege logs.
7            MR. TIMMONS:  Thank you, Your Honor.
8            What's that?  Well, then you ask him, Lee.
9            THE COURT:  You're Gergel's buddy.  You say it.
10           MR. BERLINSKY:  I don't want to stand up just
11   for this one small detail, Your Honor.  But we would
12   certainly ask for ten days rather than seven if we could
13   get it.  You know, the daunting task that we had to
14   produce this many documents in --
15           THE COURT:  I wouldn't think there are many
16   documents on these limited number of -- you know, I think
17   y'all overread my request.  I asked you on specific
18   grants, tell me the grantees, you know, and tell me why
19   you froze them.  And I can get a document.  I got zero.
20   Nobody gave me -- the only documents I have seen with a
21   grantee's name is a termination letter the plaintiffs gave
22   me.  Y'all have produced to me 9,000 documents without
23   mentioning one grantee.  That's odd.  Okay?  So now, it
24   kind of proves the point the plaintiffs made about mass
25   freezes, which frankly, Mr. Timmons candidly acknowledged

Phillip Schindel
Chief, Business Operations Branch
US EPA Grants Management & Business Operations Division
202-564-5293
Schindel.Phillip@epa.gov

---

**From:** Wise, Melissa <wise.melissa@epa.gov>
**Sent:** Tuesday, January 21, 2025 10:11 AM
**To:** Tsing-Choy, Kathy (she/her/hers) <Tsing-Choy.Kathy@epa.gov>
**Cc:** Schindel, Phillip <Schindel.Phillip@epa.gov>; Sylvester, Kenneth <Sylvester.Kenneth@epa.gov>
**Subject:** Data Call
**Importance:** High

Hi Kat,

Can you please help me respond to these as your time permits?

**OGD Actions**
1.      Please identify all OEJECR grant awards by CFDA. Please include award amount, amount obligated, and amount expended.
2.      Please do a search in NGGS if there are any awards outside of those in OEJECR that include the words "Environmental Justice".
3.      Please do a search in NGGS if there are any awards that include the words "Diversity, Equity and Inclusion" or "DEIA".

**OGD Actions**
1.      Please identify all IRA grant programs by CFDA. Please include award amount, amount obligated, amount expended, recipient name, project description, and if it is split-funded (with non-IRA/ IIJA funding).

Thanks,

*Melissa Wise*

Director, Office of Grants and Debarment
Office of Mission Support
U.S. Environmental Protection Agency
1300 Pennsylvania Ave., NW
Washington, D.C. 20460
(202) 924-9911

*My working hours may not be your working hours. Please do not feel obligated to reply outside of your normal work schedule.*



EPA_00073596

treml.gregg@epa.gov

**From:** Voyles, Travis <voyles.travis@epa.gov>
**Sent:** Friday, March 7, 2025 12:02 PM
**To:** Treml, Gregg <Treml.Gregg@epa.gov>
**Cc:** Molina, Michael <molina.michael@epa.gov>
**Subject:** RE: Place Hold/ Control in ASAP - 8 programs

Thank you for checking.

Yes, this is the direction. We are proceeding with cancelling these grants and would like to prevent any drawdowns in the time between announcement and execution through OMS.

--

Travis Voyles
C: (202) 787-0595

**From:** Treml, Gregg <Treml.Gregg@epa.gov>
**Sent:** Friday, March 7, 2025 12:00 PM
**To:** Voyles, Travis <voyles.travis@epa.gov>
**Cc:** Molina, Michael <molina.michael@epa.gov>
**Subject:** FW: Place Hold/ Control in ASAP - 8 programs

Travis,
Confirming this is your direction?

Thank you,
-Gregg

Gregg Treml
Acting Chief Financial Officer
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Room 4402A WJCN
Washington, DC  20460
(202)-564-1151
treml.gregg@epa.gov

**From:** Coogan, Daniel <Coogan.Daniel@epa.gov>
**Sent:** Friday, March 7, 2025 11:53 AM
**To:** Treml, Gregg <Treml.Gregg@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>; Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>
**Cc:** Patrick, Kimberly <Patrick.Kimberly@epa.gov>; Wise, Melissa <wise.melissa@epa.gov>
**Subject:** Place Hold/ Control in ASAP - 8 programs

All, we just had a check-in with Travis and as part of a broader effort related to certain grant programs, please put a control on ASAP accounts for all grants funded under the following grant programs so recipients cannot draw funds.

| CFDA/Assistance Number Listing | CFDA/Assistance Listing Title |
|---|---|

**J.A. 2839**

| 66.306 | Environmental Justice Collaborative Problem-Solving Cooperative Agreement Program |
| 66.309 | Surveys, Studies, Investigations, Training and Special Purpose Activities Relating to Environmental Justice |
| 66.312 | Environmental Justice Government-to-Government (EJG2G) Program |
| 66.604 | Environmental Justice Small Grant Program |
| 66.614 | Financial Assistance For Community Support Activities To Address Environmental Justice Issues |
| 66.615 | Environmental Justice Thriving Communities Grantmaking Program (EJ TCGM) |
| 66.616 | Environmental and Climate Justice Block Grant Program |
| 66.721 | Reducing Embodied Greenhouse Gas Emissions for Construction Materials and Products |

EPA_00053454

Message
_____

| | |
|---|---|
| **From:** | Mandy, Cora [Mandy.Cora@epa.gov] |
| **Sent:** | 2/24/2025 10:24:28 PM |
| **To:** | Loving, Kathryn [Loving.Kathryn@epa.gov]; Vaseliou, Molly [Vaseliou.Molly@epa.gov]; Coogan, Daniel [Coogan.Daniel@epa.gov] |
| **Subject:** | RE: List of Grant Terminations - February 20 |

This is super helpful. Thank you, Kathryn!

_____

**From:** Loving, Kathryn <Loving.Kathryn@epa.gov>
**Sent:** Monday, February 24, 2025 5:21 PM
**To:** Mandy, Cora <Mandy.Cora@epa.gov>; Vaseliou, Molly <Vaseliou.Molly@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Subject:** RE: List of Grant Terminations - February 20

Usaspending.gov says that only the larger amount has been outlayed: **$2,006,774.22**
GRANT to INSTITUTE FOR SUSTAINABLE COMMUNITIES | USAspending

For a total savings of **$5,993,225.78** for that grant.

I'm not sure what is the source of that second outlay row, but it doesn't seem to match up with any transaction data that I can see in usaspending.gov. So it might just be a typo…

Kathryn

_____

**From:** Mandy, Cora <Mandy.Cora@epa.gov>
**Sent:** Monday, February 24, 2025 4:41 PM
**To:** Vaseliou, Molly <Vaseliou.Molly@epa.gov>; Loving, Kathryn <Loving.Kathryn@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Subject:** RE: List of Grant Terminations - February 20

Hi Kathryn,

I just want to make sure I'm getting this right. I've pasted the duplicate below, but outlayed and remaining amounts are different. If they disbursed both the outlayed amounts listed from that $8M, there would be 4,429,152.81 remaining of that grant. So total taxpayer savings would be $62,965,311.50.

Let me know if I'm misunderstanding—I just want to make sure we have the right #s reflected in the release. Thank you!

| Financial Account Identifier Number (FAIN) | Award Amount | Total Outlayed Amount (Estimate) | Remaining Amount (Estimate) | Recipient Name |
|---|---|---|---|---|
| | | | | |

EPA_00042794

| 84061101 | $8,000,000 | $1,564,072.97 | $6,435,927.03 | **INSTITUTE FOR SUSTAINABLE COMMUNITIES** |
| 84061101 | $8,000,000 | $2,006,774.22 | $5,993,225.78 | **INSTITUTE FOR SUSTAINABLE COMMUNITIES** |

---

**From:** Vaseliou, Molly <Vaseliou.Molly@epa.gov>
**Sent:** Monday, February 24, 2025 4:33 PM
**To:** Loving, Kathryn <Loving.Kathryn@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Cc:** Mandy, Cora <Mandy.Cora@epa.gov>
**Subject:** RE: List of Grant Terminations - February 20

Adding Cora. She was looking into this.

**Molly Vaseliou**
Associate Administrator for Public Affairs
Environmental Protection Agency

---

**From:** Loving, Kathryn <Loving.Kathryn@epa.gov>
**Sent:** Monday, February 24, 2025 3:52 PM
**To:** Vaseliou, Molly <Vaseliou.Molly@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Subject:** RE: List of Grant Terminations - February 20

Just want to flag so you both are aware, there's a duplicate below, FAIN 84061101, so I think the sum total of potential savings here is only $61M, not $67M. I know press on this already went out, but I'm going to just report the shorter list to WH unless you are aware of a missing one that's not on this list!

---

**From:** Vaseliou, Molly <Vaseliou.Molly@epa.gov>
**Sent:** Saturday, February 22, 2025 2:17 PM
**To:** Coogan, Daniel <Coogan.Daniel@epa.gov>
**Cc:** Loving, Kathryn <Loving.Kathryn@epa.gov>
**Subject:** Re: List of Grant Terminations - February 20

Great! It published this morning.

https://nypost.com/2025/02/22/us-news/doge-cuts-67-m-in-epa-grants-for-environmental-justice-groups/

Get Outlook for iOS

---

**From:** Coogan, Daniel <Coogan.Daniel@epa.gov>
**Sent:** Saturday, February 22, 2025 2:14:22 PM
**To:** Vaseliou, Molly <Vaseliou.Molly@epa.gov>

EPA_00042795

Message
_____

| | |
|---|---|
| **From:** | Loving, Kathryn [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=700D20D45E284246BB2737BA4B9CF5CF-DBDFCC38-89] |
| **Sent:** | 2/24/2025 3:06:43 PM |
| **To:** | Vaseliou, Molly [Vaseliou.Molly@epa.gov] |
| **CC:** | Jehling, Erica [Jehling.Erica@epa.gov] |
| **Subject:** | Another X post about contracts? |
| **Attachments:** | Contract_Terminations_withAmounts_2025-02-21.xlsx |

Good morning Molly – I wanted to run this list by you before I report to the DOGE team.

I think we actually already tweeted about $45M of the cancelled contracts included in this list, so to avoid re-reporting old news, I think the statement here would be
"EPA has terminated 24 more contracts, helping the American taxpayer avoid another $77M in costs". Do you/Lee want to post this or should DOGE do it?

Kathryn

_____

**From:** Coogan, Daniel <Coogan.Daniel@epa.gov>
**Sent:** Friday, February 21, 2025 2:11 PM
**To:** Jehling, Erica <Jehling.Erica@epa.gov>
**Cc:** Loving, Kathryn <Loving.Kathryn@epa.gov>
**Subject:** FW: Contract Terminations Daily Report with amounts 2025-02-21

Take a look and let me know if you are good with this report. This is what I was thinking as final for the daily contracts report and will facilitate WH reporting.

W/r/t to reporting "savings"/ "cost avoidance", I recommend using unobligated balances.

A social media worthy bite based on today's report might be: "In less than two weeks, EPA DOGE has terminated 29 contracts, helping the American taxpayer avoid over $121M in costs." (Deferring to the media folks on editioralizing with "wasteful" et al adjectives.)

**From:** OMS-ARM-OAS-OfficeofAcquisitionSolutions@epa.gov <OMS-ARM-OAS-OfficeofAcquisitionSolutions@epa.gov>
**Sent:** Friday, February 21, 2025 2:02 PM
**To:** Coogan, Daniel <Coogan.Daniel@epa.gov>; Hublar, Jennifer <Hublar.Jennifer@epa.gov>
**Cc:** Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Burnett-Bakr, Robbin <Burnett-Bakr.Robbin@epa.gov>
**Subject:** Contract Terminations Daily Report with amounts 2025-02-21

Attached is the Daily Contract Terminations Report with award ceiling 2025-02-21, Total obligated amount, and unobligated amount (Award Ceiling - Total Obligated Amount).

EPA_00036962

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

THE SUSTAINABILITY INSTITUTE, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, et al.,

Defendants.

Case No. 2:25-cv-2152-RMG

**SUPPLEMENTAL DECLARATION OF
BRYAN CORDELL, THE
SUSTAINABILITY INSTITUTE**

1.      I, Bryan Cordell, Executive Director of the Sustainability Institute, submit this
declaration to notify the Court of developments that have occurred since I submitted my
original declaration (Dkt. No. 24-2) in support Plaintiffs' Motion for Preliminary Injunction.

2.      On March 28, 2025, I had a meeting with our EPA project officer to discuss the
Sustainability Institute's Community Change Grant. EPA awarded this grant to my
organization under the Inflation Reduction Act's Environmental and Climate Justice Block
Grants program. The grant funds our work to restore and revitalize Union Heights—a
historically Black community in North Charleston bisected and disrupted by the construction
of Highway 26—by building energy-efficient affordable housing and home upgrades.

3.      During the March 28 meeting, our EPA project officer informed me that the
Sustainability Institute had, for the time being, dodged the wave of grant terminations for
environmental justice and climate change-related projects. The officer stated that we would
have to "sanitize" the work plan for our grant to avoid certain words and ideas that the
Administration disfavors if we wanted to avoid termination. I was told that we would need to
re-write our work plan to remove terms like "Environmental and Climate Justice,"

**J.A. 2844**

"disadvantaged," "predominantly Black neighborhood," "greenhouse gas," "equitable," and references to laws passed by Congress ("IRA" and "IIJA"). I was not asked to change any of the substantive work in the plan, I was just asked to speak about it differently.

4.      The "Sanitized Workplan," "Decision Tree," and target "Keywords" submitted into the record (Dkt. No. 35-5) are true and accurate copies of what I received from, and was told to avoid by, my EPA project officer at the March 28 meeting and in follow-up emails.

5.      EPA made clear in the March 28 meeting that our Community Change Grant was in jeopardy of being terminated if we did not change the way we talk about our work to avoid concepts disfavored by the Administration. EPA did not request or suggest that Sustainability Institute change any of the work itself—EPA's main focus was on the contents of our speech.

6.      The purpose of the Environmental and Climate Justice Block Grants program created by Congress is to help address and mitigate the effects of climate change in disadvantaged communities. That purpose drove our grant proposal and work in Union Heights, a coastal community affected by historical discrimination in transportation policy[1] and facing risks as a result of sea level rise caused by climate change. Our work makes no sense without this context and purpose—yet expressing it has put a target on our back.

7.      Despite all this, EPA instructed us to revise our work to deemphasize climate and focus on job creation and increasing the tax base, which goes against our project's goal of creating affordable housing and reflects a fundamental misunderstanding of the project itself.

8.      In the March 28 meeting, our EPA project officer also instructed me to "clean up" Sustainability Institute's website to remove words and concepts disfavored by the

---

[1] For background, see Deborah N. Archer, '*White Men's Roads Through Black Men's Homes': Advancing Racial Equity Through Highway Reconstruction*, 73 Vand. L. Rev. 1259 (2020).

2

**J.A. 2845**

Administration—whether or not those words pertain to our federally-funded work. We understood from this call, and from conversations with other federal grantees, that grants are being targeted for cancellation if grantees have expressed disfavored speech online and that our grants would likely be terminated if we didn't remove words from our website.

9.      Out of fear that EPA would terminate our grants or deprive us of future grant opportunities because of our disfavored speech, I made the difficult decision to remove most references to "climate change" from the Sustainability Institute's website and emphasize "resilience" instead, and to remove the term "equitable" from our online mission statement. Our old mission statement—"Advancing sustainable, equitable and resilient communities while building the next generation of conservation leaders"—was the product of a thorough process by our board and staff to identify and reflect our organization's goals and values, central to which is equity. We had used these words not only to describe our work but also to express our sincerely-held beliefs. Out of fear of reprisals by the Administration, we have self-censored terms that are central to our mission and values.

10.     However, I have not agreed to EPA's demand that we "sanitize" our grant workplan. Our project makes no sense if we can't discuss the history and lingering effects of racism on the Union Heights Community and the threats of climate change to this low-lying neighborhood. It would also be disrespectful to the community if we "sanitize" the truth. In addition, the City of North Charleston is our statutory partner in this project and helped create the workplan; sanitizing the work plan would gloss over their work and contributions to the project, causing confusion about our shared goals and potentially harming our working relationship. It would also erode our hard-earned trust in the community and among project

3

**J.A. 2846**

partners if we gloss over the history and challenges faced by this community when discussing our work.

11.    In late April, I was informed about court filings from the government that list our Community Change Grant as: "Termination in Progress" (Dkt. No. 136-1 at 1). That came as dire news to the Sustainability Institute, the communities we serve, and to me personally.

12.    Our grant had been frozen since March 9.[2] On April 9, our project officer wrote that "Sustainability Institute has been an exemplary grantee," making "all milestones indicated in the work plan" with no "ill findings related to the grant that would prompt such a sudden suspension." Ex. 1. On April 24, after our pending termination was disclosed, our project officer wrote that he does "not have any knowledge of EPA terminating the grants for . . . Sustainability Institute," reiterating that we have been an "exemplary grantee" and are in full compliance. *Id*. That remains true today; we have fully complied with our grant's terms.

13.    Given this, I can only conclude that our grant was frozen and is now set to be terminated because the Administration disfavors our speech and our work furthering Congress's objectives. This will harm our organization, our mission, and the local communities we serve.

14.    A court order that stops the government from interfering with our grant would redress these harms and allow my colleagues and I to speak freely about our work, our mission, and our beliefs.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

---

[2] Our grant was unfrozen without explanation on April 28. As I understand it, this was the result of a court in Rhode Island ordering that environmental justice grants slated for termination had to be unfrozen until the grants were actually terminated. We expect that funds will be frozen again when we receive our termination letter.

4

**J.A. 2847**

Executed this the 8th day of May, 2025.

Bryan Cordell

Scanned with
CamScanner

# Exhibit 1

**Akbar Buchanan, Ferry**                                      Wed, Apr 9,
                                                                10:17 AM

to me, Rebekah@sustainabilityinstitutesc.org, mike_watershedconsults.com

Good morning Sustainability Institute,

Please find below a written email documentation from myself to voluntarily provide my insight on your grant suspension status.

I, Ferry Akbar Buchanan, am serving as the Project Officer to the organization, Sustainability Institute, in support of their Community Change Grant agreement, project titled "Advancing Environmental and Climate Justice in Union Heights" (5B-03D30824). While their selection was made in October 2024, I had first contact and began working with the organization on March 26, 2025. I began my work with Sustainability Institute (mainly Bryan Cordell, Rebekah Cordell, and Mike McCauley) throughout the post-award phase after the restructuring of our Community Health and Environmental Review Division due to significant staff turnovers in early February 2025.

Sustainability Institute has continued to promptly fulfill all requirements and any requests on or before due dates. Acceptable progress was made for all milestones indicated in the work plan based on the last few monthly check-ins between EPA and Sustainability Institute.

Further, I was not consulted in any manner, about the status, progress, success, etc. of the grant, and did not provide any input before their ASAP (Automated Standard Application for Payments) account was suddenly suspended on March 7, 2025. By my account, Sustainability Institute has been an exemplary grantee, and I am not aware of any ill findings related to the grant that would prompt such sudden suspension.

I am prepared to expand on any actions related to Sustainability Institute's assistance agreement.

Sincerely,
Ferry Akbar Buchanan

Ferry Akbar Buchanan
Environmental Protection Specialist
U.S. EPA Region 4
Work Phone: (404) 964-0640
Office Phone: (404) 562-9482
Email: akbarbuchanan.ferry@epa.gov

**J.A. 2850**

Thu, Apr 24,
10:24 AM

## Akbar Buchanan, Ferry
to me, Rebekah@sustainabilityinstitutesc.org, Brian

Good morning Sustainability Institute,

Please find below a written email documentation from myself to voluntarily provide my insight on your grant suspension status.

I, Ferry Akbar Buchanan, am serving as the Project Officer to the organization, Sustainability Institute, in support of their Community Change Grant agreement, project titled "Advancing Environmental and Climate Justice in Union Heights" (5B-03D30824). While their selection was made in October 2024, I had first contact and began working with the organization on March 26, 2025. I began my work with Sustainability Institute (mainly Bryan Cordell, Rebekah Cordell, and Mike McCauley) throughout the post-award phase after the restructuring of our Community Health and Environmental Review Division due to significant staff turnovers in early February 2025.

As of April 24, 2025, I do not have any knowledge of EPA terminating the grants for all Community Change Grants program including Sustainability Institute. By my account, Sustainability Institute has been an exemplary grantee, and I am not aware of any ill findings related to their ASAP Suspension that began in March as well as any information related to a grant termination, if any. Sustainability Institute has continued to promptly fulfill all requirements and any requests on or before due dates. Acceptable progress was made for all milestones indicated in the work plan based on the last few monthly check-ins between EPA and Sustainability Institute.

I am prepared to expand on any actions related to Sustainability Institute's assistance agreement.

Sincerely,
Ferry Akbar Buchanan

Ferry Akbar Buchanan
Environmental Protection Specialist
U.S. EPA Region 4
Work Phone: (404) 964-0640
Office Phone: (404) 562-9482
Email: akbarbuchanan.ferry@epa.gov

**Akbar Buchanan, Ferry** <AkbarBuchanan.Ferry@epa.gov>

Mon, May 5, 2025 at 3:17 PM

To: Rebekah Cordell <Rebekah@sustainabilityinstitutesc.org>
Cc: Bryan Cordell <director@sustainabilityinstitutesc.org>

Hi Rebekah,

Confirmed that I received the report and Sustainability Institute is still in compliance. No questions or concerns about the report, looks great! Would love to see photos from the community meetings next time rather than the engineering plan.

Thanks,

Ferry

Ferry Akbar Buchanan
Environmental Protection Specialist
U.S. EPA Region 4
Work Phone: (404) 964-0640
Office Phone: (404) 562-9482
Email: akbarbuchanan.ferry@epa.gov

J.A. 2852



## EPA Starts Process For Staff Firings In EJ Office, Amid Broader RIF Fears

April 22, 2025                                                                                     Post

EPA has formally notified the agency's civil rights office, as well as regional environmental justice (EJ) divisions, of agency plans to conduct a "reduction in force" (RIF) of agency staff, justifying the move as in line with Trump administration executive orders targeting diversity programs and directing workforce "optimization."

While the notification, in the form of **an April 21 memorandum**, offers confirmation of widely expected efforts to target EJ-related activities, a former EPA official tells *Inside EPA* the effort could also signal plans for broader staff firings across the agency.

"This notice is to inform you that [EPA] will be conducting a [RIF] in accordance with the Office of Personnel Management [OPM] Workforce Reshaping Handbook and Title 5 of the Code of Federal Regulations governing RIF procedures," says the memo from EPA Assistant Deputy Administrator Travis Voyles.

The memo, addressed to the agency's EJ office and the agency's regional EJ divisions, states that the RIF "will take effect on July 31, 2025, with formal notices being issued to affected employees at least 30 days prior to the effective date."

This timeline is allowed by federal regulations as well as an approval by the OPM of an exemption from a 60-day notice requirement that would otherwise apply for EPA staff "selected for release" under a RIF, according to Voyles.

The memo frames the planned RIFs as in line with two Trump executive orders: EO 14151, which targets "wasteful [Diversity, Equity and Inclusion (DEI)] programs"; and EO 14210, which outlines implementation of the administration's Department of Government Efficiency (DOGE) workforce optimization initiative.

"This action is necessary to align our workforce with the Agency's current and future needs and to ensure the efficient and effective operation of our programs," Voyles writes. "With this action, EPA is delivering organizational improvements to the personnel structure that will directly benefit the American people and better advance the Agency's core mission of protecting human health and the environment."

The action was expected after EPA and other agencies were required to **submit reorganizations plans** to the Office of Management & Budget by mid-April -- though such plans have not yet been made public.

Voyles' memo states that the planned RIF will be conducted "within defined competitive areas and levels" according to federal regulations. "Employees will be ranked on a retention register based on tenure, veterans' preference, length of service and performance ratings," as outlined in federal rules.

### 'Not Just' A RIF

The RIF notification, however, is already drawing fire from former agency staff, labor unions and environmentalists. "Despite its stated justification, the last thing that this RIF will do is 'ensure the effective and efficient operation' of EPA programs," nor will it "directly benefit the American people . . ." former EPA enforcement official Gary Jonesi, now director of the nonprofit CREEDemocracy, tells *Inside EPA*.

"Instead, it will further endanger those in red and blue states alike."

"This is not just a 'reduction in force.' This is a reduction in our ability to keep Americans safe," Joyce Howell, executive vice president of AFGE Council 238, which represents over 8,400 EPA workers, said in a statement.

"Many Americans who are impacted most by environmental dangers live in lower-income areas, where they face higher exposure to air pollution and environmental contaminants. Eliminating jobs that ensure these communities get the same access to clean air and clean drinking water afforded to others goes to show this administration has no interest in protecting the American people."

And Sierra Club in an April 21 press release says, "All of us deserve to have clean air to breathe, safe water to drink, and be protected from toxic pollution. Instead, the Trump administration is selling us out to corporate polluters by actively working to slash clean air and water protections and laying off critical environmental justice staff."

The group adds, "the people that Donald Trump is putting out of work are hardworking, dedicated civil servants who have devoted their careers to protecting our clean air and water and securing a livable future for us all. The only people who will benefit from their firings are corporate polluters." -- *Doug Obey* (dobey@iwpnews.com)

250025

---

## RELATED NEWS

- **ECOS Urges EPA To Maintain 'Robust' Research As ORD Faces Uncertain Fate**
- **Fired EPA EJ Staffers Bring Class-Action Complaint To Special Counsel**
- **4th Circuit Allows Probationary Staff Firings To Temporarily Resume At EPA**
- **Warning Of 'Formal Discipline,' EPA Enforces Return-To-Work Mandates**
- **Judge Allows EPA Probationary Worker Firings To Resume In GOP States**

Inside EPA is a subscription-fee-based daily digital news service from Inside Washington Publishers.

**SITE LICENSES**

Economical site license packages are available to fit any size organization, from a few people at one location to company-wide access. For more information on how you can get greater access to Inside EPA.com for your office, contact Online Customer Service at 703-416-8505 or **iepa@iwpnews.com**.

**STAY CONNECTED**

   

© 2025. Inside Washington Publishers | **Contact Us**



## OFFICE OF THE ADMINISTRATOR

WASHINGTON, D.C. 20460

April 21, 2025

**MEMORANDUM**

**SUBJECT:**   Notice of Intent to Conduct a Reduction in Force

**FROM:**   Travis Voyles, Assistant Deputy Administrator    TRAVIS VOYLES

Digitally signed by
TRAVIS VOYLES
Date: 2025.04.21
16:05:19 -04'00'

**TO:**   Office of Environmental Justice and External Civil Rights
Regional Environmental Justice Divisions

This notice is to inform you that the U.S. Environmental Protection Agency will be conducting a Reduction in Force in accordance with the Office of Personnel Management Workforce Reshaping Handbook and Title 5 of the Code of Federal Regulations governing RIF procedures.

The decision to conduct a RIF has been made pursuant to Executive Order 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing* and Executive Order 14210, *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative*, which "commence[d] a critical transformation of the Federal bureaucracy" and directed agencies to "eliminat[e] waste, bloat, and insularity" in order to "empower American families, workers, taxpayers, and our system of Government itself."

This action is necessary to align our workforce with the Agency's current and future needs and to ensure the efficient and effective operation of our programs. With this action, EPA is delivering organizational improvements to the personnel structure that will directly benefit the American people and better advance the Agency's core mission of protecting human health and the environment.

**Effective Date**
The RIF will take effect on July 31, 2025, with formal notices being issued to affected employees at least 30 days prior to the effective date, as required under Title 5 CFR and allowed by OPM approval of EPA's request for an exception to the 60-day notice period provided to employees selected for release through a RIF.

**J.A. 2855**

**Employee Rights and Support**

We understand that this announcement may cause concern and uncertainty. Please be assured that we are committed to supporting all affected employees throughout this process. Below are key points regarding your rights and the support available to you:

1. **Competitive Areas and Levels**
   The RIF will be conducted within defined competitive areas and levels, in accordance with Title 5 CFR §§351.402 and 351.403.

2. **Retention Standing**
   Employees will be ranked on a retention register based on tenure, veterans' preference, length of service and performance ratings, as outlined in Title 5 CFR §351.501.

3. **Appeal Rights**
   Employees who receive a RIF notice have the right to appeal the decision to the Merit Systems Protection Board or file a grievance under any applicable negotiated grievance procedure.

4. **Placement Assistance**
   We will provide information on how you can receive career transition assistance, including resume workshops, career counseling and job search resources. Additionally, we will coordinate with other Federal agencies to explore placement opportunities.

**Next Steps**

Our priority is to ensure a fair and transparent process while providing the necessary support to those affected. You will be invited to attend informational meetings to gain further details about the RIF process, benefits and state-specific career transition assistance.

EPA provides employees with an Employee Assistance Program. EAP provides confidential counseling and referral services to assist employees in resolving personal or work-related problems. Participation is voluntary, and the program is strictly confidential. If you believe these services would be appropriate for your situation or would like more information on EAP services, you may visit https://intranet.epa.gov/ohr/benefits/eap/index.htm. The website and mobile app password is **usepa**. If you are not able to access the EPA intranet, you may call 1 (888) 635-3202, visit the Acentra Health website or download the Acentra Health app from Apple Store or Google Play. The website and mobile app password is **usepa**.

President Trump was elected with a mandate from the American people. Part of this mandate includes the issuance of an Executive Order that directs the critical transformation of the Federal bureaucracy to empower American families, workers, taxpayers and our system of government itself. Under the Trump Administration, EPA is affirming our commitment to serve every American and advance the Agency's core mission of protecting human health and the environment.

Thank you for your understanding and cooperation during this time.

**J.A. 2856**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

THE SUSTAINABILITY INSTITUTE, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, et al.,

Defendants.

Case No. 2:25-cv-2152-RMG

### SUPPLEMENTAL DECLARATION OF GERALD BABAO,
### CLEANAIRE NC

1.  I, Gerald L. Babao, Deputy Director of CleanAIRE NC, submit this declaration to notify the Court of developments that have occurred since I submitted my original declaration (Dkt. No. 24-6) in support of Plaintiffs' Motion for Preliminary Injunction.

2.  On March 27, 2025, I met with our EPA project officer to discuss CleanAIRE's Environmental Justice Collaborative Problem Solving Grant. EPA awarded this grant to my organization under the Inflation Reduction Act's Environmental and Climate Justice Block Grants program to support our work to reduce air pollution through the collection of air quality data in four North Mecklenburg communities in North Carolina.

3.  During that meeting, our EPA project officer informed CleanAIRE that our grant was at risk of termination unless we revised our project narrative to remove references to concepts the Administration disfavors. We were told to remove terms like "environmental justice," "climate change," "Black communities," "disparities," and "racial equity." We scheduled a follow-up meeting for the next day, March 28, to finalize the revision process and avoid termination of our grant.

**J.A. 2857**

4.    EPA made it clear that our Environmental Justice Collaborative Problem Solving Grant – a grant specifically created to address environmental and climate change issues in disadvantaged communities –was at risk of being terminated because of how we describe the issues the grant was designed to address. This made no sense. We wrote our grant to address the chronic disease health impacts associated with air pollution and climate change, recognizing that environmental justice communities experience higher mortality rates from chronic health conditions, with climate change acting as a threat multiplier for health disparities in low-income communities of color. Removing references to climate change and environmental justice, which are integral to understanding and addressing the disproportionate health burdens these particular North Carolina communities face, would make our work ineffective and disconnected from the root causes of the problems we seek to solve. Talking about our work differently would also be harmful to our mission and harm our relationships with partners and the communities we serve across North Carolina.

5.    EPA staff did not show up for our scheduled meeting on March 28, 2025 at 10:30 am. Later that same day, we received notice that our grant had been terminated.

6.    On April 26, 2025, Brian Holtzclaw, EPA Region 4 Section Manager for the Community Health and Environmental Review Division, who I understood to be serving as our Project Officer, emailed me an "Original Workplan with EPA Comments for EO# 14151 Compliance Document; April 2025" which was CleanAIRE's original workplan but marked up with edits for compliance with Executive Order 14151. Mr. Holtzclaw also included an "NSF Decision Tree and Keywords" flowchart and keyword list used by EPA to review work plans and grant documents, including grant title, abstract, project summary and description for compliance with the Executive Order related to DEI language. The document noted that

2

**J.A. 2858**

the keyword list was expanded to include terms like "climate change" and environmental justice", and that when screening workplans for "forbidden words" in the context of EO 14151 related to DEI, EPA staff would take a "cautious approach". The list of keywords included many words associated with CleanAIRE's work such as: advocacy, equity, race and ethnicity, minorities, inclusion, marginalized, underrepresented, underserved, racial justice, systemic, and so on. I understood that EPA staff used the list to decide whether a grant complied with the Executive Order 1415 related DEI, and made decisions about freezing or terminating grants accordingly. I also understood that our grant was terminated because it included too many "forbidden words" from the keyword list that were associated with DEI.

7.     EPA's attached document highlighted dozens of terms for removal or replacement in CleanAIRE's grant materials such as "Environmental Justice," "climate change," "communities of color," "Latinx community," "historic Black communities," "disparities," "Black," "segregation and fair housing," "Racial Equity," "social injustices," and "underserved and diverse communities." Additionally, the EPA suggested replacement words for the terms "advocate," "advocacy," "disadvantaged," "disparities," "minorities," "EPA EJSCREEN Index," "environmental justice," "disproportionate," "historical exclusion," "social injustices," and "underserved." The EPA document noted that 65 out of approximately 8297 words/expressions were related to DEI, comprising 0.8% of the document.

8.     The attached "CleanAIRE Workplan with EPA Comments" and "NSF Decision Tree and Keywords" documents are true and accurate copies of what I received from EPA on April 26, 2025. (Ex. 1).

3

**J.A. 2859**

9.    Our grant has been frozen since March 28, 2025, except for a few days in April when we had brief access to grant funds. I can only conclude that our grant was frozen and then terminated because the Administration disfavors our speech and how we describe our work furthering Congress's objectives. The grant freeze and subsequent termination harm our organization, our mission, and the communities we serve.

10.    A court order that stops the government from interfering with our grant would redress these harms and allow my colleagues and me to speak freely about our work, our mission, and our commitment to environmental justice.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States, the foregoing is true and correct.

Executed this 8th day of May, 2025.

_____
Gerald L. Babao

J.A. 2860

**From:** Holtzclaw, Brian holtzclaw.brian@epa.gov 
**Subject:** Standard Information as Requested
**Date:** April 26, 2025 at 11:47
**To:** Gerald Babao gerald@cleanairenc.org

*Brian L. Holtzclaw | Section Manager | Community Health and Environmental Review Division | US EPA Region 4 |*
*61 Forsyth Street SW, Atlanta GA 30303*
*Office: 404-562-8684 | Cell: 404-821-0697 | holtzclaw.brian@epa.gov*

EO Compliance -- CleanAIRE North Carolina work plan sg... 

NSF Decision Tree and Keywords with Note.docx
121 KB

J.A. 2861

**Project Narrative | North Mecklenburg Air Monitoring Network**

**Original Workplan with EPA Comments for EO # 14151 Compliance; April 2025**

## 1.0 PROGRAM OBJECTIVES
### A. Project Summary Page
**Project Title:** North Mecklenburg Air Monitoring Network
**Project Location:** Huntington Green, Huntersville, NC 28078; Pottstown, Huntersville, NC 28078; Smithville, Cornelius, NC 28031 and West Davidson, Davidson, NC 28036
**Applicant Organization:** CleanAIRE North Carolina (CANC)
**Address:** 933 Louise Avenue, Suite 499, Charlotte, NC 28204
**Primary contact:** Kerstan Ryan, 704.307.9528, Ext. 110, Kerstan@CleanAIREnc.org
**Brief Description of Applicant Organization:** Our mission is to champion advocate for the health of all North Carolinians by pursuing equitable and collaborative solutions that address climate change and air pollution. We recognize health impacts from air pollution and climate change disproportionately affect low-income and communities of color and contribute to existing health disparities. We fight for a cleaner North Carolina through policy promotion advocacy, litigation, education, community organizing, and innovative partnerships. Our programs include Community Science AirKeepers, Health Champions Advocates, Environmental Protection Justice, and the NC Climate Ambassadors Program.
**Are you applying for the Small CBO Set Aside Track for $150,000 projects**? No
**Project Abstract:** CleanAIRE NC, in partnership with North Mecklenburg community-based nonprofit Letha's 1Stop Shop and North Mecklenburg Economic Mobility Collaborative, will establish an Air Monitoring Cluster Network in four impacted communities across North Mecklenburg to address health impacts associated with air pollution. Our work will be focused on the communities of Huntington Green (Huntersville, NC), Pottstown (Huntersville, NC), Smithville (Cornelius, NC), and West Davidson (Davidson, NC). Residents will collect air quality data through the cluster network and partake in CleanAIRE NC's AirKeeper Academy, engaging in the Healthy Air Education Series, Clean Air Advocacy Training, and Maps and Apps session. CleanAIRE NC will also work with local CBOs, Atrium Health, and the Mecklenburg County Health Department to train Community Health Workers as lead AirKeepers and conduct a Health Impact Assessment with Lake Norman Community Health Clinic, Mecklenburg County Health Department, Atrium Health and North Carolina State University. A major goal of the Health Impact Assessment will be the Mecklenburg County Health Department's inclusion of environmental protection justice parameters in its 2027 Community Health Assessment Survey.
**Project Type(s):** Air Monitoring, Public Health, and Climate Education
**Special Considerations:** Climate Change/Disaster Resiliency and Health Impact Assessments
**Environmental Issue:** Air Quality
**List of Project Partners:** Letha's 1Stop Shop (CBO); Pottstown Heritage Group (CBO); Smithville Community Coalition (CBO); North Mecklenburg Economic Mobility Collaborative (CBO); Atrium Health (Healthcare); Lake Norman Community Health Clinic (Healthcare); North Carolina State University (Academic); Caterpillar Ministries (Faith-Based); Mecklenburg County Health Department (Local Government); Mecklenburg County Air Quality (Local Government); Town of Davidson (Local Government).
**Will you need to develop a QAPP for your project?** Yes.

**J.A. 2862**

**Project Narrative | North Mecklenburg Air Monitoring Network**

**B. Environmental and Public Health Information of the Underserved Community**

In 2014, a Harvard study found the Charlotte-Mecklenburg metropolitan area to have the lowest upward mobility rate of the 50 largest urban areas in the country. Concerned citizens in the four municipalities in North Mecklenburg County recognized that they faced distinct challenges but were outside the geographic focus of proposed interventions identified by County initiatives.

The tri-municipality region of North Mecklenburg involves the towns of Davidson, Cornelius, and Huntersville, categorized as "small municipality and metropolitan, suburban" community types. Below are the characteristics of the population in the region and our target communities:

|  | Tri-Municipality Region | Target Communities |
|---|---|---|
| **Population** | 107,894 | 10,391 |
| **Age: <18/19-64/Over 65** | 25%/61%/14% | 25%/61%/14% |
| **Sex M/F** | 51%/49% | 50%/50% |
| **Race/Ethnicity W/B/H** | 81%/10%/7% | 60%/19%/17% (DELETE) |
| **Economically Challenged disadvantaged** (Household median income<$50K) | 6.7% | 36% |

Aging housing stock, high energy burdens, inadequate transportation, elevated rates of illness, poverty, and other factors mean residents in the target communities are especially vulnerable to the effects of air pollution and climate change. The four impacted communities bearing the burden of climate and health inequities challenges in North Mecklenburg are Huntington Green, a primarily Latinx community; Pottstown, a historic Black community created post-slavery; and the communities of West Davidson and Smithville, which are also historic Black communities.

Further exacerbating health and environmental differences disparities in the community is COVID-19. A 2020 study from Harvard University showed that people living in places with high fine particulate matter air pollution are 15 percent more likely to die from COVID-19 than those living elsewhere. Among deaths not connected to outbreaks at long-term care facilities in Mecklenburg County are some populations. nearly 3 in 4 were non-White, with 40 percent being non-Hispanic Black. These disparities differences in levels of outcomes are primarily driven by higher rates of underlying chronic conditions that increase the risk of severe complications due to COVID-19 infection among these communities.

**What are the environmental/public health issue(s) that the project seeks to address?**

Our project aims to address the chronic disease health impacts associated with air pollution and climate change. The top five leading causes of death in North Carolina are cancer, heart disease, accidents, COVID-19, and stroke. Diabetes is ranked seventh, and studies have linked air pollution, particularly PM2.5, to all causes except accidents. PM2.5 invisible particles travel through the respiratory tract into the lungs and move through the cardiovascular system, causing many health effects. Studies have shown PM2.5 also affects neurological conditions like dementia and Alzheimer's and maternal and child health outcomes like preterm birth. Pollution sources locally are from transportation, industrial facilities, landfills, and an asbestos Brownfield site. According to the Mecklenburg County Health Department, the mortality rate for heart disease for some local populations in minorities is 1.4 times higher than others.

2

**J.A. 2863**

**Project Narrative | North Mecklenburg Air Monitoring Network**

times higher than for Whites. The mortality rate for diabetes in some local populations minorities is 3.0 times higher than other populations than for Whites.

Climate change is a threat multiplier exacerbating health disparities, specifically in low-income communities of color. Extreme heat increases the effects of the urban heat island, causing increased cases of heat-related illnesses among children, the elderly, and outdoor workers. Higher temperatures can also contribute to an increase in ground-level ozone. Reducing air pollution in these neighborhoods will also reduce carbon emissions.

Using an on-line mapping screening the EPA EJScreen Index tool, we calculated the percentile of North Mecklenburg residents exposed to higher-than-average levels of PM2.5, Ozone, NATA Diesel PM, NATA Cancer Risk, NATA Respiratory HI, Traffic Proximity, Lead Paint Indicator, Superfund Proximity, Hazardous Waste Proximity. On average, the impacted North Mecklenburg areas have higher exposure across all EJ metrics than more affluent surrounding areas in the Tri-Municipality communities (Figure 1).



Figure 1. EJScreen 2023 On-line map of census blocks that include the communities of Pottstown, Huntington Green, Smithville, and West Davidson, indicating high (displayed in red) percentiles of PM2.5 exposure.

Residents in the North Mecklenburg Environmental Justice (EJ) communities have vastly different experiences than the surrounding affluent area, which results in higher exposure to pollutants and more significant impacts on their health (Figure 1).

**What are the environmental/public health results the project seeks to achieve, and how will the underserved community benefit from those results?**
The environmental/public health results we expect to achieve are improved air quality and a reduction in resident exposure to air pollution and climate change effects. Collaboration with residents and other stakeholders will result in a heightened community awareness in which residents

**J.A. 2864**

**Project Narrative | North Mecklenburg Air Monitoring Network**

understand the challenges that air pollution and climate change represent and are empowered to ~~advocate~~ champion for policies and initiatives that address the needs of their community. Through the AirKeeper Academy, residents of the four communities will learn from local health experts in the Healthy Air Education Series about how air pollution and climate change affect chronic diseases, including a community-requested session on mental health. Through this education series, residents will be better informed to make decisions that protect their health.

A second educational component of the AirKeeper Academy is the Clean Air Advocacy Training. This training includes an Environmental Justice Tour, which will provide information about the location of pollution sources and tools residents can use to increase their engagement in air permitting and zoning decisions. The goal of clean air advocacy is to reduce emissions from existing sources and decrease the number of permitted facilities to minimize cumulative impacts. In addition, learning how to use community benefits agreements to negotiate reductions in air pollution with businesses will empower residents to take control of environmental justice issues affecting their neighborhoods. Ultimately, our goal for this project is to improve health outcomes and increase residents' understanding of the health harms of air pollution.

The third component of the AirKeeper Academy is called "Maps and Apps." This session will focus on how individuals and organizations can use innovative mapping tools and applications to collect environmental health data to advance health and equity solutions. Participants will learn about major web tools such as the national on-line mapping screening tools, EPA EJScreen, and the CDC EJ Index, and the Council on Environmental Quality's Climate and Economic Justice Screening Tool. Importantly, CANC is currently funded (Windward EJ DataFund, as listed in Section 5) to create a customized data dashboard for North Carolina, with the intent that all air monitoring data from this EPA CPS proposal will be accessible through what will be called the CANC "AirKeeper Dashboard." The AirKeeper Dashboard will be a repository of historical time-based and real-time measurements of PM2.5 (in North Carolina) and will provide communities, nonprofits, and regulatory agencies a tool to access, understand, and communicate environmental data alongside geographic data such as the proximity of an EJ a community to nearby stationary sources of air pollution, proximity to roadways, and other features such as the number of homes and schools in the vicinity of any sensor. The AirKeeper Dashboard is expected to be completed by the end of 2024.

As part of this project, CANC will conduct a Health Impact Assessment (HIA). The HIA seeks to encourage the Mecklenburg County Health Department's inclusion of environmental justice parameters in its 2027 Community Health Assessment Survey (CHAS). The CHAS is a published public health report that identifies environmental justice impacts and priority areas that will reduce health disparities in environmental justice communities. CleanAIRE NC's HIA assesses how creating a hyperlocal cluster network of air monitors in impacted communities can inform, support, and advance public health programming efforts to promote environmental protection. justice. The four communities, Huntington Green, Pottstown, Smithville, and Cornelius, are low-income communities of color with a higher burden of chronic diseases due to social and environmental determinants of health, such as air pollution. By collaborating with multidisciplinary partners, this HIA will produce a final recommendations report to support public health and advocacy actions in EJ communities.

**C. Organization's Historical Connection to Underserved Community**

In 2016, CleanAIRE NC launched our AirKeepers program to educate and train residents in the Historic West End of Charlotte, a former red-lined community surrounded by two interstates and industrial sources. Between 2017 and 2022, the AirKeeper Program spread statewide as we deployed PurpleAir sensors in rural and urban areas collecting PM2.5 data for community use and scientific

**Project Narrative | North Mecklenburg Air Monitoring Network**

research and informing stakeholders. Based on a comprehensive analysis of that network by Eastern Research Group in 2021, CANC made a strategic shift to concentrate larger networks of monitors in counties with environmental justice communities suffering from cumulative impacts of air pollution. Since PM2.5 can be localized or travel long distances, the concentration of multiple monitors will allow impacted communities and our partners to identify trends of higher weighting of disproportionate exposure in environmental justice communities and provide solutions for reducing the impacts on human health. We have also expanded our AirKeeper engagement and training programs to involve residents in clean air advocacy and to build local groups' capacity through our AirKeeper Academy.

Since 2022, CANC has partnered with the North Mecklenburg community of Pottstown to better understand and digest local readings of particulate matter due to community concerns about local polluting sources, such as asbestos and particulate matter. This includes stationary and permanent monitoring sites within the community and mobile monitoring where community residents could take CANC's Community Science Manager throughout the neighborhood to identify potential areas of hotspot pollution. Our Community Science Manager has also attended community meetings to learn from residents about air pollution concerns, as well as the health, viability, and future of the Pottstown neighborhood, in the context of the future development of "Pottstown Park," the 31 acres now owned by Mecklenburg County. CANC continues to work with Pottstown to educate and engage with elected officials and other key stakeholders in discussions about the future of the Pottstown Community.

In early 2023, CANC connected with the North Mecklenburg Economic Mobility Collaborative (NMEMC) through our work with Carolina Advocates for Climate, Health, and Equity (CACHE). CACHE was formerly CANC's Medical Advocates for Healthy Air (MAHA) initiative, launched as an independent clinician-led organization in 2021. NMEMC was interested in working with CANC as part of their Healthy People Healthy Carolinas grant from The Duke Endowment. Specifically, NMEMC was interested in having CHWs trained as AirKeepers.

**Community Driven Participation,**
Three of the four impacted North Mecklenburg Communities are historic Black neighborhoods that have existed since the late 1800s and have organized periodically to face community challenges such as segregation and fair housing. All four communities are located in a relatively wealthy region of Mecklenburg County. Therefore, they face unique pressures associated with encroaching development and relatively high living costs, especially housing. Recent community organizing has focused on revitalizing neighborhoods to address these challenges head-on, preserve their communities and champion advocate for themselves effectively. In particular, the Smithville community has successfully implemented a revitalization plan that has received substantial American Rescue Plan Act funding from Mecklenburg County and philanthropic foundations to support their efforts spurring the recent formation of the Lake Norman Community Development Corporation.

Buoyed and inspired by the success of Smithville, Pottstown has successfully advocated for the preservation of the Waymer Center, a +50 year old historic school, to receive county funding for a park on that site. Members of the West Davidson Community actively participate in town citizen boards addressing Racial Equity, Affordable Housing, and Sustainability. They have organized to raise concerns over a Brownfield site in their community located on the grounds of a former asbestos plant. Huntington Green, as a Latinx community, faces the additional challenge of undocumented residents but has formed a cohesive community served by Caterpillar Ministries. Primarily in recognition of the hard work these communities have done to organize and champion their locality,

**Project Narrative | North Mecklenburg Air Monitoring Network**

advocate, the communities and organizations that serve them have received grants from the United Way and The Duke Endowment in recent years. These resource partners have stressed the importance of community-led collaborations and community capacity building. These collaborations have stimulated the communities to seek opportunities to build upon their foundation.

In this spirit, the communities approached CANC to seek EPA EJCPS funding to bolster their community-led collaborations with resources to address environmental challenges injustices. They recognize the increased resiliency and synergy resulting from diverse a variety of resources employed within a collaborative framework. The EPA EJCPS collaborative framework will foster the sharing of strategy and resources within these four communities necessary to successfully take on complex challenges that could overwhelm any of the communities alone. The community-led approach will harness this strength in numbers with shared resources to address the particular challenges faced by each community, building structures, capabilities, and capacities required to address more challenges in the future.

### D. EJCPS Model
Our project in North Mecklenburg County will focus on five of the seven EJ Collaborative Problem-Solving Model Elements:

**Issue Identification, Visioning, and Strategic Goal-Setting**
This element was completed before the grant when the four communities identified that air quality and climate change are issues impacting resident health. The communities' vision to monitor air quality was established alongside other faith, government, and healthcare stakeholders. By coordinating 11 stakeholders, strategic goal-setting was enacted to create a cluster monitoring network (15-20) monitors across the four EJ neighborhoods in North Mecklenburg. In addition to the monitoring network, residents requested clean air education and advocacy training that they and locally-based CHW will complete through the AirKeeper Academy.

**Community Capacity-Building and Leadership Development**
Parts of this element have been started, and the rest will be accomplished during Year 1 of the grant. After identifying the issue of poor air quality, community members and relevant stakeholders have taken steps to educate themselves and research the connection between health outcomes and exposure to pollution. During Year 1, the focus will be on Community Engagement to source community concerns. This also includes working with technical expert CleanAIRE NC to determine the best locations to place air sensors to measure PM2.5 levels. In the latter half of Year 1, community members and CHWs will enroll in the AirKeeper Academy educational sessions to become AirKeepers.

**Development of Multi-Stakeholder Partnerships and Leveraging of Resources**
This element has been cultivated as the four impacted CBOs have established working relationships with all the CPS partners. During the grant, stakeholders will work together to develop a comprehensive plan where each partner understands their role and responsibilities clearly, including one another's strengths, and where they can leverage resources to address project needs. Working collaboratively on this plan will ensure clarity of common vision, goals, objectives, strategies, and actions among the partnership.

**Constructive Engagement with Other Stakeholders**
This element will be accomplished during the grant. With eleven partners, several stakeholder groups are represented. Three are government entities. One is a municipality (Town of Davidson), and the others are county agencies (Mecklenburg County Air Quality and Mecklenburg County Health

6

**J.A. 2867**

**Project Narrative | North Mecklenburg Air Monitoring Network**

Department). We will leverage their technical assistance, information, and organizational capacity and raise EJ concerns for long-term solutions and eventual policy change. Our academic partner (North Carolina State University) will contribute to research and Healthcare, faith-based, and partners will assist with elements of the planned HIA. The remaining CBOs will leverage community relationships and engage residents in the grant project activities.

**Evaluation, Lessons Learned, Replication of Best Practices**
Due to the nature of the element, this step will be conducted during the grant cycle. After every grant activity, stakeholders will convene to evaluate project progress and suggest improvements to ensure grant objectives are being met and community needs are being served. Stakeholders will be encouraged to give real-time feedback, but a SWOT analysis will also be conducted to capture information. At the end of the grant, an air quality monitoring report and an HIA report with recommendations will be created.

**E. Project Linkages**
The North Mecklenburg Air Monitoring Network supports EPA Strategic Plan Goals. 2, Objective 2.1 (Promote Environmental Justice and Civil Rights at the Federal, Tribal, State, and Local Levels) by It bringsbringing together several impacted communities and other essential stakeholders to address long-term EJ concerns. These concerns have directly impacted residents' quality of life and economic mobility due to their historical long-time exclusion from federal, state, and local initiatives. This project allows those communities to interface with government entities and share their concerns and solutions to the problems that will uphold and honor the Civil Rights Act of 1964's protections and agreements.
Partner CBOs will work with the Town of Davidson to inform their Climate Action Plan. This will also provide CBOs with a framework to approach Huntersville and Cornelius, NC, municipalities to address air quality and environmental concerns.

This project will initiate operations at a local level, leveraging pre-existing relationships between the impacted communities and the community-based organizations and local governments that serve them. Local partners have linkages with statewide networks positioned to expand impact by replicating successful approaches. In addition to CANC, statewide climate and health networks such as the North Carolina Community Health Worker Association, CACHE, and the North Carolina Area Health Education Centers have the capability to disseminate successful local EJ approaches. Additionally, the North Mecklenburg Air Monitoring Network program is intrinsically tied to key NC Executive Orders like EO 271, EO 246, and EO 80. By implementing the Advance Clean Truck initiative, covering medium/heavy duty trucks; increasing the percentage of zero-emission vehicles to 30% sold by 2030 and 100% by 2050; and a general focus on increasing zero-emission vehicles like cars and pick-up trucks should improve overall air quality and reduce health impacts.

**F. Partner and Collaborate**
This grant proposal provides a strong network for building capacity and working toward environmental community change. This project is directed and informed by the four impacted communities that have historically been excluded from decision-making for their neighborhoods, for decades and decades. By leveraging the resources and expertise of the eleven stakeholders from academia, healthcare, local government agencies/ municipalities, and faith-based organizations, we have secured the necessary collaboration to ensure community concerns are heard and solutions are set in motion for long-time positive results. We are confident that our goal to collect hyper-local air quality data and educate residents on the impacts of pollution and climate change will inform public health policy changes to improve community health outcomes.

7

**J.A. 2868**

**Project Narrative | North Mecklenburg Air Monitoring Network**

**Letha's 1Stop Shop (CBO)**
Letha's 1Stop Shop will manage the community engagement activities, recruit community scientists, known as AirKeepers, and facilitate residents' participation in CANC's AirKeeper Academy. Letha's 1Stop Shop will serve as the community voice for this initiative connecting residents with local and state agencies, elected officials, health professionals, and other faith-based communities. Letha Smith runs Letha's 1Stop Shop single-handedly, serving her community by helping her neighbors overcome hardships, poverty, and social injustices negative outcomes by connecting them with necessary resources. Letha researches and identifies available resources and has built partnerships with local nonprofits, faith-based organizations, and academia to tackle larger issues such as food shortages, healthcare access, and homelessness. As a resident of West Davidson, Letha is committed to improving the quality of life of her neighbors and ensuring everyone in her community has access to equal and equitable resources. To maintain and sustain this relationship in the future, CANC will work with Letha's 1Stop Shop to ensure all North Mecklenburg residents interested in air quality monitoring have the opportunity to learn more about the issues and become AirKeepers. As lead community partner Letha's 1Stop Shop will receive a sub-grant for her community organizing work and qualifies for funding due to her CBO status.

**Pottstown Heritage Group (CBO) and Smithville Community Coalition (CBO)**
Representing two impacted communities, Pottstown Heritage Group, and Smithville Community Coalition, bring people power and community organization to this grant. They will contribute to this project by recruiting AirKeepers from their community to host low-sensor air monitors and encourage residents to engage in education and advocacy trainings through the AirKeeper Academy. These partners are vested in the project because their communities are impacted by poor air quality and higher rates of chronic disease. They are committed to funding solutions to improve their communities quality of life. CleanAIRE NC plans continued engagement with these communities and to serve as a resource for not only community science and health but also a chamption an advocate for advocacy and policy changes. Each of these communities will receive a $15,000 subaward stipend for their work to organize community residents and service as key stakeholders. As CBOs, they are compliant with the funding requirements for this grant.

**North Mecklenburg Economic Mobility Collaborative (CBO)**
NMEMC is a locally based organization with experience developing and managing multi-stakeholder collaborations and leveraging resources to address complex local challenges. Recognizing that economic immobility is a multideterminant problem, NMEMC has organized its efforts as a backbone organization as described by Stanford's Center for Social Information and has developed a health-centered community of practice that can be leveraged to engage in building community capacity to address environmental challenges injustice. NMEMC is a community-led volunteer organization.
Within NMEMC's health community of practice are members with backgrounds in clinical medicine, health systems strengthening, community, and public health. These members will participate in this project, providing locally informed subject matter expertise. NMEMC participates in various local, multi-stakeholder collaborations and recognizes that success in addressing complex challenges requires a holistic, inter-collaboration perspective to realize synergies and economies of scale. As such, the success of each collaboration hinges on cooperation and coordination. As complex challenges wax and wane, the local multi-stakeholder relationships required to address these challenges have the potential to strengthen over time. Employing collaboration-based problem-solving is an important relationship-strengthening strategy. When stakeholders experience constructive engagement in problem-solving, they are likely to learn from this experience and bring their lessons to address new or different complex challenges. NMEMC will receive a sub-award for assisting with Element 4 of the EPA EJCPS model.

8

**J.A. 2869**

**Project Narrative | North Mecklenburg Air Monitoring Network**

**Atrium Health (Healthcare)**
Atrium Health is one of the largest vertically integrated health systems in the U.S. and the largest healthcare provider in Mecklenburg County. As part of this project, Atrium Health will provide data support and incorporate project metrics in ongoing Community Health Impact Assessment work for the four impacted communities utilizing hyper-local air quality data collected during this program. Atrium Health is vested in this project because it complements existing initiatives they spearhead in North Mecklenburg. Atrium Health is an established partner of CANC through their support of the annual health conference. With Atrium's recent expansion across the state of NC and commitment to social and environmental health outcomes, we envision new collaborations in the future.

**Lake Norman Community Health Clinic (Healthcare)**
LNCHC will support and engage in the grant, specifically the assessment and recommendations section for the HIA. They will share depersonalized clinical data to support public health processes, including efforts to reduce health differences disparities and identify gaps in health programming. LNCHC is vested in this work because they provide clinical services to uninsured and low-wealth families, primarily from Huntington Green, for chronic disease prevention and maintenance. CANC's Health Program plans on continued partnership with LNCHC to engage clinicians in advocacy promotion efforts and build healthy air initiatives for Huntington Green.

**North Carolina State University (Academia)**
Dr. Zhen Qu, an Assistant Professor at North Carolina State University, specializes in understanding sources of greenhouse gas (methane) and air pollutants. She will contribute technical assistance to this grant, specifically with the HIA. Dr. Qu's research focuses on outcomes and emission understanding through modeling. She will apply an atmospheric sensitivity model to quantify how emissions from each surrounding region and specific human activities (e.g., power plants, on-road transportation, industry, etc.) lead to air pollution-associated premature death and adverse health impacts in the North Mecklenburg community. Dr. Qu is interested in this partnership because she can connect directly with EJ communities and learn about their concerns. As the state's lead air quality advocacy organization, CANC will maintain a relationship with Dr. Qu through our Community Science program.

**Mecklenburg County Health Department (Local Government)**
MCHD is the local public health organization for Mecklenburg residents. For this project, they will continue their involvement in the Healthy Air Education Series leading course sessions. They will also engage their Community Health Worker Initiative in grant activities by promoting the series and CleanAIRE NC's AirKeeper Academy. Additionally, they will support CleanAIRE NC's Health Impact Assessment by sharing population health metrics to inform, support, and promote public health efforts in impacted North Mecklenburg communities. MCHD is vested in this work because, at this time, they offer few interventions for North Mecklenburg residents as it is not deemed a priority health area. MCHD will also benefit from HIA research providing the necessary data to include environmental justice parameters in their 2027 Community Health Assessment. CANC will maintain a long-lasting relationship with MCHD as we expand the AirKeeper Academy to other priority health communities across Mecklenburg and champion for a special advocate for an EJ section in the County health assessment.

**Mecklenburg County Air Quality (Local Government)**
MCAQ serves as the county's regulatory agency for air quality. MCAQ will serve as a resource and partner in elevating potential regulatory programs based on data outcomes to reduce emissions. MCAQ will contribute to regulatory agency education around permitting, zoning, and other

9

**Project Narrative | North Mecklenburg Air Monitoring Network**

regulatory processes and be a contact point for community members regarding these processes. MCAQ has partnered with CleanAIRE NC since 2017 to address health impacts in underserved communities in other areas of Mecklenburg County, specifically Charlotte's Historic West End. This partnership established a permanent fine particulate matter EPA regulatory sensor after community monitoring data was collected and shared with the agency. CleanAIRE NC will continue to work with MCAQ to establish future cluster monitoring networks across the county. MCAQ will not receive a sub-award from this grant.

**Town of Davidson (Local Government)**
The Town of Davidson will support and engage in the grant specifically with EJCPS Element 4: Multi-Stakeholder partnerships and Leveraging of Resources as one of the stakeholders. They aim to integrate this effort with plans to develop a Climate Action Plan and, in their work seeking certification in the LEED for Cities and Communities program. They will also support the local CBOs in navigating the complexities of local government and the best ways to make meaningful changes at the local level. CleanAIRE NC will continue to work with the Town of Davidson, specifically its Sustainability team, as they navigate climate action in NC.

**Caterpillar Ministries (Faith-Based Organization)**
Caterpillar Ministries is a grass-roots nonprofit/non-denominational Christian organization that serves the North Mecklenburg community of Huntington Green in Huntersville, NC. Caterpillar Ministries will support and engage in the grant, specifically with Element 4: Multi-Stakeholder partnerships and Leveraging of Resources. They will assist local community-based organizations with AirKeeper recruitment and community engagement in the AirKeeper Academy courses for the Huntington Green Community. CANC looks forward to a stronger partnership with Caterpillar Ministries in our work with this project and other initiatives, including our Greening Our Faith Communities Summit. This summit is an opportunity to unite the voices of faith in the calling for climate solutions and a low-carbon future. In lieu of Huntington Green having an established CBO, Caterpillar Ministries will receive a sub-award from this grant to support residents from the community.

**2.0 Project Activities / Milestone Schedule / Detailed Budget Narrative**
**A. Project Activities**
**Community Engagement:** To fully engage interested residents during this 3-year project, we will work with Letha's 1Stop Shop, Pottstown Heritage Group, Smithville Community Coalition, and Caterpillar Ministries (Huntington Green) to source community concerns. CANC will administer the grant and has requested a full-time employee in the budget to assist current CANC Program Managers and Letha's 1Stop Shop with grant activities. The CANC Project Coordinator will support Letha's 1 Stop Shop with all aspects of community engagement and will work with her and the other communities to develop a community engagement plan. Initial engagement activities include organizing orientation sessions to hear from residents about local air pollution concerns and related health impacts. 20 AirKeepers will be recruited from the impacted communities via the orientation sessions, with the intent that they will be responsible for maintaining air monitoring for the duration of the project. Residents interested in joining the new Community Air Monitoring Advisory Council will be identified throughout this process, including scientists and other relevant community stakeholders. The Project Coordinator will support the deployment of the PurpleAir monitors and assist Letha's 1Stop Shop with scheduling monthly meetings for AirKeepers during the first 16 months of the project. AirKeepers will hear from scientists, health professionals, and other resources at monthly meetings to advance learning. The AirKeeper Academy courses are key components that

**Project Narrative | North Mecklenburg Air Monitoring Network**

will be implemented to build the capacity of Huntington Green, Pottstown, Smithville, and West Davidson AirKeepers and residents.

**Air Monitoring, Data Collection, and Analysis (PurpleAir, Modulair, AirBeams):** PurpleAir's PA-Flex sensors are deployed to a specific location and are powered via a wall outlet. The data are uploaded via wifi to an open-access server maintained by PurpleAir. The PA-Flex reports real-time PM2.5 concentrations and Volatile Organic Compound (VOC) gas concentrations. PurpleAir PM2.5 data has been repeatedly vetted by scientists as a reliable, low-cost measurement, and CleanAIRE NC has collaborated with academic and government scientists on these verification projects. The PurpleAir VOC measurements are experimental and new, so they do not yet have a deep verification process.

QuantAQ's Modulair sensors are deployed to a specific location and are powered via solar. The data are uploaded via cellular data to an open-access server maintained by QuantAQ. The Modulair-PM reports real-time PM1, PM2.5, and PM10 concentrations for particles between 0.35 µm and 40 µm in size. Modulair reports the same as Modulair-PM but also includes measurements of the gas concentrations of Carbon Monoxide, Nitrogen Oxide, Nitrogen Dioxide, Ozone, and Carbon Dioxide. There is strong evidence that Modulair data provides a very reliable measurement of PM1, PM2.5, and PM10, but the price of the Modulair sensors is about 10x the price of PA-Flex.

HabitatMap's low-cost AirBeam3 is a portable, hand-held sensor designed to connect real-time measurements of PM2.5 concentration with the immediate vicinity of the individual user. The PM2.5 data is transmitted from the AirBeam3 to the mobile AirCasting App, which displays a map of the real-time PM2.5 on, for example, a smartphone. Because the AirBeam3 reports PM2.5 in an individual's immediate space, the devices can interactively pinpoint PM2.5 hotspots by literally walking a path with the AirBeam3 from one location to another.

Fixed location air monitoring with the PA-Flex and Modulair devices will be conducted starting in Year 1 after six months of initial community engagement activities and after deployment locations are identified. Data from the PA-Flex sensors will be immediately available through the PurpleAir online mapping system and from the Modulair sensors via the QuantAQ online mapping system. CANC is currently funded (Windward EJ DataFund, as listed in Section 5) to create a customized data dashboard for North Carolina, and the intent is that all PA-Flex and Modulair data from this EPA CPS proposal will be accessible through the CANC "AirKeeper Dashboard" when it is finalized in 2024.

AirBeam3 mobile monitors will be used in Year 3. CANC will establish an AirBeam3 Lending Library to engage K-12 students in the four EJ communities. Students will work in teams using the AirBeam3 to collect air pollution data and then study the results via the AirCasting App. Topics of investigation include experiments related to local pollution sources like idling school buses and more general air quality and weather projects in the classroom. Throughout this process, and in tandem with both the PA-Flex and Modulair data and the on-going CANC creation of the AirKeeper Dashboard, the CANC Community Science Program team will work with the teams and individuals on data interpretation.

Before collecting data, CANC will work with US EPA Region 4 staff to develop an approved Work Plan and Quality Assurance Project Plan (QAPP) for all monitoring activities. The plans will be shared with all partners.

**Project Narrative | North Mecklenburg Air Monitoring Network**

**AirKeeper Academy:** this hybrid educational and advocacy program includes three session topics that will be held for residents in year two of the grant period. All AirKeeper Academy Training will be held in English and Spanish.

The Healthy Air Education Series will feature public health classes customized for North Mecklenburg residents. Courses will include COVID-19 and Chronic Diseases, Maternal and Child Health, and Pollution and Mental Health. We will work with partners from Mecklenburg County Health Department, Lake Norman Community Health Clinic, Mecklenburg County Air Quality, and Letha's 1Stop Shop to develop workshop materials and recruit participants. Local physicians serving the community will lead the Healthy Air Education sessions. The education series will increase participants' knowledge about air quality's impact on specific health issues. The classes will also increase understanding of air pollution in North Mecklenburg, increase enthusiasm for reducing emissions, and encourage participants to take action to protect their health.

The Clean Air Advocacy Training and EJ Tour will cover topics for residents interested in learning how to advocate effectively for a cleaner environment and better health. Training topics include Air Quality 101, a history of air quality monitoring in Mecklenburg County, and a primer on permits and zoning taught by county staff. Each session will cover tools residents can use to determine the location of pollution sources in their community and resources to increase engagement in air permitting and zoning decisions. Participants will also learn how community benefits agreements can be used to negotiate reductions in air pollution with local polluting entities. The EJ Community Tour will show residents sources of pollution in the community.

The Maps and Apps Training will teach participants how to use the AirKeeper Dashboard and existing on-line mapping tools such as the EPA EJScreen, EJ Index, and Climate and Economic Justice Screening Tool to advocate to champion for stronger environmental and public health protections. Participants will also learn how to find and understand data on exposure, access data on pollution from both regulatory and personal sensors, and how local air monitoring around their homes can lead to stronger policies and programs around air quality.

**Health Impact Assessment:** The HIA will be ongoing for all three years of the grant. Year 1 will consist of reviewing secondary data sources, including the Mecklenburg County Health Department Community Health Assessment Surveys (2019/2023) to confirm baseline health data that may support comparison activities in and between communities. This will provide a clear Health Profile of North Mecklenburg. In Year 2, Lake Norman Community Health Clinic and Atrium Health will provide supplemental data, including depersonalized clinical health indicators, to assess and evaluate health behaviors and outcomes changes for patients who completed the AirKeeper Academy training in Year 1. In year 3, we will incorporate all data from hyper-local air monitoring, AirKeeper Academy training, and Dr. Qu to prepare a final analysis and recommendation report that evaluates improvements to patient health and disease management.

**Community Health Worker (CHW) Training:** One CHW will be recruited (four in total) from Huntington Green, Pottstown, Smithville, and West Davidson. The four CHWs will complete the AirKeeper Academy in Year 1. After completing the Academy, CHWs will be deployed in their respective communities as Lead AirKeepers, where they will provide solutions for the educational, promotion, advocacy, and connectivity needs of the communities in which they live. CHWs are lay members of the community who often work with health professionals to reduce health disparities in underserved vulnerable communities. CHWs are currently employed by health systems in Mecklenburg County and local CBOs and clinics. MCHD provides workforce development services and funding resources through

12

**J.A. 2873**

**Project Narrative | North Mecklenburg Air Monitoring Network**

its Community Health Worker Initiative and Stakeholder Advisory Committee. CHWs are increasingly recognized as essential healthcare workforce members and can improve health outcomes and quality of life for people in poor, underserved, and diverse vulnerable communities. We will train additional CHWs through the MCHD CHW Initiative and Atrium Health in Year 2.

**B. Milestone Schedule**

| Activities/Milestones | Year 1 | Year 2 | Year 3 | Key Groups Responsible |
|---|---|---|---|---|
| Community Engagement | X | | | CleanAIRE NC, Project Stakeholders (CBOs, Government, Faith-Based, Healthcare) |
| AirKeeper Academy Healthy Air Education Series | X | X | | CleanAIRE NC, MCHD |
| AirKeeper Academy Clean Air Advocacy Training | X | X | | CleanAIRE NC, MCAQ |
| AirKeeper Academy Maps and Apps Training | X | X | | CleanAIRE NC, MCAQ |
| Air Monitoring/ Data Collection PurpleAir PA-Flex (fixed location) | X | X | X | CleanAIRE NC |
| Air Monitoring/ Data Collection QuantAQ Modulair (fixed location) | X | X | X | CleanAIRE NC |
| Air Monitoring/ Data Collection AirBeam3 Monitoring (mobile monitoring) | | | X | CleanAIRE NC, 20 AirKeepers from the Communities |
| Health Impact Assessment | X | X | X | CleanAIRE NC, NC State, Lake Norman Community Health Clinic, Atrium Health, MCHD |
| Community Health Worker Training | X | X | | CleanAIRE NC, Letha's 1 Stop Shop, Caterpillar Ministries, Atrium Health, MCHD CHWI |

**C. Itemized Budget Sheet / Budget Narrative**: Submitted as an Attachment

**3.0 Environmental Results – Outputs, Outcomes, and Performance Measures (Logic Model)**

13

**J.A. 2874**

**Project Narrative | North Mecklenburg Air Monitoring Network**

A. <u>**Environmental Results (Logic Model)**</u>: Submitted as an Attachment

**B. Performance Measurement Plan**
In addition to yearly quarterly check-in meetings with all stakeholders, CANC Staff will evaluate the effectiveness of program activities by assessing participant learning and assessing participant engagement through qualitative (informal and formal interviews) and quantitative (number of registrants, pre/post-session surveys, number of installations) metrics detailed in the table below.

| Output/Outcome | Measurement Strategy | Timeframe |
|---|---|---|
| Engaged participants in the AirKeeper Academy | Number of registrants and attendees | Attendance during Year 1 and  2 sessions |
| Health Air Education Series: Increased knowledge about air quality's health impact, interest in reducing emissions, protecting health | Survey to determine change in knowledge | Pre/post-session |
| Clean Air Advocacy Increased knowledge of city zoning and county air permitting processes | Survey to determine change in knowledge | Pre/post-session |
| Maps and Apps: Increased usage of mapping tools for personal health decisions | Follow-up survey | 3-month post-session |
| Engaged participants in the AirKeeper Academy | Number of registrants and attendees | Attendance during Year 2 sessions |
| A better understanding of North Mecklenburg air pollution sources | Installation and data analysis of Purple Air Monitors in North Mecklenburg | Monthly data summary reports |
| Increased enthusiasm, interest, and engagement in protecting air quality and public health in North Mecklenburg | Informal interviews with session participants | Conducted throughout the sessions |
| HIA Increased patient self-efficacy regarding the management of their chronic health condition, increased knowledge of the connection between air pollution and their health; Change in health behavior (using AQI data to inform health behavior decisions);<br><br>Changes in Clinical Health Indicators (blood pressure, blood sugar, asthma | Pre-Survey  and Post-Survey to measure changes in knowledge, attitude/self-efficacy, and health behaviors<br><br>Depersonalized Electronic Health Records (Epic EHS) | Conducted before and after completion of the Healthy Air Education Series |

14

**J.A. 2875**

**Project Narrative | North Mecklenburg Air Monitoring Network**

| | | |
|---|---|---|
| hospitalization) | | |
| Data from HIA will be used to inform Mecklenburg County Health Department's 2027 Community Health Assessment Survey | Community survey responses & Hyperlocal Air Monitoring Data | Conclusion of grant cycle |

**C. Sustainability Plan and Community Vision**

Many initiatives in North Mecklenburg address singular issues such as affordable housing, food deserts, transportation, and healthcare access. With increasing climate change impacts the expectation that air pollution will increase due to transportation emissions, the North Mecklenburg Air Monitoring Network provides an opportunity to address these issues through an environmental health lens and implement sustainable solutions that lead to various co-benefits. This project is taking place alongside other important work in the four communities, including a Revitalization Plan in Smithville, creating a multi-acre green space in Pottstown, and funding for community-led projects from The Duke Endowment Healthy People Healthy Carolinas and the United Way Staying in place grants already underway. Developing a cluster air monitoring network aligns with these and other planning initiatives to promote inclusive and equitable economic development, affordable housing, and job creation. By investing in local community members to become AirKeepers and supporting community health workers in these communities with environmental health and justice capabilities, the impact of this program will extend long beyond the 3 years of funding. The sustainability of this program is inextricably tied to community capacity and ownership, both intentionally strengthened through the North Mecklenburg Air Monitoring Network's approach. The project stakeholders engaged in this project will champion advocate for sustainable solutions to improve public health with the Health Impact Assessment's goal of having the Mecklenburg County Health Department include environmental justice indicators in the next Community Health Assessment for 2027. CleanAIRE NC is thrilled that the North Mecklenburg Air Monitoring Network is expanding the existing cluster monitoring network model already established in Charlotte's Historic West End and soon-to-be Sampson County through funding from the EPA.

**4.0 Programmatic Capability**
**A. Organizational Experience**

Founded in 2002 by a group of passionate Charlotte volunteers determined to improve the region's air quality, which was in non-attainment for ground-level ozone, CANC expanded statewide in 2010 and has earned a reputation as the leading North Carolina air quality advocacy organization. Our team of twelve is driven to advance our mission to advocate push for the health of all North Carolinians by pursuing equitable and collaborative solutions that address climate change and air pollution.

We view all program work and policy initiatives through the lens of health as it's impacted by air pollution, climate change, and environmental impacts justice. Our staff has specialized experience in public health, air quality and energy policymaking, community science, education, and organizing. In addition to our team, we have a dedicated Board of Directors, including health and science professionals committed to advancing equitable solutions to environmental challenges injustices. Our Health and Community Science programs have Advisory Boards comprising university health and science professors and researchers, practicing and retired clinicians, and state and national citizen science leaders. Our main office is in Charlotte, where we have worked for 20 years to develop strong relationships with local government, the nonprofit sector, and underserved vulnerable communities.

15

**J.A. 2876**

**Project Narrative | North Mecklenburg Air Monitoring Network**

**B. Staff Experience / Qualifications of Project Manager (PM)**
Daisha Wall is the Community Science Manager at CANC and will serve as Project Manager. Daisha has a rich community science, environmental experiences justice, and community engagement background. She was also CANC's first Environmental Justice Manager, where she established the foundation for the program and worked with the Historic West in Charlotte to create their Green District. In her current role, she manages a statewide network of volunteer air quality monitoring hosts, including recently established cluster air monitoring networks in EJ communities. She provides technical resources and support for researchers, policymakers, health professionals, and educators to advance CANC's mission. Daisha holds a Master of Science in Environmental Policy from Johns Hopkins University and a Bachelor of Science in Sustainable Development from Appalachian State. Daisha has also obtained a graduate certificate in Geographic Information Sciences (GIS); she uses the skills learned to reach communities further and identify patterns of ongoing challenges inequity.

Amanda Strawderman is CANC's Environmental Justice Manager. They developed a passion for environmental justice challenges through working with impacted communities facing threats to drinking water from various polluting industries. Amanda will lead the Clean Air Advocacy session and the Environmental Justice tour for this grant. They will also provide expertise and content for the Maps and Apps session in the AirKeeper Academy. Amanda holds a Bachelor of Science in Geography (GIS and Environmental Studies) from James Madison University and a Master of Science in Sustainability from Lenoir-Rhyne University-Asheville.

CANC's Health Manager, Emily Wolfe, manages strong partnerships with health professionals through the Health Program and signature conference, NC BREATHE. The CANC Health Program has engaged with North Mecklenburg communities to advise on health education, and this position will be leading the Health Impact Assessment research for this grant. She will also lead the Healthy Air Education Series, using community-based health education about environmental linkages to chronic disease. Emily is a Licensed Clinical Social Worker; holds a Bachelor of Fine Arts from The University of North Carolina at Greensboro and received her master of Clinical Social Work from The University of North Carolina at Chapel Hill with a concentration in adult mental health.

CANC's Project Coordinator (to be hired with funding from this grant) will play a prominent role in this project serving as a resource for community liaison Letha's 1Stop Shop, assisting with all project activities, including community engagement, air monitoring, AirKeeper Academy training, and project management for the Health Impact Assessment.

**C. Expenditure of Awarded Grant Funds**
CleanAIRE NC's Accounting and Financial Policies and Procedures manual outlines the organization's expenditure control guidelines. The policies and procedures included in the accounting and finance manual follow GAAP standards and have been vetted and approved by an external auditor. Should we be awarded this grant, CANC will maintain a separate bank account to house the funds and ensure timely and efficient payments to sub-recipients and vendors. Our approach to dispersing grants funds will follow the calendar below:

**Year 1:** $231,080 dispersed to CANC for EJCPS personnel ($20,000), Letha's 1Stop Shop, travel ($4,000), and fringe benefits ($6,667). CANC will receive funds for personnel ($60,000), travel ($1,000), and indirect costs ($16,333) and will purchase all PurpleAir, QuantAQ, HabitatMap, and iPad equipment ($63,160) along with supplies ($3,920) for AirKeeper Academy materials.

16

**Project Narrative | North Mecklenburg Air Monitoring Network**

Sub-awards for Lake Norman Community Health ($1,000) will be released for transport assistance. The first year of contractual stipends will be released ($55,000).

**Year 2:** $143,920 dispersed to CANC for EJCPS personnel ($20,000), Letha's 1Stop Shop, travel ($4,000), and fringe benefits ($6,667). CANC will receive funds for personnel ($60,000), travel ($1,000), and indirect costs ($16,333). Supplies will be purchased ($3,920) for AirKeeper Academy materials. Sub-awards for Lake Norman Community Health ($1,000) will be released for transport assistance. The second year of contractual stipends will also be released ($31,000).

**Year 3:** $125,000 dispersed to CANC for EJCPS personnel; ($20,000) Letha's 1Stop Shop, travel ($4,000), and fringe benefits ($6,667). CANC will receive funds for personnel ($60,000), travel ($1,000), and indirect costs ($16,333). Sub-awards for Lake Norman Community Health ($1,000) will be released for transport assistance. The final year of contractual stipends will also be released ($16,000).

**5.0 Past Performance**
Below is a list of five grants CleanAIRE NC has received in the last three years:
1. **2022:** EPA Enhanced Air Quality Monitoring Competitive Grant: CleanAIRE NC has not yet received funding for this grant but has been in regular communication with our Project Officer and Technical Officer to finalize the work plan. We anticipated funding in May 2023 for this 36-month project.
2. **2022:** Windward Foundation Environmental Justice Data Fund: Reporting for this grant is due at the end of the 24-month project period, which is 12/31/2024.
3. **2022:** Z. Smith Reynolds Foundation: As part of the grant award agreement, the requirements for Z. Smith Reynolds funding are to complete reports at mid-year and the end-of-grant cycle. The information we provided included our progress on the project's expected outcomes, outputs, and grant successes.
4. **2022:** Harold M. and Adeline S. Morrison Family Foundation: CleanAIRE NC prepares a mid-year and end-of-year report outlining project goals, outcomes, and successes. We also present annually to "The Collective" representatives who are Foundation members.
5. **2021:** EPA EJ Small Grant: CleanAIRE NC received funding from the EPA for this grant in July 2022. Since the award was granted, we have completed all monthly grant meetings with our Program Officer and submitted a mid-year report in March 2023. A final report is due in August 2023.

**6.0 Quality Assurance Project Plan (QAPP) Information (If applicable)**
We will need to develop a Quality Assurance Project Plan as we will collect data from low-cost sensors to develop the North Mecklenburg Air Monitoring Network. We use PurpleAir monitors to collect and share data about PM2.5/VOC concentrations and Modulair sensors. We will use PurpleAir's existing open-source database integrated through our AirKeeper Dashboard. We will also use the information collected to make recommendations on public health and environmental policy decisions through the proposed Health Impact Assessment.

**EPA R4 Staff analysis:  65/8297 approximate words/expressions are related to DEI = 0.8 %**

17

**J.A. 2878**

**Decision Tree**



**Keywords** - EPA used this NSF list, since EPA HQs did not furnish one.  Added climate <mark>change</mark>, environmental <mark>justice</mark>.  Often played the cautious approach, when screening workplans for 'forbidden' words un the context of EO 14151 (DEI).

activism
activists
advocacy
advocate
advocates
barrier
barriers
biased
biased toward
biases
biases towards
bipoc
black and latinx
community diversity
community equity
cultural differences
cultural heritage
culturally responsive
disabilities
disability
discriminated
discrimination
discriminatory
diverse backgrounds
diverse communities
diverse community
diverse group
diverse groups
diversified
diversify
diversifying
diversity and inclusion
diversity equity
enhance the diversity
enhancing diversity
equal opportunity
equality
equitable
equity
ethnicity
excluded
female
females
fostering inclusivity
gender
gender diversity

genders
hate speech
excluded
female
females
fostering inclusivity
gender
gender diversity
genders
hate speech
hispanic minority
historically
implicit bias
implicit biases
inclusion
inclusive
inclusiveness
inclusivity
increase diversity
increase the diversity
indigenous community
inequalities
inequality
inequitable
inequities
institutional
lgbt
marginalize
marginalized
minorities
minority
multicultural
polarization
political
prejudice
privileges
promoting diversity
race and ethnicity
racial
racial diversity
racial inequality
racial justice
racially
racism
sense of belonging
sexual preferences

social justice
sociocultural
socioeconomic
status
stereotypes
systemic
trauma
under appreciated
under represented
under served
underrepresentation
underrepresented
underserved
undervalued
victim
women
women and
underrepresented

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

- - -

THE SUSTAINABILITY INSTITUTE, : 2: 25-cv-02152
*et al.*                       :
                               : May 19, 2025
                 Plaintiffs,   :
     versus                    : (Pages 1 - 54)
                               :
                               :
                               :
DONALD J. TRUMP, *in his*      :
*official capacity as President* :
*of the United States, et al.* :

                 Defendants.

- - -

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE RICHARD M. GERGEL
UNITED STATES DISTRICT COURT JUDGE

- - -

**A P P E A R A N C E S:**

For the Plaintiffs:        KIMBERLEY CLAIRE HUNTER
                           Southern Environmental Law Center
                           136 East Rosemary St., Suite 500
                           Chapel Hill, NC 27514

                           ELAINE POON
                           Public Rights Project
                           490 43rd Street, Unit 115
                           Oakland, CA 94609

For the Defendant:         TODD STUART TIMMONS
                           U.S. Attorneys Office (Cola)
                           1441 Main Street, Suite 500
                           Columbia, SC 29201

                           LEE ELLIS BERLINSKY
                           US Attorneys Office
                           PO Box 978
                           Charleston, SC 29402

```
Court Reporter:              LISA D. SMITH, RPR, CRR
                            Official Court Reporter
                            P.O. Box 835
                            Charleston, SC 29401



      Proceedings recorded by mechanical stenography,
transcript produced by computer.
```

3

1       *(The following proceedings commenced at 10:00 a.m.)*

2              THE COURT:  Good morning.  Please be seated.

3              Good morning, everyone.  This is matter of The

4       Sustainability Institute and others vs. Donald J. Trump and

5       others, 2:  25-2152.

6              Could counsel for the plaintiffs who will be speaking

7       identify for the record, please?

8              MS. HUNTER:  Kimberley Hunter, for the plaintiffs,

9       your Honor.

10             THE COURT:  Thank you.

11             And for the defense?

12             MR. TIMMONS:  Yes, your Honor.  Todd Timmons, on

13      behalf of the Department of Justice.

14             THE COURT:  Very good.

15             MR. BERLINSKY:  And Lee Berlinsky, on behalf of the

16      defendant.  Thank you.

17             THE COURT:  Okay.  Let's talk a little bit about the

18      order of things today, as we will discuss.  I first want to

19      discuss the issue of the defendants' response at Docket 153

20      that was filed on Friday, indicating that defendants no longer

21      contest the judgment on the merits of the APA claims.  Those

22      are Dockets what -- Grants 1 through 26 and 33 through 38.

23      Those are 32 of the 38 grants the defendants say they no

24      longer contest.

25             We had a telephone conference on Friday, in which Mr.

4

1    Timmons confirmed my understanding from the filing, that

2    although the government defendants don't contest their

3    liability, they would seek a stay should the Court enter

4    relief in the form of injunctive relief.

5           Mr. Timmons, is that correct?  Is that a correct

6    statement of the government's position?

7           MR. TIMMONS:  Yes, your Honor.

8           THE COURT:  Very good.  Okay.  And after we deal with

9    that claim, I then want to address the plaintiffs' claim for

10   nonstatutory review jurisdiction, and then the implications of

11   that, if there is jurisdiction.

12          And finally, I want to address, after that, the

13   plaintiffs' claims which are still contested by the

14   government.  Those are Grants 27 to 32.  So, we'll do it in

15   that order so we can keep some rational line drawing here on

16   the issues.

17          So, let me say that I am prepared -- based on the

18   government's position expressed in Docket 153, I'm going to

19   enter judgment for the plaintiffs on Grants 1 through 26 and

20   33 through 38.  And then the issue of remedy arises.  And I'll

21   be glad to hear from plaintiffs regarding remedy.

22          MS. HUNTER:  Thank you, your Honor.  And if I could

23   first just ask for a point of clarification.  Will you be --

24          THE COURT:  You can ask for two points of

25   clarification.

5

1        MS. HUNTER:  Thank you.  Do you intend to enter

2    judgment -- final judgment, or is this just judgment as to the

3    preliminary injunction?

4        THE COURT:  No, no.  I'm going to enter final

5    judgment.

6        MS. HUNTER:  Thank you, your Honor.

7        THE COURT:  It would go up on appeal as a final

8    judgment.  So, the question is:  What remedies -- and

9    specifically, you know, as I understand the government's

10   position, they don't object to a declaratory relief, they just

11   don't want injunctive relief.  And so, the question is -- I

12   want to address the appropriateness of any injunctive relief,

13   what relief you seek, and then I guess you ought to take up

14   the issue of whether or not a stay should be issued.

15       MS. HUNTER:  Yes.  Thank you, your Honor.  Well, I

16   think we would request the relief that is outlined in our

17   prayer for relief in our complaint -- and that starts on page

18   89 of our complaint -- and starts with a series of declaratory

19   judgments.  The first three declaratory judgments relate to

20   the executive orders, the unleashing Energy Executive Order,

21   the Equity Executive Order, and the DOGE Executive Order.

22   Those are the constitutional questions, and so, those may be

23   more appropriate in the second part of the process --

24       THE COURT:  Well, the APA covers unlawful,

25   unconstitutional acts.  So, it's appropriate with either or

6

both.  And let me ask you this:  You have an executive order
that I think on the unleashing the energy could be read
potentially to be limited to the New Green Deal, okay.

MS. HUNTER:  (Affirmative nod).

THE COURT:  And then their OMB memoranda that are
sent to every agency, not just to those in which the New Green
Deal might be -- so-called New Green Deal might be applicable.
And then from there flows agency memoranda, which say
everything to do with the IRA or the IIJA stop, right?

MS. HUNTER:  That's right, your Honor.

THE COURT:  And for the APA, its agency action that
may be unconstitutional -- though I'm not sure what the
President's intent was -- the actual implementation is broader
than the executive order.  There could even be an argument --
I think one judge referenced that it might have been ultra
vires even from the President's instructions.  But whether it
is or not is somewhat academic, that is:  What is the
authority to violate statutes of the United States?  I mean,
there can't be -- you know, there was an argument about, well,
it was an exercise of discretion.  There's no discretion to
violate the law.  That's not one of the options for executive
officers.  They have to a duty to faithfully execute the laws,
right?

MS. HUNTER:  Yes, your Honor.

THE COURT:  And so, I'm just sort of wondering who do

7

1    you target here, because actual -- your clients' injuries flow

2    directly from agency action.  And, of course, we're now

3    talking about the APA.

4         MS. HUNTER:  Yep.

5         THE COURT:  You know what I'm saying?

6         MS. HUNTER:  Yes.

7         THE COURT:  So --

8         MS. HUNTER:  Well, I think defendants have maybe made

9    that a little bit easy for us with their filing -- not the

10   most recent filing, the filing prior to that -- in which they

11   outlined in declaration testimony exactly how these freezes

12   and terminations took place.  And so, for the EPA grants,

13   there's a declaration from Mr. Travis Voyles, which outlines

14   that on February 25th, he made the decision as an executive

15   officer to terminate a set of grant programs.

16        THE COURT:  How many did he terminate?

17        MS. HUNTER:  It's the set of grant programs, so I

18   don't know how many individual grants.  But there were --

19        THE COURT:  But he says he did individual grant

20   reviews.  How many individual grant reviews did this man do?

21   He didn't leave a paper trail, for one.  We know there are a

22   number of them of our plaintiffs, but those weren't the only

23   ones he reviewed.  This lawsuit had not even been filed yet.

24        MS. HUNTER:  That's right, your Honor.  But there's

25   no evidence in the record that he did do any individualized

8

1    grant reviews.

2         THE COURT:  But he said he did.

3         MS. HUNTER:  He said he did.  And I know your Honor

4    has asked for those documents.  And we have asked for those

5    documents and we haven't received anything to suggest that at

6    any point, he --

7         THE COURT:  Well, in other cases -- y'all have gotten

8    a little ahead of the game here.  In other cases, they just

9    come in and argue and there's no record, so you have to sort

10   of take them for what say.  You know, I'm used to looking for

11   evidence, you know.  So, when they told me initially that this

12   was the exercise of government and all that, I said, well,

13   show me the documents.  They sent me a truckload full of

14   documents, ultimately thousands.  Not one of them showed any

15   individualized concession review of consideration or anything

16   regarding these grants.

17        And then they told me, Well, you know, we're now sort

18   of pivoting over to terminations.  I said, Well, show me the

19   evidence of individualized -- I said it was represented to me

20   that they were individualized terminations.  So, I said, give

21   me those.  And I got 500 documents.  Still no evidence of any

22   individualized --

23        MS. HUNTER:  And I think part of the problem here

24   might be that we're using "individualized" in different ways.

25        THE COURT:  No.  I think it's very understandable

9

1    what it means.  Others may have interpreted it to change the

2    meaning of words.  There's a lot of funniness about words

3    these days.  But, you know, everybody understands what we're

4    talking about, and that is an individual grant recipient had

5    his or her -- or its grants reviewed, and there is just no

6    record evidence of it.

7            So, it goes back, Ms. Hunter, from the beginning

8    here, my point is, the APA challenges agency action.  And I

9    kind of, like -- you know, you may want me to strike some

10   executive order or some OMB memo that's probably ultra vires

11   and all that.  But I don't need to reach things I don't need

12   to reach.  You've got, as you allege, unlawful agency action.

13   The defendant no longer contests them.  So, the question is:

14   In light of that -- you know, generally, I try to not do more

15   than I have to, right?

16           MS. HUNTER:  (Affirmative nod.)

17           THE COURT:  And so, it seems to me that we have a

18   number of agency actions here which are not contested.  So,

19   here's my real question -- not so much what exactly is

20   declaratory.  I can figure that out about declaratory relief.

21   What injunctive relief do you seek?  Because this is

22   apparently what the defendants object to.

23           MS. HUNTER:  Yes, your Honor.

24           And I think if we look at that declaration of Mr.

25   Voyles, just focusing on EPA for the time being, he says:  On

10

1    February 25th, I conducted an individualized review of EPA

2    grant programs -- that's his use of the word "individualized"

3    -- for consistencies with agency policy priorities.  That day

4    I decided that certain grant programs should be terminated for

5    policy reasons.

6          And so, I think that and the actions that flow from

7    that decision is an executive action where you can issue both

8    a declaratory judgment that that action was arbitrary and

9    capricious, and also hold unlawful and set aside that action

10    and the actions that stem from it, pursuant to 5 U.S.C. 706.

11          THE COURT:  So, I enjoin it.  And then what happens?

12          MS. HUNTER:  If you enjoin that action, then

13    everything which stems from that, which is the subsequent

14    termination of grants within those grant programs, would be

15    unlawful, and those grant programs would need to be

16    reinstated.

17          THE COURT:  And we have some which are just paused

18    right now, and some are frozen.  You want me to direct that

19    those grant funds be -- that the grant be reinstated,

20    basically?

21          MS. HUNTER:  Yes, your Honor.

22          THE COURT:  And as a consequence, the funds would

23    flow from there?

24          MS. HUNTER:  That's exactly right, your Honor.

25          THE COURT:  Okay.  Whether it's called "termination"

1  or "freeze" or "pause" or whatever, it doesn't really matter,

2  you want the grants to function again.

3          MS. HUNTER:  (Affirmative nod.)

4          THE COURT:  What are the arguments that I should stay

5  this?

6          MS. HUNTER:  Well, defendants haven't made any

7  argument for --

8          THE COURT:  Well, I'm looking for -- maybe we ought

9  to wait and let them argue.  You know, it's a different

10  standard when a plaintiff argues for preliminary injunction,

11  such as I presume you will for the nonstatutory review --

12  that's the *Winter* standard, right, the *Winter* standard -- for

13  once you have a judgment, which you will have, it's the *Nken*

14  standard, which is almost the opposite, right?  The burden is

15  not on the plaintiff anymore, it's on the government.

16          MS. HUNTER:  Correct, your Honor.

17          THE COURT:  And the government has to say -- among

18  other things, has to have a finding that is likely to be

19  successful on review, right?

20          MS. HUNTER:  That's right, your Honor, which would

21  seem sort of impossible here, given that they are conceding to

22  the merits --

23          THE COURT:  Well, they argue that this Court doesn't

24  have jurisdiction.  I've addressed that issue.  But if I had a

25  view that the defendants were likely to be successful, I would

12

1    not have issued the order, right?

2         MS. HUNTER:  That's right, your Honor.

3         THE COURT:  It's a little bit -- you know, I think

4    that review anticipates, like, a jury verdict that the Judge

5    has doubts about, something like that.

6         MS. HUNTER:  (Affirmative nod.)

7         THE COURT:  I believe the Court's judgment regarding

8    jurisdiction was correct, so they won't meet that standard.

9         How about their irreparable injury?  They have to

10   show that the non-prevailing party is irreparably injured.

11   What's the evidence of irreparable injury of the government if

12   the grants previously rewarded were reinstated?

13        MS. HUNTER:  I can't see any irreparable injury

14   there, your Honor.  Congress has appropriated this money for a

15   particular purpose.  And so, all that the agencies need to do

16   is faithfully execute the law that Congress has passed.  So,

17   there's no injury to the defendants.  There's certainly

18   significant injury to the --

19        THE COURT:  Well, that's another *Nken* factor, isn't

20   it?  And that's the issue of whether there is any substantial

21   injury of the plaintiffs.  Those 32 grant recipients in which

22   the grants are no longer contested, tell me about their injury

23   that they would suffer if I were to delay relief while

24   appellate review occurred.

25        MS. HUNTER:  Yes.  Thank you, your Honor.

13

1          Well, you know, we filed this motion for preliminary

2     injunction almost two months ago, and at that point, set out

3     in declaration testimony all the irreparable harm that our

4     plaintiffs --

5          THE COURT:  I'll bet it hasn't gotten better.

6          MS. HUNTER:  It has not gotten better.  You know, for

7     some, it has gotten better.  As we know, some of the grants

8     have been reinstated.  And so, for those, it has gotten

9     better.  Although, I would note that even those plaintiffs who

10    have had grants temporarily reinstated are still suffering a

11    lot of harm because they're not able to make those long-term

12    decisions they would want to make.

13         I think another really important point to note here

14    is that a lot of these grant programs have a three-year term

15    that is statutory and cannot be extended.  And so, any delay

16    is really crunching the time that they are able to get this

17    work done and to align with the grant agreements which they

18    have agreed to.  And so, every single day --

19         THE COURT:  Now, I agree with you, it's been two

20    months since you filed the suit.  But getting from filing to

21    judgment in two months is pretty good work.

22         MS. HUNTER:  Yes, your Honor.  And we really

23    appreciate the time and attention that you have taken to move

24    us along in this case.  That being said, it's still every

25    single day we are getting calls from our plaintiffs and from

14

1    the communities that they serve --

2         THE COURT:  Are staff furloughs occurring?

3         MS. HUNTER:  Yes, staff furloughs are occurring.  In

4    fact, even some staff have had to be laid off.  Other groups

5    have had to hold off on staffs that they really need to hire

6    in order to accomplish the grant programs.

7         THE COURT:  Time is not their friend.

8         MS. HUNTER:  That's correct, your Honor.

9         THE COURT:  Okay.  How about the public interest?

10        MS. HUNTER:  The public interest here seems very

11   clear.  Two main points:  One, this is what Congress intended.

12   Congress presented these grant programs to be in the broad

13   public interest and set in place a process for distributing

14   these funds, which the prior Administration then pursued.  It

15   was a complicated process where they really made sure that

16   everyone went through an application process, and we put the

17   absolute best grant programs in place.  So, that whole process

18   of government has been abandoned.  But then probably more

19   importantly, these are all programs that are serving

20   communities on the ground with very substantial needs,

21   including right here in North Charleston.

22        THE COURT:  Talk to me about The Sustainability

23   Institute.  I don't know much about them.  Tell me about them.

24        MS. HUNTER:  Well, this is a group that's been

25   focused on affordable housing and community cohesion and also

15

1   climate resilience in the Charleston area for over a decade

2   and applied for this grant in particular to focus on a

3   neighborhood that had been previously impacted by a highway

4   exit.  And so, it's a really wonderful grant program that

5   combines both environmental justice, which I guess we are no

6   longer allowed to say anymore, but --

7           THE COURT:  You can say it in my Court.

8           MS. HUNTER:  -- you know, benefit to a community

9   that's really suffered long-standing harm because of previous

10  government actions and historic systemic racism.  But it's

11  also focused on the future and climate resilience and putting

12  in place weatherization for houses, so that that community can

13  become more cohesive and more resilient over time.

14          THE COURT:  And also, I think for energy efficiency.

15          MS. HUNTER:  Exactly.

16          THE COURT:  And consequences of lack of efficiency.

17          MS. HUNTER:  That's exactly right, your Honor.

18          THE COURT:  Well, why can't the Administration -- new

19  Administration -- elections have consequences -- just come in

20  and say, Well, we don't really like these acts and we've just

21  decided we're not going to spend the money, we think it's in

22  the public's interest?  Why can't they do that?

23          MS. HUNTER:  Well, they certainly can't come in and

24  say we're not going to spend the money.  That would be the

25  very definition of a violation of separation of powers.  You

16

1    know, Congress has the power of the purse, not the Executive.

2    But even to the extent they wanted to spend the money

3    differently, they can't --

4            THE COURT:  There's no evidence of that.

5            MS. HUNTER:  There's absolutely no evidence of that.

6    That's right.

7            THE COURT:  They've just cancelled the grants.

8            MS. HUNTER:  They've just cancelled the grants.  And

9    there's no evidence that we have seen, or that the defendants

10   have presented, that there is any process in place to

11   reallocate that funding.

12           THE COURT:  Is there any public interest in upholding

13   our form of government of separation of powers that the

14   Executive faithfully execute the laws of Congress?

15           MS. HUNTER:  Absolutely, your Honor.  There is a

16   reason that we have these laws in place, both the APA and

17   these constitutional safeguards, and that is exactly so that

18   every four years we don't have kind of a whiplash of change

19   and complete disregard from both the prior Administration and

20   Congress.  We have limited powers for the Executive, extensive

21   powers but limited powers.  And that has been, you know, our

22   system of government for over a century.

23           THE COURT:  Should a new Administration come in after

24   this one, of a different party or a different approach, they

25   may be similarly disadvantaged by having to implement

17

1    congressional acts they may not agree with until Congress has

2    the wisdom to change it, correct?

3            MS. HUNTER:  Yes.  And this is a normal thing that

4    happens in government.  And, you know, courts -- to the extent

5    any administration has tried this type of thing before, courts

6    have been very clear that it's improper.

7            THE COURT:  Let me hear from Mr. Timmons on the issue

8    of the request for a stay.  Glad to hear from you on that.

9            MR. TIMMONS:  Yes, sir, your Honor.  Happy to be

10   here.  The government's position is that the likelihood of

11   success factor weighs heavily in a stay.  We understand

12   your Honor disagrees with our position on jurisdiction.

13           THE COURT:  You're not going to persuade me on that

14   because I've reached --

15           MR. TIMMONS:  No, I'm not.

16           THE COURT:  So, tell me what other reason.  You've

17   conceded liability on the APA.  What other basis would there

18   be to say that there's not likelihood of success?

19           MR. TIMMONS:  Well, we look at how the Fourth Circuit

20   has handled stay requests that have come up to them.  And in

21   both cases that I'm aware, in grant funding cases, the Fourth

22   Circuit has said that the relief should be stayed pending --

23           THE COURT:  But those are preliminary injunctions,

24   aren't they?

25           MR. TIMMONS:  Yes, your Honor.

18

1          THE COURT:  This is a judgment.  You know, this is --
2     the government defendants will be found liable.  They have
3     violated the rights of the plaintiffs.
4          MR. TIMMONS:  But the issue is --
5          THE COURT:  And there's nothing more basic, that
6     every plaintiff suffering injury has a right to relief,
7     correct?
8          MR. TIMMONS:  If the Court has jurisdiction to order
9     it.
10          THE COURT:  Of course.  I have to have jurisdiction.
11     And you get to argue that.  But the question is -- you are
12     familiar with the *Nken* standards, correct?
13          MR. TIMMONS:  Yes, your Honor.
14          THE COURT:  Okay.  So, if you can't persuade me -- is
15     there any other reason the plaintiffs aren't likely to have
16     success other than your argument about jurisdiction, which I
17     have already rejected?  Any other reason?
18          MR. TIMMONS:  Your Honor, I just got to wrestle with
19     the fact that Fourth Circuit has looked at it twice and in
20     both cases has stayed the relief that your Honor is
21     considering granting.
22          THE COURT:  They have not considered it because they
23     haven't had a judgment yet, have they?
24          MR. TIMMONS:  Well, the issue is whether the relief
25     should be stayed pending appeal, which would be exactly the

19

1    same issue.

2         THE COURT:  And you're going to have every chance to

3    argue that.  You know, you're not the first lawyer to tell me

4    that they're going to race to the Fourth Circuit.  And I just

5    say:  Have at it.  You know, that doesn't have the slightest

6    impact on me.  I believe that the Fourth Circuit has

7    consistently upheld the concept that injured parties should

8    have remedies.  And that's all they're asking for here.  We're

9    not at a preliminary injunction stage.  We are at the end of

10   the case, right?

11        MR. TIMMONS:  Right.

12        THE COURT:  End of the case.  And you readily concede

13   that you don't contest the liability under the APA, you simply

14   argue that the APA is not enforceable in my court.  Is that

15   correct?

16        MR. TIMMONS:  Yes, your Honor.

17        THE COURT:  And you think they ought to go to the

18   Court of Claims, correct?

19        MR. TIMMONS:  As to those 32, yes, your Honor.

20        THE COURT:  I respectfully disagree with you.  I've

21   laid out a lengthy order why I say that.  Are there any other

22   reasons other than you think the Fourth Circuit will agree

23   with you?  Any other reason?

24        MR. TIMMONS:  Your Honor, I hope I didn't suggest

25   that I was, like, threatening to take you to the Fourth

20

1    Circuit.  I just -- you have to understand --

2           THE COURT:  You can't threaten me in a way that would

3    matter anyway, so don't worry.

4           MR. TIMMONS:  Okay.  I mean, I just wanted -- the

5    government -- they're going to push the jurisdictional

6    argument, we're going to push it until it's resolved.

7           THE COURT:  It's okay.

8           MR. TIMMONS:  Okay.  I just didn't want you to think

9    I was, you know --

10          THE COURT:  You're ok.  I don't know if I told you

11   this story -- I think I did, so I'll probably sound like an

12   old man repeating himself.  But I used to practice in front of

13   Judge Hemphill up in Rock Hill.  And he was a former

14   congressman; very irascible guy, served during the New Deal.

15   And he had a roadmap up on his wall in his courtroom, which

16   seemed a very odd place to put a highway map.  And one day

17   somebody did exactly what you did to me:  I'm going to take it

18   to the Fourth Circuit.  And Judge Hemphill pointed over to the

19   map and he said:  That's the road to Richmond.  So, I guess he

20   had had it himself.  I always thought that was a pretty cool

21   response.  So, I think you'll probably fly to Richmond --

22   won't take the road anymore.  But, have at it.  And, you know,

23   if the Fourth Circuit doesn't agree with me, they have a --

24   they know how to reverse me.

25          MR. TIMMONS:  Well, your Honor, we do think that

21

1    there is irreparable harm to the government.

2            THE COURT:  Tell me about irreparable harm.

3            MR. TIMMONS:  Well, if the money -- you know, if the

4    Fourth Circuit or the Supreme Court ultimately decides that

5    this Court did not have jurisdiction over the case and there's

6    been an order to expend funds on projects, then the money has

7    been spent, it cannot be appropriated for any other purpose.

8    The government has --

9            THE COURT:  Why can't you -- can you seek to have it

10   returned?

11           MR. TIMMONS:  Well, I'm not sure.  I'd have to look

12   at the procedures for that.  But I don't think -- I think the

13   plaintiffs would say:  We had a court order saying we could

14   spend it, so we're not going to return the money.

15           THE COURT:  And you have courts -- the point is, you

16   don't have anything in the record that they aren't capable of

17   paying it back, do you?

18           MR. TIMMONS:  In the record, no, your Honor.

19           THE COURT:  I don't have any other way to do things

20   other than what's in the record.

21           MR. TIMMONS:  Uh-huh.

22           THE COURT:  What else?  Any other arguments why I

23   should not provide the parties relief at the time I issue

24   judgment?

25           MR. TIMMONS:  I think the public interest in the -- I

22

1  mean, the elected representatives of the people being able to
2  carry out their policy priorities is a public interest.
3            THE COURT:  You mean Congress?
4            MR. TIMMONS:  Well, and the President, who has
5  discretion to --
6            THE COURT:  Well, I know.  But the President doesn't
7  have the discretion to break the law, does he?
8            MR. TIMMONS:  Of course not, your Honor.
9            THE COURT:  He has the duty to faithfully execute the
10  laws, correct?
11            MR. TIMMONS:  Right.  But I think there is a public
12  interest in having the proper balance between the Executive
13  and Congress laid out.
14            THE COURT:  And where does that balance lie?  That is
15  the issue and why we're in the third branch talking about the
16  prerogatives of the first and second branch, right?
17            MR. TIMMONS:  Yes.
18            THE COURT:  Sounds like *Marbury v. Madison* to me.  I
19  mean, you know, it's why we're here.  And it's the
20  Constitution we're having to address.  And it just seems to me
21  that the public interest lies most directly in upholding our
22  form of government.  It seems simply that.  And you do not
23  contest that, if the APA applies, that the plaintiffs are
24  entitled to relief.  What that means is their claim is based
25  on the fact that the Executive acted in excess of authority,

23

1    that these agency heads acted in excess of their authority,

2    without authority, ultra vires, and in violation of the

3    constitution.  I mean, that's the basis of their claim.

4             So, I will enter judgment today.  And I will enter

5    judgment with injunctive relief.

6             So, let's move on to the issue of the --

7             MS. HUNTER:  Your Honor, can I make one minor point?

8             THE COURT:  You don't want to buy it back, Ms.

9    Hunter.

10            MS. HUNTER:  I think this leads into what you're

11   saying.  But, you know, the defendants here are saying, well,

12   the Fourth Circuit or the Supreme Court may tell us we need to

13   go to the Court of Federal Claims.  But even if that were the

14   case, which it is not, your Honor, presumably, the Court of

15   Federal Claims under that argument would have jurisdiction to

16   hear our APA claims, and then they would enter judgment.  So,

17   there's no future here where the government needs to get its

18   money back.  So, I think that eliminates any irreparable harm

19   for the government here, your Honor.

20            THE COURT:  You mean having not contested it here, it

21   would be harder to go somewhere else and contest the very same

22   claim?

23            MS. HUNTER:  Yes, your Honor.

24            MR. TIMMONS:  And, your Honor, of course, I would

25   just say that is not what the government -- that's not the

24

position we would take in the Court of Federal Claims.  That
we concede -- our not disputing an APA claim in district court
is very much different than not disputing a contract claim in
the Court of Federal Claims.

THE COURT:  I don't think you're going to have an
opportunity to argue that, so I'm not going to get into it
with you.  I think it would be a very difficult position to
take.  But that doesn't -- I don't think you're going to get
there because I think we have jurisdiction right where we are.

Let's move on to the issue of the nonstatutory
review.  You know, the issue of jurisdiction of this Court
over unconstitutional conduct of the Executive branch is not
an issue we address every day.  In fact, it's not an issue
that -- it has only come to me in a damages claim, like
*Bivens*.  This is not a *Bivens* claim.  This is an effort for
equitable relief.

And Ms. Hunter urged me on our telephone conference
on Friday to take a look at *Strickland* and these other cases,
which, frankly, I haven't paid a lot of -- I've been focused
-- we've all focused our attention on the APA jurisdictional
issues.  Appropriately so, the government had its arguments,
and the plaintiffs had theirs.  But I now turn my attention to
that issue.

And, you know, what I've come to realize in reading
*Strickland*, which I read at the time it came out, but it

1   didn't seem the importance to it, to me, that it is now.  It
2   plainly holds that a district court has authority under
3   several different theories, just inherent authority.  There
4   are certain cases that are considered exceptions to sovereign
5   immunity.  There are several different theories, all which are
6   laid out in *Strickland*.
7       And the Fourth Circuit mentioned an amicus brief by
8   Professor Chemerinsky, favorably quoting it in the order.  So,
9   of course, I went and read it.  I know Professor Chemerinsky
10  -- now Dean Chemerinsky -- very well.  He speaks to the Fourth
11  Circuit and the district judges frequently.  We know him well.
12  And he makes a quite persuasive argument of the history of
13  this theory, dating back -- here we go again, *Marbury v.*
14  *Madison*, and quotes *Youngstown Steel*, a number of the *INS*
15  cases, cases involving -- some of the terrorist cases in the
16  Bush Administration.  He cites a number of cases.  But the
17  clearest expression of it is in *Strickland*.  And in Judge
18  Gregory's concurring opinion in an immigration case -- I think
19  it was a religious-ban case -- he also sets forth -- he was
20  then, I think, chief judge -- this whole theory.
21      So, let's lay it out, first, Ms. Hunter.  And then I
22  want to hear from the government about jurisdiction for
23  nonstatutory review.
24      MS. HUNTER:  Yes, your Honor.  So, essentially, you
25  know, this is different than a *Bivens* action, because this

26

1    type of jurisdiction is focused only on declaratory or

2    injunctive relief.  And it's focused on --

3              THE COURT:  By the way, that's the only thing I'm

4    giving you --

5              MS. HUNTER:  Yes.

6              THE COURT:  -- in the first judgment.  You're not

7    getting damages.

8              MS. HUNTER:  And we're not asking for damages.

9              THE COURT:  You're not asking and you're not getting.

10             MS. HUNTER:  So, just clarifying how this is a little

11   bit different than *Bivens*.  But it's similar in that it

12   relates to the acts of federal officials and essentially says

13   that when federal officials are acting in excess of their

14   constitutional or statutory authority, the Court has

15   jurisdiction to hear claims from plaintiffs withstanding in

16   jurisdiction to issue declaratory relief.

17             If I could step back a little bit and talk about why

18   we believe it's really important that you do rule on these

19   particular claims, which are Counts 1 and 2 in our

20   complaint --

21             THE COURT:  But your APA count is actually Count 3.

22             MS. HUNTER:  That's correct, your Honor.  These first

23   two are -- they're sometimes call ultra vires claims,

24   sometimes called nonstatutory review claims.  And the reason

25   that these claims are important is exactly this jurisdictional

1    argument that the defendants are seeking to make.

2           First, let's be quite clear, we believe this Court

3    has jurisdiction to hear our APA claims.  We believe

4    your Honor set that out very nicely in your most recent order.

5    *Boeing* continues to be good lore.  So, that should all be

6    fine.  And we believe we'll prevail.

7           THE COURT:  This is generally why we don't have to

8    discuss these other issues.  But the defendants now argue

9    *Boeing* is meaningless.  So --

10          MS. HUNTER:  That's correct, your Honor.

11          THE COURT:  So, what are they?  So, this theory --

12          MS. HUNTER:  The defendants' argument about *Boeing*,

13   your Honor, is based on the APA waiver of sovereign immunity.

14   And they are saying that because there is an adequate remedy

15   in the Court of Federal Claims under the Tucker Act, that that

16   waiver of sovereign immunity no longer applies, and so that

17   would divest this Court of jurisdiction over APA claims.

18          Again, we don't believe that that is a good theory or

19   a good argument.  Nonetheless, it is the one the defendants

20   have made, has been making all over the country, and have

21   announced their intent to take it to the Fourth Circuit and

22   the Supreme Court.  This separate jurisdiction, this ultra

23   vires nonstatutory jurisdiction, has no bearing on that

24   argument.  It doesn't involve the APA waiver of sovereign

25   immunity as a separate reason that this Court has

28

jurisdiction.  And so, while ordinarily a court may avoid some

constitutional questions, here, where the Court is answering

those constitutional questions in the context of the APA, we

believe it's really important that the Court also addresses

those questions in the ultra vires nonstatutory jurisdiction

--

THE COURT:  How is it even different from the APA

claim, since, as I understand -- I know y'all make some

certain procedural arguments as well, which don't really seem

particularly relevant to the grants in which they are no

longer contesting.  But there are statutory authorizations

directing the expenditure of these funds that they no longer

contest.  That was the basis, as I understood it, of your APA

claim, correct?

MS. HUNTER:  That is a strong basis.  There are other

things --

THE COURT:  Other procedural bases.

MS. HUNTER:  -- that are particularly important for

the grants that we're going to discuss in part three.  But,

yes, you're correct, your Honor.  Ruling substantively, ruling

on this ultra vires nonstatutory review jurisdiction would be

the same argument.  It wouldn't be additional work for the

Court than ruling under the APA jurisdiction.  But I do

believe that ruling on Counts 1 and 2 in addition to our other

counts would ensure durability of this Court's order.  We

29

1    believe it should be durable regardless.  But it would give

2    the plaintiffs a basis for jurisdiction that even the

3    defendants haven't, you know, considered a challenge to what

4    that might look like.

5         THE COURT:  Well, is there any different standard

6    between striking agency action or government action --

7    government official action in excess of its authority under

8    the APA and under nonstatutory review?

9         MS. HUNTER:  The remedy is slightly different,

10   your Honor, because it would not include the set-aside remedy

11   under the APA.  But in terms of the declaratory judgment, I

12   believe it would be the same.

13        THE COURT:  How about injunctive relief?

14        MS. HUNTER:  Injunctive relief could be issued under

15   both.

16        THE COURT:  Yes.  When you say "sustainability," what

17   do you mean by that?  Are you saying that -- the difference,

18   what was that?  I didn't quite understand what you were

19   saying.

20        MS. HUNTER:  Oh, sorry.  Under the APA, one of the

21   remedies is that you can set aside the agency action under

22   706.  That's limited to the APA.  So, under the nonstatutory

23   review jurisdiction, it would be more like a simple

24   declaratory judgment with associated injunctive relief.

25        THE COURT:  Substantively the same.

30

1          MS. HUNTER:  Yes, your Honor.

2          THE COURT:  Let me hear from Mr. Timmons on the issue

3     of nonstatutory review.

4          MR. TIMMONS:  Yes, your Honor.  So, the first thing

5     I'd like to say is, you know, when you raised the issue on

6     Friday, it was not an issue that I had, frankly, thought about

7     until your Honor brought it to my attention.  But it does make

8     sense that if we've resolved the agency action question under

9     the APA, what is the Article III case and controversy left?

10    Is it just to advise on whether or not the executive order

11    exceeded some constitutional principle?  And so, I do think

12    that that's an important question to look at.

13          I will be honest with you, over the weekend, I

14    haven't -- you know, I don't know that I've come down to a

15    firm position on it.

16          THE COURT:  Well, I have.

17          MR. TIMMONS:  Yeah.  Yeah.

18          THE COURT:  I mean, you know, I expressed on Friday,

19    I said:  I'm going to take a hard look at this issue.  And

20    unlike you, I did spend the weekend reading.  And I read every

21    case I could in the federal judiciary in which this issue has

22    been addressed.  I didn't see any response from the government

23    on this claim of jurisdiction in your brief.

24          MR. TIMMONS:  Well, your Honor, I would say that our

25    argument has always been the Court does not have jurisdiction

31

1    over any claim in this case.  You cannot repackage a contract

2    claim as a constitutional violation to get jurisdiction in

3    this Court.  We have set --

4            THE COURT:  I understand that general concept.  I

5    looked at your brief.  I didn't see anything addressing

6    statutory review theory, *Strickland*.

7            MR. TIMMONS:  No, sir, not that theory.  But the idea

8    that this Court does not have jurisdiction to decide the

9    constitutional claim, we definitely assert that, your Honor.

10           THE COURT:  Well, in the abstract under the APA,

11   you've said it.  But if you argue the Court doesn't have

12   jurisdiction under APA, why would the Court not have

13   jurisdiction under nonstatutory review, if that's a recognized

14   legal basis for federal jurisdiction?

15           MR. TIMMONS:  On the jurisdictional question?

16           THE COURT:  Yeah.

17           MR. TIMMONS:  So, as your Honor mentioned, if you're

18   going to sue for constitutional violation for money damages --

19           THE COURT:  But that's -- they're not suing --

20           MR. TIMMONS:  But that's -- that's -- then we get

21   back to the jurisdictional argument.

22           THE COURT:  Well, you say that.  I'm not awarding.

23   If I gave them relief here, I wouldn't give them money

24   damages.

25           MR. TIMMONS:  But that is the jurisdictional argument

1    we are making.

2           THE COURT:  I understand that.

3           MR. TIMMONS:  So, that's why we said we've challenged

4    jurisdiction on the constitutional claim.

5           THE COURT:  I mean, we're talking in circles here.

6    Their only request, they would only receive injunctive and

7    declaratory relief, nothing more.  They have not requested and

8    they will not be awarded, under any theory, damages.  I think

9    that is a makeshift argument by the government that has no

10   merit.  But you'll get a chance to argue that in another

11   court.  And perhaps you'll persuade someone else, unlike you

12   haven't persuaded me.  But that's okay.

13          But I'm just trying to address an alternative theory.

14   And I was noting, as I just said to Ms. Hunter, that it was

15   Count 1 and Count 2 of their complaint.  It was a bigger deal.

16   You, not inappropriately, focused on the APA issue.  I

17   understand that.  That's been a hot issue out there.  And you

18   focused on it.  But, you know, there's another independent

19   basis for court jurisdiction that is as old as the Judiciary.

20   I went back and read *Marbury*.  I did.  And Chief Justice

21   Marshall definitely -- I mean, they don't have any statute

22   authorizing that review of the executive action.  *Youngstown*

23   *Steel*, President Truman seizing control of the steel industry,

24   there's no statute authorizing that.

25          And have you read Professor Chemerinsky's amicus

33

1   brief?

2         MR. TIMMONS:  I have not read his amicus brief.  But

3   he was the author of the textbook in my common law class.

4         THE COURT:  Well, I'm not surprised.  He's probably

5   one of the great scholars of American constitutional law.  But

6   I'm going to add his amicus brief to this docket.  I think

7   it's a really worthwhile discussion of the legal theory here.

8   You know, it's not something that courts deal with every day.

9   But if the Court has jurisdiction under this statute to

10  address unconstitutional ultra vires action by government

11  officials in their suit -- in their official capacity, let's

12  look at what this is.  This is a claim against government

13  officials in their official capacities for action in excess of

14  their legal authority, in which the plaintiff seeks equitable

15  relief only, correct?  That's the parameters of this

16  jurisdiction, correct?

17        MR. TIMMONS:  No, your Honor.

18        THE COURT:  Huh?

19        MR. TIMMONS:  No.

20        THE COURT:  You're saying no?

21        MR. TIMMONS:  It's your -- your Honor, that's your

22  opinion on how the jurisdictional and the relief plays out.

23        THE COURT:  No.  I'm quoting from *Strickland*.  You

24  don't agree with *Strickland*?

25        MR. TIMMONS:  I don't agree that the way you phrased

34

1   the case is how the request for relief is presented, no, I

2   don't.

3          THE COURT:  I'm asking -- I was just describing the

4   *Strickland* cause of action as described by the Fourth Circuit.

5          MR. TIMMONS:  Yeah.  Oh, I'm sorry, your Honor.  I'm

6   sorry, your Honor.

7          THE COURT:  The Fourth Circuit, I know you told me

8   you want to run there.  You might want to read this case

9   before you get there.  Have you read *Strickland*?

10          MR. TIMMONS:  No, your Honor.

11          THE COURT:  Okay.  Well, that puts you at something

12   of a disadvantage.  It's cited, by the way, in the plaintiffs'

13   complaint.  And, you know, it lays out the elements of what

14   this jurisdiction is.  And let me repeat it again, because I'm

15   not making this up.  This is not my theory.  This is the

16   Fourth Circuit's opinion.  This is the basis of numerous U.S.

17   Supreme Court decisions of what this jurisdiction means.  It

18   is limited to actions against government officials in their

19   official capacity for constituting actions in excess of their

20   legal authority, or otherwise unconstitutional, in which the

21   plaintiff seeks equitable relief.  That's it.  That's what

22   *Strickland* stands for.

23          MR. TIMMONS:  And, your Honor, I want to be clear.  I

24   have not asserted that -- you know, I did not assert in our

25   brief that the Court lacks jurisdiction over those claims.  To

35

be completely frank with your Honor, I have not reached the
solid conclusion that your Honor has.  So, you're a little
ahead of me.  I just want to be honest about that.

THE COURT:  You'll maybe catch up by the Fourth
Circuit.

MR. TIMMONS:  But I would say I guess our position on
that would be, we have not answered the complaint yet.
Jurisdiction has been decided, so it's not like -- you know,
it's not like going the additional step and reaching a merits
argument somehow --

THE COURT:  I have a motion for preliminary
injunction from you.  I wouldn't enter judgment on this
theory.

MR. TIMMONS:  Right.

THE COURT:  But I have a motion for a preliminary
injunction.  And a preliminary injunction, one of the bases --
one of the remaining bases, 32 of the 38 grants, are disposed
of.  Under the judgment, you've asserted there's no
jurisdiction.  The plaintiffs reasonably assert an alternative
basis for the Court's jurisdiction and request for relief.
And that is nonstatutory review.  And I have a pending motion
for preliminary injunction, which I have an obligation to
address.  So, I'm now -- you can answer and object and do
whatever you want, the plaintiffs filed a motion for
preliminary injunction that included this theory, and I have

**J.A. 2915**

36

1    to address it.

2          But you are correct, I would never enter a final

3    judgment on something you haven't conceded.  Though, I must

4    say having not contested under the APA, you might think it

5    won't matter before the Court of Claims.  It matters in front

6    of me, if you had exactly the same set of facts.  I mean, my

7    point was:  The facts are identical, the legal standard is

8    substantially the same, the remedy sought is substantially the

9    same.  So, I think in some ways your decision not to contest

10   under the APA, you know, creates a strong basis for the

11   plaintiffs to argue a likelihood of success on the merits for

12   their preliminary injunction.  You understand what I'm saying?

13         MR. TIMMONS:  Yes, your Honor.  And, I mean, I'm not

14   suggesting to your Honor you can't decide arguments that are

15   presented to you.  I'm just suggesting one approach would be

16   that we can resolve the issue of preliminary relief on the APA

17   so there is not a need to go the extra step and address

18   constitutional --

19         THE COURT:  I'll do the extra step.  Don't worry.

20   I'm ready to do it.  I've done the work.  Unlike you, Mr.

21   Timmons, I actually read all this.  And I think there's a

22   solid basis to address preliminary injunction.  So, when you

23   go over to the Fourth Circuit, you're going to face both

24   jurisdictional issues and you'll have to confront both of

25   them.  And, you know, you'll have to persuade the Fourth

37

1    Circuit that the decision in *Strickland* is wrongly decided.

2    That's your prerogative.  You have to give them notice you're

3    going to argue against a precedent.  But I think the

4    plaintiffs have an incredible basis.  I want to hear from

5    them, and then I want to hear from you on the *Winter* standard.

6         So, why don't we let me go back to Ms. Hunter and

7    then I'll come back to you on this issue.

8         Ms. Hunter, assuming I find jurisdiction, which I do

9    on the nonstatutory review, I now move to your motion for a

10   preliminary injunction.  And tell me under the *Winter*

11   standards why I should grant you preliminary injunctive

12   relief.

13        MS. HUNTER:  Thank you, your Honor.  Well, we are

14   likely to succeed on the merits, both on terms of our

15   nonstatutory review claims and on our APA claims.  The

16   defendants have conceded as to 32 of those APA claims.  I

17   believe you wanted to address the other six later.

18        THE COURT:  And by the way, as to the issue of

19   preliminary injunction right now, I'm only addressing the 32

20   which have already been uncontested.  We'll move in a minute

21   to the other six.

22        MS. HUNTER:  So, likelihood of success seems fairly

23   straightforward at this juncture, your Honor.  We've discussed

24   irreparable harm already this morning.  We've presented

25   substantial irreparable harm in declaration testimony which

38

1    we've continued to update over time, as that harm has become

2    more and more acute.  In this case, the balancing of the

3    equities and the public interest merge because the government

4    is a party.  And we have made strong showing that it would be

5    in the public interest both for the people and the public on

6    the ground, but also for the normal orderly rule of law for

7    these grant programs that were passed by the thoughtful

8    process of Congress and then the thoughtful Administration of

9    the prior executive to continue.  And so, we would ask that

10   you preserve the status quo and issue a preliminary injunction

11   in the plaintiffs' favor.

12         THE COURT:  Well, let me ask you this.  Of these 32

13   grants, I have tried to trace them a bit to statutes.  And I

14   think I've largely done that.

15         MS. HUNTER:  Yes.

16         THE COURT:  It is the plaintiffs' assertion that

17   these grants are based upon mandatory appropriations of

18   Congress, correct?

19         MS. HUNTER:  That's right, your Honor.

20         THE COURT:  Their common language is they shall be

21   expended for this purpose, correct?

22         MS. HUNTER:  That's correct, your Honor.

23         THE COURT:  And it's the plaintiffs' theory that to

24   cancel the grants because the present holders of office

25   disagree with that mandate is ultra vires.

39

1          MS. HUNTER:  That's correct.  And in our most recent

2     brief we put a little more meat on the bones with regard to

3     each grant program and connected the statutory language to the

4     language of the executive orders.  And I think what we see in

5     many cases is that this statutory language is actually

6     diametrically opposed to the stated policies of the executive

7     branch.

8          THE COURT:  Well, that's why when, you know, Mr.

9     Timmons was saying, well, there was a change in policy, I

10    said:  What's the policy?  Because if the policy is not to

11    follow the law, that's not -- that's a discretion one cannot

12    exercise, correct?

13         MS. HUNTER:  That's correct.  And as far as we can

14    tell, the policy, as these executive orders, once again, seems

15    to essentially be saying is:  Don't follow the law,

16    particularly with these IRA and IIJA grants.

17         THE COURT:  Well, I mean, I don't have any doubt that

18    the present agency officials don't agree with those laws,

19    correct?

20         MS. HUNTER:  Correct.

21         THE COURT:  And as American citizens, they can speak

22    out against them, correct?

23         MS. HUNTER:  That's right.

24         THE COURT:  But they don't have the authority to

25    violate an act of Congress.

40

1          MS. HUNTER:  No.  And I think that unleashing

2    executive order, if you boil it down, it essentially says:  We

3    will eliminate these two congressionally mandated programs,

4    the IRA and IIJA.

5          THE COURT:  Well, you keep wanting me to go to the

6    top.  And my tendency is to go to the people who actually

7    committed the acts.  Because I think there's, frankly, a

8    little ambiguity, probably intentional, in those executive

9    orders.  But there's no ambiguity at the agency level.

10          MS. HUNTER:  That's correct, your Honor.  But I would

11    note that one thing that the nonstatutory review of

12    jurisdiction gets you is that ability to go to the top.  The

13    President is --

14          THE COURT:  There's no question.  I mean, *Marbury v.*

15    *Madison, Youngstown Steel*, obviously, I get.  The question is:

16    What do I need to do?  Because I'm trying to find a way, if I

17    find a wrong, to find a remedy.  And the question is:  What do

18    I need to do to establish it?

19          I, frankly, think if you compare those agency memos

20    about cancel everything, or find me every word with "economic

21    justice" in it and cancel it, is broader than those executive

22    orders.  They don't exactly say that.  In fact, their

23    questions in some of these documents I've been sent in which

24    they say what does this mean, they're asking the OMB what does

25    this mean, because the agencies are a little confused:  Are we

**J.A. 2920**

41

only talking about the New Green Deal or are we talking about
everything?  And OMB makes it very clear:  We're talking about
everything, right?  So, you know, the question is:  Where do
you -- who actually freezes or terminates these grants?

MS. HUNTER:  Yes.  And as we discussed already,
your Honor, I think the defendants were very helpful in
elucidating that in these declarations, which did explain
that, you know, for EPA, they were terminated by this
particular person and likewise for USDA.

THE COURT:  Yeah.  Okay.  Let me hear from Mr.
Timmons on the issue of whether preliminary injunctive relief
under the nonstatutory review -- first of all, why are the
plaintiffs not likely to have a success on the merits for the
same reason they're having success regarding the 32 grants
under the APA?

MR. TIMMONS:  Again, your Honor, it's a
jurisdictional argument there.

THE COURT:  What's the jurisdictional argument?

MR. TIMMONS:  That you cannot repackage a
constitutional claim as a -- you cannot repackage a claim for
money damages as a constitutional claim.  And, your Honor, I
don't want to frustrate the Court.  So, if the Court has
already rejected our analysis of the equities here and the
likelihood of success, we can stand on our brief and the
arguments we've made.

42

1          THE COURT:  Well, your brief doesn't address it, so

2     that's why I'm asking you.

3          MR. TIMMONS:  It does, your Honor.  We -- we do have

4     -- I mean -- I just -- I know you do not agree with the way

5     that we've balanced the equities or the way we've calculated

6     the harm.  And so, I'm happy to advance that argument, but I

7     think you're going to tell me that you don't agree with me.

8          THE COURT:  Well, it's not a question of whether I

9     agree with you.  I asked you, Mr. Timmons, initially, I said I

10    was told there was individualized review before these grants

11    were frozen.  And I asked for documents to show me that.  I've

12    been through the documents.  They don't show that.  So, then

13    you told me that you were confident they had made

14    individualized reviews before they terminated.

15         MR. TIMMONS:  No.  I don't believe I said that,

16    your Honor.

17         THE COURT:  You don't think you said that?

18         MR. TIMMONS:  I could be wrong, but --

19         THE COURT:  You're wrong.  Let me read you from your

20    transcript.  Docket 142, page 35:

21         "MR. TIMMONS:  I would say that if the pause was as

22    you said, it was a broad pause based on funding" -- which was,

23    by the way, a new concession on your part.

24         Then you said:  "I do think the terminations were

25    done based on a review of the grants."

43

1          MR. TIMMONS:  Yes, your Honor.

2          THE COURT:  That's why I asked for the grant reviews.

3     And they don't show individual review.  Mr. Voyles claims he

4     has individual reviews for some unknown number of grants he

5     cancelled in one day without a single piece of paper, which he

6     claims he orally -- orally -- related to some other official.

7     I've been involved with government for a lot of years.  I've

8     never seen a decision of any substance without a paper trail,

9     without a set of documents, reasoning, explaining, documenting

10    the review, the explanation for it.

11         I was, frankly, embarrassed for the government to

12    read Mr. Voyles' affidavit.  I've just never seen anything

13    submitted to me like that.  It was, frankly, sort of an insult

14    to the Court.  You know, y'all can do what you wish.  I'm used

15    to the government speaking to me straight, to answer my

16    questions honestly.  Fifteen years on the bench, I've never

17    had an experience where I thought the government did not do

18    that.

19         MR. TIMMONS:  Well, your Honor, I'm sorry that I've,

20    you know, kind of hurt your faith in our office.  I'm trying

21    my best to answer the questions based on the information I

22    have.  We're talking about -- we're talking about one grant

23    program out of 21.  And so, you know --

24         THE COURT:  I'm sorry?

25         MR. TIMMONS:  There's 21 grant programs at issue in

44

1    this case.  And we're talking about one of those 21 grant

2    programs and how that was decided.

3        THE COURT:  Yeah.  But I -- I --

4        MR. TIMMONS:  And I think I was fair in saying that

5    -- oh, go ahead.  I'm sorry.

6        THE COURT:  But I asked you for all the information

7    on all the grant terminations and I got no -- to avoid this

8    very issue, Oh, there are more, I gave you every chance.  I

9    have received, I think, 9,500 pieces of paper.  Nothing shows

10   any individual review.

11       And my colleagues, other district courts around the

12   country, at the preliminary injunction stage, have relied on

13   the word of the government.  I just said, like Kansas:  Show

14   me.  Show it to me.  And what I find is nothing.  There's

15   nothing.  What the plaintiffs allege happened.  The new

16   Administration didn't like the former actions of Congress

17   acting ultra vires, and cancelled grants that were mandated,

18   and now wants to argue that I don't have the jurisdiction to

19   hear it.  I do have jurisdiction.  I have it on two

20   independent grounds.  I'm going to enter judgment today.  I'm

21   going to grant a preliminary injunction under the nonstatutory

22   review.

23       Now, let's turn to the six grants contested.

24       Ms. Hunter, let me make sure I sort of understand

25   what these grants are all about.  Mr. Timmons shared with me

45

1    -- and I didn't know this -- at our last hearing that these

2    Commodity Credit Corporation grants, these six grants -- this

3    is 27 through 32 grants -- that these were appropriated funds,

4    generally appropriated funds, to the Department of Agriculture

5    in which the former Administration had elected to create

6    something called the Partnership for Climate-Smart Commodities

7    and then awarded grants.  Do I have that part right?

8            MS. HUNTER:  Yes, your Honor.  Essentially, it's

9    through the Community Credit Corporation.

10           THE COURT:  Yeah.  And so, I raised then, I said,

11   well, that looks a little different to me, when Mr. Timmons

12   shared it with me.  So, I was very interested in whether that

13   appears to be correct.  I noticed in your complaint -- and you

14   said it upon information and belief, so I think you didn't

15   really know that it might have had some IRA money.  But I

16   don't see any evidence of IRA money for these particular

17   grants.  Do you have anything to the contrary?

18           MS. HUNTER:  No, your Honor.  I mean, there was a

19   press release -- and apparently we're using press releases

20   now.  That's what the defendants have offered for these

21   claims.  We were trying to get to the bottom of these grants,

22   because, as your Honor noted, they were cancelled at the same

23   time as all of the other IRA grants.  So, we were trying to

24   better understand that.  And we did find a press release at

25   the time from the Biden Administration which suggested that

46

1    IRA money had been used to supplement this pot of grant
2    funding.
3            And in the press release that the defendants cite in
4    their most recent brief -- which they didn't attach, so I'm
5    not sure if we have the right one, but we think we have the
6    right one -- the quote from the secretary is:  "The
7    Partnership For Climate-Smart Commodities initiative was
8    largely built to advance the Green New Scam, which seems
9    similar to the language being used about the Green New Deal in
10   the executive order.
11           THE COURT:  But it didn't tell us the source of the
12   funding.
13           MS. HUNTER:  It didn't.  And I don't actually think
14   it's relevant where the funding came from, your Honor.
15           THE COURT:  Well, let me say this.  There's sort of
16   several different theories of liability under the APA.  One of
17   them is that these officials acted contrary to appropriations
18   of Congress that were specifically mandated.  Those are grants
19   1 through 26 and 33 through 38.  Okay.  And I've already told
20   you my thoughts about that.  When we get to the ones that are
21   terminated -- I think they're now terminated, those six
22   grants.  Because the Administration seeks to -- the secretary
23   seeks to repurpose the moneys, which I think we agree there
24   can be lawful changes in policy, right -- we know that,
25   there's a statute that says that -- as long as they have the

47

1    discretion to do it.  And if there's general appropriated

2    funds, general agencies have discretion.  And as I understand

3    the representation of the government -- and if it's not

4    correct, I want you to straighten me out on this -- is that

5    they have decided to repurpose the money and they call it a

6    different program.  I can't remember the name of it right now.

7    But it appears to have a similar mission.  But they're

8    insisting on 65 percent of the money to go directly to

9    producers, not to overhead.  Not an unsympathetic view, you

10   know, just extracting without knowing details.  And the

11   plaintiffs have been invited -- these six grant recipients

12   have been invited to apply for the new grant and will have the

13   opportunity to demonstrate that they can meet the

14   requirements.

15           Any part of that seem to be wrong?

16           MS. HUNTER:  No, your Honor.  Except, I would say

17   that this isn't just a sort of general appropriation.  It is

18   within this Community Credit Corporation set of funds, which

19   is there to stabilize and advance the interests of farmers,

20   which this abrupt change without notice or any review does not

21   --

22           THE COURT:  It's probably not -- maybe, you know, in

23   government, class might not be the model way to change policy.

24   I see that.  But I'm at a point of having to look at

25   preliminary injunctive relief.  And let me just be honest with

48

1    you, the facts are kind of a muddle to me right now, unlike

2    your evidence about, you know, we can trace an executive order

3    to an OMB, to an agency memo, to -- to internal memos to say

4    get all these grants, and, boom, they're gone.  That's really

5    strong -- it's not even circumstantial, it's direct evidence.

6    I don't have that here.  You know, I don't have it here.  And

7    it's more of a procedural argument, you know:  Did they

8    consider reliance?  Did they file a fair process?  Contrary to

9    the other ones, which there's no evidence they're planning to

10   spend the money on anything.  They're here, announcing a

11   program.  This is different.

12           And, you know, preliminary injunctive relief is

13   extraordinary relief, right?  *Winter* says it's not entitled in

14   every case by any means.  It's not routinely granted in any

15   essence.  And I'm just having trouble getting through the

16   first step of this, of showing a likelihood of success.  I'm

17   not saying that once we get into the -- we build a fuller

18   record, not relying on press releases, that we actually -- you

19   might persuade me that this was unlawful.  But I'm struggling

20   right now to meet the -- you know, I take these standards very

21   seriously.  And I'm just -- I'm just -- I'm having trouble

22   getting where I can say that there is a likelihood of success

23   on the merits.  The answer is kind of what Mr. Timmons said

24   about his knowledge of *Strickland*:  I don't know.  I mean, I

25   don't know on this.  And I think it would be irresponsible for

49

1    me to issue an injunction on something I don't really fully
2    understand.

3            Now, what you can do is go build a record on this.
4    And I'm open to considering.  When I say "I don't know," I
5    don't have an opinion one way or the other.  I just can't --
6    you just can't -- in my view, you can't meet your burden to
7    show a likelihood of success because the record before us is
8    so limited.  Frankly, I'm sure you aren't too thrilled to be
9    relying on a press release as the basis of your evidence, but
10   you'll have your chance to take depositions and to further
11   develop the record.  And it may be that, on the merits, you
12   know, we'll have -- I will be able to make a definitive
13   determination one way or the other.  I'm just not comfortable
14   at this point with this paucity of a record to make a finding
15   for preliminary injunctive relief.

16           But I invite further review to talk with the
17   government to try to get more evidence and to get more
18   discovery done to see whether there might be a basis under
19   either the APA or some other grants.  You know, it doesn't
20   seem that there's a violation of the constitutional provision.
21   There is not a specific statute that we're violating here.
22   So, we're really an APA claim.  And I think we just need more
23   evidence.

24           You know, there are two parts of the APA:  There is
25   sort of the procedural, and there's the substantive.  And the

50

1    32 grants are sort of prevailing on the substantive part, not

2    the procedural.  And you're asking me basically on a

3    procedural grant.  And the evidence, in my view, just isn't

4    there at this point to meet the plaintiffs' burden.

5         MS. HUNTER:  Thank you, your Honor.  And I agree with

6    that general assessment.  I will say that the Court has been,

7    I think, extraordinarily generous with the defendants in

8    allowing them to offer up what is the record to support their

9    termination of these grants.  And in many ways, I think it's

10   no different than the other grants, where there is no paper

11   trail.  And the fact that what they did present -- the only

12   thing they presented in their most recent briefing was this

13   press release, which was intended to demonstrate a reasoned

14   process and a consideration of --

15        THE COURT:  Well, it might not be true.  It might not

16   be true.  And you can come back and show me that, okay?

17        MS. HUNTER:  Right.

18        THE COURT:  But, if it is true -- it is reasoned, if

19   it's, in fact, true.  And I presume your clients are going to

20   apply for these grants?

21        MS. HUNTER:  I believe many of them might,

22   your Honor, yes.

23        THE COURT:  Yeah.  I think they should if they really

24   want to participate.  And then if they think this was a

25   charade or untrue or whatever, then you'll actually -- and

51

1    you'll have some chance to take some depositions and gather

2    more documents.  But at this early stage, I think we're

3    struggling to figure out -- this just seems to be another

4    kettle of fish to me.  This is just a different theory.

5            And I can understand in the beginning it all happens

6    at the same time.  You're assuming there's one kettle of fish,

7    you know.  And I think your complaint shows that you're

8    thinking maybe there's IRA money in all this.  You're not the

9    first plaintiff to file a lawsuit and find out facts might be

10   somewhat different.  I will say, mostly your facts are proven

11   to be true.  You went and got the documents.  So, I'm not in a

12   position to issue a preliminary injunction on the six.

13           Mr. Timmons, you want to buy it back, or are you

14   happy to stand on what you've said already?

15           MR. TIMMONS:  I think I'm good, your Honor.  Thank

16   you for the opportunity, though.

17           THE COURT:  You're going to let Mr. Berlinsky argue

18   that part?

19           MR. TIMMONS:  Yeah.  He wants to take this one.  He's

20   confident.  I didn't see him hop up before.

21           THE COURT:  No, I didn't either.

22           Yes, Ms. Hunter.

23           MS. HUNTER:  The only thing that I would ask is that,

24   as these plaintiffs -- you know, a lot of these plaintiffs are

25   the ones having to furlough staff and are certainly suffering

52

1    significant harm on a daily basis that, you know, the sooner

2    we can move that process along and move discovery along, that

3    would be appreciated, your Honor.

4         THE COURT:  Well, you know, I will take it that the

5    32 are going to go up on appeal, and the six will be here.

6    And we'll issue a scheduling order, and you can start taking

7    depositions.

8         MS. HUNTER:  Thank you, your Honor.

9         THE COURT:  You've got an answer due, I think, today;

10   is that right?  I think today we have an answer due.

11        MR. TIMMONS:  The answer is due a week from tomorrow.

12        THE COURT:  Oh, I missed it by a week.  Okay.  And

13   then we'll issue a scheduling order.  And I don't know of any

14   reason, if the other ones go up on appeal, why I would need to

15   hold these in abeyance, since they're not really covered by my

16   order.

17        Any disagreement with that from anybody?  Can we go

18   ahead and address the six to which I'm not granting relief?

19        MR. TIMMONS:  Your Honor, we're going to file a

20   motion to dismiss based on 12(b)6 for failure to exhaust on

21   that.  So, after that issue is resolved, we --

22        THE COURT:  Well, you'll file a 12(b)6.  We'll

23   address it.

24        MS. HUNTER:  Your Honor, can I clarify?  Should we

25   also be swiftly moving for summary judgment on the ultra vires

53

1   nonstatutory basis?

2          THE COURT:  Well, I think the defendant has a right

3   to answer.  The only reason we're getting to judgment is

4   because they are not contesting.  Okay.  It's uncontested

5   claims.  There's no reason.  But I think they have a right to

6   file and address those issues.  And in the interim, you'll

7   have preliminary injunctive relief on that theory.  But I

8   think you would be premature to file for summary judgment

9   before they answer.  And you may want to create or may not

10  want to create more of a record.  If you feel like your record

11  is adequate after -- I presume they're going to make a motion

12  to dismiss.  I'll address that issue.  I've substantially

13  addressed that issue already here.  And then you do as you

14  wish.  I don't tell plaintiffs or defendants how to try their

15  cases.

16         MS. HUNTER:  Okay.  Thank you, your Honor.  So, just

17  a final point of clarification:  Your Honor plans to issue a

18  preliminary injunction on both jurisdictional theories but

19  also judgment on the APA?

20         THE COURT:  No.  I'm entering -- on the APA claims,

21  I'm entering judgment and granting permanent declaratory and

22  permanent injunctive relief.  Those are over.  The defendants

23  are not contesting under the APA.  That's over.  They can take

24  that up on appeal.  They've got a final judgment.

25         On the nonstatutory review, I'm going to grant

**J.A. 2933**

54

1    preliminary injunctive relief, not permanent.  And then I'm

2    going to deny the motion for preliminary injunction as to the

3    six contested.  My goal is to get that out today, but it may

4    be tomorrow before that happens.

5            MS. HUNTER:  Thank you, your Honor.

6            THE COURT:  Mr. Timmons, anything further from the

7    government?

8            MR. TIMMONS:  No, your Honor.

9            THE COURT:  Thank you.  This hearing's adjourned.

10                       *  *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| The Sustainability Institute, Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAire NC, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture and Rural Advancement Foundation International-USA, and Mayor and City Council of Baltimore, City of Columbus City of Madison, Metropolitan Government of Nashville and Davidson County, City of New Haven, City of San Diego,<br><br>           Plaintiffs,<br><br>    vs.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; KEVIN HASSETT, in his official capacity as Assistant to the President for Economic Policy and Director of the National Economic Council; UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, in his official capacity as Director of the United States Office of Management and Budget; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS in her official capacity as Secretary of Agriculture; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his official capacity as the Secretary of the United States Department of Transportation; | Civil Action Number:   2:25-cv-02152-RMG |

**J.A. 2935**

UNITED STATES DEPARTMENT OF          )
GOVERNMENTAL EFFICIENCY              )
SERVICE; AMY GLEASON, in her official )
capacity as Acting Administrator of the   )
United States DOGE Service; ELON MUSK )
in his official capacity as Senior Advisor of  )
the United States DOGE Service,           )
                                          )
                    Defendants.           )

### DEFENDANTS' AMENDED NOTICE OF APPEAL

Defendants hereby give notice of appeal to the United States Court of Appeals for the

Fourth Circuit the Order entered on April 29, 2025 [ECF No. 146] and the Order entered on May

20, 2025 [ECF No. 157] by the Honorable Richard M. Gergel, United States District Judge.


                              Respectfully submitted,

                              BRYAN P. STIRLING
                              UNITED STATES ATTORNEY

               By:      *s/Lee E. Berlinsky*
                              Lee E. Berlinsky (#05443)
                              Assistant United States Attorney
                              151 Meeting Street, Suite 200
                              Charleston, SC 29401
                              Tel:  843-266-1679
                              Lee.Berlinsky@usdoj.gov

                              Todd Timmons (#11254)
                              Assistant United States Attorney
                              1441 Main Street, Suite 500
                              Columbia, SC 29201
                              Tel: (803) 237-9265
                              Todd.Timmons@usdoj.gov


May 21, 2025


2

**J.A. 2936**

APPEAL

# U.S. District Court
## District of South Carolina (Charleston)
## CIVIL DOCKET FOR CASE #: 2:25–cv–02152–RMG

The Sustainability Institute et al v. Trump et al
Assigned to: Honorable Richard M Gergel
Case in other court:  4CCA, 25–01575
Cause: 05:702 Administrative Procedure Act

Date Filed: 03/19/2025
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**The Sustainability Institute**

represented by **Benjamin James Grillot**
Southern Environmental Law Center (DC)
122 C Street NW
Suite 325
Washington, DC 20001
202–828–8382
Email: bgrillot@selc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
Southern Environmental Law Center (Cha)
525 East Bay Street
Suite 200
Charleston, SC 29403
843–720–5270
Email: cbrzorad@selcsc.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
Southern Environmental Law Center (NC)
136 East Rosemary Street
Suite 500
Chapel Hill, NC 27514
919–967–1450
Fax: 919–929–9421
Email: icomo@selc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
Southern Environmental Law Center (NC)
136 East Rosemary Street
Suite 500
Chapel Hill, NC 27514
919–967–1450
Email: kmeyer@selc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
Southern Environmental Law Center
(CHNC)
601 W Rosemary Street
Suite 220
Chapel Hill, NC 27516

**J.A. 2937**

919–967–1450
Email: ntorrey@selcnc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Agrarian Trust**                        represented by  **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alliance for Agriculture**              represented by  **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

J.A. 2938

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alliance for the Shenandoah Valley**          represented by   **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bronx River Alliance**          represented by   **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**J.A. 2939**

**CleanAIRE NC**                    represented by  **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Conservation Innovation Fund**          represented by  **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Leadership Counsel for Justice and**      represented by  **Benjamin James Grillot**
**Accountability**                         (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

**J.A. 2940**

*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marbleseed**                          represented by    **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Pennsylvania Association for
Sustainable Agriculture**               represented by    **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)

**J.A. 2941**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Rural Advancement Foundation International–USA** | represented by | **Benjamin James Grillot**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Baltimore, Maryland** | represented by | **Carl T Brzorad**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Elaine Poon**
Public Rights Project
490 43rd Street
Unit 115
Oakland, CA 94609
510–738–6788
Email: elaine@publicrightsproject.org

**J.A. 2942**

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham Provost**
Public Rights Project
490 43rd Street
Unit 115
Oakland, CA 94609
510–738–6788
Email: graham@publicrightsproject.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Benjamin Miller**
Public Rights Project
490 43rd Street
Unit 115
Oakland, CA 94609
510–738–6788
Email: jon@publicrightsproject.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Columbus, Ohio**              represented by  **Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elaine Poon**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham Provost**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Benjamin Miller**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Madison, Wisconsin**              represented by  **Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elaine Poon**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham Provost**
(See above for address)

**J.A. 2943**

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Benjamin Miller**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nashville, Tennessee**                    represented by    **Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elaine Poon**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham Provost**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Benjamin Miller**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**New Haven, Connecticut**                    represented by    **Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elaine Poon**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham Provost**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Benjamin Miller**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**San Diego, California**                    represented by    **Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J.A. 2944**

**Plaintiff**

**Organic Association of Kentucky**     represented by    **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Earth Island Institute**     represented by    **Benjamin James Grillot**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Carl T Brzorad**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Irena Como**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberley Claire Hunter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Steele Torrey**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**J.A. 2945**

**Defendant**

**Donald J Trump**
*in his official capacity as President of the*
*United States*

represented by **Lee Ellis Berlinsky**
US Attorneys Office
PO Box 978
Charleston, SC 29402
843−727−4381
Fax: 843−727−4443
Email: lee.berlinsky@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
US Attorneys Office (Cola)
1441 Main Street
Suite 500
Columbia, SC 29201
803−929−3068
Email: todd.timmons@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kevin Hassett**
*in his official capacity as Assistant to the*
*President for Economic Policy and*
*Director of the National Economic*
*Council*

represented by **Lee Ellis Berlinsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Office of Management**
**and Budget**

represented by **Lee Ellis Berlinsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Russell Vought**
*in his official capacity as Director of the*
*United States Office of Management and*
*Budget*

represented by **Lee Ellis Berlinsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Environmental**
**Protection Agency**

represented by **Lee Ellis Berlinsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)

**J.A. 2946**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lee Zeldin**
*in his official capacity as Administrator of the United States Environmental Protection Agency*

represented by **Lee Ellis Berlinsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of Agriculture**

represented by **Lee Ellis Berlinsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brooke Rollins**
*in her official capacity as Secretary of Agriculture*

represented by **Lee Ellis Berlinsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of Transportation**

represented by **Lee Ellis Berlinsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sean Duffy**
*in his official capacity as the Secretary of the United States Department of Transportation*

represented by **Lee Ellis Berlinsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of Governmental Efficiency Service**

represented by **Lee Ellis Berlinsky**
(See above for address)

**J.A. 2947**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Amy Gleason**                    represented by    **Lee Ellis Berlinsky**
*in her official capacity as Acting*                 (See above for address)
*Administrator of the United States*                 *LEAD ATTORNEY*
*DOGE Service*                                       *ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Elon Musk**                      represented by    **Lee Ellis Berlinsky**
*in his official capacity as Senior Advisor*         (See above for address)
*of the United States DOGE Service*                  *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of Energy**   represented by    **Lee Ellis Berlinsky**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chris Wright**                   represented by    **Lee Ellis Berlinsky**
*in his official capacity as the Secretary of*       (See above for address)
*the United States Department of Energy*             *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Todd Stuart Timmons**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ActiveSGV**                      represented by    **Jillian Beth Blanchard**
                                                     Lawyers for Good Government
                                                     6218 Georgia Avenue NW
                                                     Unit 5001
                                                     Washington, DC 20011
                                                     617–997–3394
                                                     Email: Jillian@lawyersforgoodgovernment.org
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*

**J.A. 2948**

*ATTORNEY TO BE NOTICED*

**Kathleen McColl McDaniel**
Burnette Shutt and McDaniel PA
PO Box 1929
Columbia, SC 29202
803–850–0912
Fax: 803–904–7910
Email: kmcdaniel@burnetteshutt.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Khadijah Silver**
Lawyers for Good Government
6218 Georgia Avenue NW
Unit 5001
Washington, DC 20011
617–997–3394
Email: khadijah@lawyersforgoodgovernment.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Larissa Mika Koehler**
Lawyers for Good Government
6218 Georgia Avenue NW
Unit 5001
Washington, DC 20011
617–997–3394
Email: Larissa@lawyersforgoodgovernment.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Environmental Protection Network**    represented by    **Jillian Beth Blanchard**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen McColl McDaniel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Khadijah Silver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Larissa Mika Koehler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Heru Urban Farming and Garden**    represented by    **Jillian Beth Blanchard**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**J.A. 2949**

**Kathleen McColl McDaniel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Khadijah Silver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Larissa Mika Koehler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Kalamazoo Climate Crisis Coalition**          represented by   **Jillian Beth Blanchard**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen McColl McDaniel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Khadijah Silver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Larissa Mika Koehler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Landforce**          represented by   **Jillian Beth Blanchard**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen McColl McDaniel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Khadijah Silver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Larissa Mika Koehler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Amicus**

**MetroHealth System**                     represented by  **Jillian Beth Blanchard**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathleen McColl McDaniel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Khadijah Silver**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Larissa Mika Koehler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2025 | 1 | COMPLAINT against Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Lee Zeldin ( Filing fee $ 405 receipt number ASCDC–12337427.), filed by CleanAIRE NC, Rural Advancement Foundation International–USA, Alliance for the Shenandoah Valley, Nashville, Tennessee, Marbleseed, The Sustainability Institute, Baltimore, Maryland, Conservation Innovation Fund, Madison, Wisconsin, New Haven, Connecticut, San Diego, California, Agrarian Trust, Bronx River Alliance, Leadership Counsel for Justice and Accountability, Columbus, Ohio, Pennsylvania Association for Sustainable Agriculture, Alliance for Agriculture. Service due by 6/17/2025 (Attachments: # 1 Exhibit A– First OMB Memo, # 2 Exhibit B– Second OMB Memo, # 3 Exhibit C– USDA Directive, # 4 Exhibit D– EPA Memo, # 5 Exhibit E– EPA Executive Order Compliance Review Requirement, # 6 Exhibit F– DOT Memo, # 7 Exhibit G– EPA Notice of DOGE Approval Requirement, # 8 Exhibit H– EPA Flowchart for Equity–Related Grants, # 9 Exhibit I– EPA Compliance Form)(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 3 | Local Rule 26.01 Answers to Interrogatories by The Sustainability Institute.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 4 | Local Rule 26.01 Answers to Interrogatories by Agrarian Trust.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 5 | Local Rule 26.01 Answers to Interrogatories by Alliance for Agriculture.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 6 | Local Rule 26.01 Answers to Interrogatories by Alliance for the Shenandoah Valley.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 7 | Local Rule 26.01 Answers to Interrogatories by Bronx River Alliance.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 8 | Local Rule 26.01 Answers to Interrogatories by CleanAIRE NC.(rhei, ) (Entered: 03/20/2025) |

**J.A. 2951**

| 03/19/2025 | 9 | Local Rule 26.01 Answers to Interrogatories by Conservation Innovation Fund.(rhei, ) (Entered: 03/20/2025) |
|---|---|---|
| 03/19/2025 | 10 | Local Rule 26.01 Answers to Interrogatories by Leadership Counsel for Justice and Accountability.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 11 | Local Rule 26.01 Answers to Interrogatories by Marbleseed.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 12 | Local Rule 26.01 Answers to Interrogatories by Pennsylvania Association for Sustainable Agriculture.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 13 | Local Rule 26.01 Answers to Interrogatories by Rural Advancement Foundation International–USA.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 14 | Local Rule 26.01 Answers to Interrogatories by Baltimore, Maryland.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 15 | Local Rule 26.01 Answers to Interrogatories by Columbus, Ohio.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 16 | Local Rule 26.01 Answers to Interrogatories by Madison, Wisconsin.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 17 | Local Rule 26.01 Answers to Interrogatories by Nashville, Tennessee.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 18 | Local Rule 26.01 Answers to Interrogatories by New Haven, Connecticut.(rhei, ) (Entered: 03/20/2025) |
| 03/19/2025 | 19 | Local Rule 26.01 Answers to Interrogatories by San Diego, California.(rhei, ) (Entered: 03/20/2025) |
| 03/20/2025 | 20 | Summons Issued as to Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Lee Zeldin. U.S. Attorney and U.S. Attorney General. (rhei, ) (Entered: 03/20/2025) |
| 03/26/2025 | 21 | NOTICE of Appearance by Lee Ellis Berlinsky on behalf of Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Lee Zeldin (Berlinsky, Lee) (Entered: 03/26/2025) |
| 03/26/2025 | 22 | NOTICE of Appearance by Todd Stuart Timmons on behalf of Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Lee Zeldin (Timmons, Todd) (Entered: 03/26/2025) |
| 03/26/2025 | 23 | AMENDED COMPLAINT against All Defendants, filed by CleanAIRE NC, Rural Advancement Foundation International–USA, Alliance for the Shenandoah Valley, Nashville, Tennessee, Marbleseed, The Sustainability Institute, Baltimore, Maryland, Conservation Innovation Fund, Madison, Wisconsin, New Haven, Connecticut, San Diego, California, Agrarian Trust, Bronx River Alliance, Leadership Counsel for Justice and Accountability, Columbus, Ohio, Pennsylvania Association for Sustainable Agriculture, Alliance for Agriculture, Earth Island Institute, Organic Association of Kentucky. Service due by 6/24/2025 (Attachments: # 1 Summons – U.S. Department of Energy, # 2 Summons – Chris Wright, U.S. Dept. of Energy, # 3 LR 26.01 Answers – Organic Association of Kentucky, # 4 LR 26.01 Answers – Earth Island Institute, # 5 Exhibit A – First OMB Memo, # 6 Exhibit B – Second OMB Memo, # 7 Exhibit C – USDA Directive, # 8 Exhibit D – EPA Memo, # 9 Exhibit E – EPA Executive Order Compliance Review Requirement, # 10 Exhibit F – DOT Memo, # 11 Exhibit G – EPA Notice of DOGE Approval Requirement, # 12 Exhibit H – DOT Secretary's Directive, # 13 Exhibit I – DOE Memo, # 14 Exhibit J – EPA Flowchart for |

J.A. 2952

| | | |
|---|---|---|
| | | Equity–Related Grants) (Brzorad, Carl) Modified to add new plaintiff parties as filers, as listed on document, per attorney filing user on 3/27/2025 (sshe, ). (Entered: 03/26/2025) |
| 03/26/2025 | 24 | MOTION for Preliminary Injunction by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. Response to Motion due by 4/9/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support, # 2 Exhibit 1 – Sustainability Institute Declaration, # 3 Exhibit 2 – Agrarian Trust Declaration, # 4 Exhibit 3 – Alliance for Agriculture Declaration, # 5 Exhibit 4 – Alliance for the Shenandoah Valley Declaration, # 6 Exhibit 5 – Bronx River Alliance Declaration, # 7 Exhibit 6 – CleanAIRE NC Declaration, # 8 Exhibit 7 – Conservation Innovation Fund Declaration, # 9 Exhibit 8 – Earth Island Institute Declaration, # 10 Exhibit 9 – Leadership Counsel for Justice and Accountability Declaration, # 11 Exhibit 10 – Marbleseed Declaration, # 12 Exhibit 11 – Organic Association of Kentucky Declaration, # 13 Exhibit 12 – Pasa Declaration, # 14 Exhibit 13 – RAFI–USA Declaration, # 15 Exhibit 14 – City of Baltimore Declaration, # 16 Exhibit 15 – City of Columbus Declaration, # 17 Exhibit 16 – City of Madison Declaration, # 18 Exhibit 17 – City of Nashville Declaration, # 19 Exhibit 18 – City of New Haven Declaration, # 20 Exhibit 19 – City of San Diego (Charvel) Declaration, # 21 Exhibit 20 – City of San Diego (Widener) Declaration, # 22 Exhibit 21 – List of Plaintiffs' Grants and Statutory Authorities)No proposed order.(Brzorad, Carl) (Attachment 1 replaced on 3/27/2025) (sshe, ). Modified on 3/27/2025 to replace with corrected document as requested and provided by filing user(sshe, ). (Entered: 03/26/2025) |
| 03/26/2025 | 25 | MOTION to Expedite *Discovery and Memorandum in Support* by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. Response to Motion due by 4/9/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit A – Plaintiffs' First Set of Written Discovery Requests)No proposed order.(Brzorad, Carl) (Entered: 03/26/2025) |
| 03/27/2025 | 26 | MOTION to Appear Pro Hac Vice by Irena Como ( Filing fee $ 350 receipt number ASCDC–12354497) by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Conservation Innovation Fund, Leadership Counsel for Justice and Accountability, Marbleseed, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, The Sustainability Institute, Earth Island Institute, Organic Association of Kentucky. Response to Motion due by 4/10/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit 1 – Application/Affidavit for Pro Hac Vice Admission, # 2 Exhibit 2 – Certificate of Good Standing, # 3 Proposed Order)Proposed order is being emailed to chambers with copy to opposing counsel.(Brzorad, Carl) Modified on 3/28/2025 to add new plaintiff parties as filers(sshe, ). (Entered: 03/27/2025) |
| 03/27/2025 | 28 | MOTION to Appear Pro Hac Vice by Kimberley Hunter ( Filing fee $ 350 receipt number ASCDC–12354912) by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, The Sustainability Institute. Response to Motion due by 4/10/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit 1 – |

| | | |
|---|---|---|
| | | Application/Affidavit for Pro Hac Vice Admission, # 2 Exhibit 2 – Certificate of Good Standing, # 3 Proposed Order)Proposed order is being emailed to chambers with copy to opposing counsel.(Brzorad, Carl) (Entered: 03/27/2025) |
| 03/27/2025 | 29 | MOTION to Appear Pro Hac Vice by Nicholas Torrey ( Filing fee $ 350 receipt number ASCDC–12354932) by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, The Sustainability Institute. Response to Motion due by 4/10/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit 1 – Application/Affidavit for Pro Hac Vice Admission, # 2 Exhibit 2 – Certificate of Good Standing, # 3 Proposed Order)Proposed order is being emailed to chambers with copy to opposing counsel.(Brzorad, Carl) (Entered: 03/27/2025) |
| 03/27/2025 | 30 | Summons Issued as to United States Department of Energy, Chris Wright. U.S. Attorney and U.S. Attorney General. (sshe, ) (Entered: 03/27/2025) |
| 03/28/2025 | 31 | **TEXT ORDER: Plaintiffs have moved to expedite a limited amount of discovery related to their motion for preliminary injunction. (Dkt. No. 25). The Court has shortened the time for the Defendants to respond to this motion to 4/2/25. AND IT IS SO ORDERED. Entered at the direction of Honorable Richard M Gergel on 3/28/25. (cper, )** (Entered: 03/28/2025) |
| 03/31/2025 | 32 | **ORDER: To allow this Court to fully and properly review the actions under challenge in this litigation, Defendants are directed to address, in their response to Plaintiffs' motion for a preliminary injunction, all legal and factual bases upon which the Defendants relied upon, could have relied upon, or might in the future might rely upon to freeze the grant funds at issue in this litigation. AND IT IS SO ORDERED. Signed by Honorable Richard M Gergel on 3/31/2025. (ltap, )** (Entered: 03/31/2025) |
| 03/31/2025 | 33 | NOTICE of Hearing on 24 MOTION for Preliminary Injunction : Motion Hearing set for 4/23/2025 at 10:00 AM in Charleston Courtroom #1, J. Waties Waring Judicial Center, 83 Meeting St, Charleston before Honorable Richard M Gergel. (ltap, ) (Entered: 03/31/2025) |
| 03/31/2025 | 34 | **TEXT ORDER granting 26 Motion of Irena Como; 28 Motion of Kimberley Hunter; 29 Motion of Nicholas Torrey, to Appear Pro Hac Vice for Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, The Sustainability Institute. AND IT IS SO ORDERED. Entered at the Direction of Honorable Richard M Gergel on 3/31/2025.(sshe, )** (Entered: 03/31/2025) |
| 03/31/2025 | 35 | SUPPLEMENT *NOTICE OF RECENT DEVELOPMENTS* re 24 MOTION for Preliminary Injunction *Notice of Recent Developments* by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. (Attachments: # 1 Exhibit A Agreement 5B–03D03424–0, ECF No. 24–7 at 35, # 2 Exhibit B Agreement 5B–03D03424–0, ECF No. 24–7 at 35, # 3 Exhibit C Agreement 5B–03D03424–0, ECF No. 24–7 at 35, # 4 Exhibit D Agreement 5B–03D03424–0, ECF No. 24–7 at 35, # 5 Exhibit E at 4–21 (EPA–proposed deletions highlighted))No proposed order.(Brzorad, Carl) Modified on 4/1/2025 to edit docket text for event type description, not a motion, motion terminated, No response due, as requested and provided by filing user; to add descriptions (not entered at the time of filing) to exhibits per ECF Standard Preferences(sshe, ). (Entered: 03/31/2025) |

**J.A. 2954**

| 04/01/2025 | 37 | RESPONSE in Opposition re 35 MOTION for Hearing re 24 MOTION for Preliminary Injunction *Notice of Recent Developments* Response filed by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin.Reply to Response to Motion due by 4/8/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Timmons, Todd) (Entered: 04/01/2025) |
|---|---|---|
| 04/01/2025 | 38 | **TEXT ORDER: Plaintiffs have moved to expedite the hearing on the motion for preliminary injunction, which is presently scheduled for 4/23/25. (Dkt. No. 35). Defendants oppose the motion. (Dkt. No. 37). The Court denies the motion to expedite the hearing. The Court will benefit from the full briefing of these matters by the parties before conducting oral argument. AND IT IS SO ORDERED. Entered at the direction of the Honorable Richard M Gergel on 4/1/2025. (ltap, )** (Entered: 04/01/2025) |
| 04/02/2025 | 39 | RESPONSE in Opposition re 25 MOTION to Expedite *Discovery and Memorandum in Support* Response filed by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin.Reply to Response to Motion due by 4/9/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Timmons, Todd) (Entered: 04/02/2025) |
| 04/03/2025 | 40 | MOTION for Leave to File *Brief of Amici Curiae* by ActiveSGV, Environmental Protection Network, Heru Urban Farming and Garden, Kalamazoo Climate Crisis Coalition, Landforce, MetroHealth System. Response to Motion due by 4/17/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Exhibit 1–A Declaration of Michelle Roos, # 3 Exhibit 1–B Declaration of Ashwini Sehgal, # 4 Exhibit 1–C Declaration of Jenny Doezema, # 5 Exhibit 1–D Declaration of Ilyssa Manspeizer, # 6 Exhibit 1–E Declaration of Wesley Reutimann, # 7 Exhibit 1–F Declaration of Tyrean Lewis)No proposed order.(McDaniel, Kathleen) (Entered: 04/03/2025) |
| 04/03/2025 | 41 | MOTION to Appear Pro Hac Vice by Jillian Blanchard ( Filing fee $ 350 receipt number ASCDC–12368279) by ActiveSGV, Environmental Protection Network, Heru Urban Farming and Garden, Kalamazoo Climate Crisis Coalition, Landforce, MetroHealth System. Response to Motion due by 4/17/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit Application of Jillian Blanchard for PHV Admission, # 2 Exhibit Certificate of Good Standing (Pending), # 3 Exhibit Address/Email Form)No proposed order.(McDaniel, Kathleen) Modified on 4/9/2025 to reference 53 Additional attachment, certificate of good standing, filed 4/9/2025(sshe, ). (Attachment 1 replaced on 4/18/2025) (sshe, ). Modified to replace with corrected application document provided by filing user on 4/18/2025 (sshe, ). (Entered: 04/03/2025) |
| 04/03/2025 | 42 | MOTION to Appear Pro Hac Vice by Khadijah Silver ( Filing fee $ 350 receipt number ASCDC–12368309) by ActiveSGV, Environmental Protection Network, Heru Urban Farming and Garden, Kalamazoo Climate Crisis Coalition, Landforce, MetroHealth System. Response to Motion due by 4/17/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit Application for PHV Admission, # 2 Exhibit Certificate of Good Standing, # 3 Exhibit Address/Email Form)No proposed order.(McDaniel, Kathleen) (Entered: 04/03/2025) |
| 04/03/2025 | 43 | MOTION to Appear Pro Hac Vice by Larissa Koehler ( Filing fee $ 350 receipt number ASCDC–12368324) by ActiveSGV, Environmental Protection Network, Heru Urban Farming and Garden, Kalamazoo Climate Crisis Coalition, Landforce, MetroHealth System. Response to Motion due by 4/17/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit Application for PHV Admission, # 2 Exhibit Certificate |

| | | |
|---|---|---|
| | | of Good Standing (Pending), # 3 Exhibit Address/Email Form)No proposed order.(McDaniel, Kathleen) Modified on 4/9/2025 to reference 54 Additional Attachment, certificate of good standing, filed 4/9/2025 (sshe, ). (Entered: 04/03/2025) |
| 04/03/2025 | 44 | REPLY to Response to Motion re 25 MOTION to Expedite *Discovery and Memorandum in Support* Response filed by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. (Attachments: # 1 Exhibit EPA Email, # 2 Exhibit Unpublished Opinion)(Brzrad, Carl) (Entered: 04/03/2025) |
| 04/07/2025 | 45 | **ORDER granting in part and denying in part 25 Motion to Expedite. The Court hereby narrows the discovery requests of Plaintiffs to one Request to Produce for the following five Defendants: United States Department of Governmental Efficiency Service ("DOGE"), United States Environmental Protection Agency, United States Department of Agriculture, United States Department of Transportation, and United States Department of Energy. The responses to the following narrowed Requests to Produce are due on or before April 17, 2025 at 5:00 p.m. and shall be filed on the ECF. AND IT IS SO ORDERED. Signed by Honorable Richard M Gergel on 4/7/2025.(ltap, )** (Entered: 04/07/2025) |
| 04/07/2025 | 46 | MOTION for Reconsideration re 45 Order on Motion to Expedite,, by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin. Response to Motion due by 4/21/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit A: Supreme Court decision in Department of Education v. California, No. 24A910 (Apr. 4, 2025))No proposed order.(Berlinsky, Lee) (Entered: 04/07/2025) |
| 04/08/2025 | 47 | RESPONSE in Opposition re 46 MOTION for Reconsideration re 45 Order on Motion to Expedite,, Response filed by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute.Reply to Response to Motion due by 4/15/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Brzrad, Carl) (Entered: 04/08/2025) |
| 04/08/2025 | 48 | Emergency MOTION to Stay re 45 Order on Motion to Expedite,, by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin. Response to Motion due by 4/22/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Timmons, Todd) (Entered: 04/08/2025) |
| 04/08/2025 | 49 | MOTION to Appear Pro Hac Vice by Jonathan B. Miller ( Filing fee $ 350 receipt number ASCDC–12376950) by Baltimore, Maryland, Columbus, Ohio, Madison, Wisconsin, Nashville, Tennessee, New Haven, Connecticut. Response to Motion due by 4/22/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit 1 – Application/Affidavit for Pro Hac Vice Admission, # 2 Exhibit 2 – Certificate of Good Standing, # 3 Proposed Order)Proposed order is being emailed to chambers with copy to opposing counsel.(Brzrad, Carl) (Entered: 04/08/2025) |

| 04/08/2025 | 50 | MOTION to Appear Pro Hac Vice by Graham Provost ( Filing fee $ 350 receipt number ASCDC–12376966) by Baltimore, Maryland, Columbus, Ohio, Madison, Wisconsin, Nashville, Tennessee, New Haven, Connecticut. Response to Motion due by 4/22/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit 1 – Application/Affidavit for Pro Hac Vice Admission, # 2 Exhibit 2 – Certificate of Good Standing, # 3 Proposed Order)Proposed order is being emailed to chambers with copy to opposing counsel.(Brzorad, Carl) (Entered: 04/08/2025) |
|---|---|---|
| 04/09/2025 | 51 | REPLY to Response to Motion re 46 MOTION for Reconsideration re 45 Order on Motion to Expedite,, Response filed by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin. (Timmons, Todd) (Entered: 04/09/2025) |
| 04/09/2025 | 52 | **ORDER: The Court GRANTS–IN–PART AND DENIES–IN–PART Defendants motion to reconsider (Dkt. No. 46) and DENIES Defendants motion to stay (Dkt. No. 48). AND IT IS SO ORDERED. Signed by Honorable Richard M Gergel on 4/9/2025.(ltap, )** (Entered: 04/09/2025) |
| 04/09/2025 | 53 | Additional Attachments to Main Document 41 MOTION to Appear Pro Hac Vice by Jillian Blanchard ( Filing fee $ 350 receipt number ASCDC–12368279). First attachment description: Certificate of Good Standing for Jillian Blanchard . (McDaniel, Kathleen) (Entered: 04/09/2025) |
| 04/09/2025 | 54 | Additional Attachments to Main Document 43 MOTION to Appear Pro Hac Vice by Larissa Koehler ( Filing fee $ 350 receipt number ASCDC–12368324). First attachment description: Certificate of Good Standing for Larissa Koehler . (McDaniel, Kathleen) (Entered: 04/09/2025) |
| 04/09/2025 | 55 | MOTION for Leave to File Excess Pages *to Respond to the Motion for Preliminary Injunction* by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin. Response to Motion due by 4/23/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Timmons, Todd) (Entered: 04/09/2025) |
| 04/09/2025 | 56 | RESPONSE in Opposition re 24 MOTION for Preliminary Injunction Response filed by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin.Reply to Response to Motion due by 4/16/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Timmons, Todd) (Main Document 56 replaced with corrected signature on 4/11/2025) (hcor, ). (Entered: 04/09/2025) |
| 04/10/2025 | 57 | **TEXT ORDER granting 55 Motion for Leave to File Excess Pages. AND IT IS SO ORDERED. Entered at the direction of the Honorable Richard M Gergel on 4/10/25.(ltap, )** (Entered: 04/10/2025) |
| 04/10/2025 | 58 | MOTION to Appear Pro Hac Vice by Benjamin Grillot ( Filing fee $ 350 receipt number ASCDC–12381467) by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, The Sustainability Institute. Response to Motion due by 4/24/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit 1 – |

| | | |
|---|---|---|
| | | Application/Affidavit for Pro Hac Vice Admission, # 2 Exhibit 2 – Certificate of Good Standing, # 3 Proposed Order)Proposed order is being emailed to chambers with copy to opposing counsel.(Brzorad, Carl) (Entered: 04/10/2025) |
| 04/10/2025 | 59 | MOTION Clarification of March 31, 2025 Order re 32 Order,, by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. Response to Motion due by 4/24/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Brzorad, Carl) (Entered: 04/10/2025) |
| 04/11/2025 | 60 | RESPONSE in Opposition re 59 MOTION Clarification of March 31, 2025 Order re 32 Order,, Response filed by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin.Reply to Response to Motion due by 4/18/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Timmons, Todd) (Entered: 04/11/2025) |
| 04/11/2025 | 61 | MOTION to Appear Pro Hac Vice by Elaine Poon ( Filing fee $ 350 receipt number ASCDC–12385202) by Baltimore, Maryland, Columbus, Ohio, Madison, Wisconsin, Nashville, Tennessee, New Haven, Connecticut. Response to Motion due by 4/25/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit 1 – Application/Affidavit for Pro Hac Vice Admission, # 2 Exhibit 2 – Certificate of Good Standing, # 3 Proposed Order)Proposed order is being emailed to chambers with copy to opposing counsel.(Brzorad, Carl) (Entered: 04/11/2025) |
| 04/14/2025 | 62 | Consent MOTION for Leave to File Excess Pages *in Reply in Support of Motion for Preliminary Injunction* by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. Response to Motion due by 4/28/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Brzorad, Carl) (Entered: 04/14/2025) |
| 04/14/2025 | 63 | **TEXT ORDER granting 62 Motion for Leave to File Excess Pages for reply in support of their motion for preliminary injunction. AND IT IS SO ORDERED. Entered at the direction of the Honorable Richard M Gergel on 4/14/2025.**(ltap, ) (Entered: 04/14/2025) |
| 04/16/2025 | 64 | REPLY to Response to Motion re 24 MOTION for Preliminary Injunction Response filed by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. (Attachments: # 1 Exhibit 1 – U.S. Brief in Federal Circuit, # 2 Exhibit 2 – Chart Summarizing Pltfs Injuries, # 3 Exhibit 3 – Pasa Supplemental Declaration)(Brzorad, Carl) (Entered: 04/16/2025) |
| 04/17/2025 | 65 | REPLY by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, |

**J.A. 2958**

| | | United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin to 45 Order on Motion to Expedite,, . (Attachments: # 1 Certification, # 2 DOE_000001 – DOE_000095)(Berlinsky, Lee) (Entered: 04/17/2025) |
|---|---|---|
| 04/17/2025 | 66 | REPLY by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin to 45 Order on Motion to Expedite,, . (Attachments: # 1 Certification, # 2 DOT–000001 – DOT–000104)(Berlinsky, Lee) (Entered: 04/17/2025) |
| 04/17/2025 | 67 | REPLY by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin to 45 Order on Motion to Expedite,, . (Attachments: # 1 Cetification, # 2 USDA000102 – USDA000324)(Berlinsky, Lee) (Entered: 04/17/2025) |
| 04/17/2025 | 68 | MOTION for Protective Order by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin. Response to Motion due by 5/1/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit A, DOT Privilege Log, # 2 Exhibit B, USDA Privilege Log, # 3 Exhibit C, EPA Privilege Log)No proposed order.(Berlinsky, Lee) Modified on 4/18/2025 to reference 70 Additional Attachment, Affidavit of Records (EPA); 76 Additional Attachment, DOT Supplemental Privilege Log, filed 4/18/2025 (sshe, ).(sshe, ). Modified on 4/22/2025 to reference 106 Supplement filed 4/21/25 (sshe, ). (Entered: 04/17/2025) |
| 04/17/2025 | 69 | MOTION for Extension of Time *of Deadline in the Court's Order [ECF 45]* by United States Environmental Protection Agency. Response to Motion due by 5/1/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Berlinsky, Lee) (Entered: 04/17/2025) |
| 04/17/2025 | 70 | Additional Attachments to Main Document 68 MOTION for Protective Order . First attachment description: Affidavit of Records (EPA) . (Berlinsky, Lee) Modified on 4/22/2025 to reference 105 Supplement filed 4/21/25 (sshe, ). (Entered: 04/17/2025) |
| 04/17/2025 | 71 | RESPONSE in Opposition re 68 MOTION for Protective Order Response filed by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute.Reply to Response to Motion due by 4/24/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Brzorad, Carl) (Entered: 04/17/2025) |
| 04/18/2025 | 72 | NON–STANDARD ITEM RECEIVED: flash drive from Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin re: 68 MOTION for Protective Order . Received 4/17/2025 PM; hand delivered to chambers 4/18/2025 AM. (sshe, ) (Entered: 04/18/2025) |
| 04/18/2025 | 73 | **TEXT ORDER: For good cause shown, Defendant Environmental Protection Agency's motion for a 24–hour extension to comply with the Court's order of April 7, 2025 (Dkt. No. 69) is granted. AND IT IS SO ORDERED. Entered at the direction of the Honorable Richard M Gergel on 4/18/2025.(ltap, )** (Entered: |

| | | 04/18/2025) |
|---|---|---|
| 04/18/2025 | 74 | **TEXT ORDER GRANTING**<br>**42 Motion for Khadijah Silver to Appear Pro Hac Vice for ActiveSGV,**<br>**Environmental Protection Network, Heru Urban Farming and Garden,**<br>**Kalamazoo Climate Crisis Coalition, Landforce, MetroHealth System;**<br>**43 Motion for Larissa Koehler to Appear Pro Hac Vice for ActiveSGV,**<br>**Environmental Protection Network, Heru Urban Farming and Garden,**<br>**Kalamazoo Climate Crisis Coalition, Landforce, MetroHealth System;**<br>**49 Motion for Jonathan B. Miller to Appear Pro Hac Vice for Baltimore,**<br>**Maryland, Columbus, Ohio, Madison, Wisconsin, Nashville, Tennessee, New**<br>**Haven, Connecticut;**<br>**50 Motion for Graham Provost to Appear Pro Hac Vice for Baltimore, Maryland,**<br>**Columbus, Ohio, Madison, Wisconsin, Nashville, Tennessee, New Haven,**<br>**Connecticut;**<br>**58 Motion for Benjamin Grillot to Appear Pro Hac Vice for Agrarian Trust,**<br>**Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River**<br>**Alliance, CleanAIRE NC, Conservation Innovation Fund, Earth Island Institute,**<br>**Leadership Counsel for Justice and Accountability, Marbleseed, Organic**<br>**Association of Kentucky, Pennsylvania Association for Sustainable Agriculture,**<br>**Rural Advancement Foundation International–USA, The Sustainability Institute;**<br>**61 Motion for Elaine Poon to Appear Pro Hac Vice for Baltimore, Maryland,**<br>**Columbus, Ohio, Madison, Wisconsin, Nashville, Tennessee, New Haven,**<br>**Connecticut.**<br>**AND IT IS SO ORDERED. Entered at the Direction of Honorable Richard M**<br>**Gergel on 4/18/2025.**(sshe, ) (Entered: 04/18/2025) |
| 04/18/2025 | 75 | REPLY by United States Department of Transportation to 45 Order on Motion to Expedite,, *(Supplemental documents)*. (Attachments: # 1 1, Certification, # 2 2, DOT–000965–DOT–001253)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 76 | Additional Attachments to Main Document 68 MOTION for Protective Order . First attachment description: DOT Supplemental Privilege Log . (Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 77 | **ORDER: Defendants' motion for a 30–day extension to provide further support**<br>**for privileges and protections asserted in the privilege logs is denied. Such a delay**<br>**would potentially disrupt the Court's timely consideration of jurisdictional issues**<br>**and the pending motion for a preliminary injunction. (Dkt. No. 24). The Court**<br>**does find merit in Plaintiffs' offered compromise to allow Defendants to**<br>**supplement their privilege logs through April 21, 2025 at 5:00 p.m., and extends**<br>**the time to supplement the privilege logs through that date and time. AND IT IS**<br>**SO ORDERED. Signed by Honorable Richard M Gergel on 4/18/2025.**(ltap, )<br>(Entered: 04/18/2025) |
| 04/18/2025 | 78 | NON–STANDARD ITEM RECEIVED: flash drive from United States Department of Transportation re: 45 Order on Motion to Expedite. Hand delivered and Received by chambers 4/18/2025. (sshe, ) (Entered: 04/18/2025) |
| 04/18/2025 | 79 | REPLY by United States Environmental Protection Agency to 45 Order on Motion to Expedite,, . (Attachments: # 1 Certification, # 2 EPA_00000735–EPA_00057420_Part1, # 3 EPA_00000735–EPA_00057420_Part2, # 4 EPA_00000735–EPA_00057420_Part3, # 5 EPA_00000735–EPA_00057420_Part4, # 6 EPA_00000735–EPA_00057420_Part5, # 7 EPA_00000735–EPA_00057420_Part6, # 8 EPA_00000735–EPA_00057420_Part7)(Berlinsky, Lee) Modified on 4/21/2025 to reference Additional Attachments 80 , 81 , 82 , 83 , 84 , 85 , 86 , 87 , 88 , 89 , 90 , 91 filed 4/18/2025 (sshe, ). Modified on 4/22/2025 to reference 95 – 103 , 106 – 110 , 111 ref 97, 112 – 132 (sshe, ). (Entered: 04/18/2025) |
| 04/18/2025 | 80 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00000735–EPA_00057420_Part8 . (Attachments: # 1 EPA_00000735–EPA_00057420_Part9, # 2 EPA_00000735–EPA_00057420_Part10, # 3 EPA_00000735–EPA_00057420_Part11, # 4 EPA_00000735–EPA_00057420_Part12, # 5 EPA_00000735–EPA_00057420_Part13, # 6 |

| | | |
|---|---|---|
| | | EPA_00000735–EPA_00057420_Part14)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 81 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00000735–EPA_00057420_Part15 . (Attachments: # 1 EPA_00000735–EPA_00057420_Part16, # 2 EPA_00000735–EPA_00057420_Part17, # 3 EPA_00000735–EPA_00057420_Part18, # 4 EPA_00000735–EPA_00057420_Part19, # 5 EPA_00000735–EPA_00057420_Part20, # 6 EPA_00000735–EPA_00057420_Part21, # 7 EPA_00000735–EPA_00057420_Part22, # 8 EPA_00000735–EPA_00057420_Part23)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 82 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00000735–EPA_00057420_Part24 . (Attachments: # 1 EPA_00000735–EPA_00057420_Part25, # 2 EPA_00000735–EPA_00057420_Part26, # 3 EPA_00000735–EPA_00057420_Part27, # 4 EPA_00000735–EPA_00057420_Part28, # 5 EPA_00000735–EPA_00057420_Part29, # 6 EPA_00000735–EPA_00057420_Part30, # 7 EPA_00000735–EPA_00057420_Part31, # 8 EPA_00000735–EPA_00057420_Part32, # 9 EPA_00000735–EPA_00057420_Part33)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 83 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00000735–EPA_00057420_Part34 . (Attachments: # 1 EPA_00000735–EPA_00057420_Part35, # 2 EPA_00000735–EPA_00057420_Part36, # 3 EPA_00000735–EPA_00057420_Part37, # 4 EPA_00000735–EPA_00057420_Part38, # 5 EPA_00000735–EPA_00057420_Part39, # 6 EPA_00000735–EPA_00057420_Part40, # 7 EPA_00000735–EPA_00057420_Part41)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 84 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00000735–EPA_00057420_Part42 . (Attachments: # 1 EPA_00000735–EPA_00057420_Part43, # 2 EPA_00000735–EPA_00057420_Part44, # 3 EPA_00000735–EPA_00057420_Part45, # 4 EPA_00000735–EPA_00057420_Part46, # 5 EPA_00000735–EPA_00057420_Part47)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 85 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00057421 . (Attachments: # 1 EPA_00057466, # 2 EPA_00057561, # 3 EPA_00070430_Part1, # 4 EPA_00070430_Part2, # 5 EPA_00070430_Part3, # 6 EPA_00070430_Part4, # 7 EPA_00070430_Part5)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 86 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00070430_Part6 . (Attachments: # 1 EPA_00070430_Part7, # 2 EPA_00070430_Part8, # 3 EPA_00070430_Part9, # 4 EPA_00070430_Part10, # 5 EPA_00070430_Part11, # 6 EPA_00070430_Part12, # 7 EPA_00070430_Part13, # 8 EPA_00070430_Part14)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 87 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00070430_Part15 . (Attachments: # 1 EPA_00070430_Part16, # 2 EPA_00070430_Part17, # 3 EPA_00070430_Part18, # 4 EPA_00070430_Part19, # 5 EPA_00070430_Part20)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 88 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00071140 . (Attachments: # 1 EPA_00071909_Part1, # 2 EPA_00071909_Part2, # 3 EPA_00071909_Part3, # 4 EPA_00071909_Part4, # 5 EPA_00071909_Part5, # 6 EPA_00071909_Part6, # 7 EPA_00071909_Part7)(Berlinsky, Lee) (Entered: 04/18/2025) |

| 04/18/2025 | 89 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00073595_ . (Attachments: # 1 EPA_00073635_Part1, # 2 EPA_00073635_Part2, # 3 EPA_00073635_Part3, # 4 EPA_00073635_Part4, # 5 EPA_00073635_Part5, # 6 EPA_00073635_Part6, # 7 EPA_00075040_)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 90 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00075137_Part1 . (Attachments: # 1 EPA_00075137_Part2, # 2 EPA_00075137_Part3, # 3 EPA_00075137_Part4, # 4 EPA_00075290_)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 91 | Additional Attachments to Main Document 79 Reply,. First attachment description: EPA_00075291_Part1 . (Attachments: # 1 EPA_00075291_Part2, # 2 EPA_00075291_Part3, # 3 EPA_00075291_Part4, # 4 EPA_00075291_Part5, # 5 EPA_00075291_Part6, # 6 EPA_00075291_Part7, # 7 EPA_00075291_Part8)(Berlinsky, Lee) (Entered: 04/18/2025) |
| 04/20/2025 | 92 | Letter from U.S. Attorney's Office–District of South Carolina. (Berlinsky, Lee) (Entered: 04/20/2025) |
| 04/21/2025 | 93 | **ORDER: Defendants are directed to provide the Court a status report on or before April 22, 2025 at 5:00 p.m. which addresses the following: 1.The status of Defendants' efforts to resume "processing, disbursement, and payment" of grants subject to the Woonasquatucket River Watershed Council injunction; and 2.The specific status of the grants set forth at Dkt. No. 25–1 at 14–20, indicating whether the grant funds for each grant are presently paused, accessible to grantees, or terminated. AND IT IS SO ORDERED. Signed by Honorable Richard M Gergel on 4/21/2025. (ltap, )** (Entered: 04/21/2025) |
| 04/21/2025 | 95 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00000735–EPA_00006744 . (Attachments: # 1 EPA_00036078–EPA–00041425_Part1, # 2 EPA_00036078–EPA–00041425_Part2, # 3 EPA_00036078–EPA–00041425_Part3, # 4 EPA_00042133–EPA_00045081, # 5 EPA_00045082)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 96 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00045102–EPA_00049226 . (Attachments: # 1 EPA_00049228_Part1, # 2 EPA_00049228_Part2, # 3 EPA_00049228_Part3, # 4 EPA_00049330, # 5 EPA_00049361–EPA_00050946)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 97 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00050947_Part1 . (Attachments: # 1 EPA_00050947_Part2, # 2 EPA_00050947_Part3, # 3 EPA_00051267–EPA_00052837, # 4 EPA_00052941)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 98 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00052972–EPA_00053864 . (Attachments: # 1 EPA_00053901–EPA_00070430)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 99 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00071140 – EPA_00110483 . (Attachments: # 1 EPA_00110492–EPA_00132226, # 2 EPA_00132232–EPA_00142403, # 3 EPA_00142746–EPA_00146138, # 4 EPA_00146143–EPA_00180340, # 5 EPA_00180342–EPA_00208170)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 100 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00208179–EPA_00223138 . (Attachments: # 1 EPA_00223140–EPA_00226116, # 2 EPA_00226118–EPA_00226172, # 3 EPA_00226196–EPA_00230068, # 4 EPA_00230107–EPA_00238946, # 5 EPA_00239342–EPA_00239400)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 101 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00239410–EPA_00239465 . (Attachments: # 1 EPA_00239479–EPA_00239535, # 2 EPA_00239545–EPA_00291039, # 3 EPA_00291040–EPA_00292158, # 4 EPA_00296792–EPA_00297915)(Berlinsky, Lee) (Entered: 04/21/2025) |

| 04/21/2025 | 102 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00297922_Part1 . (Attachments: # 1 EPA_00297922_Part2, # 2 EPA_00297972–EPA_00299162, # 3 EPA_00299172–EPA_00299869, # 4 EPA_00299999–EPA_00315792, # 5 EPA_00316059–EPA_00317963, # 6 EPA_00317972–EPA_00318037)(Berlinsky, Lee) (Entered: 04/21/2025) |
|---|---|---|
| 04/21/2025 | 103 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00318047–EPA_00318103 . (Attachments: # 1 EPA_00318113–EPA_00318180)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 104 | REPLY to Response to Motion re 68 MOTION for Protective Order Response filed by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin. (Timmons, Todd) (Entered: 04/21/2025) |
| 04/21/2025 | 105 | SUPPLEMENT by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin to 70 Additional Attachments to Main Document *Supplemental Privilege Log*. (Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 106 | Additional Attachments to Main Document 79 Reply,,. First attachment description: Affidavit of Records_4–21–2025_packard . (Attachments: # 1 EPA_00000005–EPA_00000132, # 2 EPA_00000137–EPA_00000244, # 3 EPA_00000258–EPA_00000353, # 4 EPA_00000356–EPA_00000580, # 5 EPA_00000582–EPA_00000707, # 6 EPA_00000709–EPA_00000970)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 107 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_0000995–EPA_00006144 . (Attachments: # 1 EPA_000006167–EPA_00006201, # 2 EPA_00006211–EPA_00006240, # 3 EPA_00006337–EPA_00006732, # 4 EPA_00006736–EPA_00011121, # 5 EPA_000022543–EPA_00035603, # 6 EPA_00035606–EPA_00035795)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 108 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00035808–EPA_00035812 . (Attachments: # 1 EPA_00035838, # 2 EPA_00035886–EPA_00036003, # 3 EPA_00036016–EPA_00036793, # 4 EPA_00036795)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 109 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00036935–EPA_00037546 . (Attachments: # 1 EPA_00037612–EPA_00038577, # 2 EPA_00038649–EPA_00041718, # 3 EPA_00041784–EPA_0042003, # 4 EPA_00042005–EPA_0042053, # 5 EPA_00042057–EPA_00044606, # 6 EPA_00044608–EPA_00045122)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 110 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00045124–EPA_00045173 . (Attachments: # 1 EPA_00045174–EPA_00045357, # 2 EPA_00045380–EPA_00046262, # 3 EPA_00046267–00046297, # 4 EPA_00046332–EPA_00047894, # 5 EPA_00047912–EPA_00048001, # 6 EPA_00048009)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 111 | Additional Attachments to Main Document 97 Additional Attachments to Main Document. First attachment description: EPA_00048075–EPA_00048321 . (Attachments: # 1 EPA_00048328–EPA_00048398, # 2 EPA_00048399, # 3 EPA_0048514–EPA_00049198, # 4 EPA_00049204–EPA_00049586, # 5 EPA_00049618–EPA_00049752, # 6 EPA_00049755_Part1)(Berlinsky, Lee) (Entered: 04/21/2025) |

**J.A. 2963**

| | | |
|---|---|---|
| 04/21/2025 | 112 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00049755–EPA–00050342 . (Attachments: # 1 EPA_00049755_Part2 , # 2 EPA_00049755_Part4, # 3 EPA_00049755_Part5, # 4 EPA_00049755_Part6, # 5 EPA_00050020, # 6 EPA_00050074)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 113 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00050161–EPA–00050342 . (Attachments: # 1 EPA_00050396–EPA_00050435, # 2 EPA_00050438_Part1, # 3 EPA_00050438_Part2, # 4 EPA_00050501–EPA_00050559, # 5 EPA_00050566–EPA_00050639, # 6 EPA_00050643–EPA_00050734)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 114 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00050738–EPA_00050855 . (Attachments: # 1 EPA_00050872_Part1, # 2 EPA_00050872_Part2, # 3 EPA_00051075–EPA_00051168, # 4 EPA_00051170–EPA_00051335, # 5 EPA_00051383–EPA_00051516, # 6 EPA_00051524–EPA_00051609, # 7 EPA_00051631–EPA_00051676)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 115 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00051707–EPA_00015758_Part1 . (Attachments: # 1 EPA_00051707–EPA_00015758_Part2, # 2 EPA_00051781–EPA_00051895, # 3 EPA_00051904–EPA_00052074, # 4 EPA_00052078–EPA_00052155, # 5 EPA_00052156–EPA_00052245, # 6 EPA_00052258–EPA_00052335)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 116 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00052394_Part1 . (Attachments: # 1 EPA_00052394_Part2, # 2 EPA_00052394_Part3, # 3 EPA_00052498_Part1, # 4 EPA_00052498_Part2, # 5 EPA_00052498_Part3, # 6 EPA_00052608–EPA_00053020, # 7 EPA_00053023–EPA–00053323)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 117 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00053386–EPA_00053457 . (Attachments: # 1 EPA_00053617–EPA_00053732, # 2 EPA_00053734–EPA–00053781, # 3 EPA_00057183–00071901, # 4 EPA_000071903–EPA_00089145, # 5 EPA_00101995–EPA_00106637, # 6 EPA_00106667–EPA_00107015, # 7 EPA_00107083–EPA_00110451)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 118 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00120621–EPA_00140859 . (Attachments: # 1 EPA_00140861–EPA_00143007, # 2 EPA_00143008–EPA_00143060.pdf, # 3 EPA_00143069–EPA_00160749, # 4 EPA_00160752–EPA_00161548, # 5 EPA_00161558–EPA_00161863, # 6 EPA_00161864–EPA_00163484, # 7 EPA_00163488–00179612, # 8 EPA_00179613)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 119 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00206984–EPA_00222254 . (Attachments: # 1 EPA_00206984–EPA_00222254, # 2 EPA_00222257–EPA_00222340, # 3 EPA_00222341–EPA_00222389, # 4 EPA_0022403_Part1, # 5 EPA_0022403_Part2, # 6 EPA_00222491–EPA_00222530, # 7 EPA_00222531_Part1, # 8 EPA_00222531_Part2, # 9 EPA_00222618–EPA_00222708.)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 120 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00222723_Part1 . (Attachments: # 1 EPA_00222723_Part2, # 2 EPA_00222790–EPA_00222870, # 3 EPA_00222987–EPA_00223310, # 4 EPA_00223316–EPA_00223358, # 5 EPA_00223392–EPA_00223478, # 6 EPA_00223497_Part1, # 7 EPA_00223497_Part2, # 8 EPA_00223497_Part3)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 121 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00223593_Part1 . (Attachments: # 1 EPA_00223593_Part2, # 2 EPA_00223593_Part3, # 3 EPA_00223688–EPA_00223981, # 4 EPA_00223989–EPA_00224042, # 5 EPA_00224050–EPA_00224224, # 6 EPA_00224264–EPA_00224430, # 7 EPA_00224433–EPA_00224535, # 8 |

| | | |
|---|---|---|
| | | EPA_00224538, # 9 EPA_00224587–EPA_00224700)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 122 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00224703 . (Attachments: # 1 EPA_00224752–EPA_00224839, # 2 EPA_00224857_Part1, # 3 EPA_00224857_Part2, # 4 EPA_00224951–EPA_00225165, # 5 EPA_00225168_Part1, # 6 EPA_00225168_Part2, # 7 EPA_00225168_Part3, # 8 EPA_00225168_Part4)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 123 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00225354 . (Attachments: # 1 EPA_00225358_Part1, # 2 EPA_00225358_Part2, # 3 EPA_00225358_Part3, # 4 EPA_00225358_Part4, # 5 EPA_00225549–EPA_00225556, # 6 EPA_00225580_Part1, # 7 EPA_00225580_Part2, # 8 EPA_00225580_Part3)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 124 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00225790–EPA_00226024 . (Attachments: # 1 EPA_00226041–EPA_00226110, # 2 EPA_00226223–EPA_00226300, # 3 EPA_00226301–EPA_00226601, # 4 EPA_00226604–EPA_00226688, # 5 EPA_00226931–EPA_00227142, # 6 EPA_00227144–EPA_00230088, # 7 EPA_00230759–EPA_00230835, # 8 EPA_00230836, # 9 EPA_00230892–EPA_00230952)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 125 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00230957–EPA_00231038 . (Attachments: # 1 EPA_231045–EPA_00231093, # 2 EPA_00231100–EPA_00231116, # 3 EPA_00231120, # 4 EPA_00231168–EPA_00231321, # 5 EPA_00231326–EPA_00231346, # 6 EPA_00231393–EPA_00231668, # 7 EPA_00297792–EPA_00298465, # 8 EPA_00298488–EPA_00298518, # 9 EPA_00298565–EPA_00298661, # 10 EPA_00298700–EPA_00298975)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 126 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00231671–EPA_00231688 . (Attachments: # 1 EPA_00231703–EPA_00231759, # 2 EPA_00231763–EPA_00231822, # 3 EPA_00231824, # 4 EPA_00231869–EPA_00232051, # 5 EPA_00232147–EPA_002323085, # 6 EPA_00232387–EPA_00232433, # 7 EPA_00232451–EPA_00232596, # 8 EPA_00232601–EPA_00237701, # 9 EPA_00237703–EPA_00237777.pdf)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 127 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00237805–EPA_00237938 . (Attachments: # 1 EPA_00237939–EPA_00238024.pdf, # 2 EPA_00238027–EPA_00238105, # 3 EPA_00238107–EPA_00238177, # 4 EPA_00238179–EPA_00238258, # 5 EPA_00238264–EPA_00238379, # 6 EPA_00238388–EPA_00239332, # 7 EPA_00239564–EPA_00290739, # 8 EPA_00290474–EPA_00291327, # 9 EPA_00291329–EPA_00291580, # 10 EPA_00291583–EPA_00291992)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 128 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00292008 . (Attachments: # 1 EPA_00292079–EPA_00293061, # 2 EPA_00293062–EPA_00293122, # 3 EPA_00293192–293381, # 4 EPA_00293500–EPA_00293910, # 5 EPA_00293923–EPA_00294119, # 6 EPA_00294020–EPA_00294286, # 7 EPA_00294288–EPA_00294494, # 8 EPA_00294499–EPA_00294679, # 9 EPA_00294684–EPA_00294729, # 10 EPA_00294733–EPA_00294805)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 129 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00294806–EPA_00294851 . (Attachments: # 1 EPA_00295337–EPA_00295975.pdf, # 2 EPA_00295988–EPA_00296950, # 3 EPA_00296959, # 4 EPA_00297004–EPA_00297205, # 5 EPA_00297206_Part1, # 6 EPA_00297206_Part2, # 7 EPA_00297206_Part3, # 8 EPA_00297413_Part1, # 9 EPA_00297413_Part2, # 10 EPA_00297413_Part3, # 11 EPA_00297413_Part4)(Berlinsky, Lee) (Entered: 04/21/2025) |

| 04/21/2025 | 130 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00297609_Part1 . (Attachments: # 1 EPA_00297609_Part2, # 2 EPA_00297609_Part3, # 3 EPA_00297745–EPA_00297776, # 4 EPA_00297785–EPA_00298442)(Berlinsky, Lee) (Entered: 04/21/2025) |
|---|---|---|
| 04/21/2025 | 131 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00298977–EPA_00299248 . (Attachments: # 1 EPA_00299374–EPA_00299528, # 2 EPA_00299532–EPA_00299704, # 3 EPA_00299721–EPA_00299908, # 4 EPA_00299914–EPA_00299991, # 5 EPA_00299996–EPA_00314861, # 6 EPA_00314863–EPA_00315486, # 7 EPA_00315490–EPA_00315606, # 8 EPA_00315624–EPA_00315805, # 9 EPA_00315811–EPA_00316315, # 10 EPA_00316319–EPA_00316568)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/21/2025 | 132 | Additional Attachments to Main Document 79 Reply,,. First attachment description: EPA_00316570–EPA_00316673 . (Attachments: # 1 EPA_00316679–EPA_00316798, # 2 EPA_00316800–EPA_00316915, # 3 EPA_00316919–EPA_00316975, # 4 EPA_00316979–EPA_00317040, # 5 EPA_00317045–EPA_00317107, # 6 EPA_00317110–EPA_00317534, # 7 EPA_00317552–EPA_00317606, # 8 EPA_00317657–EPA_00318187, # 9 EPA_00318189–EPA_00318269)(Berlinsky, Lee) (Entered: 04/21/2025) |
| 04/22/2025 | 133 | NON–STANDARD ITEM RECEIVED: flash drive from United States Environmental Protection Agency re: 45 Order on Motion to Expedite, on 4/21/25 before 5:00 PM; hand delivered to chambers 4/22/25 9:00 AM. (sshe, ) (Entered: 04/22/2025) |
| 04/22/2025 | 134 | MOTION to Unseal Document by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. Response to Motion due by 5/6/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Brzorad, Carl) (Entered: 04/22/2025) |
| 04/22/2025 | 135 | **TEXT ORDER: Plaintiffs have moved to unseal all documents on Defendants' privilege logs based upon the deliberative process privilege because the justifications provided are inadequate. (Dkt. No. 134). The time for Defendants to respond to this motion is shortened to 5:00 p.m. on 4/25/25. AND IT IS SO ORDERED. Entered at the direction of the Honorable Richard M Gergel on 4/22/2025. (ltap, )** (Entered: 04/22/2025) |
| 04/22/2025 | 136 | REPLY by Sean Duffy, Amy Gleason, Kevin Hassett, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin to 93 Order,, . (Attachments: # 1 Exhibit A: Chart of Grant Status)(Berlinsky, Lee) (Entered: 04/22/2025) |
| 04/23/2025 | 137 | **TEXT ORDER: Before the Court is a Motion for Leave to File Brief of Amici Curiae Nonprofit Recipients of Federal Funding in Support of Plaintiffs' Motion for a Preliminary Injunction. (Dkt. No. 40). No party has opposed the motion. The Court grants the motion for leave (Dkt. No. 40) and authorizes the Nonprofit Recipients to file their amicus brief on the Court's docket. AND IT IS SO ORDERED. Entered at the direction of the Honorable Richard M Gergel on 4/23/2025.(ltap, )** (Entered: 04/23/2025) |
| 04/23/2025 | 138 | **Minute Entry. Proceedings held before Honorable Richard M Gergel: Motion Hearing held on 4/23/2025 re 24 MOTION for Preliminary Injunction filed by Baltimore, Maryland, Pennsylvania Association for Sustainable Agriculture, Leadership Counsel for Justice and Accountability, San Diego, California, Madison, Wisconsin, Rural Advancement Foundation International–USA, Conservation Innovation Fund, The Sustainability Institute, Alliance for Agriculture, Nashville, Tennessee, Alliance for the Shenandoah Valley, Bronx** |

|  |  | **River Alliance, New Haven, Connecticut, Marbleseed, CleanAIRE NC, Agrarian Trust, Columbus, Ohio. Court to issue order. Court Reporter Karen Martin. (cper, )** (Entered: 04/23/2025) |
|---|---|---|
| 04/23/2025 | 139 | **TEXT ORDER granting 41 Motion of Jillian Blanchard to Appear Pro Hac Vice for ActiveSGV, Environmental Protection Network, Heru Urban Farming and Garden, Kalamazoo Climate Crisis Coalition, Landforce, MetroHealth System. AND IT IS SO ORDERED. Entered at the Direction of Honorable Richard M Gergel on 4/23/2025.(sshe, )** (Entered: 04/23/2025) |
| 04/23/2025 | 140 | Amicus Curiae APPEARANCE *Brief of Amici Curiae Nonprofit Recipients of Federal Funding in Support of Plaintiffs' Motion for Preliminary Injunction* entered by Kathleen McColl McDaniel on behalf of ActiveSGV, Environmental Protection Network, Heru Urban Farming and Garden, Kalamazoo Climate Crisis Coalition, Landforce, MetroHealth System. (McDaniel, Kathleen) Modified to add descriptive docket text on 4/23/2025 (sshe, ). (Entered: 04/23/2025) |
| 04/24/2025 | 142 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings. Motion Hearing held on 4/23/2025, before Judge Richard M. Gergel. Court Reporter/Transcriber Karen E. Martin, Telephone number/E-mail Karen_E_Martin@scd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties have 7 calendar days from the filing of the transcript to file with the court a Notice of Intent to Request Redaction. Redaction Request due 5/15/2025. Redacted Transcript Deadline set for 5/27/2025. Release of Transcript Restriction set for 7/23/2025. (kmartin, ) (Entered: 04/24/2025) |
| 04/24/2025 | 143 | MOTION for interim relief by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. Response to Motion due by 5/8/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. Proposed order is being emailed to chambers with copy to opposing counsel.(Brzorad, Carl) (Entered: 04/24/2025) |
| 04/25/2025 | 144 | **TEXT ORDER: Plaintiffs have moved to unseal all documents on Defendants' privilege logs based upon the deliberative process privilege because the justifications provided are inadequate. (Dkt. No. 134). The Court raised this issue with Defendants at its April 23 hearing and indicated that it will allow Defendants to further supplement their privilege logs. The Court will provide Defendants with an opportunity to supplement their privilege logs in a forthcoming order memorializing and supplementing the rulings the Court made at the April 23 hearing. Because Defendants will be afforded an opportunity to supplement their privilege logs, the Court denies as moot and without prejudice Plaintiffs' motion (Dkt. No. 134). AND IT IS SO ORDERED. Entered at the direction of Honorable Richard M Gergel on 4/25/25.(cper, )** (Entered: 04/25/2025) |
| 04/25/2025 | 145 | MOTION to Compel *Production of Native Files* by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute. Response to Motion due by 5/12/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit E–discovery Motion, # 2 Exhibit Logikcull Production Requirements)No proposed order.(Brzorad, Carl) (Entered: 04/25/2025) |
| 04/29/2025 | 146 | **ORDER regarding jurisdiction and supplementing the record. AND IT IS SO ORDERED. Signed by Honorable Richard M Gergel on 4/29/2025. (ltap, )** (Entered: 04/29/2025) |

| 05/06/2025 | 147 | REPLY by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin to 146 Order . (Attachments: # 1 Exhibit 1, Declaration of Karen Woodrich, # 2 Exhibit 2, Declaration of Patricia Kovacs, # 3 Exhibit 3, Declaration of Arlan Finfrock, # 4 Exhibit 4, Declaration of Travis Voyles, # 5 Exhibit 5, Packard Supplemental Search Decl. – Part 1 of 4, # 6 Exhibit 5, Packard Supplemental Search Decl. – Part 2 of 4, # 7 Exhibit 5, Packard Supplemental Search Decl. – Part 3 of 4, # 8 Exhibit 5, Packard Supplemental Search Decl. – Part 4 of 4, # 9 Exhibit 6, Packard Deliberative Process Decl., # 10 Exhibit 7, Declaration of Kailee Buller)(Timmons, Todd) (Entered: 05/06/2025) |
| 05/07/2025 | 148 | RESPONSE in Opposition re 143 MOTION for interim relief Response filed by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin.Reply to Response to Motion due by 5/14/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Timmons, Todd) (Entered: 05/07/2025) |
| 05/12/2025 | 149 | REPLY by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute to 146 Order . (Attachments: # 1 Exhibit 1–Table of Grants and Relief Requested, # 2 Exhibit 2–Transcript of Preliminary Injunction Hearing, # 3 Exhibit 3– EPA Jan. 21 Email, # 4 Exhibit 4– EPA Mar. 7 Emails, # 5 Exhibit 5– EPA Feb. 22–24 Emails, # 6 Exhibit 6– EPA Feb. 21–24 Emails, # 7 Exhibit 7– Supplemental Declaration of the Sustainability Institute, # 8 Exhibit 8– Inside EPA Article, # 9 Exhibit 9– EPA Reduction in Force Memo, # 10 Exhibit 10– Supplemental Declaration of CleanAIRE NC)(Brzorad, Carl) Modified to add exhibit descriptions provided by filing user on 5/13/2025 (rhei, ). (Entered: 05/12/2025) |
| 05/12/2025 | 150 | RESPONSE to Motion re 145 MOTION to Compel *Production of Native Files* Response filed by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin.Reply to Response to Motion due by 5/19/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Berlinsky, Lee) (Entered: 05/12/2025) |
| 05/13/2025 | 151 | NOTICE of Hearing on 24 MOTION for Preliminary Injunction : Motion Hearing set for 5/19/2025 at 10:00 AM in Charleston Courtroom #1, J. Waties Waring Judicial Center, 83 Meeting St, Charleston before Honorable Richard M Gergel. (ltap, ) (Entered: 05/13/2025) |
| 05/13/2025 | 152 | **TEXT ORDER: Defendants may file a reply to Plaintiffs response at Dkt. No. 149 by 12:00 PM Friday, May 16th. AND IT IS SO ORDERED. Entered at the direction of the Honorable Richard M Gergel on 5/13/2025. (ltap, )** (Entered: 05/13/2025) |
| 05/16/2025 | 153 | REPLY by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin to 152 Order . (Timmons, Todd) (Entered: 05/16/2025) |

| 05/16/2025 | 154 | **Minute Entry. Proceedings held before Honorable Richard M Gergel: Telephone Conference held on 5/16/2025 re: Docket No. 149 and 153. All parties are represented on the call. Court Reporter Lisa Smith. (cper, )** (Entered: 05/16/2025) |
|---|---|---|
| 05/19/2025 | 155 | **Minute Entry. Proceedings held before Honorable Richard M Gergel: Motion Hearing held on 5/19/2025 re 24 MOTION for Preliminary Injunction filed by Baltimore, Maryland, Pennsylvania Association for Sustainable Agriculture, Leadership Counsel for Justice and Accountability, San Diego, California, Madison, Wisconsin, Rural Advancement Foundation International–USA, Conservation Innovation Fund, The Sustainability Institute, Alliance for Agriculture, Nashville, Tennessee, Alliance for the Shenandoah Valley, Bronx River Alliance, New Haven, Connecticut, Marbleseed, CleanAIRE NC, Agrarian Trust, Columbus, Ohio. The Court to issue an Order. Court Reporter Lisa Smith. (hcor, )** (Entered: 05/19/2025) |
| 05/20/2025 | 156 | Brief of Amici Curiae. USCA4 Appeal: 21–1346 (ltap, ) Modified on 5/21/2025 docketed for reference per 157 Order, per chambers(sshe, ). (Entered: 05/20/2025) |
| 05/20/2025 | 157 | **ORDER Re: 24 Motion for Preliminary Injunction. A. Under Section II, the Court enters judgment for Plaintiffs regarding the uncontested APA claims (Exhibit A, Grants 1–26, 33–38). Plaintiffs are provided declaratory and permanent injunctive relief. Defendants' motion to stay is denied.B. Under Section III, The Court finds that it has jurisdiction over Plaintiffs' nonstatutory review claims and that Plaintiffs' have standing to assert those claims. The Court further grants Plaintiffs preliminary injunction for Grants 1–26 and 33–38 regarding the nonstatutory review claims.C. Under Section IV, the Court denies Plaintiffs preliminary injunctive relief regarding Grants 27–32. AND IT IS SO ORDERED. Signed by Honorable Richard M Gergel on 5/20/2025. (Attachments: # 1 Exhibit)(ltap, )** (Entered: 05/20/2025) |
| 05/21/2025 | 159 | NOTICE OF APPEAL as to 146 Order, 157 Order on Motion for Preliminary Injunction,,, by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin. – The Docketing Statement form, Transcript Order form and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov (Berlinsky, Lee) (Entered: 05/21/2025) |
| 05/22/2025 | 160 | DELETION OF DOCKET ENTRY NUMBER 158 Reason: Attorney filer filed amended Notice of Appeal document to include reference link to two USDC Orders, not only one Order Corrected Filing Document Number 159 Filing date is that of original filing: 5/21/2025 (sshe, ) (Entered: 05/22/2025) |
| 05/22/2025 | 161 | Transmittal Sheet for Notice of Appeal to USCA re 159 Notice of Appeal,,, The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (sshe, ) (Entered: 05/22/2025) |
| 05/23/2025 | 163 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings. Motions Hearing held on 5/19/2025, before Judge Richard M. Gergel. Court Reporter/Transcriber Lisa D. Smith, Telephone number/E–mail lisa_smith@scd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties have 7 calendar days from the filing of the transcript to file with the court a Notice of Intent to Request Redaction.. Redaction Request due 6/13/2025. Redacted Transcript Deadline set for 6/23/2025. Release of Transcript Restriction set for 8/21/2025. (lsmi, ) (Entered: 05/23/2025) |
| 05/27/2025 | 164 | MOTION to Dismiss by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin. Response to Motion due by 6/10/2025. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. |

**J.A. 2969**

| | | Crim. P. 45. No proposed order.(Timmons, Todd) (Entered: 05/27/2025) |
|---|---|---|
| 05/27/2025 | 165 | REPLY by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin to 157 Order on Motion for Preliminary Injunction,,, . (Attachments: # 1 Exhibit 1, Certification of Lee M. Zeldin, Administrator of EPA, # 2 Exhibit 2, Certification of Brooke L. Rollins, Secretary of USDA, # 3 Exhibit 3, Certification of Sean P. Duffy, Secretary of DOT, # 4 Exhibit 4, Certification of Chris A. Wright, Secretary of DOE)(Timmons, Todd) (Entered: 05/27/2025) |
| 06/05/2025 | 166 | ORDER of USCA – granting the Government's motion for a stay of the permanent injunction and the preliminary injunction pending this appeal, denying the Government's motion for an administrative stay as moot, setting an expedited briefing schedule – as to 159 Notice of Appeal,, filed by Kevin Hassett, United States Department of Transportation, United States Department of Governmental Efficiency Service, Chris Wright, United States Department of Agriculture, Elon Musk, Sean Duffy, United States Office of Management and Budget, Donald J Trump, Lee Zeldin, Brooke Rollins, United States Department of Energy, Amy Gleason, United States Environmental Protection Agency, Russell Vought (sshe, ) (Entered: 06/05/2025) |
| 06/10/2025 | 167 | RESPONSE in Opposition re 164 MOTION to Dismiss Response filed by Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Baltimore, Maryland, Bronx River Alliance, CleanAIRE NC, Columbus, Ohio, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Madison, Wisconsin, Marbleseed, Nashville, Tennessee, New Haven, Connecticut, Organic Association of Kentucky, Pennsylvania Association for Sustainable Agriculture, Rural Advancement Foundation International–USA, San Diego, California, The Sustainability Institute.Reply to Response to Motion due by 6/17/2025 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # 1 Exhibit Plaintiffs'–Appellees' Petition for Rehearing En Banc of Order Granting Stay and Initial Hearing En Banc of the Appeal)(Brzorad, Carl) (Entered: 06/10/2025) |
| 06/17/2025 | 168 | REPLY to Response to Motion re 164 MOTION to Dismiss Response filed by Sean Duffy, Amy Gleason, Kevin Hassett, Elon Musk, Brooke Rollins, Donald J Trump, United States Department of Agriculture, United States Department of Energy, United States Department of Governmental Efficiency Service, United States Department of Transportation, United States Environmental Protection Agency, United States Office of Management and Budget, Russell Vought, Chris Wright, Lee Zeldin. (Attachments: # 1 Exhibit 1, NAD Case No. 2025S000288, # 2 Exhibit 2, NAD Case No. 2025S000316)(Timmons, Todd) (Entered: 06/17/2025) |
| 06/17/2025 | 169 | SUMMONS Returned Executed by Rural Advancement Foundation International–USA, Alliance for the Shenandoah Valley, Nashville, Tennessee, Marbleseed, The Sustainability Institute, Madison, Wisconsin, New Haven, Connecticut, Organic Association of Kentucky, San Diego, California, Columbus, Ohio, CleanAIRE NC, Earth Island Institute, Conservation Innovation Fund, Baltimore, Maryland, Agrarian Trust, Bronx River Alliance, Leadership Counsel for Justice and Accountability, Pennsylvania Association for Sustainable Agriculture, Alliance for Agriculture. All Defendants. (Attachments: # 1 Exhibit 1 – Trump, # 2 Exhibit 2 – DOGE, # 3 Exhibit 3 – Gleason, # 4 Exhibit 4 – Musk, # 5 Exhibit 5 – Hassett, # 6 Exhibit 6 – OMB, # 7 Exhibit 7 – Vought, # 8 Exhibit 8 – EPA, # 9 Exhibit 9 – Zeldin, # 10 Exhibit 10 – DOT, # 11 Exhibit 11 – Duffy, # 12 Exhibit 12 – USDA, # 13 Exhibit 13 – Rollins, # 14 Exhibit 14 – Bondi, # 15 Exhibit 15 – DOE, # 16 Exhibit 16 – Wright, # 17 Exhibit 17 – Bondi)(Brzorad, Carl) (Entered: 06/17/2025) |