No. 25-1575

I N  T HE

# United States Court of Appeals
## for the Fourth Circuit

---

T HE  S USTAINABILITY  I NSTITUTE , *ET AL.*,

*Plaintiffs-Appellees,*

v.

D ONALD  J. T RUMP ,  IN HIS OFFICIAL CAPACITY AS
P RESIDENT OF THE  U NITED  S TATES , *ET AL.*,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of South Carolina at Charleston

---

## BRIEF OF *AMICUS CURIAE*
## PROFESSOR TOBIAS BARRINGTON WOLFF
## IN SUPPORT OF APPELLEES AND AFFIRMANCE

---

A DRIANA  S. K OSOVYCH
E PSTEIN , B ECKER  &  G REEN , P.C.
875 Third Avenue
New York, New York  10022
Tel: 212.351.4500
Fax: 212.878.8600
AKosovych@ebglaw.com

P AUL  D E C AMP
  *Counsel of Record*
K ATHLEEN  B ARRETT
E PSTEIN , B ECKER  &  G REEN , P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C.  20037
Tel:  202.861.1819
Fax: 202.861.3571
PDeCamp@ebglaw.com
KBarrett@ebglaw.com

*Counsel for* Amicus Curiae *Professor Tobias Barrington Wolff*

## DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a) of the Federal Rules of Appellate Procedure and Fourth Circuit Rule 26.1, *Amicus Curiae* Professor Tobias Barrington Wolff certifies that *amicus* is a natural person and as such no further Rule 26.1 disclosure statement is required.

/s/ *Paul DeCamp*
Paul DeCamp
*Counsel for* Amicus Curiae
*Tobias Barrington Wolff*

i

## STATEMENT REGARDING CONSENT TO FILE

All parties have consented to the filing of this brief. *See* Fed. R.

App. P. 29(a)(2).

## STATEMENT OF AUTHORSHIP AND
## FINANCIAL CONTRIBUTIONS

No party's counsel authored any part of this brief, nor did any party or party's counsel contribute any money used or intended to fund the preparation or submission of this brief. No person other than *amicus curiae* and his counsel contributed any money that was used or intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

**TABLE OF CONTENTS**

**Page**

DISCLOSURE STATEMENT ....................................................i

STATEMENT REGARDING CONSENT TO FILE ................................ii

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS...................................................iii

TABLE OF CONTENTS ....................................................iv

TABLE OF AUTHORITIES ................................................vi

STATEMENT OF IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................................................ 1

INTRODUCTION ........................................................ 2

ARGUMENT ............................................................ 5

I.    THE SUPREME COURT DEFINES AN ACTION FOR "RELIEF OTHER THAN MONETARY DAMAGES" UNDER THE ADMINISTRATIVE PROCEDURE ACT AS ONE SEEKING SPECIFIC RATHER THAN SUBSTITUTE RELIEF....................................5

II.   THE TUCKER ACT ONLY AUTHORIZES JURISDICTION OVER CLAIMS AGAINST THE UNITED STATES FOR MONEY DAMAGES AND WOULD PROHIBIT PLAINTIFFS FROM ASSERTING THEIR REQUEST FOR SPECIFIC RELIEF IN THE COURT OF FEDERAL CLAIMS. ..........................................................11

III.   LOWER FEDERAL COURTS ARE REQUIRED TO APPLY
       CONTROLLING SUPREME COURT PRECEDENT UNLESS AND
       UNTIL THE COURT ITSELF INSTRUCTS OTHERWISE. ........................ 17

CONCLUSION ................................................................................. 21

CERTIFICATE OF COMPLIANCE ....................................................... 22

CERTIFICATE OF SERVICE ................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*America's Community Bankers v. F.D.I.C.*,
200 F.3d 822 (D.C. Cir. 2000) ............................................................. 10

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)......................2, 5, 6, 7, 8, 10, 11, 15, 16, 17, 18, 19

*California v. U.S. Department of Education*,
132 F.4th 92 (1st Cir. 1995)................................................................. 17

*Department of Army v. Blue Fox*,
525 U.S. 255 (1999).........................................2, 8, 9, 10, 11, 16, 18, 19

*Department of Education v. California*,
145 S. Ct. 966 (2025)............................................... 4, 5, 6, 17, 18, 20, 21

*Great-West Life & Annuity Insurance Co. v. Knudson*,
534 U.S. 204 (2002)................................................................... 17, 18

*Harger v. Department of Labor*,
569 F.3d 898 (9th Cir. 2009)................................................................. 9

*Lummi Tribe of the Lummi Reservation, Washington v.
United States*,
870 F.3d 1313 (Fed. Cir. 2017) .............................. 3, 12, 13, 14, 15, 16

*Maryland Department of Human Resources v.
Department of Health and Human Services*,
763 F.2d 1441 (D.C. Cir. 1985) ............................................................ 6

*Modoc Lassen Indian Housing Authority v. U.S.
Department of Housing and Urban Development*,
881 F.3d 1181 (10th Cir. 2017).............................................................. 9

*National Center for Manufacturing Sciences v. United States*,
114 F.3d 196 (Fed. Cir. 1997) ............................................................. 15

*Rodriguez de Quijas v. Shearson/American Express*,
490 U.S. 477 (1989) ............................................................... 5, 19, 21

*United States v. King*,
395 U.S. 1 (1969) ...................................................................... 12

*United States v. Mitchell*,
463 U.S. 206 (1983) ............................................. 3, 12, 13, 14, 16, 19

*United States v. Testan*,
424 U.S. 392, 398–402 (1976) ............................... 3, 12, 13, 14, 16, 19

*Veluchamy v. F.D.I.C.*,
706 F.3d 810 (7th Cir. 2013) ............................................................ 9

*Widakuswara v. Lake*,
No. 25-5144, 2025 WL 1521355 (D.C. Cir., May 28, 2025) ............... 21

*Zapara v. C.I.R.*,
652 F.3d 1042 (9th Cir. 2011) ........................................................ 10

## STATUTES

5 U.S.C. § 702 ..............................................2, 3, 5, 6, 7, 8, 9, 10, 11, 16, 19

5 U.S.C. § 704 ............................................................................ 7, 15, 20

## OTHER AUTHORITIES

Dan B. Dobbs, *Handbook on the Law of Remedies* 135 (1973) ................. 6

## STATEMENT OF IDENTITY AND
## INTEREST OF *AMICUS CURIAE*

Tobias Barrington Wolff is the Jefferson Barnes Fordham Professor at the University of Pennsylvania Law School.* Professor Wolff is a scholar in the fields of Civil Procedure, Complex Litigation and the Conflict of Laws. His work has focused particular attention on the doctrines of federal subject-matter jurisdiction, federal common law, the law of preclusion, and the overlapping analytical foundations of those doctrines. Professor Wolff is committed to the correct application of the law of federal jurisdiction across all different types of disputes. He respectfully submits this brief in hopes of assisting this Court with its review of these issues.

---

\* *Amicus* files this brief in his individual capacity. Institutional affiliations are provided for identification purposes only.

## INTRODUCTION

The Supreme Court has framed a straightforward test to use in distinguishing between claims involving contested funds that seek relief "other than monetary damages" and are the proper subject of the Administrative Procedure Act and claims seeking damages against the United States that fall outside the APA's waiver of sovereign immunity: Is the claimant seeking *specific* relief, meaning an order requiring the United States to follow through on existing payment obligations; or *substitute* relief, meaning compensation for consequential harm resulting from the U.S. Government's violation of a duty?  Claims for specific relief are cognizable under APA § 702; claims for substitute relief are not.  *Bowen v. Mass.*, 487 U.S. 879, 894–895 (1988); *Department of Army v. Blue Fox*, 525 U.S. 255, 262 (1999).

The Supreme Court and the Federal Circuit have interpreted the Tucker Act *in pari materia* with the APA, framing a straightforward test to use in distinguishing between claims against the United States involving contested funds that are not covered by the Tucker Act and cannot be heard in the Court of Federal Claims and claims for "monetary damages" that can and must be heard in the CFC: Is the claimant seeking

*encumbered funds*, meaning a disbursement with conditions attached that can only be used for specific purposes and may be subject to reduction or claw-back; or an *unencumbered award* that the claimant can use, spend or transfer for any purpose? An action for encumbered funds falls outside the scope of the Tucker Act and cannot be heard in the Court of Federal Claims. An action for an unencumbered award is covered by the Tucker Act and can be heard in the CFC, often exclusively so. *United States v. Mitchell*, 463 U.S. 206 (1983); *United States v. Testan*, 424 U.S. 392, 398–402 (1976); *Lummi Tribe of the Lummi Reservation, Wash. v. United States*, 870 F.3d 1313, 1317–1319 (Fed. Cir. 2017).

These precedents mandate a clear result in this case. Plaintiffs are seeking specific relief within the meaning of the APA, not substitute relief. They demand the fulfillment of a fixed set of grant obligations mandated by statute and regulation rather than consequential damages for harm resulting from the violation of a duty. APA § 702 is thus the appropriate vehicle for asserting those claims and a federal district court is the appropriate forum. Likewise, plaintiffs are seeking access to encumbered funds rather than an unencumbered award. They demand grant proceeds that can only be used for narrowly defined purposes and are

3

subject to ongoing monitoring for compliance and claw-back in case of malfeasance, not free-and-clear damages they could use for any purpose. Plaintiffs' claims thus fall outside the scope of the Tucker Act and the Court of Federal Claims would have no jurisdiction to adjudicate them. There is not a single feature of this dispute that could be characterized as a request for substitute relief through the award of a free-and-clear, unencumbered payout of damages. The APA and the Tucker Act work together to allocate jurisdiction over these claims to the federal district courts, not the Court of Federal Claims.

The only basis for doubting this conclusion is the Supreme Court's recent order granting a stay pending appeal in *U.S. Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam), which characterized the claims in another suit over canceled grant funding as likely constituting an order "to enforce a contractual obligation to pay money" that must be heard in the CFC. *Id.* at 968. That ruling stands in tension with the authorities described above and presents lower federal courts with a problem: When established precedent dictates the outcome of a dispute but the Supreme Court takes actions that suggest it may be thinking about adjusting or abandoning those precedents, how should lower courts

proceed?  Fortunately, the Supreme Court has provided a clear answer
to that question: It is the job of lower courts to follow controlling prece-
dent unless and until the Supreme Court instructs otherwise.  *Rodriguez
de Quijas v. Shearson/American Express*, 490 U.S. 477, 484 (1989).

Whatever the order in *U.S. Department of Education v. California*
may portend for the Supreme Court's treatment of its APA and Tucker
Act precedents, those precedents still control the Courts of Appeals.  This
Court should apply settled precedent and affirm the District Court's or-
ders.

## ARGUMENT

I. **THE SUPREME COURT DEFINES AN ACTION FOR "RELIEF OTHER THAN MONETARY DAMAGES" UNDER THE ADMINISTRATIVE PROCEDURE ACT AS ONE SEEKING SPECIFIC RATHER THAN SUBSTITUTE RELIEF.**

The APA waives sovereign immunity and authorizes a cause of ac-
tion in federal district courts for lawsuits "seeking relief other than mon-
etary damages and stating a claim that an agency or an officer or em-
ployee thereof acted or failed to act in an official capacity or under color
of legal authority." 5 U.S.C. § 702.  In *Bowen v. Massachusetts*, 487 U.S.
879 (1988), the Supreme Court adopted a framework for analyzing the
scope of "relief other than monetary damages" under the APA.  That

5

framework remains the controlling standard. *See Dep't of Educ. v. Cal.*, 145 S. Ct. 966, 968 (2025) (per curiam) (recognizing *Bowen* as controlling authority). Adopting the approach previously set forth by Judge Robert Bork for the D.C. Circuit, *Bowen* emphasized the significance of the term "monetary *damages*" in the text of the APA, warned against conflating that statutory language with a broader concept of "monetary *relief*" and held that the key to determining whether a claim involving disputed funds seeks "relief other than monetary damages" under the APA rests in the distinction between *specific* and *substitute* relief.

> We begin with the ordinary meaning of the words Congress employed. The term "money damages," 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled."

*Bowen*, 487 U.S. at 894–895 (quoting *Maryland Dep't of Hum. Res. v. Dep't of Health and Hum. Servs.*, 763 F.2d 1441, 1146 (D.C. Cir. 1985) (Bork, J.) & Dan B. Dobbs, *Handbook on the Law of Remedies* 135 (1973)). In a case involving disputed grant funding, "[t]he fact that the mandate is one for the payment of money must not be confused with the question whether such payment, in these circumstances, is a payment of money as

6

damages or as specific relief." *Id.* at 900–01.  A claim under APA § 702 can result in a monetary judgment so long as the case is one seeking specific relief rather than an award that substitutes for consequential harm suffered.

*Bowen* involved a claim by the Commonwealth of Massachusetts over the refusal of the U.S. Department of Health and Human Services to reimburse the state for services it believed should be covered by Medicaid.  Massachusetts sought an order requiring payment of those funds and the Court held the claim could proceed under APA § 702.  While an order requiring a federal agency to disburse statutorily mandated funds would involve the issuance of a judgment for the payment of money, the Court explained, that fact was not controlling.  The relevant question was whether the relief sought was specific or substitute in nature.

> [E]ven if the District Court's orders are construed in part as orders for the payment of money by the Federal Government to the State, such payments are not "money damages" and the orders are not excepted from § 702's grant of power by § 704.  That is, since the orders are for specific relief (they undo the Secretary's refusal to reimburse the State) rather than for money damages (they do not provide relief that substitutes for that which ought to have been done) they are within the District Court's jurisdiction under § 702's waiver of sovereign immunity.

*Bowen*, 487 U.S. at 910 (cleaned up).

Eleven years later the Court reaffirmed the *Bowen* framework and held that access to suit in a district court under APA § 702 does not depend on the traditional distinction between equitable relief and an action at law but on the statutory definition of "monetary damages" and the distinction between specific and substitute relief. In *Department of the Army v. Blue Fox*, 525 U.S. 255 (1999), the Court found APA § 702 unavailable to a claimant who sought to impose an equitable lien on funds held by the U.S. Army, relief the claimant requested as security for the payment of consequential damages in a dispute over unpaid work on a contract. Despite the equitable provenance of the lien as a provisional remedy, the Court found the claim foreclosed under the APA. Encumbering funds for the purpose of seeking consequential damages under a contract qualified as a request for "monetary damages" despite the equitable clothes in which it was dressed because the sole purpose of the lien was to serve as a mechanism for securing consequential damages for the alleged breach. *Id*. at 262. The Court held squarely that APA § 702 depends on the distinction between "specific relief and substitute relief, not between equitable and nonequitable categories of remedies" and made

8

clear that, where the two diverge, the specific/substitute principle governs. *Id.*

Lower federal courts have long recognized these authorities as controlling and have used the distinction between specific and substitute relief as the touchstone for determining whether a claim may proceed in a federal district court under APA § 702. *See, e.g.*, *Modoc Lassen Indian Housing Auth. v. U.S. Dep't of Housing and Urban Dev.*, 881 F.3d 1181, 1197–99 (10th Cir. 2017) (holding that grant recipient can assert APA § 702 claim against a federal agency for improperly withheld funds but only for an order directing payment from "funds from the relevant yearly appropriations" and not "from all available sources" because only the former is properly characterized as "specific relief" whereas the latter would be "substitute relief" that qualifies as "monetary damages"); *Veluchamy v. F.D.I.C.*, 706 F.3d 810, 812 (7th Cir. 2013) (holding that plaintiffs' claim for monetary compensation from FDIC-Corporate for its allegedly improper failure to approve a note redemption is a "request for substitute monetary relief" and hence a claim for "money damages, which the APA does not authorize"); *Harger v. Dep't of Labor*, 569 F.3d 898, 904–06 (9th Cir. 2009) (applying *Blue Fox* to hold that equitable liens generally

function as a substitute for monetary damages and so are unavailable under § 702); *America's Community Bankers v. F.D.I.C.*, 200 F.3d 822, 829 (D.C. Cir. 2000) (identifying distinction between specific and substitute relief as the "pivotal analysis" in availability of relief under § 702 of the APA and finding that requirement satisfied in a dispute over ownership of funds held by FDIC). *See also Zapara v. C.I.R.*, 652 F.3d 1042, 1047–48 (9th Cir. 2011) (construing tax code provision to follow text of APA § 702 and holding that reduction of a taxpayer's outstanding liabilities constitutes "specific relief" not the substitute relief of "damages" despite the payment of money in conjunction with the order).

The plaintiffs in this case clearly seek specific and not substitute relief within the meaning of the Supreme Court's holdings in *Bowen* and *Blue Fox*. The district court found after extensive discovery that the Government's termination of the plaintiffs' grants involved no individualized review and no claim of malfeasance or violation of grant terms by the plaintiffs; rather the Government terminated the grants "because [it] disfavored previously authorized congressional appropriations." District Court Order Granting Preliminary Injunction at 6–7. Plaintiffs do not seek an award of damages to substitute for the harm they suffered as a

result of the Government's violation of these statutory duties but rather an "order[] . . . for specific relief" that will "undo the [Government's] refusal to" disburse grant funds. *Bowen*, 487 U.S. at 910. That is the entirety of the request contained in the prayer for relief in Plaintiffs' amended complaint and it is the entirety of the relief contained in the District Court's order and injunction. *See* Amended Complaint at 89–92; District Court Order Granting Preliminary Injunction (passim). The Supreme Court has instructed that "*Bowen*'s interpretation of § 702 . . . hinged on the distinction between specific relief and substitute relief." *Blue Fox*, 525 U.S. at 262. Plaintiffs assert claims for specific statutory relief.

## II. THE TUCKER ACT ONLY AUTHORIZES JURISDICTION OVER CLAIMS AGAINST THE UNITED STATES FOR MONEY DAMAGES AND WOULD PROHIBIT PLAINTIFFS FROM ASSERTING THEIR REQUEST FOR SPECIFIC RELIEF IN THE COURT OF FEDERAL CLAIMS.

The Supreme Court has used this same approach to the concept of "monetary damages" when defining the scope of the Tucker Act, which operates in counterpoint with the APA. What the APA excludes from its waiver of sovereign immunity in the federal district courts the Tucker Act authorizes and embraces in the Court of Federal Claims, and vice versa.

11

In *United States v. Mitchell*, 463 U.S. 206 (1983), which first held that the Tucker Act's grant of subject-matter jurisdiction to the Court of Federal Claims includes a waiver of sovereign immunity for claims within the scope of that jurisdiction, the Supreme Court explained that a claim "must be one for money damages against the United States" in order to proceed in the CFC.  *Id*. at 216–17.  *See also id*. at 218 (Tucker Act reaches claims "mandating compensation by the Federal Government for the damages sustained").  *Mitchell* drew on a well-established line of precedent when it used "money damages" as the defining criterion for Tucker Act jurisdiction.  *See, e.g.*, *United States v. Testan*, 424 U.S. 392, 398–402 (1976) (reaffirming that the Tucker Act only reaches claims for "money damages" against the United States); *United States v. King*, 395 U.S. 1, 2–3 (1969) (Tucker Act only reaches claims for "actual, presently due money damages from the United States").

The U.S. Court of Appeals for the Federal Circuit has further explained that the term "money damages" in these precedents defines not only the affirmative scope of Tucker Act jurisdiction but also a principle of strict limitation.  In *Lummi Tribe of the Lummi Reservation, Washington v. United States*, 870 F.3d 1313 (Fed. Cir. 2017), the Federal Circuit

12

was presented with a dispute over funds appropriated by statute that the U.S. Department of Housing and Urban Development disbursed through block grants to Indian tribes for the construction or acquisition of affordable housing. At a certain point the agency concluded it had erroneously disbursed grants that were too large to the Lummi Tribe and recouped those overpayments through reductions in the grants it issued the Tribe in subsequent years. The Lummi Tribe sued in the Court of Federal Claims to challenge those reductions.

The Federal Circuit concluded that the Tucker Act did not confer jurisdiction over the Lummi Tribe's claims in the CFC. Even though the Tribe was seeking the payment of a money judgment its claims were not for "money damages" and thus fell outside the CFC's jurisdictional authority. Drawing on the passages quoted above from *Mitchell* and *Testan*, the Federal Circuit explained that "in order to come within the jurisdictional reach and the waiver of sovereign immunity in the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages" and in "the parlance of Tucker Act cases, that source must be 'money-mandating.'" *Id.* at 1317. This requirement is not satisfied in a suit over disbursement of funds through a federal

grant program, the court explained, because the disputed funds do not constitute "damages" to which a claimant has a right to unrestricted ownership and use. Rather, federal grant money is both regulated in its permissible uses and conditional in its ownership, subject to reduction or even claw-back if grant recipients violate the terms of the program. Those forms of encumbrance take the disputed funds wholly outside the definition of "money damages" as the Court used that term in *Mitchell* and *Testan* and hence outside the scope of the Tucker Act.

> [T]he Tribes are not entitled to an actual payment of money damages, in the strictest terms; their only alleged harm is having been allocated too little in grant funding. Thus, at best, the Tribes seek a nominally greater strings-attached disbursement. But any monies so disbursed could still be later reduced or clawed back. And any property acquired with said monies would be "held in trust" by the Tribes, "as trustee for the beneficiaries" of [the statutory appropriations program]. . . . To label the disbursement of funds so thoroughly scrutinized and cabined as a remedy for "damages" would strain the meaning of the term to its breaking point. . . Here, the underlying claim is not for presently due money damages. It is for larger strings-attached [statutory] grants—including subsequent supervision and adjustment—and, hence, for equitable relief. Indeed, *any* such claim for relief under [the statutory grant program] would necessarily be styled in the same fashion; the statute does not authorize a free and clear transfer of money.

*Lummi*, 870 F.3d at 1318–19 (citations omitted).

14

The Federal Circuit makes the connection to the APA explicit in *Lummi*, explaining that no "adequate remedy" under APA § 704 would be available in the Court of Federal Claims in a block grant dispute of this kind and hence that a "district court was not divested of the authority to conduct APA review" of an agency's improper withholding of grant funds "because the remedy provided by a Tucker Act suit in the [Court of Federal Claims would] not serve as the 'other adequate remedy in a court'" under APA § 704. *Lummi*, 870 F.3d at 1317–18 (citing *Bowen v. Mass.*, 487 U.S. 879 (1988), and quoting *Nat'l Ctr. for Manuf. Scis. v. United States*, 114 F.3d 196, 201–02 (Fed. Cir. 1997)) (cleaned up)).

*Lummi* took direction here from the Supreme Court in *Bowen*, which made clear that the APA's distinction between specific and substitute relief in a case involving disputed funds held by the U.S. Government must be read *in pari materia* with the text of the Tucker Act and the jurisdictional limits that statute imposes on the Court of Federal Claims. *Bowen*, 487 U.S. at 901–02; 5 U.S.C. § 704 (measuring availability of judicial review under the APA against the question whether "there is no other adequate remedy in a court" absent that review). In explaining its conclusion that plaintiffs seeking the payment of funds owed by

15

an agency of the U.S. Government through specific performance of the agency's statutory duties could proceed under APA § 702, *Bowen* detailed the insufficiency of the remedy that would be available to Medicaid recipients in the CFC. *Bowen*, 487 U.S. at 904–10.

This well-established relationship between the scope of the APA and the constraints of the Tucker Act applies with equal force in the present case. A suit to enforce the terms of federal grant programs under the Inflation Reduction Act and the Inflation Investment and Jobs Act is one for "other than monetary damages" under APA § 702 because it seeks the "specific relief" of an order mandating compliance with the statutory and regulatory terms of those programs rather than the "substitute relief" of a damages award to compensate for consequential harm. *Bowen*, 487 U.S. at 894–95; *Blue Fox*, 525 U.S. at 262. And such a claim could not be heard in the Court of Federal Claims because it does not seek to enforce any "money mandating" right to an unencumbered award and hence is not a claim for "money damages" under the Tucker Act. *Mitchell*, 463 U.S. at 216–17; *Testan*, 424 U.S. at 398–402; *Lummi*, 870 F.3d at 1318–19. A federal district court is the only appropriate forum for these claims.

16

III. **LOWER FEDERAL COURTS ARE REQUIRED TO APPLY CONTROLLING SUPREME COURT PRECEDENT UNLESS AND UNTIL THE COURT ITSELF INSTRUCTS OTHERWISE.**

The only source of doubt about the proper application of these precedents comes from the brief *per curiam* opinion accompanying the Supreme Court's order granting a stay pending appeal in *U.S. Department of Education v. California*, 145 S. Ct. 966, 968 (2025) (per curiam). That case involved a challenge to the Government's termination of grants associated with education-related programs authorized by federal statutes different from those involved here—the Teacher Quality Partnership and Supporting Effective Educator Development—in which the First Circuit had held that "the terms and conditions of each individual grant award [were] at issue" in the dispute despite the seemingly categorical nature of the Government's action in freezing those grants. *Cal. v. U.S. Dep't of Educ.*, 132 F.4th 92, 96–97 (1st Cir. 1995), *reversed*, 145 S. Ct. 966 (per curiam). In its opinion reversing the First Circuit, the Court recognized *Bowen* as governing authority but then cited an ERISA case, *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), to explain its issuance of the stay.

The citation to *Knudson* is confounding. Far from construing or applying either the APA or the Tucker Act, *Knudson* explicitly distinguished the ERISA question before the Court in that case from the APA question in *Bowen*. The dispute in *Knudson* turned on whether the relief sought by the plaintiff under ERISA could properly be defined as equitable in nature. In the process of deciding that question, the Court rejected the comparison between ERISA and the APA, reiterated that *Bowen*'s analytical framework was based on the discrete concepts of specific and substitute relief, and reaffirmed its holding in *Blue Fox* that "*Bowen* did not turn on distinctions between 'equitable' actions and other actions but rather on what Congress meant by 'other than monetary damages' in the Administrative Procedure Act." *Knudson*, 534 U.S. at 212 (quoting *Blue Fox*, 525 U.S. at 261) (cleaned up).

What are we to make of this opaque citation? Does *California* indicate that the Supreme Court is preparing to overrule its holding in *Blue Fox* and drastically limit its holding in *Bowen*? Did the Court simply fail to read *Knudson* carefully during the accelerated pace of an emergency request for a stay decided without oral argument and make an error that it will correct if and when it hears a full appeal on the merits? We cannot

know, and it is not the job of this Court to know. All we know is that the Court reaffirmed *Bowen* in its order and said nothing about *Blue Fox* or any of its Tucker Act precedents. Those precedents therefore remain controlling.

In a situation like this where the Supreme Court appears to signal that it may overrule or limit controlling precedents, the Court has given lower federal courts clear instructions about how to proceed: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express*, 490 U.S. 477, 484 (1989). Lower federal courts are neither required nor permitted to speculate about how the Supreme Court might resolve the tensions it creates in such a case. Where clear precedent mandates a result, that precedent controls until the Court itself says otherwise.

*Bowen*, *Blue Fox*, *Mitchell*, and *Testan* provide a clear answer to the question presented in this case. Plaintiffs assert claims for "other than monetary damages" under APA § 702 because they seek specific relief in

19

the form of disbursements according to the terms of statutory grant programs, not the substituted compensation of unrestricted damages for some claimed individual harm. And the Court of Federal Claims would have no jurisdiction to hear claims seeking disbursement of these highly restricted, single-purpose funds because they do not qualify as an award of "money damages" under the Tucker Act, leaving "no other adequate remedy" for plaintiffs under APA § 704. The Court has issued decades of precedents on these matters and they remain controlling.

The *per curiam* order in *California* does establish a binding rule of decision for the precise question presented in that stay application, of course. If other plaintiffs challenge termination of grants under the Teacher Quality Partnership or Supporting Effective Educator Development programs then lower federal courts must stay any relief during the appellate process. But, as plaintiffs explain in their briefing, both the grant programs and the circumstances surrounding the terminations of funding in this case are different in kind from the programs and terminations at issue in *California*. Plaintiffs-Appellees' Response to Defendants-Appellants' Opening Brief at 35–38. That is sufficient to bring this case outside the ambit of the *per curiam* order in *California*. *See*

*Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355 (D.C. Cir., May 28, 2025) (*en banc*) (reversing stay pending appeal in grant termination case and treating the order in *California* as limited to its facts).

The dilemma the Supreme Court has created with its opaque ruling in *California* is one that only the Court itself can resolve. The Court's long-standing instruction to lower federal courts in this situation is clear: they must continue to apply controlling precedent until the Court itself says otherwise. *Rodriguez de Quijas*, 490 U.S. at 484.

## CONCLUSION

For all the foregoing reasons, this Court should affirm.

Respectfully submitted,

*/s/ Paul DeCamp*

ADRIANA S. KOSOVYCH
EPSTEIN, BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
Tel: 212.351.4500
Fax: 212.878.8600
AKosovych@ebglaw.com

PAUL DECAMP
  *Counsel of Record*
KATHLEEN BARRETT
EPSTEIN, BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
Tel: 202.861.1819
Fax: 202.861.3571
PDeCamp@ebglaw.com
KBarrett@ebglaw.com

*Counsel for* Amicus Curiae *Professor Tobias Barrington Wolff*

July 11, 2025

21

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) and Fourth Circuit Rule 32(b) because it contains 4,339 words, excluding the exempted portions under Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Paul DeCamp*
Paul DeCamp

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing document was electronically filed in this matter with the Clerk of Court, using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Paul DeCamp*
Paul DeCamp

July 11, 2025